# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## GAINESVILLE DIVISION

ELEPHANT SHOE, LLC,
an Ohio Limited Liability Company
d/b/a WHAT THE HALE$,
and JEREMY B. HALES,

Plaintiffs,                                      Case No.: 1:25-cv-00058-RH-ZCB

v.

LYNETTE MICHELLE LACY ALEXIS
PRESTON JOHN COOK, BRUCE P.
MATZKIN, LISA WEEKS a/k/a LISA LEE
a/k/a LISA RAPUZZI a/k/a LISA LEE
RAPUZZI a/k/a LISA RAPUZZI WEEKS,
MARLA HUGHES, DAVID C. HELM,
ROBERT J. KESZEY, DAVID MICHAEL
TESCHENDORF, JOHN DOE, a/k/a "RAY
BONECRUSHER @raybonecrusher4516",
and RICHARD LUTHAMANN,

        Defendants.
_____/

## DEFENDANT, DAVID C. HELM'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT AND FOR ATTORNEYS' FEES AND COSTS UNDER FLORIDA'S ANTI-SLAPP STATUTE

COMES NOW Defendant, DAVID C. HELM ("Helm"), by and through undersigned counsel, and pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and Section 768.295, Florida Statutes,

1

moves for the entry of an Order dismissing Plaintiffs, ELEPHANT SHOE, LLC and JEREMY B. HALES' ("Hales") Amended Complaint and this entire action with prejudice, and awarding Defendant their attorneys' fees and costs incurred in defending themselves against Hales' meritless claims, and state in support as follows:

## PRELIMINARY STATEMENT

This case is a quintessential Strategic Lawsuit Against Public Participation ("SLAPP"): a meritless lawsuit through which Hales seeks to retaliate against and punish Helm because they have exercised their constitutionally protected rights of free speech in connection with matters of public concern for purposes of silencing any contrarian opinions to the other pending lawsuits Hales has filed.

To this end, Hales has made allegations of defamation that is masquerading as a count of Civil Conspiracy that is void of detail, even after Plaintiffs' Amended Complaint was filed on April 28, 2025. (*See* Doc. 35). However, in their Amended Complaint, Hales' allegations against Helm, even if taken as true, contain statements that are either not defamatory or contain illusory statements are insufficient to demonstrate a civil conspiracy. As such, all counts against Helm must be expeditiously

disposed of and Helm should be awarded his attorneys' fees and costs under Florida's Anti-SLAPP statute, § 768.295, Fla. Stat.

Hales' allegations against Helm within their Amended Complaint relies upon five separate events to allege their conspiracy: (1) Helm contacting Defendants Preston and Cook, (2) Helm contacting Defendant Matzkin, 3) Helm having Matzkin on his YouTube channel for roundtable discussion on June 8, 2024, (4) alleging that Hales is "twice as dumb" for not understanding the Fair Use Doctrine and (5) commenting on another YouTube channel's that he saw a picture of Hales planting the alleged defamatory signs himself. (*See* Doc. 35 at 115–121).

As demonstrated by the over 730,000 followers Hales has on his YouTube channel and the frequency in which he creates video content regarding this and his other lawsuit against Defendant Preston and Cook in the matter of *Jeremy B. Hales v. John M. Cook, et al.,* case no. 1:2024-cv-00045, Hales' has made this a matter of public concern. Further, many of allegations against Helm are related to comments made during YouTube videos that discuss the content of the related lawsuit. For this reason, the prompt disposition of this case is appropriate because of its

"chilling effect" on First Amendment rights. *Karp v. Miami Herald Publ'g Co.*, 359 So. 2d 580, 581 (Fla. 3d DCA 1978).

Hales' Amended Complaint contains claims that are untenable for several reasons, requiring their dismissal.

First, the alleged defamatory statements that form the basis of the civil conspiracy are either facially not defamatory, are true or fail to demonstrate any sort of furtherance of the conspiracy to commit the torts alleged. Further, Plaintiffs' allegations as to Helm's statements intentionally mislead and omit critical context in order to make them appear as if they are stated as fact.

Second, Plaintiffs' claim of tortious interference with advantageous business relationship fails to state a cause of action in which relief can be granted. Plaintiffs' claim fails to identify who the other party the advantageous business relationship is with. To the extent it is to the public at large, such relationships are not applicable to that cause of action. If it is to YouTube, the Amended Complaint fails to state how that business relationship was adversely affected.

