UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION
Case No.: 1:25-cv-00058-RH-MJF

ELEPHANT SHOE, LLC, an Ohio Limited Liability Company
d/b/a WHAT THE HALE$, and JEREMY B. HALES,

    Plaintiffs,

v.

LYNETTE MICHELLE LACY ALEXIS PRESTON
JOHN COOK, BRUCE P. MATZKIN, LISA WEEKS
a/k/a LISA LEE a/k/a LISA RAPUZZI a/k/a LISA LEE RAPUZZI
a/k/a LISA RAPUZZI WEEKS, MARLA HUGHES, DAVID C. HELM, ROBERT
J. KESZEY, DAVID MICHAEL TESCHENDORF, JOHN DOE, a/k/a/ "RAY
BONECRUSHER @raybonecrusher4516," and RICHARD LUTHMANN,

    Defendants.
_____/

**RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
FOR FAILURE TO STATE A CLAIM UNDER RULE 12(B)(6) (Doc. 53)**

**ARGUMENT**

**The Amended Complaint Adequately Alleges Hughes's Conspiracy To Commit (1) Violations Of Florida's Deceptive And Unfair Trade Practices Act, Fla. Stat. § 501.201, Et Seq. (2) False Advertising Under The Lanham Act, 15 U.S.C. § 1125(A), And (3) The Tort Of Tortious Interference With Advantageous Business Relationships. (Count 10).**

HUGHES claims that the Amended Complaint relies on vague assertions of "coordination" and "conspiracy," and that there is no actionable underlying tort alleged. (Doc. 53, at pp. 4-5). HUGHES further claims plaintiffs have not pled any

actionable conduct by Hughes with the required particularity. These claims lack merit, and the Motion to Dismiss should be denied.

Rule 8(a)(2) of the Federal Rules of Civil Procedure provides that a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).

Generally, to survive a Rule 12(b)(6) motion to dismiss and meet the requirements of Rule 8(a)(2), "'a complaint does not need detailed factual allegations,' but the allegations 'must be enough to raise a right to relief above the speculative level,'" *Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1380 (11th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). When deciding a Rule 12(b)(6) motion to dismiss, a district court must accept a plaintiff's well-pleaded factual allegations as true and must view the allegations in a complaint in the light most favorable to the plaintiff. *Newbauer v. Carnival Corp.*, 26 F.4th 931, 934 (11th Cir. 2022).

It is well established that "[c]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss[.]" *Dunn v. Castro*, 621 F.3d 1196, 1205 n.6 (quoting T*ellabs,*

*Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)); *Magulta v. Samples*, 375 F.3d 1269, 1274-75 (11th Cir. 2004) (when reviewing a motion to dismiss for failure to state a claim, courts should read the complaint in its entirety); 5 Wright & Miller, Federal Practice and Procedure § 1286 (3d ed. 2004); 5B Wright & Miller, Federal Practice and Procedure § 1357 (3d ed. 2004).

First, to state a cause of action for civil conspiracy, a plaintiff must plead "(1) an agreement between two or more parties; (2) to do an unlawful act or a lawful act by unlawful means; (3) the execution of some overt act in pursuance of the conspiracy; and (4) damage to the plaintiff as a result of said acts." *Logan v. Morgan, Lewis & Bockius LLP*, 350 So. 3d 404, 412 (Fla. 2d DCA 2022) (citations omitted). "[I]n pleading conspiracy, the plaintiff must further identify an actionable underlying tort or wrong." *Id*. This is because "[t]here is no freestanding cause of action in Florida for 'civil conspiracy.'" *Tejera v. Lincoln Lending Servs., LLC*, 271 So. 3d 97, 103 (Fla. 3d DCA 2019). Rather, "[t]he conspiracy is merely the vehicle by which the underlying tort was committed, and the allegations of conspiracy permit the plaintiff to hold each conspirator jointly liable for the actions of the coconspirators." *Id*.

Second, the existence of a conspiracy and an individual's participation in it may be inferred from circumstantial evidence. *Northwestern National Insurance Co. v. General Electric Credit Corp*., 362 So.2d 120 (Fla. 3d DCA 1978), cert. denied,

370 So.2d 459 (Fla. 1979); *See In re Chira*, 353 B.R. 693, 732 (Bankr. S.D. Fla. 2006) (citation omitted), aff'd, 378 B.R. 698 (S.D. Fla. 2007), aff'd, 567 F.3d 1307 (11th Cir. 2009) (agreement to engage in a civil conspiracy "need not be expressed in words and may be implied and understood to exist from the conduct itself").

Third, under Florida law, "[e]ach coconspirator need not act to further a conspiracy" but "need only know of the scheme and assist in it in some way to be held responsible for all of the acts of his coconspirators." *Otto Candies, LLC v. Citigroup Inc.*, 30 Fla. L. Weekly Fed. C2182 (U.S. 11th Cir. May 8, 2025) (citation omitted).

In Count 10 of the Amended Complaint, the Plaintiffs reference in detail three underlying actionable unlawful acts or lawful acts by unlawful means – (1) Violations Of Florida's Deceptive And Unfair Trade Practices Act, Fla. Stat. § 501.201, Et Seq. (2) False Advertising Under The Lanham Act, 15 U.S.C. § 1125(A), and (3) The Tort Of Tortious Interference With Advantageous Business Relationships. See ¶¶ 24-55.

The Amended Complaint demonstrates that Hughes engaged in a conspiracy with all Defendants to commit (1) Violations Of Florida's Deceptive And Unfair Trade Practices Act, Fla. Stat. § 501.201, Et Seq. (2) False Advertising Under The Lanham Act, 15 U.S.C. § 1125(A), and (3) The Tort Of Tortious Interference With Advantageous Business Relationships.

