UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION
Case No.: 1:25-cv-00058-RH-MJF

ELEPHANT SHOE, LLC, an Ohio
Limited Liability Company d/b/a WHAT THE HALE$, and
JEREMY B. HALES,

    Plaintiffs,

v.

LYNETTE MICHELLE LACY ALEXIS PRESTON,
JOHN COOK, BRUCE P. MATZKIN,
LISA WEEKS a/k/a LISA LEE a/k/a LISA RAPUZZI a/k/a
LISA LEE RAPUZZI a/k/a LISA RAPUZZI WEEKS,
MARLA HUGHES, DAVID C. HELM, ROBERT J. KESZEY,
DAVID MICHAEL TESCHENDORF, JOHN DOE, a/k/a/ "RAY
BONECRUSHER @raybonecrusher4516," and RICHARD LUTHMANN,

    Defendants.
_____/

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT DAVID HELM'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UNDER RULE 12(b)(6) (Doc. 52)**

    Count 11 of Plaintiffs' Second Amended Complaint (sometimes referred to as "the Complaint") is against HELM only for Civil Conspiracy. It alleges that HELM conspired with other co-defendants to violate Florida's Deceptive And Unfair Trade Practices Act ("FDUPTA," Fla. Stat. § 501.201, Et Seq.), The Lanham Act, 15 U.S.C. § 1125(A), and to commit the tort of Tortious Interference with Advantageous Business Relationships in furtherance of a scheme to ruin Mr. Hales' business and reputation creating YouTube content for his popular channel, *What the Hales*.

1

HELM's Motion to Dismiss argues that Plaintiffs' lawsuit is a SLAPP suit aimed at silencing his constitutionally protected free speech on matters of *purported* public concern and requests either dismissal of the Complaint or an order of summary judgment pursuant to Florida's Anti-SLAPP statute, Section 768.295 F.S. He also asserts that the statements and conduct attributed to him in the Complaint "*do not constitute an overt act in pursuance of the conspiracy to commit the torts of violating the False Advertising of the Lanham Act, Florida's Deceptive and Unfair Trade Practices Act, or tortious interference with advantageous business relationships.*" [Motion to Dismiss, Para. 25].

The gravamen of HALES' Response in Opposition is 1) Florida's Anti-SLAPP statute does *not* apply to the facts of this case as it concerns *commercial* speech, 2) HELM performed the wrong analysis to test the legal sufficiency of a claim for civil conspiracy, which is the only count against him, and 3) Plaintiffs' claims are well-pleaded and supported by sufficient factual allegations to survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## MEMORANDUM IN OPPOSITION

### I.  IN HIS REQUEST FOR SUMMARY JUDGMENT, HELM FAILS SUBSTANTIVELY AND PROCEDURALLY

HELM couches his motion as a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) *and* as a Motion for Summary Judgment pursuant to Section 768.295(4) [See pp. 10, 28, 30]. As a request for summary judgment under

Florida's Anti-SLAPP statute (i.e., § 768.295), HELM's motion fails substantively because Florida's Anti-SLAPP statute does not apply to this case. The Complaint alleges specific and actionable claims, including civil conspiracy, tortious interference with advantageous business relationships, violations of the Florida Deceptive and Unfair Trade Practices Act (FDUTPA), and false advertising under the Lanham Act. These claims are based on defendants' intentional and unjustified actions which caused harm to HALES' business and reputation. The allegations are not aimed at suppressing Defendants' free speech, but rather at addressing *unlawful conduct*, which includes but is not limited to, actionable commercial speech.

HELM's request for summary judgment also fails procedurally even if Florida's Anti-SLAPP statute were applicable here. Section 768.295(4) F.S. does not provide an alternative summary judgment procedure to that set forth in *Fla. R. Civ. P.* 1.510. The statute simply anticipates that in cases implicating Constitutional First Amendment concerns, summary judgment motions *may* be filed early in the case, however, the statute does not create short-cuts or otherwise truncate the summary judgment process. *See Flynn v. Wilson*, 398 So. 3d 1103, 2024 Fla. App. LEXIS 9590 (Fla. 2nd DCA 2024). For purposes of summary judgment, HELM's motion is deficient. It is not supported by affidavit or any summary judgment evidence whatsoever. Moreover, it attempts to contradict Plaintiffs' factual allegations with

nothing more than conclusory assertions[1] which immediately fail in this posture because the court must accept all factual allegations in the Complaint as true and construe them in the light most favorable to the Plaintiffs. If anything, Helm's motion *exposes* the existence of genuine issues of material fact, thus rendering summary judgment wholly inappropriate.

