UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

Case No.: 1:25-cv-00058-RH-MJF

ELEPHANT SHOE, LLC, an Ohio Limited Liability Company
d/b/a WHAT THE HALE$,
and
JEREMY B. HALES,

    Plaintiffs,
v.

LYNETTE MICHELLE LACY ALEXIS PRESTON,
JOHN COOK, BRUCE P. MATZKIN, LISA LEE,
MARLA HUGHES, DAVID C. HELM, ROBERT J. KESZEY,
DAVID MICHAEL TESCHENDORF, RAYMOND G. BONEBRAKE, JR.
and RICHARD LUTHMANN,

    Defendants.
_____/

### PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT LEE'S MOTION TO DISMISS (Doc. 79)

Plaintiffs, Jeremy Bryan Hales and Elephant Shoe, LLC, respectfully submit this Response in Opposition to Defendant LISA LEE (hereinafter, "LEE")'s Motion to Dismiss the Second Amended Complaint.

LEE's Motion is predicated on mischaracterizations of the Complaint and misapplications of legal standards. Contrary to LEE's assertions, the Complaint does not include any counts for defamation, rendering arguments related to defamation inapplicable. LEE argues that the Complaint fails to state a claim for defamation, among other claims. LEE asserts that the Complaint lacks standing under Florida's

Deceptive and Unfair Trade Practices Act (FDUTPA) and fails to state a claim under the Lanham Act. LEE contends that the Complaint does not sufficiently allege tortious interference with business relationships or civil conspiracy. LEE argues that the Complaint contains conclusory allegations and lacks factual specificity. LEE claims that the Plaintiffs failed to comply with Florida's pre-suit notice requirements for defamation claims under Fla. Stat. 770.01. LEE asserts that the statements attributed to her are non-actionable opinions or rhetorical hyperbole protected under the First Amendment.

The Complaint sufficiently pleads claims under the Florida Deceptive and Unfair Trade Practices Act (FDUTPA), the Lanham Act, tortious interference with business relationships, and civil conspiracy. Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Detailed factual allegations are not required, but the Rule does call for sufficient factual matters, accepted as true, to state a claim to relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. at 556. Determining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense. *Ibid*.

LEE's Motion should be denied in its entirety.

## MEMORANDUM

### I. The Complaint Does Not Include Any Counts for Defamation

LEE devotes significant attention to arguing that the Complaint fails to state a claim for defamation and that Plaintiffs failed to comply with Florida's pre-suit notice requirements under Fla. Stat. § 770.01. However, the Complaint does not assert any claims for defamation. LEE's arguments on this issue are therefore irrelevant and should be disregarded.

### II. The Complaint States a Claim Under FDUTPA

To state an FDUTPA claim, Dolphin must allege (1) a deceptive act or unfair trade practice; (2) causation; and (3) actual damages. *Hill v. Hoover Co.*, 899 F. Supp. 2d 1259, 1264 (N.D. Fla. 2012). A deceptive act involves a representation, omission, or practice that is likely to mislead a consumer acting reasonably under the circumstances, to the consumer's detriment. *Id.* An unfair practice, on the other hand, is one that offends established public policy and is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. *Ibid.*

LEE argues that Plaintiffs lack standing under FDUTPA because they are not aggrieved consumers. This argument misinterprets the statute. FDUTPA allows claims by entities harmed by unfair or deceptive practices in trade or commerce, even if they are not direct consumers. *Cf. S. Broward Hosp. Dist. v. ELAP Servs.,*

