UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION
Case No.: 1:25-cv-00058-RH-MJF

ELEPHANT SHOE, LLC, an Ohio
Limited Liability Company d/b/a WHAT THE HALE$, and
JEREMY B. HALES,

      Plaintiffs,

v.

LYNETTE MICHELLE LACY ALEXIS PRESTON,
JOHN COOK, BRUCE P. MATZKIN, LISA LEE,
MARLA HUGHES, DAVID C. HELM, ROBERT J. KESZEY,
DAVID MICHAEL TESCHENDORF, RAYMOND G. BONEBRAKE, JR., and
RICHARD LUTHMANN,

      Defendants.

_____/

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT MATZKIN'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UNDER RULE 12(b)(6) (Doc. 55)

Counts 5 and 7 of Plaintiffs' Second Amended Complaint (sometimes referred to as "the Complaint") are against Defendant MATZKIN for Tortious Interference with Advantageous Business Relationships and Civil Conspiracy, which alleges that MATZKIN conspired with other co-defendants to violate Florida's Deceptive And Unfair Trade Practices Act ("FDUPTA," Fla. Stat. § 501.201, Et Seq.), The Lanham Act, 15 U.S.C. § 1125(A), and to commit the tort of Tortious Interference with Advantageous Business Relationships in furtherance of a scheme to ruin Mr. Hales' business creating YouTube content for his popular channel, *What the Hales*.

1

### PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT MATZKIN'S MOTION TO DISMISS

**I.  MATZKIN'S 12(B)(6) MOTION TO DISMISS FAILS AS AN ATTEMPT AT SUMMARY JUDGMENT AND THE DOCUMENTS HE ATTACHED TO HIS MOTION ARE INAPPROPRIATE FOR CONSIDERATION BY THIS COURT**

MATZKIN's attempt to use Rule 12(d) F.R.C.P. to have this Court treat his 12(b)(6) Motion to Dismiss as a Motion for Summary Judgment is both misleading and improper. Rule 12(d) states:

> Result of Presenting Matters Outside the Pleadings. If, on a motion under Rule 12(b)(6) or 12(c) , matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. **All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.**  [Emphasis added].

MATZKIN not only fails to cite the last sentence of the rule, likely in an effort to bypass discovery and obtain premature judgment on a multi-count, fact-intensive complaint, but he also fails to mention that of the two items he presented to the court outside of the pleadings, one is his own self-serving sworn declaration. Declarations and affidavits, however, are not allowed as pleading exhibits unless they form the basis of the complaint. *United States v. Ritchie*, 342 F.3d 903 (9th Cir. 2003). See also 2 *Moore et al., supra,* at § 10.05[2](affidavits are typically not allowed as pleading exhibits). MATZKIN's affidavit attached to his 12(b)(6) motion did not -- and could not -- have formed the basis for Plaintiffs' Complaint.

MATZKIN's affidavit also contains assertions that *raise* issues of material fact rather than dispel them, thus, rendering summary judgment wholly inappropriate. For example,  Paragraph 5 of MATZKIN's Declaration states, "Prior to being retained for these matters, I had no involvement *with Ms. Preston's matters to the best of my recollection*." (emphasis added)]. However, Paragraph 126 of the Complaint recites a letter written by MATZKIN on March 11, 2024 (two weeks before he was purportedly "retained" by Preston) that he sent to several YouTube/Law Tube hosts seeking to promote himself as a legal commentator on the Hales/Preston conflict stating, "*I've been catching up on the What the Hales saga. As a 27-year lawyer, I have some thoughts if you're interested. I also have some questions that I'd love to ask, if you're willing, to understand the origins of the Hales/Lynette war."* The Complaint alleges that MATZKIN clearly was *involved in Preston's matters*--even if not directly involved with Preston herself--prior to becoming her legal consultant. As the allegations in Plaintiffs' Complaint are to be taken as true at this early pleading stage, MATZKIN's Declaration does nothing more than create issues of disputed fact, thus making his request for summary judgment inappropriate.

