UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION
Case No.: 1:25-cv-00058-RH-MJF

ELEPHANT SHOE, LLC, an Ohio Limited Liability Company
d/b/a WHAT THE HALE$,
and
JEREMY B. HALES,

      Plaintiffs,

v.

LYNETTE MICHELLE LACY ALEXIS PRESTON,
JOHN COOK, BRUCE P. MATZKIN, LISA LEE,
MARLA HUGHES, DAVID C. HELM, ROBERT J. KESZEY,
DAVID MICHAEL TESCHENDORF, RAYMOND G. BONEBRAKE, JR.
and RICHARD LUTHMANN,

      Defendants.

_____/

**<u>PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT LEE'S
AMENDED MOTION TO DISMISS (Doc. 87)</u>**

      Plaintiffs, Jeremy B. Hales and Elephant Shoe, LLC, respectfully submit this

Response in Opposition to Defendant LISA LEE (hereinafter, "LEE")'s Amended

Motion to Dismiss the Second Amended Complaint (hereinafter, "Complaint").

      LEE argues that Plaintiffs' Florida Deceptive and Unfair Trade Practices Act

("FDUTPA") claims should be dismissed for failure to meet the heightened pleading

standards of Fed. R. Civ. P. 9. This argument mischaracterizes the nature of

Plaintiffs' claims and misapplies the law regarding pleading standards for FDUTPA

claims. As demonstrated below and in any event, Plaintiffs' Complaint contains

sufficient factual allegations to satisfy the applicable pleading standards, whether under Rule 8(a) or Rule 9(b).

LEE asserts that the Complaint fails to state a claim under the Lanham Act. LEE contends that the Complaint does not sufficiently allege tortious interference with business relationships or civil conspiracy. LEE argues that the Complaint contains conclusory allegations and lacks factual specificity. LEE asserts that the statements attributed to her are non-actionable opinions or rhetorical hyperbole protected under the First Amendment.

As demonstrated below, Plaintiffs' Complaint sufficiently pleads claims under the Florida Deceptive and Unfair Trade Practices Act (FDUTPA), the Lanham Act, tortious interference with business relationships, and civil conspiracy.

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Detailed factual allegations are not required, but the Rule does call for sufficient factual matters, accepted as true, to state a claim to relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. at 556. Determining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense. *Ibid*.

LEE's Motion should be denied in its entirety.

## **MEMORANDUM**

## I.    **The Complaint States a Claim Under FDUTPA**

To state an FDUTPA claim, a Plaintiff must allege (1) a deceptive act or unfair trade practice; (2) causation; and (3) actual damages. *Hill v. Hoover Co*., 899 F. Supp. 2d 1259, 1264 (N.D. Fla. 2012). A deceptive act involves a representation, omission, or practice that is likely to mislead a consumer acting reasonably under the circumstances, to the consumer's detriment. *Id.* An unfair practice, on the other hand, is one that offends established public policy and is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. *Ibid.*

- **Rule 9(B) Does Not Automatically Apply To All FDUTPA Claims**

FDUTPA Claims Based on Unfair Practices Are Not Subject to Rule 9(b). This is because FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204. The statute is to be construed liberally to protect consumers and legitimate business enterprises. Fla. Stat. § 501.204. Importantly, FDUTPA claims can be based on either deceptive or unfair practices. Federal courts have recognized that not all FDUTPA claims must meet the heightened pleading standard of Rule 9(b). "FDUTPA claims can be based on deceptive or unfair practices that do not involve fraud." *Hirsh v. Silversea Cruises Ltd*, 2015 U.S. Dist.

LEXIS 191529 (S.D. Fla. Mar. 5, 2015). This distinction is critical because Rule 9(b)'s heightened pleading requirements apply specifically to claims of "fraud or mistake."

> It is well settled, however, that Rule 9(b), "which requires that allegations of fraud be stated with particularity, must be harmonized with Rule 8(a), which requires only a short and plain statement of the claim. The Eleventh Circuit has held that 'Rule 9(b) must not be read to abrogate Rule 8.'" *Mobil Oil Corp. v. Dade Cnty. Esoil Mgmt. Co.*, 982 F. Supp. 873, 878 (S.D. Fla. 1997) (quoting *Friedlander v. Nims*, 755 F.2d 810, 813 n.3 (11th Cir. 1985)). "Because fair notice is [p]erhaps the most basic consideration underlying Rule 9(b), the plaintiff who pleads fraud must reasonably notify the defendants of their purported role in the scheme." *Brooks v. Blue Cross & Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1381 (11th Cir. 1997) (quoting *Vicom, Inc. v. Harbridge Merchant Servs., Inc.*, 20 F.3d 771, 777-78 (7th Cir. 1994)) (internal quotation marks and citation omitted). Accordingly, Rule 9(b) is satisfied if the complaint sets forth (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud. *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (quoting *Brooks*, 116 F.3d at 1371) (internal quotation marks omitted). "These factors are not exclusive, however, and a plaintiff may satisfy Rule 9(b)'s particularity requirements through alternative means." *SIG*, 971 F. Supp. 2d at 1186 (citing *Brooks*, 116 F.3d at 1371). "Essentially, the requirements of Rule 9(b) are satisfied if the complaint provides a reasonable delineation of the of the underlying acts and transactions allegedly constituting fraud such that the defendants have

fair notice of the nature of plaintiff's claim and the grounds upon which it is based." *Alhassid v. Bank of America, N.A.*, 60 F. Supp. 3d 1302, 2014 WL 6480656, at * 11 (S.D. Fla. 2014) (quoting *U.S. ex rel Heater v. Holy Cross Hosp., Inc.*, 510 F. Supp. 2d 1027, 1033 (S.D. Fla. 2007)) (internal quotation marks omitted).

