UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| DANESH NOSHIRVAN, an individual | ) |
| | ) |
| Plaintiff | ) Civ. Action: 2:23-CV-01218-JES-KCD |
| | ) |
| v. | ) |
| | ) |
| JENNIFER COUTURE, an individual, RALPH GARRAMONE, M.D., an individual, etc. et al. | ) |
| | ) |
| Defendant. | ) |

## OBJECTIONS UNDER RULE 72 OF THE FEDERAL RULES OF CIVIL PROCEDURE

RICHARD LUTHMANN declares pursuant to 28 U.S.C. §§ 1746 and under penalty of perjury under the laws of the United States of America that the following is true and correct:

### CONCISE STATEMENT OF THE PRECISE RELIEF REQUESTED

1. My name is Richard Luthmann, and I am a professional investigative journalist. I reside in the Middle District of Florida.

2. I am not an attorney, was never a member of the Florida Bar, and I ask for a special solicitude offered to *Pro Se* Litigants, particularly in my good faith attempts to comply with the Local Rules.

3. On January 17, 2025, the Magistrate Judge issued an Order where I sought relief from a discovery subpoena issued by Plaintiff Danesh Noshirvan. (Doc. 219.) See the attached **EXHIBIT "A."**

4. Concise relief requested (as stated in the moving papers) and these Objections under Rule 72 of the Federal Rules of Civil Procedure:

a. Consideration of the issues of law and fact by the Article III Judge, particularly justiciability.

b. Issue a protective order to prohibit further abusive discovery practices by Plaintiff and Plaintiff's counsel, including any attempts to subpoena journalistic materials or engage in harassment tactics designed to chill constitutionally protected activities without prior Court approval because of Noshirvan's historically documented poor behavior.

c. Full consideration of all issues of facts and conclusions of law. Because Magistrate Judge Dudek did not make any finding of fact that I am a journalist, he could not properly decide any of the issues in the original motion. The whole thing needs to be redone because of the First Amendment implications.

d. Alternative relief: the right/commission to use "First Amendment Protectors" who will use extrajudicial means to defend the Constitution.

e. Alternative relief: A declaration of Court impotence so that I can seek Executive Branch action (if this is genuinely a non-justiciable controversy, that would be my relief).

**STATEMENT OF THE BASIS FOR THE REQUEST**

5. Rule 72 of the Federal Rules of Civil Procedure discusses Objections. "Motions" and "Objections" are discussed under the Local Rules. That is an important distinction, as you will see below.

6. Magistrate Judge's Order denied my motion as MOOT, to the extent I sought to quash the subpoena (or any similar form of injunctive relief) because the subpoena was withdrawn. (Doc. 228-17 at 6.)

2

7. The Magistrate Judge's Order was never served on me. I do not believe the period has begun to run because I do not receive regular notices on the CM-ECF system. Nonetheless, I raised the issues concerning the objections herein in an email dated January 25, 2025, which Magistrate Dudek's Chambers responded to on January 27, 2025. See the attached **EXHIBIT "B."**

8. The communication said *[in pertinent part]*:

   "And to the extent you seek relief from the Court, **file a motion**."
   **[emphasis added]**

9. The Magistrate Judge's statements on that date confused me because I was unsure what the procedure was after the Magistrate Judge's directive to "file a motion."

10. I was prepared to file <u>objections</u> with the Court. However, since the Court said to "file a motion," I thought Rule 60 was intimated, not Rule 72.

11. As I am not an attorney, I do not have access to Westlaw or immediate legal research. Upon due diligence after being told to "file a motion," I realized that the advice offered by the Magistrate Judge was erroneous:

    "As a preliminary matter, the Court believes that Movants' reliance on Rule 60(b) is misplaced; Rule 60(b) is not the proper vehicle by which to obtain the relief that Movants' seek. See Glendora v. Marshal, 947 F. Supp. 707, 718 n.3 (S.D.N.Y. 1996) (Rule 60(b) "is not the vehicle for challenging a magistrate judge's discovery ruling.") Rule 60(b) provides for relief from a "final judgment, order, or proceeding." (emphasis added). A magistrate judge's order on a discovery matter is not a final order. See Hadjiyannis v. Southeastern Pennsylvania Transp. Auth., Civ. A. No. 89-1499, 1990 U.S. Dist. LEXIS 13623, 1990 WL 156460, at *1 (E.D. Pa. Oct. 10, 1990) (stating that motion challenging magistrate judge's order denying enlarged discovery period and excluding experts not proper under Rule 60(b) because the Rule "is only intended to apply to final judgments"). Under Federal Rule of Civil Procedure 72, a movant unsatisfied with a magistrate judge's non-dispositive discovery order must file objections to that order to the district judge or waive its objections. See Fed. R. Civ. P. 72 ("Within 10 days after