Third, Plaintiffs' claim of furtherance of the conspiracy to violate Florida's Deceptive and Unfair Trade Practices Act, § 501.201, Florida

Statutes, also fails to state a cause of action in which relief can be granted. Plaintiffs' Amended Complaint fails to connect the conduct it alleges have caused the violation with the actions of Helm. Further, it fails to state any injury or detriment to consumers.

Fourth, Plaintiffs' Amended Complaints fails to state a prima facie cause of action for False Advertising under the Lanham Act. The Amended Complaint fails to demonstrate any actions taken by Helm that were false statements of fact about products, services, or commercial activities in its advertisements, that such statements would deceive a substantial segments of Plaintiffs' audience, that it would influence buying decisions of consumers or that Plaintiff was injured as a result of those activities.

Lastly, because this lawsuit lacks merit and seeks to hold Defendant Helm liable for free speech on a matter of public concern, Plaintiffs' Amended Complaint violates Florida's Anti-SLAPP statute and must be dismissed expeditiously. Further, Defendant Helm must be awarded his reasonable attorneys' fees and costs. *See* § 768.295, Fla. Stat.

## RELEVANT BACKGROUND

Defendant Helm runs a YouTube page called "Making Law Simple." The focus of his YouTube channel is to follow litigation cases of public interest and provide analysis and explanation in simplistic terms so that the lay person can understand it. One of the litigation cases that was featured on his YouTube channel was that of *Jeremy B. Hales v. John M. Cook, et al.,* 1:2024-cv-00045.

In contrast to the depiction in Plaintiffs' Amended Complaint, Helm did in fact record a Lego video with Hales on the YouTube channel "Lego, Law, Life and Libations" on March 23, 2024, where questions were asked of Hales about his pending litigation against Defendant Cook and Preston and generally showing support for Hales efforts in the community.[1]. During that same video, Helm informed Hales of his intent to reach out to Defendants Cook and Preston to get their side of the story for his channel.

Helm then had Defendant Matzkin, who at the time represented Defendant Cook and Preston in Hales' other suit, on his channel to discuss the litigation.[2] Within the video, the participants analyzed Hales'

---

[1] *See* https://www.youtube.com/watch?v=QvmWtQu-iJI at  3:10:00–3:16:20, attached hereto as **Exhibit 1.**

[2] *See* https://www.youtube.com/watch?v=ZBvX5Ew1L3k attached hereto as **Exhibit 2.**

complaint in the original suit. Due to its high profile, Helm continued to follow the original suit and other content creator's YouTube videos and livestreams. After those videos and shortly before the initiation of the instant case, Helm made posts on his page criticizing the conduct of both parties. *See* posts from MLS YouTube channel, attached hereto as **Composite Exhibit 3**. At no time did Helm participate in what Plaintiffs' Amended Complaint describes as the "Malicious Conspiracy To Harm Hales."

## <u>LEGAL STANDARD</u>

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege facts sufficient to state a facially plausible claim for relief. *Bongino v. Daily Beast Co.*, 477 F. Supp. 3d 1310, 1315 (S.D. Fla. 2020) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "While a court must accept well-pleaded factual allegations as true, 'conclusory allegations . . . are not entitled to an assumption of truth—legal conclusions must be supported by factual allegations.'" *Turner v. Wells*, 198 F. Supp. 3d 1355, 1364 (S.D. Fla. 2016) (quoting *Randall v. Scott*, 610 F.3d 701, 709–10 (11th Cir. 2010)). Mere "allegations stated upon information and belief" likewise "fail to meet

the *Twombly* standard." *Scott v. Experian Info. Sols., Inc.*, 2018 WL 3360754, at \*6 (S.D. Fla. June 29, 2018). "[C]ourts may infer from the factual allegations in the complaint 'obvious alternative explanations,' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 682). And "in this Circuit[,] 'when the [complaint] exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern.'" *Crenshaw v. Lister*, 556 F.3d 1283, 1292 (11th Cir. 2009).

## ARGUMENT

### I.    This Case Must Be "Expeditiously" Disposed

As expressed in Florida's Anti-SLAPP statute, § 768.295, Fla. Stat., our legislature has made it a matter of public policy to recognize and dismiss SLAPP suits "expeditiously." *Gundel v. AV Homes, Inc.*, 264 So. 3d 304, 310 (Fla. 2d DCA 2019). This statute creates a right not be subjected to meritless suits filed "primarily because [another] person or entity has exercised the constitutional right of free speech in connection with a public issue." *Id.* In fact, the statute provides that persons, such

as Hales, "may not file or cause to be filed" such claims. § 768.295(3), Fla. Stat.