To begin, the alleged scheme is unlawful:

- Fla. Stat. § 501.204 (1) states:

    Unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.

Violations of Florida's Deceptive And Unfair Trade Practices Act can result in civil penalties, including fines and attorney's fees. In some cases, penalties can reach $10,000 per violation. Fla. Stat. § 501.2075.

- 15 U.S.C. § 1125(a) - Section 43(a) of the Lanham Act - provides a cause of action for false advertising and unfair competition.

- The Tort Of Tortious Interference With Advantageous Business Relationships is an underlying actionable tort.

Secondly, the plaintiffs suffered injuries - damages totaling over $5 million in losses.

Third, the agreement between HUGHES and Defendants is evident and can be inferred from circumstantial evidence in the Amended Complaint:[1]

---

[1] To determine whether a plaintiff has adequately alleged conspiratorial agreement, courts consider factors including (1) "[p]roof that the [defendant] committed an act which furthered the purpose of the conspiracy," *see, e.g., Koch v. Royal Wine Merchs., Ltd.*, 907 F. Supp. 2d 1332, 1347 (S.D. Fla. 2012) (citation omitted); (2) the defendant's knowledge of the conspiracy's objective, *see, e.g., In re Palm Beach Fin. Partners, L.P.*, 517 B.R. 310, 344-45 (Bankr. S.D. Fla. 2013; (3) the defendant's association with alleged co-conspirators, *see, e.g., Burger v. Hartley*, 896 F. Supp. 2d 1157, 1169-70 (S.D. Fla. 2012); and (4) the defendant's

- WEEKS agreed to launch a campaign to damage HALES, as evidenced by WEEKS' actions ¶ 215 – as outlined in ¶¶ 24-55.

- WEEKS was chosen by PRESTON to be PRESTON's "podcast" or "PR person" as part of the Anti [What The Hales] Media Ecosystem – the Malicious Conspiracy To Harm Hales. ¶ 25.

- All the other Defendants have appeared on WEEKS' online platform channel as part of WEEK's scheme between June, 2024 to date – at least once. ¶ 54.

- Since May, 2023 to date, PRESTON solicits money publicly, via Facebook, marketing, and via GoFundMe projects, receiving money from consumers, and from WEEKS, claiming she is indigent while withholding her true income (including operating a flea market shop) from federal/state governments and consumers; she further fails to declare her income from donations to her 501 (c)(3) charity. ¶ 96.

- COOK, upon believing WEEKS was giving a great deal of money to himself and to PRESTON, suggested – during a WEEKS livestream – that they all "go on a cruise" together. ¶ 109.

---

incentives to participate in the conspiracy, *see, e.g., Koch v. Koch Indus., Inc.*, 2 F. Supp. 2d 1385, 1387 (D. Kan. 1998).

- On or about November 15, 2024, HELM appeared on a WEEKS YouTube livestream and stated – regarding the false signs about Mr. Jeremy Hales (See ¶ 65) - "I saw a picture of JERM planting the signs himself." ¶ 121.

- HELM also invited MATZKIN to appear with him on HELM's YouTube channel, and MATZKIN did so in 2024, thus displaying their relationship as joint tortfeasors and co-conspirators for all the world to see. ¶ 130.

- In a 2024 YouTube livestream on WEEKS business platform - KESZEY makes false statements about HALES and Mr. HALES. ¶¶ 146-147.

- MATZKIN appeared with KESZEY with WEEKS on her YouTube channel in 2024. ¶ 147.

- TESCHENDORF has appeared online (on his and others' YouTube channels) with MATZKIN, WEEKS, KESZEY, and RAYMOND. ¶ 153.

- RAYMOND recommends viewers to watch the YouTube channels of TESCHENDORF, WEEKS, KESZEY, and LUTHMANN, and RAYMOND has appeared online (on others' YouTube channels) with TESCHENDORF, WEEKS, and KESZEY. ¶ 160.

- MATZKIN, HELM, WEEKS, PRESTON, COOK, LUTHMANN and HUGHES personally post to a "hate group" designed to damage the reputation of HALES and Mr. HALES and where comments from all Defendants are

posted in this hate group including, without limitation, links to false YouTube videos and pages about HALES and Mr. HALES. ¶¶ 165-168.

The above shows the execution of some overt act in pursuance of the conspiracy; financial incentives to participate in the conspiracy; HUGHES' degree of knowledge of the conspiracy's objective; acts committed in furtherance of the conspiracy; and close association with the Defendants.

Plaintiffs' allegations are sufficient to defeat HUGHES' Motion to Dismiss.

## CONCLUSION

For the reasons state above, the Court should deny in full HUGHES' Motion to Dismiss. Should the Court grant the motion on any ground, however, it should do so without prejudice and afford Plaintiffs an opportunity to amend to address any perceived defect. *See Thomas v. Town of Davie*, 847 F.2d 771, 773 (11th Cir. 1988).

Respectfully submitted,

SHOCHET LAW GROUP
Attorneys for Plaintiffs
409 N. Main Street
Trenton, FL 32693

By: **/s/ *Randall Shochet***
Randall ("Randy") Shochet, Esq.
FBN.: 959421
attorneys@counsel.insure

## SERVICE LIST

Cameron L. Atkinson, Esq.
Atkinson Law, LLC

Attorney For MATZKIN
1000 Lafayette Blvd., Fl. 11
Bridgeport, CT 06604
catkinson@atkinsonlawfirm.com

Lynette Michelle Lacy Alexis Preston, pro se

John Cook, pro se

Marla Hughes, pro se

Lisa Lee, pro se

Christopher Joseph Gage, Esq.
Banker Lopez Gassler PA
Attorney for HELM
501 E KENNEDY BLVD, STE 1700
TAMPA, FL 33602
service-cgage@bankerlopez.com