## II. HELM'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) MUST BE DENIED AS PLAINTIFFS' CLAIMS ARE WELL-PLED AND SUPPORTED BY SUFFICIENT FACTUAL ALLEGATIONS

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Detailed factual allegations are not required, but the Rule does call for sufficient factual matters, accepted as true, to state a claim to relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. at 556. Determining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense. *Ibid.*

(continued)

---

[1] *See e.g.*, pp. 10-11 of Helm's motion.

### A. The Second Amended Complaint Adequately Alleges a Claim for Civil Conspiracy Against HELM

To plead civil conspiracy under Florida law, a plaintiff must allege: **(a)** an agreement between two or more parties, **(b)** to do an unlawful act or to do a lawful act by unlawful means, **(c)** the doing of some overt act in pursuance of the conspiracy, and **(d)** damage to plaintiff[s] as a result of the acts done under the conspiracy." *Otto Candies, LLC v. Citigroup, Inc.,* 147 F.4th 1158 (11th Cir. 2025) (citing *Raimi v. Furlong*, 702 So. 2d 1273 (Fla. 3rd DCA 1997). "[I]n pleading conspiracy, the plaintiff must further identify an actionable underlying tort or wrong." *EMI Sun Vill., Inc. v. Catledge,* 779 Fed. Appx. 627 (11th Cir. 2019). "The conspiracy is merely the vehicle by which the underlying tort was committed, and the allegations of conspiracy permit the plaintiff to hold each conspirator jointly liable for the actions of the coconspirators." *Tejera v. Lincoln Lending Servs., LLC*, 271 So. 3d 97, 103 (Fla. 3rd DCA 2019).

Plaintiffs' Second Amended Complaint identifies *three* separate underlying causes of action, each of which makes it unlawful to engage in conduct that deceives and harms consumers and/or seeks to drive someone out of business or otherwise harms their business (and reputation) through the use of false and misleading commercial speech or interference with their business relationships. Those three claims--Tortious Interference with Advantageous Business Relationships, violation of FDUPTA, Fla. Stat. § 501.201, Et Seq., and violation of The Lanham Act, 15

5

U.S.C. § 1125(A) are directly against LEE and MATZKIN *only,* while the common-law conspiracy claims set forth in Counts 6 through 13 are imposed against *all* defendants.

Count 11 for Civil Conspiracy is specifically against HELM, and the essential facts supporting the necessary allegations *for that claim* are mostly concentrated in Paragraphs 111 through 123 of the Complaint. When it comes to alleging a claim for conspiracy, Florida law is clear that each coconspirator <u>need only know of the scheme and assist in it in some way</u> to be held responsible for all the acts of his coconspirators. *In re Chira*, 353 B.R. 693 (Bankr. S.D. Fla. 2006), aff'd, 378 B.R. 698 (S.D. Fla. 2007), aff'd, 567 F.3d 1307 (11th Cir. 2009). (citing *Charles v. Fla. Foreclosure Placement Ctr., LLC,* 988 So. 2d 1157, 1160 (Fla. 3rd DCA 2008).

HELM's arguments, however, suggest that he misunderstands the analysis to be performed to test the legal sufficiency of Count 11 against him for Civil Conspiracy. By conflating the elements of the three <u>underlying</u> causes of action (which are not against him directly) with the elements of Conspiracy (which *is* against him directly), he uses incorrect legal standards to test whether his conduct is actionable. [See Doc. 52 at 14-23]. That is, instead of properly evaluating the factual allegations pertaining to him under the elements of Civil Conspiracy, he improperly evaluates them under the elements of FDUPTA, The Lanham Act, and tortious

interference. HELM's flawed analysis and flawed conclusions comprise approximately one-third of his Motion to Dismiss. [Doc. 52 at 14-23].

    **i)**     **The Complaint Sets Forth a Cause of Action for Conspiracy Against HELM In Accordance with the Controlling General Plausibility Standards of F.R.C.P. 8(A) and the General Legal Standard for Testing a Motion to Dismiss**

As Plaintiffs' underlying causes of action do not allege fraud, there is no heightened pleading standard and the general plausibility standards of Rule 8(a) F.R.C.P. control the "agreement" element of the conspiracy claim. *Otto Candies* at 74. Moreover, under F.R.C.P. 9(b), a defendant's knowledge can be alleged generally--even if the cause of action involves fraud. Finally, on a motion to dismiss, a court takes the factual allegations in the complaint as true, even if they are subject to dispute, and construes them in the light most favorable to the plaintiff. *Devengoechea v. Bolivarian Republic of Venez.*, 889 F.3d 1213 (11th Cir. 2018).