*LLC*, No. 20-cv-61007-SINGHAL, 2020 U.S. Dist. LEXIS 226859, at *14-15 (S.D. Fla. Dec. 3, 2020) ("In construing its state's statute, Florida's district courts have held that "an entity does not have to be a consumer in order to have standing to bring a FDUTPA claim." *Caribbean Cruise Line, Inc. v. Better Bus. Bureau of Palm Beach Cty., Inc.*, 169 So. 3d 164, 169 (Fla. 4th DCA 2015); *see also Bailey v. St. Louis*, 196 So. 3d 375, 382-83 (Fla. 2d DCA 2016). Because the District has alleged that Defendants' unfair and deceptive practices "were likely to cause consumer harm," its FDUTPA claim can proceed. *See CEMEX Constr. Materials Fla., LLC v. Armstrong World Indus., Inc.*, 2018 U.S. Dist. LEXIS 24920, 2018 WL 905752, at *15 (S.D. Fla. Feb. 15, 2018); *see also CWELT-2008 Series 1045 LLC v. PHH Corp.*, 2020 U.S. Dist. LEXIS 91899, 2020 WL 2744191, at *4-5 (S.D. Fla. May 27, 2020) (allowing non-consumer standing because "Florida state courts have ruled uniformly that non-consumers can bring FDUTPA actions").

Moreover, "[w]hen competitor businesses, rather than consumers, press a FDUTPA claim, "lost profits, lost revenue, reputation harm, and other damages commonly observed in business torts claims" constitute actual damages." *Trasco Wellness, Ltd. Liab. Co. v. Tampa Bay Spine & Sports Med., Ltd. Liab. Co.*, No. 8:23-cv-02536-WFJ-UAM, 2024 U.S. Dist. LEXIS 61892, at *8-9 (M.D. Fla. Apr. 4, 2024) (citations omitted).

Between the more relaxed pleading standards for this case, combined with over 150 paragraphs of *factual* allegations in the Complaint—including, without limitation, paragraphs 1 through 6, paragraphs 18 through 54, and paragraphs 165 through 172 which address LEE's specific acts, Plaintiffs' Complaint alleges that LEE - as Plaintiffs' competitor - engaged in deceptive practices, including (1) soliciting "donations" under false pretenses from consumers *which caused harm to consumers* and (2) making false statements about Plaintiffs' business *which caused harm to Plaintiffs' reputation and business relationships*.

These allegations are sufficient to state a claim under FDUTPA.

### III.   The Complaint States a Claim Under the Lanham Act

> To state a claim for false advertising under the federal Lanham Act, 15 U.S.C. § 1125(a), the party must allege: (1) the advertisements of the opposing party are false or misleading as to the party's own product of another's; (2) the advertisements actually deceived customers or had the tendency to deceive a substantial portion of the targeted audience; (3) the deception is material, meaning it is likely to influence purchasing decisions; (4) the defendant's advertised products traveled in interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false or misleading advertisements by casually related declining sales or loss of goodwill.

*Third Party Verification, Inc. v. Signaturelink, Inc.*, 492 F. Supp. 2d 1314, 1324 (M.D. Fla. 2007). LEE contends that the Complaint fails to allege false advertising under the Lanham Act because the statements attributed to LEE do not constitute commercial advertising or promotion. This argument is unavailing.

Under U.S. Federal law, the Lanham Act defines "commercial advertising or promotion" as representations made in connection with goods or services that misrepresent their nature, characteristics, qualities, or geographic origin. While the Act itself does not define "advertising" or "promotion," the 11th Circuit (1) requires that the representation must meet the criteria of being commercial speech, made by a competitor, intended to influence consumers, and sufficiently disseminated to the relevant purchasing public, and (2) emphasized that the representations need not be part of a traditional advertising campaign but may include informal types of promotion, provided they are sufficiently disseminated. *Edward Lewis Tobinick, MD v. Novella*, 848 F.3d 935, 950 (11th Cir. 2017). "To be actionable under the Lanham Act, the speech at issue must be commercial in nature." *Futuristic Fences, Inc. v. Illusion Fence, Corp.*, 558 F. Supp. 2d 1270, 1279 (S.D. Fla. 2008). "[C]ommercial speech encompasses not merely direct invitations to trade, but also communications designed to advance business interests . . . ." *Kleiner v. First Nat'l Bank*, 751 F.2d 1193, 1204 n. 22 (11th Cir. 1985).