He notes, alternatively, that a court may consider documents outside the pleadings without converting the 12(b)(6) motion into a motion for summary judgment if 1) they are incorporated by reference in the complaint, i.e., if the plaintiff

refers extensively to the document or the document forms the basis of the plaintiff's claim and 2) the authenticity of the document is unchallenged. [See p. 4, MTD]. Under such circumstances, the defendant may offer such a document, and the district court may treat such document as part of the complaint, and thus, may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6). *Ritchie* at 908. Like the Hieronymous Declaration in *Ritchie,* MATZKIN's Declaration must likewise *not* be considered by the Court. It was not referenced in Plaintiffs' Complaint, nor could it have been, and it did not form the basis of the Complaint. *Cf. Rudd v. City of Norton Shores*, 2018 U.S. Dist. LEXIS 133746, at *11 (W.D. Mich. Aug. 8, 2018) ("In general, when considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court may not consider matters outside the pleadings. Fed. R. Civ. P. 12(b)(6). This means that "affidavits attached to briefs may not properly be considered at the motion to dismiss stage."(citations omitted)).

With regard to MATZKIN's Exhibit "A," with the exception of the 9:25 a.m. email sent by MATZKIN on February 17, 2025, which is directed to "Mr. Shochet," but, in reality, is directly addressing Mr. Kam of Whatnot, Inc. (most of which is recited in Paragraph 131 of the Complaint), none of the other emails in Exhibit "A" are referenced in the Complaint, let alone form the basis of it, and all of them have authenticity problems. Each email contains "[Quoted text hidden]," sometimes more than once. That there is *quoted, hidden text* certainly belies Paragraph 8 of

MATZKIN's sworn Declaration stating Exhibit "A" contains "*a true and accurate copy of the full email exchange*." That said, as a matter of law, MATZKIN's attachments should not be considered by the Court as part of his motion to dismiss.

As a matter of discretion, however, such consideration by the Court does not help MATZKIN's argument or his case because attachments backfire on him. They clearly *bolster* Plaintiffs' claims against MATZKIN for tortious interference and conspiracy by offering even more facial plausibility through additional factual content *comprised of MATZKIN's own words* which allows the court to draw the reasonable inference that the defendant is indeed liable for the misconduct alleged."

## II. PLAINTIFFS' CLAIM AGAINST MATZKIN FOR TORTIOUS INTERFERENCE IS WELL-PLED AND SUPPORTED BY SUFFICIENT FACTUAL ALLEGATIONS

Under Florida law, the four essential elements of a claim for tortious interference with a business relationship are as follows: (1) the existence of a business relationship, not necessarily evidenced by an enforceable contract; (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damages to the plaintiff as a result of the breach of the relationship. *Techtron Corp. v. Piret*, 2005 U.S. Dist. LEXIS 62358 (M.D. Fla. 2005). When it comes to pleading, Rule 8(a)(2) F.R.C.P. requires only a "short and plain statement showing the pleader is entitled to relief." The Rule, nonetheless, requires that sufficient facts be set forth to state a claim to

relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007). A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* On a motion to dismiss, a court takes the factual allegations in the complaint as true, even if they are subject to dispute, and construes them in the light most favorable to the plaintiff. *Devengoechea v. Bolivarian Republic of Venez.*, 889 F.3d 1213 (11th Cir. 2018).

### a. Plaintiffs Alleged Sufficient Facts to Show Business Relationships with Present and Prospective Customers Under Florida Law

A plaintiff may properly bring a cause of action alleging tortious interference with present or prospective customers. *Ethan Allen, Inc. v. Georgetown Manor, Inc.,* 647 So.2d 812 (Fla. 1994). Although MATZKIN cites *Ethan Allen* for that very proposition, his argument, inexplicably, focuses only on "prospective" customers, abandoning all discussion of "present" customers entirely. For prospective customers, the law requires that plaintiffs allege "*a business relationship evidenced by an actual and identifiable understanding or agreement which in all probability would have been completed if the defendant had not interfered." Id*. at 815. Arbitrarily tying his argument to one category of defined customer, however, simply leads MATZKIN to reach erroneous conclusions, not inescapable ones.

At this early pleading stage, it is sufficient for a plaintiff to merely identify a *specific group* of business relationships rather than to provide specific names of

6

individuals or companies. *Techtron,* 2005 U.S. Dist. LEXIS 62358, *at* 17. That standard is also consistent with the sister-claim of tortious interference *with contract*, which does not require a plaintiff to identify specific contracts at the pleading stage to survive a motion to dismiss. *Hilton Resorts Corp. v. Sussman*, 2019 U.S. Dist. LEXIS 108295 (M.D. Fla. 2019).[1]

In this case, the Complaint alleges that Plaintiffs have present <u>existing</u> business relationships with YouTube, YouTube Partner Program, members and subscribers to the *What The Hales* channel, TikTok, Facebook, and Whatnot, Inc. and they derive revenue and income as a result of these advantageous business relationships. (Doc 76, para. 1-6, 23-30;13; 166; 205). Plaintiffs have thus actually alleged more information than required under Florida precedent.