*Hirsh v. Silversea Cruises Ltd*, No. 0:14-CV-61533,, at *5-7 (S.D. Fla. Mar. 5, 2015)

Federal district courts in Florida are split on whether the heightened pleading requirements of Rule 9(b) are applicable to FDUTPA claims. *State Farm Mut. Auto. Ins. Co. v. Performance Orthopaedics & Neurosurgery, LLC*, 278 F. Supp. 3d 1307 (S.D. Fla. 2017). While some courts have applied Rule 9(b) to FDUTPA claims that sound in fraud, others have recognized that FDUTPA claims premised solely or primarily on unfair trade practices might not be subject to heightened pleading requirements,

Other courts have categorically held that Rule 9(b) does not apply to claims under FDUTPA because "unlike fraud, a party asserting a deceptive trade practice claim need not show actual reliance on the representation or omission at issue." *See Harris v. Nordyne, LLC.*, Case No. 14-CIV-21884-BLOOM/Valle, 2014 U.S. Dist. LEXIS 189248, 2014 WL 12516076, at *4 (S.D. Fla. Nov. 14, 2014) ("This Court joins several decisions in holding that the requirements of Rule 9(b) categorically do not apply to claims under FDUTPA."); *Galstaldi v. Sunvest Communities USA, LLC*, 637 F. Supp. 2d 1045, 1058 (S.D. Fla. 2009) ("The requirements of Rule 9(b) do not apply to claims under the FDUTPA."); *see also Special Purpose Accounts Receivable Co-op. Corp. v. Prime One Capital Co., L.L.C.*, No. 06-61055-CIV, 2007 U.S. Dist. LEXIS 70886, 2007 WL 2826603, at *6 (S.D. Fla. Sept. 25, 2007) (Finding that Rule 9(b)'s pleading requirements do not

apply to constructive fraud in the bankruptcy context because constructive fraud only has to do with the transferor's financial condition and the sufficiency of the consideration provided by the transferee, and not the traditional elements of fraud).

*Tennis v. Bel-Mac Roofing Inc*, No. 3:17cv14-MCR/CJK,, at *7 (N.D. Fla. Mar. 28, 2018).

- **Even If Rule 9(b) Applies, Plaintiffs Have Met Its Requirements**

Even if this Court determines that Rule 9(b) applies to Plaintiffs' FDUTPA claims, the Complaint satisfies the heightened pleading standard. Rule 9(b) requires that "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." However, "malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id.*

Plaintiffs' Complaint contains over 150 paragraphs of factual allegations, including, without limitation, detailed allegations regarding LEE's specific acts in paragraphs 1 through 6, paragraphs 18 through 54, and paragraphs 165 through 172 which address LEE's specific acts. These allegations are more than sufficient to put LEE on notice of the claims against her and the grounds upon which they rest and reasonably notify LEE of her purported role in the scheme.

- **Plaintiffs Have Adequately Alleged Deceptive and Unfair Practices**

Plaintiffs' Complaint alleges that LEE engaged in "unconscionable, unfair, and deceptive acts or practices (1) that offend established public policy and are immoral,

unethical, oppressive, unscrupulous, and substantially injurious to consumers, (2) that are likely to deceive a consumer acting reasonably in the same circumstances, and (3) that caused injury or detriment to consumers." These allegations track the language of FDUTPA and provide a sufficient basis for Plaintiffs' claims. The Complaint further alleges that "LEE continues to engage in such false and deceptive marketing campaigns and fraudulent representations for the purpose of damaging HALES and consumers without any valid legal basis." Plaintiffs' Complaint contains over 150 paragraphs of factual allegations, including, without limitation, detailed allegations regarding LEE's specific acts in paragraphs 1 through 6, paragraphs 19 through 55, and paragraphs 165 through 172 which address LEE's specific acts. These allegations are more than sufficient to put LEE on notice of the claims against her and the grounds upon which they rest and reasonably notify LEE of her purported role in the scheme. These allegations are also specific enough to satisfy even the heightened pleading requirements of Rule 9(b).

- **Plaintiffs Have Adequately Alleged Causation and Damages**

The Complaint alleges that Plaintiffs are damaged by LEE's unlawful conduct by losing revenue streams and auction sales that otherwise would remain with them absent LEE's interference with Plaintiffs' valid business relationships. This allegation establishes a causal connection between LEE's conduct and Plaintiffs' damages. In the context of allegedly false or misleading statements, "a plaintiff need

not prove reliance on the [defendant's] allegedly false statement. but rather a plaintiff must simply prove that an objectively reasonable person would have been deceived." *Davis v. Angelcare USA, LLC*, 727 F. Supp. 3d 99. While this is a Connecticut decision, under the Florida Deceptive and Unfair Trade Practices Act (FDUTPA), a plaintiff is also not required to prove reliance on the defendant's allegedly false or misleading statements. Instead, the standard is that a plaintiff must demonstrate that an objectively reasonable person would have been deceived by the defendant's actions. This objective test is applied to determine whether the alleged practice was likely to mislead a consumer acting reasonably under the circumstances.