3

> being served with a copy of the magistrate judge's order, a party may serve and file objections to the order; a party may not thereafter assign as error a defect in the magistrate judge's order to which objection was not timely made."); see also Smith v. Sch. Bd. of Orange County, No. 06-16624, 487 F.3d 1361, 2007 WL 1583873, at *3 (11th Cir. June 4, 2007) ("[W]here a party fails to timely challenge a magistrate's nondispositive order before the district court, the party waive[s] his right to appeal those orders [to an appellate court].")." In re Aleph Inst., No. 06-61788-CIV-MARRA/SELTZER, 2007 U.S. Dist. LEXIS 110668, at *5-6 (S.D. Fla. July 3, 2007).

12. I was never "served" with the January 17, 2025, Order by Noshirvan nor any party to this matter wherein I am a movant.

13. I object and disagree with the Magistrate Judge's Order's findings of fact and conclusions of law. I want the Article III U.S. Judge to rule on these matters. I seek proper relief consistent with the law and to create a complete record on appeal.

14. The Magistrate Judge's Order stated: "When [Noshirvan] withdrew th[e] subpoena[], releasing [Luthmann] from testifying, there remained no live controversy upon which the Court could grant meaningful relief."

15. I disagree with the Magistrate Judge's Order's determination of the non-justiciability of the matter presented for several reasons. I raised these issues in my January 25, 2025 email.

16. First, I make the point that I am a journalist. The Magistrate Judge's Order avoids a factual determination on this issue. Still, it is crucial for all things that follow therefrom, particularly the factors the Court is bound to address in the applicable legal rules concerning standing, justiciability, injury-in-fact, etc.

17. I note that administrative/procedural reasons do not outweigh the constitutional rights of the press. See, e.g., *Mathews v. Eldridge,* 424 U.S. 319 (1976) (Procedural due process must be evaluated by using a balancing test that accounts for the interests of the affected individual, the

4

interest of the government in limiting procedural burdens, and the risk of erroneously curtailing individual interests under the existing procedures, as well as how much additional procedures would help reduce the risk of error).

18. I am a journalist, which is of primary significance. Understanding the personal injury to me, while cognizable, is immaterial to the more significant issues the federal courts are bound to entertain in our constitutional structure. For mere torts, the doors of the state courts are open to me, and I would not waste the Court's time with trivialities.

19. A factual determination that I am a journalist is necessary to properly evaluate the constitutional and fundamental issues before the Court. The Magistrate Judge's Order never made this determination.

20. The injury here is to the free press and the institutional integrity of the federal courts. It can be stated no more succinctly than this: Noshirvan served me with a subpoena. He did so *because* I am a member of the press, and I am covering him unfavorably, in his opinion

21. Noshirvan's actions are chilling as against the press. Not only me but any and every reporter has to worry that this Court will sanction Noshirvan's use of the laws as a weapon against coverage that Noshirvan disapproves of. In America, no man is king; We kneel to God and God alone.

22. I will not sanction the Courts for turning a blind eye while Danesh Noshirvan uses a bad-faith legal process to make the press kneel before him. Nor should this Honorable Court.

23. Noshirvan and his attorney, Mr. Chiappetta, designed that I was served with the Bad Faith Subpoena inside Magistrate Judge Dudek's courtroom seconds after the Magistrate Judge left the bench. U.S. Courts Security Officer Pena sanctioned the service of the subpoena. The U.S. District Courtroom and courthouse in Fort Myers, Florida, is no longer a place of justice.

Instead, it is a playground, a back alley where anything can happen. I do not feel safe covering this story as a member of the press in that building with Mr. Noshirvan as a litigant.