Similarly, Florida' courts have long-recognized that the prompt dismissal of meritless claims based on speech serves First Amendment values by protecting the robust discussion of public issues. *Stewart v. Sun Sentinel Co.*, 695 So. 2d 360, 363 (Fla. 4th DCA 1997) ("Where the facts are not in dispute in defamation cases, . . . pretrial dispositions are 'especially appropriate' because of the chilling effect these cases have on freedom of speech.") (quoting *Karp v. Miami Herald Publ Col.*, 359 So. 2d 580, 581 (Fla. 3d DCA 1978)); *see also Southard v. Forbes Inc.*, 588 F.2d 140, 145 (5th Cir. 1979) (the "very pendency of a [defamation] lawsuit may exert [a] chilling effect" on speech). Indeed, Florida courts serve a "prominent function" at the pleadings stage by making the initial determination as to whether challenged speech is actionable as a matter of law. *Smith v. Cuban Am. Nat'l. Found.*, 731 So. 2d 702, 704 (Fla. 3d DCA 1999). This role and responsibility is critical because SLAPP suits inherently violate the constitutional rights they attack. These suits are an abuse of the judicial process and are used to censor, intimidate, or punish people for involving themselves in public affairs. *Id.* (citing 2000-

174, § 1, Laws of Fla.). As such, allowing a SLAPP to proceed causes irreparable harm. *Id.*

The Anti-SLAPP Statute provides that a defendant "may move the Court for an order dismissing the action or granting final judgment" and "may file a motion for summary judgment, together with supplemental affidavits, seeking a determination that the claimant's . . . lawsuit has been brought in violation of this section." *See* § 768.295(4), Fla. Stat. Here, Defendant's motion properly seeks relief on both procedural grounds. *Gundel*, 264 So.3d at 312–13. Pursuant to section 768.295(4), Hales must respond, and then the Court must hear this motion "at the earliest possible time" thereafter.

## II.  Plaintiffs Amended Complaint Deliberately Omits Context of Helm's Statements

Plaintiffs' Amended Complaint intentionally leaves out important context in order to make a prima facie case against Helm for alleged involvement in a civil conspiracy.

The first is regarding Plaintiffs' allegation that Helm's contact with Defendants Preston and Cook was in "retaliation" over Hales appearing on a different YouTube channel after being invited by Helm to join a video to build Legos on his channel. (*See* Doc. 35 at 112–115). This is an

outright false statement. Not only did Mr. Hales accept that offer, but he appeared in a video with Helm on March 23, 2024 on the YouTube channel "Lego, Law, Life and Libations", which is also run by Helm. *See* **Exhibit 1.** This video lays bare Plaintiffs' motive for initiating this lawsuit against Helm. During the Lego stream with Mr. Hales, Helm made his intentions known that he planned to get Defendants Preston and Cook's side of the story regarding their disagreement with Hales. *See Id.* at 3:12:00–3:12:21. (*See* Doc. 35 at 112).

The second act alleged to be in furtherance of the conspiracy was a comment made by Helm on his video "Let's Talk About Florida Man #WhatTheHales" that "Jeremy Hales falsely claims he does not earn money off of YouTube."[3] However, even within their own Amended Complaint, Plaintiffs admit that Hales generates revenue through YouTube, through ads and connecting their YouTube platform to a store that sells merchandise for the YouTube creator. (*See* Doc. 35 at 1–3). The only point of contention, if any, between Helm's statement and Plaintiffs' own admissions would be the definitional difference between Plaintiffs generating revenue off of YouTube and generating a profit off of YouTube.

---

[3] *See* https://www.youtube.com/watch?v=ZBvX5Ew1L3k&t=18s attached hereto as **Exhibit 4**.

The third act alleged is a YouTube video posted by Helm in which Plaintiffs allege that Helm says the following:

> The god of law is going to prove in this video why Jeremy Hales is twice as dumb and that's not an opinion – he's going to prove it because fair use anybody on YouTube can use my videos without permission it falls under fair use people can use my name image content videos and intellectual property to comment to each for news and the list goes on and on and on so regardless of how Mr. Hales simply ignores copyright law and now looking even more foolish - his own words coming back to haunt him.