Consistent with these rules and principles, the Complaint sufficiently alleges damages in specific amounts under each count including lost profits, treble damages, and actual damages under FDUPTA. HELM's arguments as to the damages pled are misplaced as they appear to confuse pleading with proof and as such, are premature.

Between the more relaxed pleading standards for this case, combined with over 150 paragraphs of *factual* allegations in the Complaint--approximately 18 of which address HELM's specific acts, Plaintiffs' Complaint easily permits the inference that HELM and other co-defendants agreed to commit acts (including

7

engaging in impermissible commercial speech) intended to harm Plaintiffs' business and reputation in the business community, as well as, deceive consumers.

Florida courts have consistently held that conspirator need not take part in the planning, inception, or successful conclusion of a conspiracy. The conspirator need <u>only know of the scheme and assist in it in some way</u> to be held responsible for all the acts of his coconspirators. *Karnegis v. Oakes*, 296 So.2d 657 (Fla. 3d DCA 1974), *cert. denied*, 307 So.2d 450 (Fla. 1975). Although thread bare, conclusory allegations will, nonetheless, not survive dismissal, the existence of a conspiracy and an individual's participation in it may be inferred from circumstantial evidence. *Northwestern National Insurance Co. v. General Electric Credit Corp.*, 362 So.2d 120 (Fla. 3d DCA 1978), *cert. denied*, 370 So.2d 459 (Fla. 1979).

As this Court reiterated just last month, an agreement to engage in a civil conspiracy "need not be expressed in words and may be implied and understood to exist from the conduct itself." *Otto Candies, LLC v. Citigroup Inc.*, 2025 U.S. App. LEXIS 11156 (11th Cir. 2025). In *Otto Candies*, the complaint alleged, *inter alia*, a conspiracy by defendants to violate RICO. Noting that "'a bare assertion of conspiracy will not suffice' to prove a RICO conspiracy, this Court stated that plaintiffs '<u>need not offer direct evidence of a RICO agreement</u>, and the existence of conspiracy may be inferred from the conduct of the participants.'" *Id*. at 73 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) [emphasis added].

8

The plaintiffs in *Otto Candies* pleaded six factors to allege that Citigroup agreed to conspire with OSA to engage in a pattern of racketeering activity: (1) Citigroup and OSA's "business relationship"; (2) their mutual financial gain from the racketeering activity; (3) their joint fraudulent misrepresentations and omissions; (4) their dependency on each other's fraudulent conduct to prolong the scheme; (5) Citigroup's then-CEO's "admission" that certain employees were "criminally involved" in the scheme; and (6) Mexican regulators' conclusion that Citigroup employees or agents "knowingly engaged in a fraudulent scheme with OSA." Reversing the district court's order of dismissal, this Court stated that plaintiffs pleaded *ample* circumstantial evidence to support their allegations that Citigroup plausibly agreed to the conspiracy. *Id.* at 75.

Although "ample" circumstantial evidence is not required here, Plaintiffs have alleged sufficient facts to demonstrate that HELM and the other defendants knew of a scheme to destroy or "take down" Plaintiffs' business and ability to earn income on YouTube, while they deceived consumers into donating money in order to assist PRESTON, but the money is instead being pocketed by another co-defendant in this case and does not reach PRESTON. The Complaint also alleges sufficient facts demonstrating that HELM assisted in the scheme in some way.

Specifically, the allegations regarding HELM, along with necessary context, are summarized and cited as follows:

**Paragraphs 56 through 97** of the Complaint elaborately details the history of how Mr. Hales came to know PRESTON in or about 2020, her relocation with her child and her ex-husband, John Cook, from North Port to a vacant lot across the street from Mr. Hales, as well as the deterioration of their neighborly relationship, which devolved into court battles between them in Florida State Court and Ohio State Court after PRESTON made and posted a number of yard signs accusing Mr. Hales of "raping" PRESTON'S then four-year-old daughter and precipitated in Mr. Hales obtaining a stalking injunction against PRESTON in an Ohio Court and PRESTON retaliating by seeking (and temporarily obtaining) a cyberstalking injunction against Mr. Hales in Levy County, Florida. Mr. Hales vlogged about his court cases with PRESTON on his channel, as well as appeared on the YouTube channels of legal content creators, often referred to as "Law-Tubers."  HELM is considered a Law-Tuber.