> In order for representations to constitute "commercial advertising or promotion" under Section 43(a)(1)(B), they must be: (1) commercial speech; (2) by a defendant who is in commercial competition with plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services. While the representations need not be made in a "classical advertising campaign," but may consist instead of more informal types of "promotion," the representations (4) must be disseminated sufficiently to

> the relevant purchasing public to constitute "advertising" or "promotion" within that industry.

*Alphamed Pharm. Corp. v. Arriva Pharm., Inc.*, 391 F. Supp. 2d 1148, 1164 (S.D. Fla. 2005).

In *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014), the Court set forth a two-part test for determining whether a plaintiff can sue under the Lanham Act: (1) the "zone-of-interest test" and (2) the "proximate cause requirement." *Id*. at 134.

### The "Zone of Interest Test"

"[T]o come within the zone of interests in a suit for false advertising under § 1125(a), a plaintiff must allege an injury to a commercial interest in reputation or sales." *Id.* at 132.

### The "Proximate Cause Requirement"

The "proximate-cause requirement" for statutory standing "generally bars suits for alleged harm that is 'too remote' from the defendant's unlawful conduct." *Id.* at 133. To satisfy this requirement, "a plaintiff suing under § 1125(a) ordinarily must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; and that occurs when deception of consumers causes them to withhold trade from the plaintiff." *Id.* at 134. "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss [the Court] presume[s] that general allegations embrace those

specific facts that are necessary to support the claim." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (citations omitted).

This means that when applying these principles combined with over 150 paragraphs of *factual* allegations in the Complaint—including, without limitation, paragraphs 1 through 6, paragraphs 18 through 54, and paragraphs 165 through 172 which address LEE's specific acts, Plaintiffs' Complaint states a *prima facie* claim for false advertising under the Lanham Act. It alleges that LEE is an interstate commercial competitor who made false and misleading statements about Plaintiffs business in a commercial context, including on social media platforms where LEE solicits "donations," and promotes her own business sales. These allegations satisfy the elements of a false advertising claim under the Lanham Act.

**IV. The Complaint States a Claim for Tortious Interference with Business Relationships**.

LEE argues that the Complaint fails to identify specific business relationships or allege intentional interference. In *Reed Hein & Associates*, 2018 U.S. Dist. LEXIS 182132, 2018 WL 5279156, the court held that the complaint need not "identify specific contracts with which [the defendants] allegedly interfered" to state a plausible tortious interference claim. 2018 U.S. Dist. LEXIS 182132, [WL] at *4. (citing *Twombly*, 550 U.S. at 544). Contrary to LEE's assertion, there is no requirement at the pleading stage for a complaint to identify the specific contracts and specific timeshare owners at issue. *See, e.g., Drenberg v.*

*FocusA (3)27 On Sur., LLC*, 2013 WL 6768667, *3 (M.D. Fla. Dec. 20, 2013) (agreeing that while claimant "will ultimately have to prove interference with specifically named entities, . . . at the pleading stage their allegations concerning [interference] with ultimately identifiable customers . . . are sufficient," and collecting cases to similar effect); *Arthrex, Inc. v. W. Coast Med. Res., 5 LLC*, 2015 WL 12844946, at *7 (M.D. Fla. Nov. 25, 2015) ("[Plaintiffs have] adequately alleged facts that plausibly give rise to the 'existence' of an enforceable agreement, and that is all that is required."). Florida law requires only that an "identifiable" contractual relationship be alleged. *Ferguson Transp. v. N. Am. Van Lines*, 687 So. 2d 821, 822 (Fla. 1996). The Complaint does that and demonstrates that LEE's argument ignores the detailed allegations in the Complaint, which identify Plaintiffs' business relationships with customers, vendors, and platforms (such as YouTube and Whatnot, Inc.). Between the more relaxed pleading standards for this case, combined with over 150 paragraphs of *factual* allegations in the Complaint—including, without limitation, paragraphs 1 through 6, paragraphs 18 through 54, and paragraphs 165 through 172 which address LEE's specific acts, Plaintiffs' Complaint further alleges that LEE intentionally interfered with these relationships by making false statements and engaging in a coordinated campaign to harm Plaintiffs' business. These allegations are sufficient to state a claim for tortious interference.