Plaintiffs further allege that Matzkin had knowledge of Plaintiffs' business relationships, such as with YouTube, Whatnot, Inc., Facebook, not to mention the 736,000 subscribers to the What The Hales channel and that he intentionally and without justification, interfered with them. [ Doc 76, para. 206-207]. In accordance with *Techtron* and *Hilton Resorts, supra*, Plaintiffs have sufficiently pled the first two elements of tortious interference. The Motion to Dismiss reveals that MATZKIN

---

[1] Florida law does not recognize a cause of action for tortious interference with *past* customers or the *community at large*, nor does Complaint make such allegations. *Id.* (citing *Ethan Allen, Inc. v. Georgetown Manner, Inc*., 647 So. 2d 812 (Fla. 1994).

cherry-picks legal standards which him lead to fallacious and myopic legal conclusions and "flies in the face of the plausibility standard applicable to motions to dismiss." *Hilton Resorts Corp v. Sussman, supra* at 8; *See also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) ("A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

Similarly, a plaintiff is not required to enumerate the specific damages it suffered in its complaint for tortious interference, and even if at the pleading stage the damages "seem speculative, prospective, or anticipated," such is not a basis for a court to dismiss the claim under Rule 12(b)(6). *SIG Sauer, Inc. v. D&M Holding Co., LLC*, 2022 U.S. Dist. LEXIS 26515 (M.D. Fla. 2022). Contrary to MATZKIN's assertion, it is simply *not* a basis for dismissal for Plaintiffs to fail to identify what "revenue streams they lost" [Doc. 55 at 11] at this pleading stage, nor do they have to identify the specific customers who were the subject of the alleged interference because identification of a group or category will suffice. *See Hilton Resorts, supra, Sig Sauer, supra.*

Damages to a plaintiff's reputation and good will are recoverable for tortious interference. *Id.* In *Sig Sauer*, for example, the Court recognized that determining damages from loss of confidential information is complex and requires discovery. So, too, does identification of specific revenue streams generated from multiple

social media platforms, in addition to more traditional sources of revenue, such as rental income. Plaintiffs have pled, *inter alia*, injury to reputation and good will, as well as lost profits. As the Court is required to take the allegations in the Complaint as true and construe them in the light most favorable to Plaintiffs, allegations of lost profits, loss of good will and injury to reputation are, indeed, plausible damages, and Plaintiffs have met their burden for pleading them. *Cf. Id.,* at 24.

This means that MATZKIN's motion, whether requesting dismissal of Plaintiffs' Complaint under F.R.C.P. 12(b)(6) or entry of summary judgment under F.R.C.P. 56, must necessarily be denied.

### b. Defendant MATZKIN's Interference Was Intentional and Without Justification

A cause of action for tortious interference requires a showing of both an intent to damage the business relationship and a lack of justification to take the action which caused the damage. *MKT Reps S.A. DE C.V. v. Standard Chartered Bank Int'l (Ams.) Ltd.*, 520 F. App'x 951, 954 (11th Cir. 2013) For intent, it is sufficient that plaintiff allege that the defendant had "the intent to cause the result." *Id.  See also Mortg. Now, Inc. v. Guaranteed Home Mortg. Co.,* 545 F. App'x 809, 811 (11th Cir. 2013) (plaintiff proved its case for tortious interference when it provided evidence that the defendant encouraged third parties to take action inconsistent with their duties toward the plaintiff).  Paragraph 207 alleges that Matzkin, intentionally and without justification, interferes with Plaintiffs business relationships. It is only in the context

of MATZKIN's Whatnot email that he challenges the allegation of intent, stating, *"The Plaintiffs plead no facts to show that Matzkin's primary motive was an intent to injure the Plaintiffs' reputations*." [Doc. 55 at 22]. Although an action for tortious interference has no requirement that intent be pled as a defendant's "primary motive," intent and state of mind are usually inferred from the circumstances surrounding a defendant's actions. *State v. Espinoza*, 264 So. 3d 1055 (Fla. 3rd DCA 2019). MATZKIN'S Whatnot email is set forth below:

> Mr. Kam should know that you are dragging him and his company into **your client's scam of contrived litigation** to create YouTube content for **your client's storylines**.
>
> Mr. Kam may be interested to learn that as part of your and **your client's litigation scam that you're now trying to involve Whatnot in, he committed perjury** to trick the federal court into exercising jurisdiction by **filing a false affidavit** stating my clients made and were making "online posts calling him a child predator constantly and ongoing to this day," and that as counsel you did nothing to confirm whether there were any such online posts before you signed the motion opposition (sic) that relied on that **perjured statement**. I would think any company would want to know if one of their **prominent customers** who regularly promotes his business with them, **is falsely using them to support fake lawsuits** (emphasis added)."

MATZKIN's email (on which Mr. Kam from Whatnot was copied as admitted by MATZKIN) just standing by itself, allows the Court to draw the reasonable inference that MATZKIN intended to do damage to Plaintiffs' business, reputation, and relationship with Whatnot, Inc. If there is room for different views about the propriety of a defendant's interference with a plaintiff's business relationships, "the

determination of whether the interference was improper or not is ordinarily left to the jury.'" *See Duty Free Ams. v. Estee Lauder Cos*, 797 F.3d at 1280 (quoting *Mfg. Rsch. Corp. v. Greenlee Tool Co*., 693 F.2d 1037, 1040 (11th Cir. 1982)).

As MATZKIN did not challenge or take issue with allegations of "lack of justification," there is no need to address it. *Cf. Pouyeh v. Pub. Health Trust of Jackson Health Sys,* 718 Fed. Appx. 786 (11th Cir. 2017) (issues not briefed on appeal are deemed abandoned and will not be considered).

### c. Plaintiffs Have Alleged Sufficient Facts To Show That MATZKIN'S Conduct and Speech Have Interfered With Plaintiffs' Business Relationships

MATZKIN asserts as his second point that "*Plaintiffs fail to allege any facts that show that any of Matzkin's alleged conduct or speech caused a breach in their relationships with any customer*. [Doc 55 at 6]. Referencing only Paragraphs 205 and 207 of the Complaint, however, he then goes on to say that Plaintiffs' "*claims are devoid of any supporting factual allegations that show, or would permit an inference to be drawn that, Matzkin's conduct and speech caused a breach in their relationships with any identifiable customer*." [Doc. 55 at 9]. It would appear that MATZKIN skipped over the first 172 paragraphs of factual allegations in the Complaint. Paragraphs 124 through 139 recite no less than 18 *specific instances* of MATZKIN publicly making false and clearly malicious statements about Hales' business and Mr. Hales, along with several overt acts in furtherance of defendants'

vindictive scheme to drive Mr. Hales off YouTube and other social media platforms from which he earns a living. [Doc. 76, Para. 124, 126, 127, 129, 130, and 131].

To be clear, "activities taken to safeguard or promote a company's own financial interests are non-actionable, <u>as long as improper means are not employed</u>." *Duty Free Ams., Inc. v. Estee Lauder Cos*., 797 F.3d 1248 (11th Cir. 2015) (citing *Heavener Ogier Servs., Inc. v. R.W. Fla. Region, Inc.,* 418 So. 2d 1074 (Fla. 5th DCA 1074) (emphasis added). A defendant may not interfere with a business relationship *by improper means* even in order to safeguard a preexisting economic interest of his own. The *purposeful causing* of a breach of a business relationship *is* simply improper and actionable. *CMR Roofing & Constr., LLC v. U.C.M.S., LLC,* 2022 U.S. App. LEXIS 21039 (11th Cir. 2022).

False statements made "for the purpose of harming [a competitor's] economic interests" can also form the basis of a claim for tortious interference. *Duty Free Ams., Inc.,* 797 F.3d 1248 (11th Cir. 2015)(citing *Londono v. Turkey Creek, Inc.,* 609 So. 2d 14, 18-19 (Fla. 1992). Florida courts arguably recognize that parties may not engage in intentional and unjustified interference by engaging in fraud or collusion, nor may they use  threats, intimidation, and conspiratorial conduct. *See Ellis Rubin, P.A. v. Alarcon*, 892 So. 2d 501 (Fla. 3rd DCA 2004); *Morsani v. Major League Baseball*, 663 So. 2d 653, 657 (Fla. 2nd DCA 1995).