In *Haney v. Costa Del Mar Inc.,* 2019 Fla. Cir. LEXIS 17324; 2019 LX 42333, the court reiterated that FDUTPA employs an objective test to determine whether a practice was likely to deceive a consumer acting reasonably. The court cited *Carriuolo v. Gen. Motors Co*., 823 F.3d 977, 983 (11th Cir. 2016), and *Davis v. Powertel, Inc*., 776 So. 2d 971, 974 (Fla. 1st DCA 2000), to affirm that the question is not whether the plaintiff actually relied on the alleged deceptive practice but whether the practice was likely to deceive a reasonable consumer.

In *Marrache v. Bacardi U.S.A., Inc.,* 17 F.4th 1084 (11th Cir. 2021), the court applied the objective standard under FDUTPA, requiring the plaintiff to show that the alleged practice was likely to deceive a consumer acting reasonably in the same circumstances. The court cited *Carriuolo v. Gen. Motors Co., 823 F.3d 977, 983-84*

*(11th Cir. 2016), and Zlotnick v. Premier Sales Group, Inc., 480 F.3d 1281*, to support this standard. To establish an unfair practice, the plaintiff must show that it is "one that 'offends established public policy' and one that is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.' *Id*. Moreover, to establish an unfair practice, the plaintiff must show that it is "one that 'offends established public policy' and one that is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" *Id.* at 1098. Such as the circumstances here.

In *Corrigan v. Walmart, Inc.*, 591 F. Supp. 3d 1291, *Co.* (S.D. Fla. 2022), the court explained that FDUTPA is designed to protect consumers from deceptive or unfair practices and employs an objective test to determine whether a practice is likely to mislead a reasonable consumer. The court cited *Dolphin LLC v. WCI Cmtys., Inc.*, 715 F.3d 1243, 715 F.3d 1243, 1250 (11th Cir. 2013), and *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. 2d DCA 2006), to outline the elements of a FDUTPA claim, which include a deceptive act or unfair practice, causation, and actual damages. *Id.* Although FDUTPA does not explicitly define the term deception, the provisions of the Act are to be construed liberally. Fla. Stat. § 501.202. *Ibid*. Plaintiffs' allegations that LEE's voluminous statements were "likely to deceive a consumer acting reasonably in the same circumstances" easily satisfy this standard.

Moreover, "[w]hen competitor businesses, rather than consumers, press a FDUTPA claim, "lost profits, lost revenue, reputation harm, and other damages commonly observed in business torts claims" **constitute actual damages** (Emphasis added)." *Trasco Wellness, Ltd. Liab. Co. v. Tampa Bay Spine & Sports Med., Ltd. Liab. Co*., No. 8:23-cv-02536-WFJ-UAM, 2024 U.S. Dist. LEXIS 61892, at *8-9 (M.D. Fla. Apr. 4, 2024) (citations omitted).

- **LEE's Conduct Falls Within the Scope of "Trade or Commerce"**

LEE argues that her conduct does not constitute "trade or commerce" as defined by FDUTPA. However, FDUTPA defines trade or commerce broadly to include "advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value." Plaintiffs allege that LEE solicited donations under false pretenses and made false statements about Plaintiffs' business in the course of her YouTube livestreams. These activities fall within the broad definition of "trade or commerce" under FDUTPA, particularly given the statute's directive that it "shall be construed liberally." Fla. Stat. § 501.204.

LEE argues that Plaintiffs lack standing under FDUTPA because they are not aggrieved consumers. This argument misinterprets the statute. FDUTPA allows claims by entities harmed by unfair or deceptive practices in trade or commerce,

even if they are not direct consumers.[1] *Cf. S. Broward Hosp. Dist. v. ELAP Servs., LLC*, No. 20-cv-61007-SINGHAL, 2020 U.S. Dist. LEXIS 226859, at *14-15 (S.D. Fla. Dec. 3, 2020) ("In construing its state's statute, Florida's district courts have held that "an entity does not have to be a consumer in order to have standing to bring a FDUTPA claim." *Caribbean Cruise Line, Inc. v. Better Bus. Bureau of Palm Beach Cty., Inc.*, 169 So. 3d 164, 169 (Fla. 4th DCA 2015); *see also Bailey v. St. Louis*, 196 So. 3d 375, 382-83 (Fla. 2d DCA 2016). Because the District has alleged that Defendants' unfair and deceptive practices "were likely to cause consumer harm," its FDUTPA claim can proceed. *See CEMEX Constr. Materials Fla., LLC v. Armstrong World Indus., Inc.*, 2018 U.S. Dist. LEXIS 24920, 2018 WL 905752, at *15 (S.D. Fla. Feb. 15, 2018); *see also CWELT-2008 Series 1045 LLC v. PHH Corp.*, 2020 U.S. Dist. LEXIS 91899, 2020 WL 2744191, at *4-5 (S.D. Fla. May 27, 2020) (allowing non-consumer standing because "Florida state courts have ruled uniformly that non-consumers can bring FDUTPA actions").