24. And it's not because of Noshirvan's dangerousness *per se*. I would have no problem covering court proceedings related to organized crime or members of *La Cosa Nostra*. The dangerousness comes from the fact that the courts offer no protection or consequences for the actions of Mr. Noshirvan and his counsel.

25. As a result, I cannot effectively cover this case and the legal and factual issues involved in how I would like to be present at the courthouse and observe.

26. My worst fears were confirmed on January 24. According to several protected sources, an individual in a suit was lying in wait in the federal court with two copies of a "Confidential Document" with a blue cover page and my name on it. The man was sitting outside Magistrate Judge Dudek's courtroom for portions of the day. Then he came and sat in the courtroom's gallery, behind Mr. Chiappetta, later in the afternoon session.

27. I believe Mr. Noshirvan employed the man in the suit, and he was lying in wait for me in the courtroom. I don't know if this is yet another Bad Faith Subpoena or some other similar abuse process. It's not beyond Mr. Noshirvan or his counsel to purvey dishonesty to local law enforcement to obtain a baseless order of protection whose only purpose is to further chill press coverage.

28. I detail a solution below: "First Amendment Protectors."

29. Not only is this legally and constitutionally wrong, but it is also dangerous. It is dangerous in the academic sense because it invokes extrajudicial remedies consonant with natural law cited by Blackstone and Locke, which are the fundamentals of the Constitution that ought to be wielded in defense of the free press ("No enactment of man can be considered law unless it

6

conforms to the law of God."; "For where there is no Judicature on Earth, to decide Controversies, amongst Men, *God* in Heaven is *Judge:* He alone, 'tis true, is Judge of the Right. But *every Man* is *Judge* for himself, as in all other Cases, so in this …")

30. But also, the entire underpinnings of our constitutional structure become unmoored when we allow Noshirvan. A man who has previously doxxed Justices of the U.S. Supreme Court, providing their home addresses, places of worship, and children's schools to his millions of followers because of the *Dobbs* opinion. He did this because the Court's reasoning was, like Luthmann's press coverage, something Noshirvan did not like.

31. I firmly believe that Noshirvan's actions against the U.S. Supreme Court Justices were knowingly dangerous threats within the meaning of 18 U.S.C. § 115 and other sections of applicable law. Chief Justice Roberts made the dangers of doxxing crystal clear on page 7 of the 2024 Year-End Report on the federal judiciary. See

    https://www.supremecourt.gov/publicinfo/year-end/2024year-endreport.pdf

32. To date, no action has been taken against Noshirvan. But I have taken the liberty of sending a copy of this submission and related materials to the newly-installed 87th Attorney General of the United States, the Honorable Pamela Jo Bondi, a Great American and Floridian, for the new, non-WOKE Department of Justice's consideration.[1]

33. I have also copied the President of the United States because I firmly believe that, with Noshirvan and other WOKE sickos who would mutilate children and/or Israel-hating Iranian

---

[1] These materials also include Nosirvan's apparent violations of 18 U.S.C. §§ 2, 1343, 2257-2257A, 2261A; 22 U.S.C. § 611(c); 28 C.F.R. § 5.100 and other applicable laws and regulations; in addition to his apparent grooming of children his own children for transgender surgeries in violation of the President's January 28, 2025, Executive Order, and the fear that Noshirvan may abscond from the jurisdiction with his or other children to engage in Chemical or Surgical Mutilation as therein defined.

7

"Anchor Babies" like him in prison – whether on U.S. soil or Gitmo - we will Make America Great Again.

34. Noshirvan seeks to continue to do the press (and the courts) injury when they do things he disagrees with. The threat posed by Noshirvan against a free press – all journalists and reporters who would cover this case and not cowtail to Noshirvan's talking points cannot be sanctioned by this Court through the abuse of process. It chills free speech and the free press. No Law means No Law.

35. I bring the Court's attention to the legal doctrine of "capable of repetition, yet evading review," in the context of standing and justiciability. This doctrine, recently upheld in *Kingdomware Techs., Inc. v. United States* (2016), underscores the need to adjudicate disputes that are likely to recur but avoid judicial scrutiny due to procedural loopholes.