(*See* Doc. 35 at 120). Again, Plaintiffs fail to provide the link to this video. If they had, it would have provided the important context that this statement wasn't made by Helm at all, but was in fact a composite of several edited clips from Mr. Hales' page.[4] This video was used to demonstrate to Mr. Helm's subscribers the context and application of the fair use doctrine and how he believed Hales' multiple statements in his videos explaining his interpretation of fair use were incorrect. As mentioned above, explaining the law in simple terms is the mission statement of Helm's YouTube channel. This is made plain by Helm's

---

[4] *See* https://www.youtube.com/watch?v=bxAjpfbqZeI, attached hereto as **Exhibit 5.**

detailed discussion of the fair use doctrine within the description section of the video. *Id.*

The last allegation is a comment stating "I saw a picture of JERM planting the signs himself" alleged to have been made by Helm in the chat section during a livestream of Defendant Weeks. (*See* Doc. 35 at 121). Again, the video itself is not attached, with only a screenshot being provided of the comment. *Id.* However, the video again provides important context to this statement. When the comment being attributed to the "Making Law Simple" account appears on the video stream, the hosts immediately read it and laugh, with one host speaking about a different photo and wanting "to see the metadata on that."[5] Further cementing the context, just 45 seconds later, the follow up comment made by the "Making Law Simple" account is brought up that states "I made it....lol," directly confirming that picture referenced earlier is fake and not to be implied as clear factual allegation. A screenshot of the follow-up comment is attached hereto as **Exhibit 7.** The meaning of the joke is clearly understood by one of the hosts who laughs and comments "there

---

[5] *See* https://www.youtube.com/live/O6g76M6JQtc?si=400jxoWJJmxKTAaV&t=3986 at 1:06:26–1:06:50 attached hereto as **Exhibit 6**.

we go" immediately in response to the follow up comment. *See* **Exhibit 6** at 1:07:10.

As has been outlined above, every allegation against Helm made in Plaintiffs' Amended Complaint is either a true statement or a statement that has been presented entirely devoid of context so that Plaintiffs can meet even the lowest standards of alleging a prima facie case. The chronology of Plaintiffs' allegations against Helm in their Amended Complaint reveals their true purpose, that from the moment Helm inform Hales that he was going to provide Defendant Preston and Cook an opportunity to tell their side of the story, Hales intention was to use the significant social media influence and financial advantage to dissuade and punish Helm for disagreeing with him or giving a voice to any that would. These acts are those that Florida's Anti-SLAPP law was designed to protect against. § 768.295(4), Fla. Stat.

## III. Actions and Statements Alleged to be Committed by Helm are Not in Furtherance of a Conspiracy to Violate Florida's Deceptive and Unfair Trade Practices

To prevail on a claim under the Florida Deceptive and Unfair Trade Practices Act (FDUTPA), a plaintiff must show (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages. *Jones Superyacht*

*Miami, Inc. v. M/Y Waku*, 451 F. Supp. 3d 1335, 1343 (S.D. Fla. 2020). Here, Plaintiffs have failed to sufficiently allege any of these three elements. As discussed in the instant motion's section regarding the context of the alleged statements made by Helm, none of them would constitute "a deceptive or unfair practice" even if taken as true. Further, Plaintiffs' sole allegation for a loss of damages is a claim of loss of profit since the Fall of 2023. (*See* Doc. 35 at 23). No mention is made to what good or service is alleged to have been affected to cause this alleged loss or what behavior specifically deceived consumers. For example, no causal connection is made about how Helm's contention that Hales makes money off of YouTube would be considered deceptive or whether such a statement caused actual damages.

Section 501.211(2) provides: "In any action brought by a person who has suffered a loss as a result of a violation of this part, such person may recover *actual damages*, plus attorney's fees and court costs[.]" § 501.211(2), Fla. Stat. (emphasis added). In the context of FDUTPA, "actual damages" are defined as "'the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered

according to the contract of the parties.'" *Rollins, Inc. v. Heller*, 454 So. 2d 580, 585 (Fla. 3d DCA 1984) (quoting *Raye v. Fred Oakley Motors Inc.*, 646 S.W.2d 288, 290 (Tex.Ct.App.1983)); *see also Urling v. Helms Exterminators, Inc.,* 468 So. 2d 451, 454 (Fla. 1st DCA 1985). This is because "[t]he act is intended to protect a consumer from unfair or deceptive acts or practices which diminish the value or worth of the goods or services purchased by the consumer." *Urling*, 468 So. 2d at 454.

Additionally, when a plaintiff in her complaint fails to allege a recoverable loss under FDUTPA, the complaint fails to state a cause of action under FDUTPA. *See* Smith *v. 2001 South Dixie Highway*, *Inc.*, 872 So. 2d 993, 994 (Fla. 4th DCA 2004) (where plaintiff improperly sought consequential damages in her FDUTPA claim rather than actual damages in relation to the value of the car she purchased, dismissal with prejudice was proper).