**Paragraphs 98 through 110** allege facts regarding defendant John Cook's relationship to PRESTON, his involvement in the scheme to "finish the job on Jeremy" [para. 104], along with statements and acts he did in furtherance of the scheme.

**Paragraphs 111-123** allege facts concerning defendant HELM, a YouTube content creator and competitor of Mr. Hales and his channel. HELM, as a Law-Tuber, was familiar with the controversy between Mr. Hales and PRESTON. HELM extended invitations for Mr. Hales to appear on his channel, including to play Legos, which HELM enjoyed but Mr. Hales declined to comply. Subsequently, HELM saw a photo posted of Mr. Hales playing Legos with another Law-Tuber on his channel and became piqued.

**Paragraph 115** alleges that HELM then solicited PRESTON and Cook and joined forces with them, offering his legal assistance to help 'take down' Mr. Hales—which he did as shown in the next paragraph.

10

**Paragraph 116** alleges that HELM connected PRESTON with defendant MATZKIN, an out-of-state attorney who undertook legal representation of PRESTON against Mr. Hales in the still-pending 2024 federal case (1:24CV45/ZCB). [*This Court is well aware of attorney Matzkin's conduct in the 2024 case which resulted in a yet-unfiled order imposing sanctions against him for repeated litigation misconduct and unprofessional behavior.*]

**Paragraphs 117-121** allege that HELM hosted Matzkin on his own channel where they continued to say disparaging things about Mr. Hales' as if they were fact. Additionally, HELM appeared on defendant LEE's YouTube channel in late 2024 to discuss the yard signs PRESTON made and posted around Otter Creek calling Mr. Hales a "rapist" and which stated he "raped" PRESTON's four-year-old special-needs daughter. During that broadcast, HELM stated, "I saw a picture of JERM planting the signs himself." [That statement echoes the defense that PRESTON was persuaded to adopt in which she turned the table on Mr. Hales and accused him of creating and posting those awful signs].

**Paragraphs 165-169** allege that in November 2023, a new "What The Hales" Facebook page was established which purported to be a fan page but turned out to be a Hales hate group. It is alleged that HELM and other defendants post to this haters page and that such posts continue to further the **Anti What The Hales Media Ecosystem** [a term coined by defendant Matzkin].

## CONCLUSION

Plaintiffs respectfully request that the Court deny Defendant Helm's Motion to Dismiss Plaintiffs' [Second] Amended Complaint. Defendant's motion mischaracterizes the nature of Plaintiffs' claims, fails to demonstrate that the lawsuit

is a Strategic Lawsuit Against Public Participation (SLAPP) under Section 768.295 *Fla. Stat*., and employs a legally incorrect analysis to test the sufficiency of the claim for Conspiracy against HELM. Plaintiffs' claims are well-pleaded and supported by sufficient factual allegations to survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. That said, should the Court grant HELM's motion, it should do so without prejudice to afford Plaintiffs an opportunity to amend to address any perceived defect. *See Thomas v. Town of Davie,* 847 F.2d 771, 773 (11th Cir. 1988).

Respectfully submitted,

SHOCHET LAW GROUP
Attorneys for Plaintiffs
409 N. Main Street Trenton, FL 32693
By**: */s/ Randall Shochet***
Randall ("Randy") Shochet, Esq.
FBN.: 959421
attorneys@counsel.insure

## **CERTIFICATE OF COMPLIANCE**

I HEREBY CERTIFY that this document complies with the applicable word count limit requirement of Local Rule 7.1. The word count is less than 3000 words. It has been calculated by the word-processing system and excludes the content authorized to be excluded under the Rule.

## **SERVICE LIST**

Cameron L. Atkinson, Esq.
Atkinson Law, LLC
Attorney For MATZKIN
1000 Lafayette Blvd., Fl. 11
Bridgeport, CT 06604
catkinson@atkinsonlawfirm.com

Christopher Joseph Gage, Esq.
Banker Lopez Gassler PA
Attorney for HELM
501 E KENNEDY BLVD, STE 1700
TAMPA, FL 33602
service-cgage@bankerlopez.com

Lynette Michelle Lacy Alexis Preston, pro se

John Cook, pro se

Marla Hughes, pro se

Lisa Lee, pro se