**V.     The Complaint States a Claim for Civil Conspiracy**

The elements for civil conspiracy require (1) an agreement between two or more parties; (2) to do an unlawful act or to do a lawful act by unlawful means; (3) performance of an overt act in pursuit of the conspiracy; and (4) damage to the plaintiff because of the conspiratorial acts. *See Phillip Morris USA, Inc. v. Russo*, 175 So. 3d 681, 686 n.9 (Fla. 2015). It is not required that each co-conspirator commit an act to further the conspiracy; "rather, it is sufficient that each conspirator knows about the scheme and aids in some way." *Wyndham Vacation Ownership, Inc. v. Montgomery Law Firm, LLC*, 2019 U.S. Dist. LEXIS 186503, 2019 WL 5394186, at *4 (M.D. Fla. Aug. 8, 2019) (citing *MP, LLC v. Sterling Holding, LLC,* 231 So. 3d 517, 522 (Fla. 3d DCA 2017)).

As Plaintiffs' underlying causes of action do not allege fraud, there is no heightened pleading standard and the general plausibility standards of Rule 8(a) F.R.C.P. control the "agreement" element of the conspiracy claim. *Otto Candies* at 74. Moreover, under F.R.C.P. 9(b), a defendant's knowledge can be alleged generally--even if the cause of action involves fraud. Finally, on a motion to dismiss, a court takes the factual allegations in the complaint as true, even if they are subject to dispute, and construes them in the light most favorable to the plaintiff. *Devengoechea v. Bolivarian Republic of Venez.*, 889 F.3d 1213 (11th Cir. 2018).

Consistent with these rules and principles, the Complaint sufficiently alleges damages in specific amounts under each count including lost profits, treble damages, and actual damages under FDUPTA. LEE's arguments as to the damages pled are misplaced as they appear to confuse pleading with proof and as such, are premature.

Between the more relaxed pleading standards for this case, combined with over 150 paragraphs of *factual* allegations in the Complaint—including, without limitation, paragraphs 1 through 6, paragraphs 18 through 54, and paragraphs 165 through 172 which address LEE's specific acts, Plaintiffs' Complaint easily permits the inference that LEE and other co-defendants agreed to commit acts (including engaging in impermissible commercial speech) intended to harm Plaintiffs' business and reputation in the business community, as well as, deceive consumers.

Florida courts have consistently held that conspirator need not take part in the planning, inception, or successful conclusion of a conspiracy. The conspirator need only know of the scheme and assist in it in some way to be held responsible for all the acts of his coconspirators. *Karnegis v. Oakes*, 296 So.2d 657 (Fla. 3d DCA 1974), *cert. denied*, 307 So.2d 450 (Fla. 1975). Although thread bare, conclusory allegations will, nonetheless, not survive dismissal, the existence of a conspiracy and an individual's participation in it may be inferred from circumstantial evidence. *Northwestern National Insurance Co. v. General Electric Credit Corp.*, 362 So.2d 120 (Fla. 3d DCA 1978), *cert. denied*, 370 So.2d 459 (Fla. 1979).

As this Court reiterated just last month, an agreement to engage in a civil conspiracy "need not be expressed in words and may be implied and understood to exist from the conduct itself." *Otto Candies*, *LLC v. Citigroup Inc.*, 2025 U.S. App. LEXIS 11156 (11th Cir. 2025). In *Otto Candies*, the complaint alleged, *inter alia*, a conspiracy by defendants to violate RICO. Noting that "'a bare assertion of conspiracy will not suffice' to prove a RICO conspiracy, this Court stated that plaintiffs '<u>need not offer direct evidence of a RICO agreement</u>, and the existence of conspiracy may be inferred from the conduct of the participants.'" *Id*. at 73 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) [emphasis added].