## III.    <u>Points C, D, E, F, and G of MATZKIN's Motion to Dismiss Are Irrelevant To Resolving The Legal Sufficiency Of The Complaint</u>

MATZKIN's point C [Doc. 55, 14-18] has no bearing on the legal sufficiency of the Complaint or the disposition of the 12(b)(6) Motion. This section is merely an excuse for MATZKIN to re-visit his 2/17/25 tortious email that was *technically* directed to Shochet, but really, addressed Mr. Kam, who was copied on it. MATZKIN' essentially expends his word count on a 'Shochet-made-me-do-it' defense [Doc. 55 at 17-18] such that this section does not merit a response.

Point D raises "Section 230 of the Communication Decency Act," which is not a basis to dismiss a complaint, nor even applicable here. The Act provides immunity to internet platforms for their editorial decisions, but it does not shield individuals from liability for their own tortious conduct. *Langdon v. Google, Inc.*, 474 F. Supp. 2d 622 (D. Del. 2007). MATZKIN's reliance on Section 230 is therefore misplaced. If it did apply, however, it clearly would not be an appropriate vehicle for resolving a motion to dismiss, as its nature suggests that expert testimony concerning editorial discretion and editorial decision-making in moderating content for internet companies would be required.

Under Section E, MATZKIN argues he is entitled to a qualified privilege for his statement to Whatnot, Inc. However, qualified privilege applies only to statements made in connection with judicial proceedings or other privileged contexts. *See Frederick v. Reed Smith Shaw & McClay, 1994 U.S. Dist. LEXIS 1811* (E.D. Pa. 1994). Plaintiffs allege that MATZKIN's statements to Whatnot, Inc. were

made outside the scope of any judicial proceeding, as MATZKIN was attempting to defend his client's malicious acts. MATZKIN's acts were outside any defense, were motivated by malice, and as part of a broader conspiracy to harm Plaintiffs' business. MATZKIN's assertion of qualified privilege is inapplicable and inappropriate for resolution on a motion to dismiss.

Finally, in Sections F and G, MATZKIN argues that the statements attributed to him are non-actionable opinions or rhetorical hyperbole protected under the First Amendment. The Complaint is not aimed at suppressing defendant's free speech, but rather at addressing unlawful conduct, which includes actionable commercial speech.

## IV. The Conspiracy Claim Against Matzkin Should *Not* Be Dismissed As The Complaint Alleges 1) He Acted Under Independent Motivation For His Own Personal Concern, 2) His Conduct Fell Outside The Scope Of His Representation, and 3) Co-Conspirators Other Than His Former Clients Were Involved

"Absent any allegations that an attorney was acting under independent motivation, or that an attorney had a 'personal stake in the illegal activities separate and distinct from that of the corporation,' an attorney cannot be found to have conspired with its client." *Block v. Matesic*, 2023 U.S. Dist. LEXIS 97530 (S.D. Fla. 2023).  Paragraph 139 of the Complaint states, "*In actuality, MATZKIN's process and strategy is nothing more than a scheme to enrich himself at the expense of consumers and HALES.*" This statement sufficiently alleges that MATZKIN was

motivated by his own personal concerns and was not acting out of concern for his

former clients - Preston and Cook.  Additional supporting facts in the Complaint that

MATZKIN was concerned garnering his own personal YouTube fame and glory are:

**Paragraph 126:  MATZKIN's Letter of March 11, 2024**: Sent to several
YouTube/Law-Tube hosts soliciting coverage of MATZKIN's own personal story
involving his Bar disciplinary proceeding in Connecticut, which he said was
analogous to a local scandal involving a judge, two attorneys, and a scheme to steal
a macaroni & cheese restaurant and its market share. MATZKIN  also touted himself
as legal commentator familiar with the "Hales saga" who could purportedly offer
insight and commentary.