However, while a plaintiff does not need to be a consumer, they must still demonstrate that the alleged unfair or deceptive practice caused harm to consumers.

---

[1] A plaintiff does not need to be a consumer to pursue a claim under the Florida Deceptive and Unfair Trade Practices Act (FDUTPA). The 2001 amendment to Fla. Stat. § 501.211 replaced the term "consumer" with "person," thereby broadening the scope of who may bring a claim under FDUTPA.

Courts have consistently held that proving an injury or detriment to consumers is a necessary element of a FDUTPA claim, even when the plaintiff is not a consumer. In *Stewart Agency, Inc. v. Arrigo Enters.*, 266 So. 3d 207 (Fla. 4th DCA 2019), the court emphasized that a claimant must show that a consumer was injured or suffered a detriment to satisfy the elements of a FDUTPA claim. Here, combined with over 150 paragraphs of *factual* allegations in the Complaint—including, without limitation, paragraphs 1 through 6, paragraphs 18 through 54, and paragraphs 165 through 172 which address LEE's specific acts, Plaintiffs' Complaint alleges that LEE - as Plaintiffs' competitor - engaged in deceptive practices, including (1) soliciting "donations" under false pretenses from consumers *which caused harm to consumers* and (2) making false statements about Plaintiffs' business *which caused harm to Plaintiffs' reputation and business relationships*. This means that the Complaint shows that consumers were injured or suffered a detriment to satisfy the elements of a FDUTPA claim.

- **Plaintiffs Have Adequately Alleged Deceptive and Unfair Practices by a Commercial Competitor**

Plaintiffs' Complaint clearly establishes that LEE is an interstate commercial competitor who engaged in deceptive and unfair practices in violation of FDUTPA. The complaint specifically alleges that "LEE is a competitor of HALES for Internet Sales and Marketing, as a host and/or operator of a YouTube channel called 'Two Lee's In A Pod' (and other social media platforms, including, without limitation,

Instagram, Twitch, Discord, TikTok, and via Whatnot Auctions) with a current YouTube subscription fan base of over 3,000 people." This directly contradicts LEE's assertion that she and HALES are not business competitors. The Complaint further details that "People who subscribe with LEE'S social media platforms often pay monthly fees to LEE for premium access to LEE'S social media platform," and that "LEE accepts and seeks online 'tips and donations' from her online viewers." These allegations establish that LEE is engaged in interstate commerce and is in direct competition with HALES in the social media influencer market.

- **Plaintiffs Have Adequately Alleged Commercial Context for False and Misleading Statements**

The Complaint alleges that LEE made false and misleading statements about HALES' business in a commercial context. Specifically, the complaint states that "LEE is using her online advertising YouTube platforms to make false or misleading statements of fact that damage HALES' reputation and sales – by mainly targeting HALES' owner/agent - Mr. HALES." These statements were made in the context of LEE's commercial activities on her YouTube channel and other social media platforms. The Complaint further alleges that LEE's statements "are likely to deceive or have actually deceived consumers, and likely to influence a consumer's purchasing decision or other commercial behavior against HALES." This establishes the commercial nature of LEE's statements and their potential impact on HALES' business.

These allegations are sufficient to state a claim under FDUTPA.

## II.     The Complaint States a Claim Under the Lanham Act

> To state a claim for false advertising under the federal Lanham Act, 15 U.S.C. § 1125(a), the party must allege: (1) the advertisements of the opposing party are false or misleading as to the party's own product of another's; (2) the advertisements actually deceived customers or had the tendency to deceive a substantial portion of the targeted audience; (3) the deception is material, meaning it is likely to influence purchasing decisions; (4) the defendant's advertised products traveled in interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false or misleading advertisements by casually related declining sales or loss of goodwill.

*Third Party Verification, Inc. v. Signaturelink, Inc.*, 492 F. Supp. 2d 1314, 1324

(M.D. Fla. 2007).

- **Interstate Commerce and Competitive Injury**

The Complaint establishes the interstate commerce element required for Lanham

Act claims by alleging that "Because LEE markets and sells her products online and

into multiple states, LEE'S misrepresentations affect interstate commerce." This

allegation satisfies the interstate commerce requirement of the Lanham Act.

The Complaint clearly establishes that LEE is a commercial competitor who made false and misleading statements about HALES' business in a commercial context, affecting interstate commerce and causing competitive injury to HALES.[2]

LEE contends that the Complaint fails to allege false advertising under the Lanham Act because the statements attributed to LEE do not constitute commercial advertising or promotion. This argument is unavailing. This is because contrary to LEE's arguments, Plaintiffs' Lanham Act claims are properly pled. The Complaint alleges that "In connection with LEE business, LEE used in commerce false or misleading descriptions of fact and false or misleading representations of fact, that in commercial advertising or promotion, misrepresented the characteristics, qualities, and the reputation of HALES in HALES' commercial activities." The Complaint specifically alleges that "LEE'S false and misleading statements deceived or have the capacity to deceive consumers into incorrectly believing they are making charitable donations and not for LEE'S personal use and benefit." This allegation directly addresses the commercial nature of LEE's statements and their potential to deceive consumers.