36. All the world can reasonably expect Mr. Noshirvan and his lawyer to re-serve the Bad Faith subpoena on me as a journalist. It was announced in the Magistrate Judge's Order at Footnote 3, as it was considered relief within the four corners of the Order:

> Noshirvan withdrew the subpoena because of a "clerical error with regards to the place of compliance." (Doc. 228 at 8.) Yet he now asks the Court to "modify the subpoena and order Luthmann to produce the requested documents." (Id. at 11.) This request is procedurally inadequate because it comes in a response brief. "[I]t is improper to seek affirmative relief in a response brief." Partners Insight, LLC v. Gill, No. 2:22-CV-739-SPC-KCD, 2023 WL 5352310, at *5 (M.D. Fla. Aug. 21, 2023). "This requirement isn't a mere administrative exercise. It ensures all parties—and, crucially, the Court—are aware of such requests and able to respond in full." Id. Regardless, the Court declines to belatedly correct Noshirvan's mistake given Luthmann has been told he need not comply with the subpoena.

37. All the world can reasonably expect Mr. Noshirvan and his lawyer to serve a Bad Faith subpoena on any journalist who issues coverage Noshirvan does not like.

8

38. Everyone knows Mr. Noshirvan is not using the subpoena to obtain evidence. Otherwise, he would return to the Defendant and other third parties to seek the information. He is using abusive legal processes to try to shut down press coverage.

39. Mr. Noshirvan can't help himself. He will never magically stop doxxing innocent people, including public servants, bullying, defaming, and criminally threatening those who oppose them, and compromising American institutions like the federal judiciary and the Fourth Estate.

40. By failing to entertain a protective order in the face of the reasonably foreseeable harm that Noshrivan poses as a litigant using the Court's subpoena power to harass, the Court sanctions Noshiravn's assault of the press. It also tacitly sanctions the doxxing of the federal judiciary, including the Justices of the U.S. Supreme Court.

41. Knowing full well these facts, the Court should either 1) see this matter as justiciable or 2) declare the U.S. Courts impotent to protect the free press from Doxxers and Bad Faith litigants within the confines of the Constitution and allow journalists the right to proceed with "extrajudicial remedies" against interlopers like Noshirvan.[2]

## LEGAL MEMORANDUM SUPPORTING THE REQUEST

42. There is an exception to the mootness doctrine when the action being challenged by the lawsuit is capable of being repeated and evading review, that exception is narrow and applies only in exceptional situations. In particular, the exception can be invoked only when (1) there is a reasonable expectation or a demonstrated probability that the same controversy will recur involving the same complaining party, and (2) the challenged action is in its duration too short

---

[2] I'm looking for the Judicial Equivalent of a Letter of Marque. However, the Court should let me know if it is more appropriate to go to the Executive Branch for such relief. The separation of powers makes it ripe to go to the Court first to declare impotence before Executive Branch relief is sought.

9

to be fully litigated prior to its cessation or expiration. The remote possibility that an event might recur is not enough to overcome mootness, and even a likely recurrence is insufficient if there would be ample opportunity for review at that time. Kingdomware Techs., Inc. v. United States, 579 U.S. 162, 162, 136 S. Ct. 1969, 1971 (2016).

43. The Magistrate Judge has already demonstrated the probability that the same controversy will recur involving the same complaining party – in denying the relief requested by Noshirvan to amend the subpoena. He won't give up.

44. Additionally, there is no ample time for review that will not chill the practice of journalism and comply with the Press Clause of the First Amendment. The challenged action is, in its duration, a hornbook case of "too short to be fully litigated prior to its cessation or expiration." That is evident because we are dealing with press coverage about a subpoena that remains a threat and has chilled journalistic coverage of Noshirvan's case for over two months.

45. The Court should reach the merits here. The Court can easily fashion a protective order that would be reasonable given the circumstances and would have Noshirvan do something highly cavalier for him and Mr. Chiappetta – FOLLOW THE FEDERAL RULES OF CIVIL PROCEDURE.

46. I want a Protective Order that would compel Noshirvan – because of historically documented poor behavior of abusive tactics - to come to the Court before he issues any subpoenas to members of the press.

47. This isn't an outlandish request, particularly in this case. The Magistrate Judge is already serving as a glorified "UPS Store" for Mr. Chiappetta because he can't seem to get a thumb drive delivered to his office. After three transmissions and someone from Mr. Chiappettta's office allegedly signing for the packages, they still "don't have it." Magical.