Here, Hales does not outline what his actual damages are given the multiple revenue streams that are outlined in their Amended Complaint. (*See* Doc. 35 at 1–6). FDUTPA limits recovery to actual damages—not nominal damages, speculative losses, or compensation for subjective feelings of disappointment. *See Popeyes Louisiana Kitchen, Inc. v. Florida*

*Pop, LLC*, 723 F. Supp. 3d 1196 (S.D. Fla. 2024) Further, Plaintiffs'
Amended Complaint seeks both damages and injunctive relief under
FDUPTA. He further seeks relief as a corporate competitor and specifies
Helm as one such competitor. (*See* Doc. 35 at 111). While a corporate
competitor can bring a FDUTPA claim, they still must prove the elements
of the claim, including an injury to the consumer. *See Ounjian v.
Globoforce, Inc.,* 89 F.4th 852, 861 (11th Cir. 2023). Without stating a
cause of action in which to grant relief, no conspiracy can exist, and the
count must be dismissed.

## IV.    Actions and Statements Alleged to be Committed by Helm Were Not in Furtherance of a Conspiracy to Violate False Advertising Under the Lanham Act, 15 U.S.C. §1125(a)

To prevail on false advertising claim under Lanham Act, plaintiff
must establish that: (1) defendant's advertisements were false or
misleading; (2) advertisements deceived, or had capacity to deceive,
consumers; (3) deception had material effect on purchasing decisions; (4)
misrepresented product or service affects interstate commerce; and (5)
plaintiff has been injured as result of false advertising. *See Intertape
Polymer Corp. v. Inspired Technologies, Inc.*, 725 F. Supp. 2d 1319.

Plaintiffs' claim of a conspiracy to commit false advertising under the Lanham Act fails for several reasons. First, all statements contributed to Helm within Plaintiffs' Amended Complaint do not fall within the scope of the Lanham Act as they are not statements pertaining to "commercial advertising or promotion" as required by the statute. For a statement to constitute commercial advertising or promotion under Section 43(a)(1)(B), they must be: (1) commercial speech; (2) by a defendant who is in commercial competition with plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services. While the representations need not be made in a "classic advertising campaign," but may consist instead of more informal types of "promotion," the representations (4) must be disseminated sufficiently to the relevant purchasing public to constitute "advertising" or "promotion" within that industry. *Proctor & Gamble Co. v. Haugen*, 222 F.3d 1262, 1273–74 (10th Cir. 2000). Here, none of the statements alleged to have been attributed to Helm meet any of these three elements.

The difference between commercial speech and noncommercial speech "is a matter of degree*." City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 420–21 (1993). These statements have nothing to do

with any of the goods or services Plaintiffs offer their customers or attempts to promote his own goods or services. In *Boule v. Hutton,* 328 F.3d 84, 91 (2d Cir. 2003), the central issue revolved around whether statements by a famous artist's son and daughter-in-law that there were widespread forgeries being sold of the famous artists paintings, constituted commercial speech. Even though the famous artist's children were also attempting to sell the famous artist's works at the time the statements were made, the court in *Boule* found that the statements were protected under the First Amendment since it was discussing an issue of public importance and occurred in a forum that was traditionally been granted full protection of the First Amendment, which was an interview for a magazine.

Here, the facts are even more removed from being commercial speech than in the *Boule* case. Helm's statements—assuming *arguendo* that Helm made these statements—all have to do with Hales personally and nothing to do with his business or products. Statements alleging that Hales is foolish and does not understand the law on fair use or statements regarding Hales' legal case against Defendants Preston and Cook are not the kind of statements contemplated to be protected by the Lanham Act.

As to the remaining two elements, the Supreme Court in *Lexmark Intern., Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 133 (2014) has removed the requirement for the parties to be competitors to each other and has instead asked whether the cause of action extends to a plaintiff whose interests fall within the zone of interests protected by the law invoked. *Id.* In the present case, the only direct count of a violation of the Lanham Act is made against Defendant Weeks. (*See* Doc. 35 at 190–96). The only interaction between Defendant Weeks and Helm is regarding a singular comment on Defendant Weeks' livestream. As argued previously, these statements were not made as if to be stated as fact, but were easily understood as to be made in jest. *See* **Exhibit 7.**