The plaintiffs in *Otto Candies* pleaded six factors to allege that Citigroup agreed to conspire with OSA to engage in a pattern of racketeering activity: (1) Citigroup and OSA's "business relationship"; (2) their mutual financial gain from the racketeering activity; (3) their joint fraudulent misrepresentations and omissions; (4) their dependency on each other's fraudulent conduct to prolong the scheme; (5) Citigroup's then-CEO's "admission" that certain employees were "criminally involved" in the scheme; and (6) Mexican regulators' conclusion that Citigroup employees or agents "knowingly engaged in a fraudulent scheme with OSA." Reversing the district court's order of dismissal, this Court stated that plaintiffs pleaded *ample* circumstantial evidence to support their allegations that Citigroup plausibly agreed to the conspiracy. *Id.* at 75.

Although "ample" circumstantial evidence is not required here, Plaintiffs have alleged sufficient facts to demonstrate that LEE and the other defendants knew of a scheme to destroy or "take down" Plaintiffs' business and ability to earn income on YouTube, while they deceived consumers into "donating money" in order to assist PRESTON, but the money is instead being pocketed by LEE in this case and does not reach PRESTON. The Complaint also alleges sufficient facts demonstrating that LEE assisted in the scheme in some way. Specifically, the allegations regarding LEE, along with necessary context, are summarized and cited in paragraphs 1 through 6, paragraphs 18 through 54, and paragraphs 165 through 172 of the Complaint.

LEE asserts that the civil conspiracy claim fails because it is not based on an actionable underlying tort. This argument is incorrect. As shown *supra*, the Complaint alleges underlying torts, including violations of FDUTPA, false advertising under the Lanham Act, and tortious interference with business relationships. These claims are adequately pled, and the civil conspiracy claim is therefore viable.

## VI. LEE's Arguments Regarding Protected Speech Are Misplaced

LEE argues that the statements attributed to her are non-actionable opinions or rhetorical hyperbole protected under the First Amendment. However, the Complaint alleges that LEE made false statements of fact about Plaintiffs' business

practices and reputation. These statements are not protected speech because they are actionable, as shown *supra*, under FDUTPA, the Lanham Act, and tortious interference law.

**VII.   The Complaint Contains Sufficient Factual Specificity**

LEE contends that the Complaint contains conclusory allegations and lacks factual specificity. This argument is without merit. As discussed *supra*, the Complaint provides detailed allegations, including specific statements made by LEE, the context in which they were made, and the harm caused to Plaintiffs. Between the more relaxed pleading standards for this case, combined with over 150 paragraphs of *factual* allegations in the Complaint—including, without limitation, paragraphs 1 through 6, paragraphs 18 through 54, and paragraphs 165 through 172 which address LEE's specific acts, Plaintiffs' allegations satisfy the pleading standards under Federal Rule of Civil Procedure 8(a).

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court deny LEE's Motion to Dismiss in its entirety. Should the Court grant LEE's motion, it should do so without prejudice to afford Plaintiffs an opportunity to amend to address any perceived defect. *See Thomas v. Town of Davie,* 847 F.2d 771, 773 (11th Cir. 1988).

Respectfully submitted,

SHOCHET LAW GROUP
Attorneys for Plaintiffs
409 N. Main Street
Trenton, FL 32693

By*: /s/ Randall Shochet*
Randall ("Randy") Shochet, Esq.
FBN.: 959421
attorneys@counsel.insure

**CERTIFICATE OF COMPLIANCE**

I HEREBY CERTIFY that this document complies with the applicable word count limit requirement of Local Rule 7.1. The word count is less than 3500 words. It has been calculated by the word-processing system and excludes the content authorized to be excluded under the Rule.

**SERVICE LIST**

Cameron L. Atkinson, Esq.
Atkinson Law, LLC
Attorney For MATZKIN
1000 Lafayette Blvd., Fl. 11
Bridgeport, CT 06604
catkinson@atkinsonlawfirm.com

Christopher Joseph Gage, Esq.
Banker Lopez Gassler PA
Attorney for HELM
501 E KENNEDY BLVD, STE 1700
TAMPA, FL 33602
service-cgage@bankerlopez.com

Lynette Michelle Lacy Alexis Preston, pro se

John Cook, pro se

Marla Hughes, pro se

Lisa Lee, pro se