**Paragraph 128:  MATZKIN's Letter of April 19, 2024**: Sent to YouTube/
Law-Tube hosts offering his services as a legal commentator who could offer a
"different perspective" related to the Hales/Preston matters. He states:

> "In my opinion, all it would take to completely
> turn the tables **is a competent lawyer willing
> to represent Preston** in federal court…" [Emphasis added]

Although MATZKIN asserts in his Motion to Dismiss that he was "retained"

by Preston on March 27, 2024 [Doc. 55 at 34], his letter of April 19th shows he does

*not* recognize himself as "representing" her as counsel. See Paragraph 128 of the

Complaint.

Indeed, MATZKIN describes his role during that five-month period between

March and September 2024:

> He assisted Preston in attempting to locate legal counsel,
> and he began to publicly counter the narrative that the
> Defendants promulgated through their social media
> platforms about how righteous they were and how crazy
> and evil Preston was. Matzkin also countered the

> commentary from social media legal commentators about
> how much the legal deck was stacked against Preston.

[Doc 55 at 35].

For those five months, MATZKIN did not serve Preston in the capacity as attorney but appeared to be more like a public relations specialist.

**Paragraph 117**: Alleges defendant HELM invited MATZKIN on his YouTube Show and MATZKIN participated—without Preston or Cook.

**Paragraph 131**: The last sentence of MATZKIN's 2/17/25 email states:

> I would think any company would want to know if **one of their prominent customers who regularly promotes his business with them, is falsely using them to support fake lawsuits** (emphasis added).

**Paragraphs 147 and 153**: MATZKIN appeared with co-defendants LEE and TESCHENDORF on their YouTube channels in which they continued to foment the Anti [What The Hales] Media Ecosystem.

As far as the third issue is concerned, the coconspirators in this case do not only consist of Preston, Cook, and MATZKIN. There are a number of other defendants whom MATZKIN never represented such that the agency issue would not arise. Nonetheless, MATZKIN ceased acting as attorney for Preston and Cook several months ago. The second issue as to whether MATZKIN was or was not acting within the scope of being Preston's attorney when he engaged in particular conduct is a fact-intensive issue that can only be resolved at evidentriary hearing. As the Court stated in *Block v. Matesic*, "… *it's not our job, at the pleading stage, to separate truth from fiction. It's our job only to determine, from the face of the SAC,*

*whether the Plaintiff has pled a viable claim* (emphasis added*)." Id*. at 21. Although MATZKIN apparently believes that this litigation can be resolved by his motion to dismiss, such is not the case. Even the precedent he cites regarding whether an attorney could be liable for civil conspiracy, i.e., *Blatt v. Green, Rose, Kahn & Piotrkowski,* 456 So.2d 949, 951 (Fla. 3rd DCA 1984), does not support this belief. In *Blatt*, the Court held it must consider "***whether there [was] sufficient evidence in the record*** *upon which* ***the jury*** *could find that [the attorney] acted illegally or beyond his employment in order to secure an unconscionable advantage against the [plaintiff]."* [Emphasis added].

Finally, in *Block v. Matesic,* the complaint alleged, "*at all times material hereto, Gerstin was acting in his capacity as counsel for his client(s) and in line with the interests of his client(s)." [Id*. at 21, Fn. 6]. The Court's response to that was, "They may be right about that. And, at summary judgment or trial, they may be able to show that they were right all along. But that's not what the SAC says. And, at this stage of the case, what the SAC says is all that matters." *Ibid.* MATZKIN cannot rely on a conclusionary statement that "*Everything that Matzkin did was within the scope of his representation of Preston,"* [Doc. 55 at 35].

## V.     <u>The Second Amended Complaint Adequately Alleges A Claim For Civil Conspiracy Against Matzkin</u>

To plead civil conspiracy under Florida law, a plaintiff must allege: **(a)** an agreement between two or more parties, **(b)** to do an unlawful act or to do a lawful

act by unlawful means, **(c)** the doing of some overt act in pursuance of the conspiracy, and **(d)** damage to plaintiff[s] as a result of the acts done under the conspiracy." *Otto Candies, LLC v. Citigroup, Inc.,* 147 F.4th 1158 (11th Cir. 2025)(citing *Raimi v. Furlong*, 702 So. 2d 1273 (Fla. 3rd DCA 1997). "[I]n pleading conspiracy, the plaintiff must further identify an actionable underlying tort or wrong." *EMI Sun Vill., Inc. v. Catledge,* 779 Fed. Appx. 627 (11th Cir. 2019). "The conspiracy is merely the vehicle by which the underlying tort was committed, and the allegations of conspiracy permit the plaintiff to hold each conspirator jointly liable for the actions of the coconspirators." *Tejera v. Lincoln Lending Servs., LLC*, 271 So. 3d 97, 103 (Fla. 3rd DCA 2019).