Regarding the commercial nature of LEE's statements and their potential to deceive consumers, under U.S. Federal law, the Lanham Act defines "commercial

_____

[2] These allegations are sufficient to state claims under both FDUTPA and the Lanham Act.

advertising or promotion" as representations made in connection with goods or services that misrepresent their nature, characteristics, qualities, or geographic origin. While the Act itself does not define "advertising" or "promotion," the 11th Circuit (1) requires that the representation must meet the criteria of being commercial speech, made by a competitor, intended to influence consumers, and sufficiently disseminated to the relevant purchasing public, and (2) emphasized that the representations need not be part of a traditional advertising campaign but may include informal types of promotion, provided they are sufficiently disseminated. *Edward Lewis Tobinick, MD v. Novella*, 848 F.3d 935, 950 (11th Cir. 2017). "To be actionable under the Lanham Act, the speech at issue must be commercial in nature." *Futuristic Fences, Inc. v. Illusion Fence, Corp.*, 558 F. Supp. 2d 1270, 1279 (S.D. Fla. 2008). "[C]ommercial speech encompasses not merely direct invitations to trade, but also communications designed to advance business interests . . . ." *Kleiner v. First Nat'l Bank*, 751 F.2d 1193, 1204 n. 22 (11th Cir. 1985).

> In order for representations to constitute "commercial advertising or promotion" under Section 43(a)(1)(B), they must be: (1) commercial speech; (2) by a defendant who is in commercial competition with plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services. While the representations need not be made in a "classical advertising campaign," but may consist instead of more informal types of "promotion," the representations (4) must be disseminated sufficiently to the relevant purchasing public to constitute "advertising" or "promotion" within that industry.

*Alphamed Pharm. Corp. v. Arriva Pharm., Inc.*, 391 F. Supp. 2d 1148, 1164 (S.D. Fla. 2005).

Actionable false statements include: "(1) commercial claims that are literally false as a factual matter; and (2) claims that may be literally true or ambiguous but which implicitly convey a false impression, are misleading in context, or likely to deceive consumers." *BellSouth Adver. & Publ'g Corp. v. Lambert Publ'g*, 45 F. Supp. 2d 1316, 1320 (S.D. Ala. 1999) (citation omitted). It is true that

> Commercial advertising or promotion includes: (1) commercial speech; (2) by a defendant who is in commercial competition with plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services[;] and (4) the representations . . . must be disseminated sufficiently to the relevant purchasing public to constitute "advertising" or "promotion" within that industry.

*Edward Lewis Tobinick, MD v. Novella*, 848 F.3d 935, 950 (11th Cir. 2017) (quoting *Gordon & Breach Sci. Publishers S.A. v. Am. Ins. of Physics*, 859 F. Supp. 1521, 1535-36 (S.D.N.Y. 1994)), cert. denied, *Tobinick v. Novella*, 138 S. Ct. 449, 199 L. Ed. 2d 348 (2017).

But the U.S. Supreme Court has held that a plaintiff need not show that a defendant was in commercial competition with the plaintiff to have standing under the Lanham Act. *Lexmark International, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 S. Ct. 1377, 1394, 188 L. Ed. 2d 392 (2014). According to the U.S. Supreme Court, where, as here, "a party claims *reputational injury from*

*disparagement*, competition is *not required for proximate cause*; and that is true even if the defendant's aim was to harm its immediate competitors, and the plaintiff merely suffered collateral damage (emphasis added)." *Id.* Thus, a Court cannot not dismiss Plaintiffs' Lanham Act claim on this basis. *See Diamond Resorts Int'l, Inc. v. Aaronson*, No. 6:17-cv-1394-ORL-37-DCI, 2018 U.S. Dist. LEXIS 23574, 2018 WL 735627, at *3 (M.D. Fla. Jan. 26, 2018) (declining to dismiss a Lanham Act claim based on similar arguments); *see also Tobinick v. Novella*, 142 F. Supp. 3d 1275, 1280 (S.D. Fla. 2015) (explaining that whether a plaintiff and defendant are competitors "is not dispositive of whether the speech at issue constitute[s] 'commercial advertising or promotion'"), *aff'd sub nom.*, 848 F.3d 935 (11th Cir. 2017).

Section 1125(a) of the Lanham Act "extends only to plaintiffs whose interests fall within the zone of interests protected" by the Lanham Act. *Lexmark*, 572 U.S. 118, 134 S. Ct. 1377, 188 L. Ed. 2d 392. To that end, a false advertising claim under the Lanham Act requires that "a plaintiff . . . plead (and ultimately prove) an injury to a commercial interest in sales or business reputation proximately caused by the defendant's misrepresentations." *Id*. at 1395. The sufficiency of proximate cause allegations turns on whether "the harm alleged has a sufficiently close connection to the conduct the statute prohibits." *Id*. at 1390. When "*a defendant harms a plaintiff's reputation by casting aspersions on its business, the plaintiff's injury flows directly*

*from the audience's belief in the disparaging statements* (emphasis added)." *Id.* at 1393. This means that (1) Plaintiffs adequately alleged that their injuries were proximately caused by Defendant's alleged false and misleading statements, and (2) when viewed in the light most favorable to Plaintiffs, these allegations sufficiently allege injuries flowing directly from Defendant's statements.

Also in *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014), the Court set forth a two-part test for determining whether a plaintiff can sue under the Lanham Act: (1) the "zone-of-interest test" and (2) the "proximate cause requirement." *Id.* at 134.