10

48. If mailed discovery pre-clearance is suitable for ambulance-chaser lawyers, why isn't subpoena pre-clearance good for members of the press?

49. The law is clear. Federal courts, including the Eleventh Circuit, recognize a qualified privilege for journalists, shielding them from compelled disclosure of unpublished materials. This protection applies to both criminal and civil proceedings. United States v. Capers, 708 F.3d 1286, 1303 (11th Cir. 2013); United States v. Caporale, 806 F.2d 1487, 1504 (11th Cir. 1986). To overcome this privilege, the party seeking disclosure must meet a stringent three-pronged test by clear and convincing evidence:

    a. **Relevance:** The materials must be highly relevant to the litigation.

    b. **Necessity:** The materials must be necessary for the proper presentation of the case.

    c. **Availability:** The materials must not be obtainable from other sources.

McCarty v. Bankers Ins. Co., 195 F.R.D. 39, 47 (N.D. Fla. 1998). Courts have routinely quashed subpoenas to journalists when alternative sources of information are available. In re DaimlerChrysler AG Sec. Litig., 216 F.R.D. 395, 403 (E.D. Mich. 2003) (quashing subpoena for journalist's notes, emphasizing that journalists are not the first line of discovery).

50. The First Amendment underpins the Qualified Journalist's Privilege. The Supreme Court has held that the need to protect the free flow of information and shield journalists from undue intrusion outweighs broad discovery demands. Herbert v. Lando, 441 U.S. 153, 177 (1979); Branzburg v. Hayes, 408 U.S. 665, 707 (1972).

51. I am asking for the Court to issue a protective order and have Noshrivan make a showing of relevance, necessity, and availability for any materials he would want to subpoena from ANY MEMBER OF THE PRESS, consonant with the law and consonant with the 11th Circuit precedent.

52. Alternatively, if the Court cannot issue a protective order, I would want the Court to admit that there is no fundamental protection of the press under the law through a protective order or any other court-based process against Danesh Noshirvan. So, I would ask the Court to grant me and any member of the press a commission to use extrajudicial means to defend the rights of the Free Press. My idea would be to hire one of the many newly retired federal agents walking around with a legal firearm to be my bodyguard and a protector of the First Amendment and the Free Press. Suppose Norshirvan, Chiappetta, or any other of their cronies came with any abusive process repugnant to the First Amendment. In that case, these "First Amendment Protectors" will be legally empowered to defend the Free Press consonant with natural law. Noshirvan won't be doxxing or harassing anyone.

53. If the Courts can't do anything and are genuinely impotent, after I seek final relief on the justiciability issue from the 11th Circuit and SCOTUS, maybe while that is happening, I will go to the Executive Branch. As a matter of Executive Order, the President can empower "First Amendment Protectors," and I believe I need one to continue covering Noshirvan, not for me, but to ensure that the rights of the press remain intact. I will not cede one iota of the constitutional rights of the press to a doxxer and bad-faith abuser of the legal process like Danesh Noshirvan. He will find no quarter here.

## CONCLUSION

54. For the reasons stated above, the Court, an Article III Judge under the U.S. Constitution, should sustain the objections herein and specifically resolve the justiciable issue and threat against the Free Press. Alternatively, the Court should declare its fundamental importance, allowing for requests for Executive Branch action.

Dated: Naples, Florida
February 10, 2025

_____
RICHARD LUTHMANN
4199 Los Altos Court
Naples, FL 34109
Tel: (239) 631-5957
Email: richard.luthmann@protonmail.com

TO: Parties in the case (Via Electronic Submission)
Hon. Donald J. Trump, 47th President of the United States
Hon. Pamela Jo Bondi, 87th Attorney General of the United States

**Local Rule 3.01(g) Certification**

I certify that these are OBJECTIONS under Rule 72 and not a MOTION:

(A) The objector is not a movant and has no duty to with the opposing party,

(B) The parties have not agreed on the resolution of all or part of the objections, and

(C) The objections are assumed to be opposed, and no conference was required under the plain language of Rule 3.01(g).

Dated: Naples, Florida
February 10, 2025

_____
RICHARD LUTHMANN
4199 Los Altos Court
Naples, FL 34109
Tel: (239) 631-5957
Email: richard.luthmann@protonmail.com

13