The final element requires Plaintiffs to show that the representations must be disseminated sufficiently to the relevant purchasing public to constitute "advertising" or "promotion" within that industry. *See Proctor*, 222 F.3d at 1273–74. Again, Plaintiffs fail to meet this element. As of the writing of this Motion, the videos that Helm has made the at-issue statements in "Let's Talk about Florida Man #WhatTheHales" has 8,500 views. The livestream video with Defendant Weeks has 4,100 views and the "Jeremy Hales Ignores Copyright Laws"

video has 2,100 views. In contrast, Hales' most recent two YouTube videos about the case at bar "BAD NEIGHBOR FINALY TELLS THE TRUTH" and "MORE COURT EVIDENCE REVEALED AGAINST BAD NEIGHBOR & BAD LAWYER" have 75,000 and 60,000 views respectively and were only released approximately two weeks ago.[6] Even if any of the statements alleged against Helm are found to be false, there has been no demonstration that these statements have been viewed by any significant number of the purchasing public. Further, Plaintiffs' Amended Complaint does not specify what, if any damages, occurred as a result of the conspiracy alleged.[7] Since Plaintiffs failed to plead a prima facie case of violations of the Lanham Act, no conspiracy can exist and the count against Helm must be dismissed.

## V.    Actions and Statements Alleged to be Made by Helm Were Not in Furtherance of a Conspiracy to Commit Tortious Interference with Advantageous Business Relationship.

In their Amended Complaint, Plaintiffs alleged two counts of direct claims for tortious interference with advantageous business relationship

---

[6] *See* https://www.youtube.com/watch?v=pYeopU0pSZ8 and https://www.youtube.com/watch?v=xxHRjRvgYeI attached hereto as **Exhibit 8 and Exhibit 9.**

[7] According to website socialblade.com, since Fall 2023, the date Plaintiffs' allege to have begun to lose profits, the WhatTheHales YouTube channel has gained approximately 71,000 followers. *See* https://socialblade.com/youtube/handle/whatthehales

against Defendants Weeks and Matzkin. (*See* Doc. 35 at 197–208). These claims allege that the actions of Defendants Weeks and Matzkin interfered with "its customers and other companies including, without limitation, Whatnot, Inc. and YouTube."( Doc. 35 at 199, 206). Further, they argue that Matzkin and Weeks were knowledgeable of these business relationships. (Doc. 35 at 201, 206). As it applies to Helm, Plaintiffs' Amended Complaint is silent as to his knowledge of these business relationships and what actions Helm did in furtherance of interfering with said business relationships. *Id.*

In order to present a prima facie case of tortious interference with advantageous business relationship, a plaintiff needs to plead sufficient facts to meet the following four elements: (1) the existence of a business relationship, not necessarily evidenced by an enforceable contract, under which the plaintiff has legal rights; (2) the defendant's knowledge of the relationship; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the interference. *See Tamiami Trail Tours, Inc. v. Cotton*, 463 So. 2d 1126, 1127 (Fla. 1985). While Plaintiffs do properly plead the first element as it applies to YouTube and WhatNot, Inc., it would not apply

to "customers" as the interference must be with an individual person, not the public at large. *See North American Van Lines, Inc. v. Ferguson Transp., Inc.*, 639 So. 2d 32, 33 (Fla. 4th DCA 1994).

Regarding the second element, Plaintiffs fail to allege that Helm had knowledge of any contractual relationship with these entities. As it applies to the third element, Plaintiffs fail to allege any direct claims of Helm interfering with aforementioned business relationships. Instead, Plaintiffs use the catch-all allegation that Helm "knew of the scheme and assisted in it for all of the acts of all Defendants/coconspirators, including . . . despite knowledge of the customer's contractual and business relationship with HALES, intentionally and without valid justification interfering with such relationships." (*See* Doc. 35 at 253). However, Plaintiffs fail to connect how the actions of Helm were in furtherance of the actions by Defendants Weeks and Matzkin that allegedly interfered with Plaintiffs' business relationships. All of Helm's alleged actions pre-date the alleged email sent by Defendant Matzkin to Whatnot, Inc. on February 17, 2025. (Doc. 35 at 131). Lastly, Plaintiffs fail allege what damage, if any, occurred as a result of the interference with YouTube or Whatnot, Inc. Due to Plaintiffs' failure to connect the interference with

Helm and the interference of other defendants to any damages, there can be no civil conspiracy and therefore it must be dismissed.

## VI. Plaintiffs' Amended Complaint Fails to Establish a Civil Conspiracy in its allegations against Helm

Plaintiffs Amended Complaint's entire basis of Helm's involvement in the alleged civil conspiracy is centered around the allegation that Helm reached out to "MATZKIN (and others)" to enlist them in a conspiracy to "take down" Hales and that bringing on MATZKIN to appear on his YouTube channel was proof that they were joint tortfeasors. (*See* Doc. 35 at 115–17). It then outlines several YouTube videos that Helm appeared on or posted that were critical of Mr. Hales as proof of his involvement of said conspiracy. (Doc. 35 at 118–23).