Plaintiffs' Second Amended Complaint identifies *three* separate underlying causes of action, each of which makes it unlawful to engage in conduct that deceives and harms consumers and/or seeks to drive someone out of business or otherwise harms their business through the use of false and misleading commercial speech or interference with their business relationships. Those three underlying claims are Tortious Interference with Advantageous Business Relationships, violation of FDUPTA, Fla. Stat. § 501.201, Et Seq., and violation of The Lanham Act, 15 U.S.C. § 1125(A). All three are alleged against LEE, while only tortious interference is alleged against MATZKIN. The common-law conspiracy claims set forth in Counts 6 through 13 are imposed against *all* defendants.

Count 7 for Civil Conspiracy is specifically against MATZKIN, and the essential facts supporting the necessary allegations *for that claim* are mostly concentrated in Paragraphs 124 through 139 of the Complaint. When it comes to alleging a claim for conspiracy, Florida law is clear that each coconspirator *need only know of the scheme and assist in it in some way* to be held responsible for all of the acts of his coconspirators. *In re Chira*, 353 B.R. 693  (Bankr. S.D. Fla. 2006), aff'd, 378 B.R. 698 (S.D. Fla. 2007), aff'd, 567 F.3d 1307 (11th Cir. 2009). (citing *Charles v. Fla. Foreclosure Placement Ctr., LLC,* 988 So. 2d 1157, 1160 (Fla. 3rd DCA 2008).

MATZKIN'S arguments, however, suggest that he misunderstands the analysis to be performed to test the legal sufficiency of Count 7 against him for Civil Conspiracy. By conflating the elements of the underlying causes of action with the elements of Conspiracy, he uses incorrect legal standards to test whether his conduct is actionable. [See Doc. 55 at 35-39]. That is, instead of properly evaluating the factual allegations pertaining to him under the elements of Civil Conspiracy, he improperly evaluates them under the elements of FDUPTA, The Lanham Act, and tortious interference (for a second time).  This flawed legal analysis results in flawed legal conclusions, which should not be relied upon by this Court.

      **a. The Complaint Sets Forth a Cause Of Action for Conspiracy Against MATZKIN in Accordance with the Controlling General Plausibility Standards of F.R.C.P. 8(A) and the General Legal Standard for Testing a Motion to Dismiss**

As Plaintiffs' underlying causes of action do not allege fraud, there is no heightened pleading standard and the general plausibility standards of Rule 8(a) F.R.C.P. control the "agreement" element of the conspiracy claim. *Otto Candies* at 74. Moreover, under F.R.C.P. 9(b), a defendant's knowledge can be alleged generally--even if the cause of action involves fraud. Finally, on a motion to dismiss, a court takes the factual allegations in the complaint as true, even if they are subject to dispute, and construes them in the light most favorable to the plaintiff. *Devengoechea v. Bolivarian Republic of Venez.*, 889 F.3d 1213 (11th Cir. 2018).

Between the more relaxed pleading standards for this case, combined with over 150 paragraphs of *factual* allegations in the Complaint--approximately 18 of which address MATZKIN's specific acts, Plaintiffs' Complaint easily permits the inference that MATZKIN and other co-defendants agreed to commit acts (including engaging in impermissible commercial speech) intended to harm Mr. Hales' business and his reputation in the business community, as well as, deceive consumers.

Florida courts have consistently held that conspirator need not take part in the planning, inception, or successful conclusion of a conspiracy. The conspirator need only know of the scheme and assist in it in some way to be held responsible for all of the acts of his coconspirators. *Karnegis v. Oakes*, 296 So.2d 657 (Fla. 3d DCA 1974), *cert. denied*, 307 So.2d 450 (Fla. 1975).  Although thread bare, conclusory

allegations will, nonetheless, not survive dismissal, the existence of a conspiracy and an individual's participation in it may be inferred from circumstantial evidence. *Northwestern National Insurance Co. v. General Electric Credit Corp.*, 362 So.2d 120 (Fla. 3d DCA 1978), *cert. denied*, 370 So.2d 459 (Fla. 1979).