### The "Zone of Interest Test"

"[T]o come within the zone of interests in a suit for false advertising under § 1125(a), a plaintiff must allege an injury to a commercial interest in reputation or sales." *Id.* at 132. This has been shown, *supra*.

### The "Proximate Cause Requirement"

The "proximate-cause requirement" for statutory standing "generally bars suits for alleged harm that is 'too remote' from the defendant's unlawful conduct." *Id.* at 133. To satisfy this requirement, "a plaintiff suing under § 1125(a) ordinarily must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; and that occurs when deception of consumers causes them to withhold trade from the plaintiff." *Id.* at 134. "At the pleading stage, general

factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss [the Court] presume[s] that general allegations embrace those specific facts that are necessary to support the claim." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (citations omitted).

Thus, when applying these principles combined with over 150 paragraphs of *factual* allegations in the Complaint—including, without limitation, paragraphs 1 through 6, paragraphs 18 through 54, and paragraphs 165 through 172 which address LEE's specific acts, Plaintiffs' Complaint states a *prima facie* claim for false advertising under the Lanham Act. It alleges that LEE is an interstate commercial competitor who made false and misleading statements about Plaintiffs business in a commercial context, including on social media platforms where LEE solicits "donations," and promotes her own business sales. These allegations satisfy the elements of a false advertising claim under the Lanham Act.

## III.    The Complaint States a Claim for Civil Conspiracy

The elements for civil conspiracy require (1) an agreement between two or more parties; (2) to do an unlawful act or to do a lawful act by unlawful means; (3) performance of an overt act in pursuit of the conspiracy; and (4) damage to the plaintiff because of the conspiratorial acts. *See Phillip Morris USA, Inc. v. Russo*, 175 So. 3d 681, 686 n.9 (Fla. 2015). It is not required that each co-conspirator commit an act to further the conspiracy; "rather, it is sufficient that each

conspirator knows about the scheme and aids in some way." *Wyndham Vacation Ownership, Inc. v. Montgomery Law Firm, LLC*, 2019 U.S. Dist. LEXIS 186503, 2019 WL 5394186, at *4 (M.D. Fla. Aug. 8, 2019) (citing *MP, LLC v. Sterling Holding, LLC,* 231 So. 3d 517, 522 (Fla. 3d DCA 2017)).

Florida courts have consistently held that conspirator need not take part in the planning, inception, or successful conclusion of a conspiracy. The conspirator need only know of the scheme and assist in it in some way to be held responsible for all the acts of his coconspirators (emphasis added). *Karnegis v. Oakes*, 296 So.2d 657 (Fla. 3d DCA 1974), *cert. denied*, 307 So.2d 450 (Fla. 1975).  Although thread bare, conclusory allegations will, nonetheless, not survive dismissal, the existence of a conspiracy and an individual's participation in it may be inferred from circumstantial evidence. *Northwestern National Insurance Co. v. General Electric Credit Corp.*, 362 So.2d 120 (Fla. 3d DCA 1978), *cert. denied*, 370 So.2d 459 (Fla. 1979).

As this Court reiterated just last month, an agreement to engage in a civil conspiracy need not be expressed in words and may be implied and understood to exist from the conduct itself. *Otto Candies*, *LLC v. Citigroup Inc*., 2025 U.S. App. LEXIS 11156 (11th Cir. 2025).[3] In *Otto Candies*, the complaint alleged, *inter alia*, a

---

[3] As Plaintiffs' underlying causes of action do not allege fraud, there is no heightened pleading standard and the general plausibility standards of Fed. R. Civ. P. 8(a) control the "agreement" element of the conspiracy claim. *Otto Candies* at 74. Moreover, even under Fed. R. Civ. P. 9(b), a defendant's knowledge can be

conspiracy by defendants to violate RICO. Noting that "'a bare assertion of conspiracy will not suffice' to prove a RICO conspiracy, the Court stated that plaintiffs 'need not offer direct evidence of a RICO agreement, and the existence of conspiracy may be inferred from the conduct of the participants.'" *Id*. at 73 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (emphasis added).

The plaintiffs in *Otto Candies* pleaded six factors to allege that Citigroup agreed to conspire with OSA to engage in a pattern of racketeering activity: (1) Citigroup and OSA's "business relationship"; (2) their mutual financial gain from the racketeering activity; (3) their joint fraudulent misrepresentations and omissions; (4) their dependency on each other's fraudulent conduct to prolong the scheme; (5) Citigroup's then-CEO's "admission" that certain employees were "criminally involved" in the scheme; and (6) Mexican regulators' conclusion that Citigroup employees or agents "knowingly engaged in a fraudulent scheme with OSA." Reversing the district court's order of dismissal, the Court stated that plaintiffs pleaded *ample* circumstantial evidence to support their allegations that Citigroup plausibly agreed to the conspiracy. *Id.* at 75.

---

alleged generally--even if the cause of action involves fraud. Finally, on a motion to dismiss, a court takes the factual allegations in the complaint as true, even if they are subject to dispute, and construes them in the light most favorable to the plaintiff. *Devengoechea v. Bolivarian Republic of Venez.*, 889 F.3d 1213 (11th Cir. 2018).