A civil conspiracy requires: (1) an agreement between two or more parties, (2) to do an unlawful act or to do a lawful act by unlawful means, (3) the doing of some overt act in pursuance of the conspiracy, and (4) damage to plaintiff as a result of the acts done under the conspiracy. *See Raimi v. Furlong*, 702 So. 2d 1273, 1284 (Fla. 3d DCA 1997). A conspiracy is only unlawful when there is an intent to achieve an illegal goal. *Ginsberg v. Lennar Florida Holdings, Inc.,* 645 So. 2d 490, 502 (Fla. 3d DCA 1994). Helm vehemently denies involvement in any civil conspiracy.

However, even assuming *arguendo* that such a conspiracy exists, Plaintiffs fail to specify any illegal act that was agreed to by the parties to commit, thereby failing to meet the second element. Further, a malicious intent will not transform otherwise proper conduct into an actionable civil conspiracy. *American Diversified Ins. Services, Inc. v. Union Fidelity Life Ins. Co.*, 439 So. 2d 904 (Fla. 2d DCA 1983).

As discussed above, none of the actions of Helm outlined in Plaintiffs' Amended Complaint are in furtherance of any of the underlying torts Plaintiffs allege were part of the civil conspiracy. (*See* Doc. 35 at 118–23). The common thread between the actions Plaintiffs attempt to contribute to Helm is the contention that they were false statements being presented in a way that imply clear factual accusations, with Plaintiffs stopping short of calling them defamatory. (Doc. 35 at 122). However, even taking these statements in the light most favorable to Plaintiffs, they do not constitute an overt act in pursuance of the conspiracy to commit the torts of violating the False Advertising of the Lanham Act, Florida's Deceptive and Unfair Trade Practices Act, or tortious interference with advantageous business relationships.

Plaintiffs attempt to circumvent this issue by pleading that Helm "knew of the scheme and assisted in it for all of the acts of all Defendants/coconspirators…" (*See* Doc. 35 at 253). However, this is both chronologically and factually inconsistent with the remaining allegations of Plaintiffs' Amended Complaint. For example, Plaintiffs' allege that the conspiracy began on June 19, 2023. (Doc. 35 at 82). But then allege that Helm created the conspiracy in Spring 2024. (Doc. 35 at 116). Further, it identifies Defendant Matzkin and an unidentified group of other people as the only people enlisted for the alleged conspiracy. *Id*. There is no further facts alleged about how Helm assisted the acts of any other co-conspirators.

## VII. Defendant Helm is Entitled to Recover His Attorneys' Fees Under Florida's Anti-SLAPP Statute

Defendant Helm is entitled to and should recover his attorneys' fees and costs under Florida's Anti-SLAPP law. *See* § 768.295(4), Fla. Stat. SLAPPs involve claims brought against citizens, bloggers, journalists, businesses, and other entities involved in speaking out on issues of concern to the public. Florida's Anti-SLAPP statute prohibits the filing such claims because their primary purpose is to silence protected speech on matters of public concern.

SLAPPs are "based upon nothing more than defendants' exercise of their right, under the first amendment, to petition the government for a redress of grievances." *Sandholm v. Kuecker*, 962 N.E. 2d 418, 427 (Ill. 2012) (citing *Westfield Partners, Ltd. V. Hogan*, 740 F. Supp. 523, 525 (N.D. Ill. 1990)). A SLAPP plaintiff is not concerned with the merits of her claim; rather, the goal is to "chill defendants' speech or protest activity and discourage opposition by others through delay, expense and distraction." *Id.* The SLAPP plaintiff's goal is achieved through the ancillary effects of the lawsuit itself on the defendant, not through an adjudication on the merits. *Id.* "SLAPPS masquerade as ordinary lawsuits and may include myriad causes of action, including defamation, interference with contractual rights or prospective economic advantage, and malicious prosecution." *Id.* at 428.

Allowing SLAPPs to proceed violates the very constitutional rights Florida's Anti-SLAPP statute was implemented to protect. *Gundel,* 264 So. 3d at 310–311. Traditional sanctions available for meritless litigation are insufficient to counter SLAPPs because those sanctions often must wait until the conclusion of litigation—thus still allowing the SLAPP plaintiff to accomplish her objectives. *Id.* Florida's Anti-SLAPP statute

makes it easier, faster and less expensive for the victims of SLAPPs to dismiss cases and to be compensated for defending themselves against them.