As 11th Circuit Court of Appeals recently reiterated, an agreement to engage in a civil conspiracy "need not be expressed in words and may be implied and understood to exist from the conduct itself." *Otto Candies*, *LLC v. Citigroup Inc.*, 2025 U.S. App. LEXIS 11156 (11th Cir. 2025). In *Otto Candies*, the complaint alleged, *inter alia*, a conspiracy by defendants to violate RICO. Noting that "'a bare assertion of conspiracy will not suffice' to prove a RICO conspiracy, this Court stated that plaintiffs 'need not offer direct evidence of a RICO agreement, and the existence of conspiracy may be inferred from the conduct of the participants.'" *Id*. at 73 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) [emphasis added]. The plaintiffs in *Otto Candies* pleaded six factors to allege that Citigroup agreed to conspire with OSA to engage in a pattern of racketeering activity: (1) Citigroup and OSA's "business relationship"; (2) their mutual financial gain from the racketeering activity; (3) their joint fraudulent misrepresentations and omissions; (4) their dependency on each other's fraudulent conduct to prolong the scheme; (5) Citigroup's then-CEO's "admission" that certain employees were "criminally involved" in the scheme; and (6) Mexican regulators' conclusion that Citigroup

employees or agents "knowingly engaged in a fraudulent scheme with OSA." Reversing the district court's order of dismissal, this Court stated that plaintiffs pleaded *ample* circumstantial evidence to support their allegations that Citigroup plausibly agreed to the conspiracy. *Id.* at 75.

Although "ample" circumstantial evidence is not required here, Plaintiffs have alleged sufficient facts to demonstrate that MATZKIN and other defendants knew of a scheme to destroy or "take down" Mr. Hales' business and ability to earn income on YouTube, while they deceived consumers into donating money in order to assist PRESTON, but the money is instead being pocketed by another co-defendant in this case and does not reach PRESTON. The Complaint also alleges sufficient facts demonstrating that MATZKIN assisted in the scheme in some way.

## CONCLUSION

Plaintiffs respectfully request that the Court deny Defendant MATZKIN'S Motion to Dismiss Plaintiffs' [Second] Amended Complaint. Plaintiffs' claims are well-pleaded and supported by sufficient factual allegations to survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. That said, should the Court grant MATZKIN's motion, it should do so without prejudice to afford Plaintiffs an opportunity to amend to address any perceived defect. *See Thomas v. Town of Davie,* 847 F.2d 771, 773 (11th Cir. 1988).

## CERTIFICATE OF COMPLIANCE

     I CERTIFY that the foregoing Response consists of 5,581 words in compliance with Local Rule 7.1

/<u>s</u>/ ***Randall Shochet***
Randall Shochet, Esq.
FBN: 959421

Dated: July 1, 2025.

Respectfully submitted,

SHOCHET LAW GROUP
SHOCHET APPELLATE, LLC
Attorneys for Plaintiffs
409 N. Main Street
Trenton, FL 32693

By: <u>/s/ *Randall Shochet*</u>
Randall ("Randy") Shochet, Esq.
FBN.: 959421
attorneys@counsel.insure

**<u>CERTIFICATE OF SERVICE</u>**

**I HEREBY CERTIFY** that on July 1, 2025, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served on this day on all counsel of record, via email to the Service List below.

By: <u>/s/ *Randall Shochet*</u>
Randall Shochet, Esq.

**<u>SERVICE LIST</u>**

Cameron L. Atkinson
ATKINSON LAW, LLC
Attorney for MATZKIN
122 Litchfield Rd, Ste. 2
P.O. Box 340

Harwinton, CT 06791
catkinson@atkinsonlawfirm.com

Christopher Joseph Gage
Banker Lopez Gassler PA
Attorney for HELM
501 E KENNEDY BLVD, STE 1700
TAMPA, FL 33602
service-cgage@bankerlopez.com

MARLA HUGHES, Pro Se
7350 128th Ln.
Bronson FL 32621
MarlaHughes@live.com
blndndngrus@gmail.com

LYNETTE MICHELLE LACY ALEXIS PRESTON, Pro Se
PO BOX 27
OTTER CREEK, FL 32683

JOHN COOK, Pro Se
PO BOX 27
OTTER CREEK, FL 32683

LISA LEE, Pro Se
lisa.lee.legal@gmail.com