Although "ample" circumstantial evidence is not required here, Plaintiffs have alleged sufficient facts to demonstrate that LEE and the other defendants knew of a scheme to destroy or "take down" Plaintiffs' business and ability to earn income on YouTube, while they deceived consumers into "donating money" in order to assist PRESTON, but the money is instead being pocketed by LEE in this case and does not even reach PRESTON. The Complaint also alleges sufficient facts demonstrating that LEE assisted in the scheme in some way. Specifically, the allegations regarding LEE, along with necessary context, are summarized and cited in paragraphs 1 through 6, paragraphs 18 through 54, and paragraphs 165 through 172 of the Complaint.

LEE asserts that the civil conspiracy claim fails because it is not based on an actionable underlying tort. This argument is incorrect. As shown *supra*, the Complaint alleges underlying torts, including violations of FDUTPA, false advertising under the Lanham Act, and tortious interference with business relationships. These claims are adequately pled, and the civil conspiracy claim is therefore viable.

The Complaint alleges that LEE was chosen by PRESTON to be PRESTON's podcast or "PR" person as part of the "Anti [What The Hales] Media Ecosystem – the Malicious Conspiracy To Harm Hales.". The Complaint further alleges that collectively, all defendants are engaged in LEE's scheme, targeting Plaintiffs. These

allegations, along with the specific acts attributed to LEE and the other defendants, provide a sufficient factual basis for the legal conclusion that a conspiracy existed.

LEE's argument that "Hales does not allege, even in conclusory terms, that Lee and the other defendants possessed any 'peculiar power of coercion' by virtue of their combination" misunderstands the elements of civil conspiracy under Florida law. Under Florida law, the elements of civil conspiracy do not require a showing of "peculiar power of coercion" when, as here, the conspiracy claim is based on an underlying tort or wrong. In such cases, the conspiracy is not treated as an independent tort but rather as a means to hold all conspirators jointly liable for the underlying tortious act. The essential elements of a civil conspiracy in Florida include: (a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to the plaintiff as a result of the acts done under the conspiracy. *Walters v. Blankenship*, 931 So. 2d 137 (Fla. 5th DCA 2006); *Raimi v. Furlong*, 702 So. 2d 1273 (Fla. 3rd DCA 1997); *Mnp Indus. Llc v. V.*, 2022 Fla. Cir. LEXIS 7117.

Plaintiffs have adequately alleged the elements of civil conspiracy.

## IV.  The Complaint States a Claim for Tortious Interference with Business Relationships.

LEE argues that malice is required for tortious interference and that Hales does not allege facts showing Lee acted with the requisite malice toward any specific business relationship.

LEE is wrong. In Florida, malice is not a required element to be pled in a count for tortious interference with advantageous business relationships. The essential elements of this tort are: (1) the existence of a business relationship under which the plaintiff has legal rights; (2) the defendant's knowledge of the relationship; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship. *Rockledge Mall Assocs., Ltd. v. Custom Fences of S. Brevard, Inc.*, 779 So. 2d 554 (Fla. 5th DCA 2001); *Ethan Allen v.* Allen v. Georgetown Manor, 647 So. 2d 812 (Fla. 1994). While malice is not a necessary element to establish a prima facie case, it may become relevant in certain contexts, such as when a qualified privilege is asserted by the defendant, which is not the case here. In such cases, the plaintiff may need to prove malice to overcome the privilege. *See, i.e., Water & Sewer Utility Constr., Inc. v. Mandarin Utilities, Inc.*, 440 So. 2d 428 (Fla. 1st DCA 1983) (where there was no evidence that appellees' statements were intentional and calculated to injure appellants' business relationships. Absent a showing of malice, appellees' *qualified privilege prevailed*, making summary judgment for appellees proper).

LEE argues that the Complaint fails to identify specific business relationships or allege intentional interference. In *Reed Hein & Associates*, 2018 U.S. Dist. LEXIS 182132, 2018 WL 5279156, the court held that the complaint need not "identify specific contracts with which [the defendants] allegedly interfered" to state a plausible tortious interference claim. 2018 U.S. Dist. LEXIS 182132, [WL] at *4. (citing *Twombly*, 550 U.S. at 544). Contrary to LEE's assertion, there is no requirement at the pleading stage for a complaint to identify the specific contracts and specific timeshare owners at issue. *See, e.g., Drenberg v. FocusA (3)27 On Sur., LLC*, 2013 WL 6768667, *3 (M.D. Fla. Dec. 20, 2013) (agreeing that while claimant "will ultimately have to prove interference with specifically named entities, . . . at the pleading stage their allegations concerning [interference] with ultimately identifiable customers . . . are sufficient," and collecting cases to similar effect); *Arthrex, Inc. v. W. Coast Med. Res., 5 LLC*, 2015 WL 12844946, at *7 (M.D. Fla. Nov. 25, 2015) ("[Plaintiffs have] adequately alleged facts that plausibly give rise to the 'existence' of an enforceable agreement, and that is all that is required."). Florida law requires only that an "identifiable" contractual relationship be alleged. *Ferguson Transp. v. N. Am. Van Lines*, 687 So. 2d 821, 822 (Fla. 1996). The Complaint does that and demonstrates that LEE's argument ignores the detailed allegations in the Complaint, which identify Plaintiffs' business relationships with customers, vendors, and platforms (such as

YouTube and Whatnot, Inc.). Between the more relaxed pleading standards for this case, combined with over 150 paragraphs of *factual* allegations in the Complaint— including, without limitation, paragraphs 1 through 6, paragraphs 18 through 54, and paragraphs 165 through 172 which address LEE's specific acts, Plaintiffs' Complaint further alleges that LEE intentionally interfered with these relationships by making false statements and engaging in a coordinated campaign to harm Plaintiffs' business. These allegations are sufficient to state a claim for tortious interference.