Florida's Anti-SLAPP law, prohibits:

> any lawsuit, cause of action, claim, cross-claim, or counterclaim against any other person or entity without merit and primarily because such person or entity has exercised the constitutional right of free speech in connection with a public issue, or right to peacefully assemble, to instruct representatives of government, or to petition for redress of grievances before the various governmental entities of this state, as protected by the First Amendment to the United States Constitution and s. 5, Art. I of the State Constitution.

*See* § 768.295(3), Fla. Stat.

Moreover, a "person or entity sued . . . in violation of this section has a right to an expeditious resolution of a claim that the suit is in violation of this section . . . [and] . . . may move the court for an order dismissing the action or granting final judgment in favor of that person . . . [or] . . . may file a motion for summary judgment, together with supplemental affidavits, seeking determination that the claimant's . . . lawsuit has been brought in violation of this section." § 768.295(4), *Fla. Stat.* The court must hear an Anti-SLAPP motion as early as possible, and

award attorneys' fees and costs to the prevailing party, as well as any actual damages suffered by the SLAPP victim. *Id.*

This case is a prime example of what the anti-SLAPP law was designed to prohibit. It is no coincidence that Plaintiffs' Amended Complaint specifies that Helm's involvement in their alleged "conspiracy" began on the day Helm informed Hales that he planned to get Defendant Preston and Cooks' side of the story. This suit is retaliation for Helm speaking with those who disagree with Hales' narrative regarding his other lawsuits. By alleging that everyone who disagrees with him is part of a larger conspiracy to take him down, Hales is able to bog down any who disagree with him in costly litigation. Meanwhile, Hales continues to publish videos and livestreams on YouTube providing updates to his followers regarding the status and facts of his federal cases, allowing him to generate advertisement revenue off the content these cases create.[8]

Postings on Internet blogs and websites are recognized forms of protected free speech. *See Tobinick v. Novella,* 108 F. Supp. 3d 1299, 1308 (S.D. Fla. 2015); *Ingels v. Westwood One Broadcasting Services*, 129

---

[8] *See* https://www.youtube.com/@WhatTheHales/videos attached hereto as **Exhibit 10.**

Cal.App.4th 1050, 1067–68 (2005). Where a claim is lacking in merit and filed shortly after the exercise of the protected rights, retaliatory intent may be inferred. In addition, if the damages sought are extraordinarily high and unsupported by the facts, they may be intended to strike fear in the movant rather than being a good-faith estimate of the injury sustained. Thus, a court may use the timing of the filing of the lawsuit and the measure of damages sought in determining whether or not a nonmovant's suit is retaliatory and intended to chill the movant's First Amendment rights. *See Chicago Regional Council of Carpenters v. Jursich*, 986 N.E.2d 197, 203 (Ill. App. Ct. 2013).

Here, the timing of the suit, the amount of damages requested, the nonspecific allegations attempting to connect co-conspirators and the misleading presentation of Helm's statements all lead to the same conclusion: that Plaintiffs' suit is based upon conduct that is protected by Helm's First Amendment rights. As such, Plaintiffs' suit is entirely without merit in its claim against Helm.

WHEREFORE, Defendant DAVID C. HELM respectfully request this Court enter an order dismissing Plaintiffs' Amended Complaint as to all claims against him with prejudice, awarding a judgment in favor of

HELM on all Plaintiffs' claims, and awarding Defendant his attorneys' fees and costs as well as any further relief this Court deems just and appropriate.

## CERTIFICATE OF CONFERRAL

Pursuant to Local Rule 7.1(B) Plaintiff counsel and counsel for Defendant, David Helm conducted a meet and confer via teleconference on May 15, 2025 to discuss this Motion and the parties were not able to resolve the issues contained herein.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and accurate copy of the above and foregoing has been furnished via electronic mail on May 28, 2025 to:

Randall Shochet, Esq.
FBN: 959421
SHOCHET LAW GROUP
409 N. Main Street
Trenton, FL  32693
attorneys@counsel.insure
*Attorney for Plaintiff*

*/s/ Christopher Gage*

Christopher Gage, Esq.
FBN: 117727
Banker Lopez Gassler P.A.
501 E. Kennedy Blvd., Suite 1700
Tampa, FL 33602
Tele: (813) 574-8551
Fax: (813) 222-3066
Service Email:
service-cgage@bankerlopez.com
*Attorney for David C. Helms*

## CERTIFICATE OF COMPLIANCE

I HEREBY CERTIFY that this document complies with the applicable word count limit requirements of Local Rule 7.1. The word count is 6000. It has been calculated by the word-processing system and excludes the content authorized to be excluded under the rule.

*/s/ Christopher Gage*

Christopher Gage, Esq.