LEE claims that Section 230 of the Communications Decency Act preempts claims based on content *posted* by users on interactive computer services. LEE claim is false and misstates the law. This is because tortious interference claims are preempted under  47 USCS § 230 only when the defendant is merely a service provider of an interactive computer service and not an information content provider, such as LEE. *Roca Labs, Inc. v. Consumer Op. Corp.*, 140 F. Supp. 3d 1311 (M.D. Fla. 2015).

## V.    LEE's Arguments Regarding Protected Speech Are Misplaced

LEE argues that the statements attributed to her are protected under the First Amendment. However, the Complaint alleges that LEE made false statements of fact about Plaintiffs' business practices and reputation. These statements are not

protected speech because they are actionable, as shown *supra*, under FDUTPA, the Lanham Act, and tortious interference law.

## VI.    The Complaint Contains Sufficient Factual Specificity

LEE contends that the Complaint contains conclusory allegations and lacks factual specificity. This argument is without merit. As discussed *supra*, the Complaint provides detailed allegations, including specific statements made by LEE, the context in which they were made, and the harm caused to Plaintiffs. Between the more relaxed pleading standards for this case, combined with over 150 paragraphs of *factual* allegations in the Complaint—including, without limitation, paragraphs 1 through 6, paragraphs 18 through 54, and paragraphs 165 through 172 which address LEE's specific acts, Plaintiffs' allegations satisfy the pleading standards under Federal Rule of Civil Procedure 8(a).

- **Lee's Motion Improperly Attempts To Introduce Materials Outside The Pleadings.**

LEE's motion improperly attempts to introduce materials outside the pleadings, including what appears to be deposition testimony. When considering a motion to dismiss for failure to state a claim, the Court generally cannot consider anything beyond the pleadings. *Lampley v. Brown*, 2019 U.S. Dist. LEXIS 146518 (M.D. La. Aug. 9, 2019).

As noted in Plaintiffs' Response to Defendant MATZKIN's Motion to Dismiss (Doc. 85), such motions filed as a responsive pleading at the early stages of the proceeding are inappropriate.

- **Lee's Statement to the Court That Lee was Never Served with the Amended Complaint is Recklessly False and Subject to Sanctions**

LEE that she was "served with the original Complaint that was filed on two 2/23/25" and that "Plaintiff was never served Defendant Lee (sic) with the Amended Complaint" (Doc. 87 at ¶ 4). This has been proven to be false. (Doc. 90).

An attorney's reckless misstatements of law and fact, when coupled with an improper purpose (such as an attempt to influence or manipulate proceedings in one case to gain a tactical advantage in another), are sanctionable under the court's inherent power. *Fink v. Gomez*, 239 F.3d 989 (9th Cir. 2001). If a party makes a materially false statement with bad faith or for an improper purpose, sanctions may be imposed by the court under its inherent authority. *Id.*

Inasmuch as LEE has made a materially reckless false statement (as shown in Doc. 90), this Court should exercise its inherent authority to impose sanctions, including, without limitation, significant attorney's fees incurred as a result of LEE's acts.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny LEE's Amended Motion to Dismiss in its entirety. Should the Court grant LEE's

motion, it should do so without prejudice to afford Plaintiffs an opportunity to amend to address any perceived defect. *See Thomas v. Town of Davie,* 847 F.2d 771, 773 (11th Cir. 1988).

Respectfully submitted,

SHOCHET LAW GROUP
SHOCHET APPELLATE LLC
Attorneys for Plaintiffs
409 N. Main Street
Trenton, FL 32693

By*: /s/ Randall Shochet*
Randall ("Randy") Shochet, Esq.
FBN.: 959421
attorneys@counsel.insure

## CERTIFICATE OF COMPLIANCE

I HEREBY CERTIFY that this document complies with the applicable word count limit requirement of Local Rule 7.1. The word count is less than 7000 words. It has been calculated by the word-processing system and excludes the content authorized to be excluded under the Rule.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on September 2, 2025, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served on this day on all counsel of record, via email to the Service List below.

By: /s/ *Randall Shochet*

## SERVICE LIST

Cameron L. Atkinson, Esq.
Atkinson Law, LLC
Attorney For MATZKIN
1000 Lafayette Blvd., Fl. 11
Bridgeport, CT 06604
catkinson@atkinsonlawfirm.com

Christopher Joseph Gage, Esq.
Banker Lopez Gassler PA
Attorney for HELM
501 E KENNEDY BLVD, STE 1700
TAMPA, FL 33602
service-cgage@bankerlopez.com

Lynette Michelle Lacy Alexis Preston, pro se

John Cook, pro se

Marla Hughes, pro se

Lisa Lee, pro se

Robert J. Keszey, pro se

Raymond G. Bonebrake, Jr., pro se