AUG 26 2025 AM9:26
FILED - USDC - FLMD - FTM

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

---------------------------------------------------------

DANESH NOSHIRVAN, an individual )
internet terrorist, )
                      **Plaintiff** )   **Civ. Action: 2:23-CV-01218-JES-KCD**
                              )
v. )
                              )
JENNIFER COUTURE, an individual, )
RALPH GARRAMONE, M.D., an )
individual, etc. et al., )
                              )
                **Defendant.** )

---------------------------------------------------------

## MOVANT RICHARD LUTHMANN'S MOTION UNDER FRCP RULE 60(b) FOR RECONSIDERATION OF THE AUGUST 18, 2025, OPINION AND ORDER (DOC. 459)

### INTRODUCTION

    Richard Luthmann, a non-party investigative journalist, moves under Federal Rule of

Civil Procedure 60(b) for relief from this Court's Opinion and Order dated August 18, 2025

(Doc. 459), which overruled his objections (Doc. 252) to the Magistrate Judge's January 17,

2025, discovery Order. In that prior Order, the Magistrate Judge denied Mr. Luthmann's

request for sanctions and other relief as moot after Plaintiff Danesh Noshirvan withdrew a

subpoena that had been served on Mr. Luthmann.

    This Court's August 18 Opinion likewise declined to reach the merits of Mr.

Luthmann's claims of journalistic privilege and bad-faith harassment, concluding the issues

were moot and the "capable of repetition yet evading review" exception did not apply.

    Mr. Luthmann respectfully submits that the Court's ruling was premised on clear errors

of fact and law and that reconsideration is necessary to prevent manifest injustice. The full

factual background is set forth in his Rule 72 Objections (Doc. 252), which detailed the abusive

nature of the subpoena, the applicability of the First Amendment journalist's privilege, and the

need for sanctions against Plaintiff's counsel, Mr. Nicholas Chiappetta. The Movant assumes the Court's familiarity with the facts of the case.

For the Court's convenience, key points of those objections are summarized herein. In brief, Mr. Luthmann – a freelance journalist unconnected to any party except through his journalistic inquiries[1] – was served with a facially defective subpoena by Mr. Chiappetta without prior notice, seeking broad records as part of an effort to harass and intimidate a member of the press. Although the subpoena was withdrawn after service in Judge Dudek's courtroom seconds after the Judge left the bench (and only after Mr. Luthmann consulted counsel and prepared an emergency motion), the harm was done: Mr. Luthmann was forced to expend resources and experienced a chilling effect on his reporting. He sought sanctions and a protective order to prevent similar future abuse. Judge Dudek, however, denied sanctions and deemed all other relief moot in light of the withdrawal, and this Court's August 18 Order upheld that result.

Reconsideration is warranted on multiple grounds. First, the Court's Order improperly relied on unsupported assertions by Mr. Chiappetta, despite his documented history of bad-faith conduct in this case. Second, the Court failed to address the First Amendment journalist's privilege recognized in the Eleventh Circuit, an oversight of controlling law. Third, the Court misapplied the "capable of repetition, yet evading review" exception by effectively requiring near certainty of recurrence, in conflict with the correct standard. Fourth, the Court overlooked Supreme Court precedent establishing that a sanctions request remains live and justiciable even

---

[1] "The communications certainly suggest some relationship between Couture and Luthmann, Trainor and Camp, and Garramone, Couture, and Camp. But not more." August 12, 2025, Opinion and Order at p. 16. Luthmann is additionally a patient of Dr. Garramone's medical practice, and has, during the pendency of this matter, bonded with Dr. Garramone, Jennifer Couture, and other "Victims of Danesh" engaged in the process of healing the traumatic injury caused by Danesh Noshirvan's intentional, malicious, harassing, and in many instances criminal speech and non-speech campaigns.

if the underlying matter is moot. Fifth, allowing a litigant to evade accountability through a "serve-and-withdraw" subpoena tactic works a manifest injustice on the free press, which this Court should not countenance.

For these reasons, as elaborated below, Mr. Luthmann respectfully asks the Court to reconsider and vacate its August 18, 2025 Order (Doc. 459) as to the portion of that ruling that addresses the issues raised herein. He requests that the Court sustain his objections (Doc. 252) and grant appropriate relief, including recognizing his status as a journalist entitled to privilege, addressing the merits of his motion (Doc. 219), and imposing sanctions or other remedies as justice requires.

## I.  The Court Relied on Assertions by Sanctioned Counsel Made in Bad Faith.

The August 18 Order's mootness analysis rests heavily on factual representations by Mr. Noshirvan's counsel, Mr. Chiappetta – specifically, the claim that serving Mr. Luthmann with another subpoena would be "near impossible" because Mr. Luthmann was allegedly elusive or not at his residence. The Court accepted this assertion and concluded that there was no "demonstrated probability" Mr. Luthmann would face a subpoena again. Respectfully, crediting Mr. Chiappetta's say-so was error.

**Just days before, on August 12, 2025, this Court had publicly reprimanded Mr. Chiappetta for engaging in bad-faith litigation tactics in this very case.** In a comprehensive sanctions order, the Court found that Mr. Chiappetta "acted in bad faith" and violated his professional responsibilities, warranting sanction under the Court's inherent powers. Indeed, the Court's order of August 12 specifically "publicly reprimanded" Mr. Chiappetta for his misconduct.

Given that context, Mr. Chiappetta's unsworn assertions about the difficulty of serving Mr. Luthmann should have been viewed with extreme skepticism. A lawyer who has been found to litigate in bad faith cannot be considered a reliable source of factual representations

3

in the case. Yet the mootness ruling effectively adopted Mr. Chiappetta's litigating position (that future subpoenas were unlikely) without any evidentiary hearing or verification beyond his statements to the Magistrate.

This was improper. Courts should not rely on a sanctioned attorney's assertions to decide substantive rights, especially where those assertions conveniently insulate that attorney's conduct from review. By doing so, the Court inadvertently rewarded Mr. Chiappetta's bad faith: his tactic of quickly withdrawing the subpoena (to avoid an adverse ruling) succeeded in shielding his conduct from scrutiny, based on his own self-serving claim that the situation would not repeat.

Mr. Luthmann submits that the Court should reconsider its mootness finding in light of Mr. Chiappetta's demonstrated lack of credibility and candor. At minimum, the Court should require objective evidence (or an affidavit from Mr. Noshirvan himself) before assuming the risk of recurrence is nil. The record instead suggests that Mr. Chiappetta was maneuvering to evade judicial review.

In fact, as noted in Mr. Luthmann's objections, Plaintiff initially attempted to "amend" or re-serve the subpoena after withdrawal, indicating an ongoing desire to obtain Mr. Luthmann's records. The Magistrate Judge denied that gambit, but it underscores that Plaintiff "won't give up" the quest to burden Mr. Luthmann. In short, the Court's reliance on Mr. Chiappetta's assertions was misplaced and warrants re-examining the mootness conclusion.

## II.     The Court Did Not Address the Eleventh Circuit's Journalist's Privilege.

The August 18 Order entirely omitted discussion of the First Amendment qualified journalist's privilege, even though Mr. Luthmann's objection squarely raised it and the issue is critical to this case. This omission is a clear error of law. The Eleventh Circuit has unequivocally recognized a qualified privilege for journalists to protect their newsgathering from compelled disclosure. *See, e.g., United States v. Capers*, 708 F.3d 1286, 1303 (11th Cir.

4

2013) (noting the Eleventh Circuit "recognizes a qualified privilege for journalists, allowing them to resist compelled disclosure of their professional newsgathering efforts.

This privilege shields reporters in both criminal and civil proceedings," citing *United States v. Caporale*, 806 F.2d 1487, 1504 (11th Cir. 1986); *Miller v. Transamerican Press, Inc.*, 621 F.2d 721, 726 (5th Cir. 1980)); *see also Gregory v. Miami-Dade Cnty.*, No. 13-21350-CIV, 2015 WL 3442008, at \*3 (S.D. Fla. May 28, 2015) (summarizing Eleventh Circuit law and noting the privilege "applies whether the information was published or not" and can only be overcome by a "heavy burden" of clear and convincing evidence).

Mr. Luthmann has consistently maintained that he is a journalist who was targeted for his reporting on this case. His Rule 72 Objections devoted significant attention to establishing his status as "a professional investigative journalist" and arguing that the journalist's privilege applied. Notably, even the Magistrate Judge's underlying order acknowledged that Mr. Luthmann *"self-identifies as a professional investigative journalist,"* though the magistrate declined to make a definitive finding on that point due to mootness.

By failing to engage with this issue, the Court's Order did not apply the correct legal framework. The proper analysis, under Eleventh Circuit precedent, would be: (1) determine if Mr. Luthmann qualifies as a journalist engaged in newsgathering (the evidence indicates he does), and if so, (2) require the party seeking information (Mr. Noshirvan) to meet a three-part test to overcome the privilege – namely, showing the information is highly relevant, necessary to the case, and unavailable from alternative sources.

Here, Mr. Noshirvan made no showing whatsoever to overcome the journalist's privilege. In fact, he withdrew the subpoena the day after it was issued, implicitly conceding that it was indefensible. The record is devoid of any attempt to demonstrate that Mr. Luthmann's records were *critical* and *unobtainable elsewhere*, as required to pierce the privilege.

5

Thus, had the Court addressed the privilege on the merits, the only proper conclusion would be that the subpoena was an unjustified intrusion into First Amendment freedoms. The Eleventh Circuit's robust protection of journalists exists precisely to prevent what happened here – a litigant using the discovery process to harass a reporter and deter coverage. By overlooking this binding authority, the Court's Order worked a substantial injustice.

Reconsideration should be granted so that the Court can explicitly apply the journalist's privilege and vindicate the important interests it protects. Even if the subpoena itself has been withdrawn, a ruling recognizing the privilege (and perhaps imposing a protective order against similar subpoenas absent court approval) is critical to uphold the rule of law and deter future abuses.

Mr. Luthmann should not have been left in an indeterminate legal position; he and the entire free press in the United States of America is entitled to the Court's acknowledgment that his journalism is protected by the First Amendment in this context.

### III.   The Court Misapplied the "Capable of Repetition, Yet Evading Review" Exception.

The Court found that the exception to mootness for issues capable of repetition yet evading review did not apply, primarily because it perceived no "demonstrated probability" of recurrence and noted that if another subpoena were served, the court would have time to address it. In so ruling, the Court effectively set an unduly high bar – approaching a requirement of near certainty – for the exception to apply. This, we submit, was legal error under the governing standard.

It is true that the Eleventh Circuit describes the capable-of-repetition exception as "narrow" and only to be applied in "exceptional situations." The two-prong test requires "(1) a reasonable expectation or a demonstrated probability that the same controversy will recur involving the same complaining party, and (2) that the challenged action is of a duration too

short to be fully litigated before cessation" (quoting *Al Najjar v. Ashcroft*, 273 F.3d 1330, 1336 (11th Cir. 2001); *United States v. Sec'y, Fla. Dep't of Corr.*, 778 F.3d 1223, 1229 (11th Cir. 2015)). Crucially, the standard is a "reasonable expectation" of recurrence – not absolute certainty.

The Eleventh Circuit cautions that a purely "remote" possibility of recurrence is not enough, and even a likely recurrence will not suffice if the issue could be reviewed in time in a future case. But the flip side is that a plaintiff (or here, movant) need not show the conduct will recur with guarantee; only that there is a reasonable chance it *could* recur for the same party.

Here, Mr. Luthmann maintains there was at least a reasonable expectation of repetition. By the time he filed his objections, Plaintiff had already tried to reissue the subpoena (with "clerical errors" corrected) or otherwise persist in seeking the documents. Mr. Luthmann noted in his objections that *"He [Noshirvan] won't give up"* his pursuit of press records.

That prediction is hardly far-fetched – Plaintiff's animosity toward Mr. Luthmann's reporting is what sparked the subpoena in the first place, and absent a court ruling on the merits, nothing stops this Plaintiff (or a similarly situated future litigant) from attempting similar tactics in this case or any future case (for example, subpoenaing other journalists or even Mr. Luthmann again in bad faith).

The Court focused on Mr. Chiappetta's statement about the difficulty of service, but difficulty in effectuating service is a far cry from an assurance that no future subpoenas will issue, chilling the exercise of the free press. Indeed, if Plaintiff truly believed Mr. Luthmann was "elusive," one might expect even more aggressive attempts to track him down for service in the future, not fewer.

Moreover, the very nature of the controversy – a subpoena issued and subsequently withdrawn – rendered it inherently incapable of full litigation before being mooted. This

scenario is textbook "evading review." By the time Mr. Luthmann could draft an emergency motion, the subpoena was pulled, and the Magistrate (and then this Court) declined to reach the merits.

If the capable-of-repetition exception does not apply here, then a litigant in Plaintiff's position has essentially found a recipe to evade court scrutiny entirely: serve a subpoena on a non-party journalist, and if they resist, withdraw it immediately to avoid a ruling (while reaping intimidation value in the interim). The exception exists to prevent such strategic mooting of live disputes.

The Court's reasoning suggests it believed any future subpoena could be dealt with in the ordinary course (thus not evading review). But that ignores the practical reality. A journalist facing a subpoena must act swiftly to protect source materials or privileged information. The issuer can always withdraw the subpoena on the eve of a hearing (as happened here) to avoid an adverse decision, only to reissue a new subpoena later from a different angle.

That cat-and-mouse game evades review perpetually. The core harm – the chilling effect on First Amendment activity – occurs immediately upon service and cannot be undone simply because the subpoena is later withdrawn.

Mr. Luthmann attested that the mere service of the subpoena "chilled the in-person journalistic coverage of this case" and made him "scared to walk into the courtroom and cover this case." Those effects unfolded in real time and "evaded review" because the legal issues were mooted before any court could rule.[2]

---

[2] Mr. Luthmann never intended to become a "litigant" in any matter he was journalistically covering. But thanks to Mr. Noshirvan and Mr. Chiappetta's tactics and the resultant harms caused, Mr. Luthmann is a plaintiff in another case in this district against Mr. Noshirvan. Mr. Luthmann is also pursuing extrajudicial remedies consonant with the natural law firmament of the federal constitution to rid America of the scourge of Danesh Noshirvan once and for all.

Finally, it bears noting that this situation is analogous to the voluntary cessation
doctrine, under which a defendant's voluntary halt of wrongful conduct does *not* necessarily
moot a case unless it is "absolutely clear" the conduct will not recur. *See Friends of the Earth,
Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000).

While technically Mr. Luthmann is the moving party here, the spirit of that doctrine
applies: a party (Plaintiff) voluntarily ceased the challenged action (withdrew the subpoena) to
avoid an adverse determination, and thus he should bear a heavy burden to prove mootness.
He did not meet that burden.

On the contrary, as discussed, Plaintiff's counsel's behavior suggests a continuing
intent to employ harassing tactics when advantageous. In short, the Court's current ruling sets
an extremely high bar for this exception – higher than the law requires – and in doing so, risks
insulating offensive conduct from any judicial check.

Reconsideration should be granted to correct this misapplication of the mootness
exception and allow adjudication of the important issues at stake.

### IV.    The Request for Sanctions Survives Mootness Under Supreme Court Precedent.

The Court's Order did not address Mr. Luthmann's request for sanctions against Mr.
Noshirvan and Mr. Chiappetta, other than implicitly letting the Magistrate's denial stand. This
was a significant oversight. Even if the Court believed the subpoena's withdrawal mooted the
protective order and subpoena-related relief, the issue of sanctions for bad-faith conduct is a
collateral matter that remains very much alive.

The Supreme Court has made clear that courts retain authority to decide sanctions *after*
the underlying dispute is no longer live. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384,
395–96 (1990) (holding that *"it is well established that a federal court may consider collateral*

*issues after an action is no longer pending.... [A]n imposition of a Rule 11 sanction is not a judgment on the merits of the action"* and can be made even after dismissal).

In other words, a request for sanctions is not mooted by the resolution (or withdrawal) of the underlying discovery request; it presents an independent controversy over whether litigation misconduct occurred and warrants punishment. Likewise, the Court's inherent power to sanction bad faith conduct exists irrespective of mootness of the main claim. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–46 (1991) (a federal court may employ its inherent authority to sanction abusive litigation practices; *"the inherent power extends to a full range of litigation abuses"*). Such sanctions are considered collateral to the merits.

Here, Mr. Luthmann's Emergency Motion (Doc. 219) specifically sought monetary and other sanctions against Mr. Chiappetta and his client as a deterrent for their abusive subpoena and bad-faith tactics. The Magistrate Judge denied that request on the view that the subpoena's withdrawal mooted everything. But that is contrary to the principles of *Cooter & Gell* and *Chambers*. The proper course was (and is) for the Court to address the sanctions issue on the merits, even if no other relief is granted.

Reconsideration should be granted so the Court can take up the question of sanctions anew. The record at this stage – especially after the August 12 Order – strongly supports a finding of bad faith. The Plaintiff's subpoena had multiple indicia of improper purpose: it was procedurally defective, extremely broad, and directed at a journalist who was exposing Plaintiff's litigation conduct, all of which point to an intent to intimidate rather than to gather relevant evidence.

Mr. Chiappetta then withdrew the subpoena within days, which suggests he knew it could not withstand judicial scrutiny – but only *after* Mr. Luthmann had already been served and frightened into silence (at least temporarily). This is classic sanctionable conduct: using legal process for harassment, in bad faith, and then trying to avoid the consequences.

Rule 11 of the Federal Rules of Civil Procedure, for instance, prohibits filings made for an improper purpose such as harassment or needlessly increasing the cost of litigation. Serving a Rule 45 subpoena carries an implicit certification of a proper purpose as well.

The Supreme Court in *Cooter & Gell* recognized that Rule 11 sanctions can be imposed even after a complaint is voluntarily dismissed, because the sanction issue is collateral. By the same logic, Mr. Luthmann's motion for sanctions did not vanish when the subpoena was withdrawn. The Court should address it to send a message that such conduct will not be tolerated.

Furthermore, as discussed in the next section, circumstances since the August 18 Order (namely, Mr. Chiappetta's continued unprofessional conduct) have only reinforced the need for sanctions to curb abuse. On reconsideration, the Court can and should weigh whether Mr. Chiappetta's and Mr. Noshirvan's actions merit sanctions under Rule 11, 28 U.S.C. § 1927, and/or the Court's inherent authority. The Supreme Court has approved the use of all these tools in appropriate cases. *See Cooter & Gell*, 496 U.S. at 395–96; *Chambers*, 501 U.S. at 43–46.

Indeed, given this Court's findings of bad faith against Mr. Chiappetta in other contexts of this case, there is a compelling argument that his conduct toward Mr. Luthmann was part of a broader pattern of vexatious litigation tactics that warrants sanction.

Reconsideration will allow the Court to confront that issue head-on.

## V. Manifest Injustice Results from Endorsing the "Serve-and-Withdraw" Tactic Against the Press.

Independent of the specific legal errors above, Mr. Luthmann urges reconsideration under Rule 60(b)(6)'s catch-all provision to avoid a manifest injustice. As things stand, the August 18 Order (unintentionally) green-lights a dangerous strategy: a party can serve a press entity with a subpoena, reap the chilling and harassing effects, and then withdraw it to escape

any judicial ruling, all without consequence. This is anathema to the First Amendment and the principle that courts should guard against abuse of their processes.

The injustice here is not limited to Mr. Luthmann personally. It extends to the broader free press community, especially those investigative reporters and bloggers who cover litigation and may become targets for parties' ire. The message sent by leaving the magistrate's decision intact is that journalists are effectively unprotected – a litigant can weaponize a subpoena to intimidate, then moot the court review by a swift withdrawal. The journalist is left with no remedy and will likely think twice before reporting further on the case.

In fact, Mr. Luthmann attested that the subpoena incident significantly chilled his own coverage of the Noshirvan v. Couture case. He even refrained from attending a court hearing to report, out of fear that doing so would expose him to more legal harassment. This is precisely the outcome Defendants (now Counter-Plaintiffs) desired – to silence a critical press voice – and it was achieved, however briefly, through manipulation of procedure.

Allowing that outcome to stand would be a manifest injustice. The First Amendment values at stake merit the Court's intervention even if procedural strictures might otherwise suggest moving on. We ask the Court to consider the broader ramifications: Other litigants are watching. If this tactic is seen to succeed, it could be replicated, threatening press freedom in this Circuit.

Conversely, granting reconsideration and squarely addressing the misconduct (by, for example, censuring the subpoena as an abuse of process and making clear that journalist subpoenas will be met with rigorous scrutiny and possible sanctions) will have a salutary effect. It will reassure journalists that the federal courts in the Eleventh Circuit will protect them from baseless fishing expeditions, and it will deter attorneys from similar sharp practice.

In sum, maintaining the August 18 ruling without modification would work a manifest injustice by effectively sanctioning an abuse of process and leaving a wrongful act unremedied.

This case presents "extraordinary circumstances" justifying relief under Rule 60(b)(6) to prevent that injustice.

The Court has the power to right this wrong, and Mr. Luthmann respectfully urges it to do so to uphold the integrity of the judiciary and the freedom of the press.

## VI.    Mr. Chiappetta's Post-Admonishment Conduct Confirms His Bad Faith and Failure to Confer in Good Faith (Local Rule 3.01(g) Certification).

Finally, it is important to bring to the Court's attention Mr. Chiappetta's conduct *since* the August 18 Order, as it relates to the matters above and to compliance with local rules. On August 12, 2025, as noted, Judge Steele publicly reprimanded Mr. Chiappetta for bad-faith conduct. One might have hoped that such a stern admonishment would temper Mr. Chiappetta's behavior. Unfortunately, the events of August 19–22, 2025 (during the lead-up to filing this motion) demonstrate a continued pattern of unprofessionalism and obstinacy by Mr. Chiappetta.

Pursuant to Local Rule 3.01(g), Mr. Luthmann (proceeding pro se on this motion) attempted to confer in good faith with all parties or their counsel regarding the relief sought herein.

On August 19, 2025, Mr. Luthmann emailed Mr. Chiappetta and other counsel of record, notifying them of his intent to file a Rule 60(b) motion and inviting a conference. In that message, Mr. Luthmann proposed several options to meet and confer: an in-person meeting at the Fort Myers federal courthouse, a telephone call, or a discussion via email – "multiple options" to accommodate Mr. Chiappetta.

Counsel for the other defendants responded promptly and professionally. For example, Mr. Harvey Gurland (counsel for Defendant GPS and others) replied that his clients take no position on Mr. Luthmann's intended motion. Similarly, Mr. Aaron Alfano and Mr. Patrick

Trainor (both counsel for other defendants) responded that their respective clients take no position.

These responses reflected the *professional courtesy and compliance with Local Rule 3.01(g)* that the Court expects.

Mr. Chiappetta, by contrast, utterly failed to engage in a meaningful conferral. He did not accept any of the offered methods of discussion. Initially, Mr. Chiappetta insisted on a phone call on *his* terms, emailing Mr. Luthmann on August 21, 2025 to "please not misrepresent the facts" and claiming he had told Mr. Luthmann he was available by phone (Mr. Luthmann had not received any such clear availability).

In response, Mr. Luthmann reiterated his willingness to confer by phone but expressed understandable hesitation given Mr. Chiappetta's past behavior and the need for a clear record. Specifically, Mr. Luthmann wrote:

> "I will not have a telephonic conversation with you because of (A) my recent dealings with you and (B) the LAW OF THE CASE that says YOU are a BAD FAITH OPERATOR."

He noted – correctly – that Judge Steele's findings established Mr. Chiappetta's bad faith as law of the case, and that an email exchange would provide a documented, substantive record of any conferral (thereby avoiding disputes over who said what).

Indeed, Local Rule 3.01(g) does *not* mandate a telephone or in-person conference; it requires a good-faith conferral, which can be accomplished in writing when circumstances warrant. Mr. Luthmann reasonably believed that a written conferral was prudent here, "given the opposing attorney has been sanctioned for misconduct in the same case".

Rather than simply stating his position on the motion, Mr. Chiappetta chose to escalate the situation. He sent an email on August 22, 2025 sarcastically telling Mr. Luthmann,

> "Please attach all of these emails to your motion when you tell the court you refused to meet and confer."

This snide remark epitomizes Mr. Chiappetta's lack of professionalism. Far from engaging in substance, he appeared more interested in goading Mr. Luthmann.

In the same chain, Mr. Chiappetta also resorted to personal insults – referring to Mr. Luthmann in derisive terms and carrying on a vitriolic exchange with those included in the emails. Not once did Mr. Chiappetta address the merits or state whether he opposed or consented to the motion. As Mr. Luthmann summed it up in one of his final emails:

> *"You've gone back and forth with a member of the media via email, engaging in name-calling. But not once did you state your position on the motion. You always had the OPPORTUNITY to meet and confer. Just not the desire…"*.

Mr. Luthmann further wrote: *"I gave you every opportunity, multiple options under Local Rule 3.01(g)… You selected no option."*

This record makes clear that Mr. Chiappetta failed to confer in good faith as required. He *stonewalled* the Local Rule 3.01(g) process. Accordingly, Mr. Luthmann certifies that he attempted in good faith to resolve the issues raised in this motion but was unable to do so because Mr. Chiappetta refused to participate meaningfully. All other counsel either took no position or did not object, meaning the motion is effectively unopposed *except* by Mr. Chiappetta (whose position remains unstated due to his refusal to articulate it).

Mr. Luthmann has attached as Exhibit A a true and correct copy of the email correspondence reflecting these conferral efforts and Mr. Chiappetta's responses (or lack thereof).

Mr. Chiappetta's continued defiance of professional norms – even after a public reprimand – is relevant for two reasons. First, it provides further evidence of the bad faith and vexatious mindset that animated the subpoena incident. An attorney who flagrantly disregards a court's admonishment and the local rules is likely the same attorney who would misuse a

subpoena to harm a journalist. This bolsters Mr. Luthmann's argument that sanctions and strong judicial action are needed.

Second, as a procedural matter, Mr. Chiappetta's failure to confer should not impede this motion. The Local Rule's purpose is to encourage resolution or narrowing of disputes. Here, that purpose was frustrated by Mr. Chiappetta alone. The Court should not penalize Mr. Luthmann for Mr. Chiappetta's intransigence; indeed, Mr. Luthmann did everything short of physically accosting Mr. Chiappetta to invite cooperation.

The attached Exhibit A and the quotations above demonstrate as much. Thus, this motion is properly before the Court, and the blame for any lack of agreement lies with Mr. Chiappetta.

In sum, Mr. Chiappetta's post-Order conduct only reaffirms the need for the Court to intervene and reconsider its prior decision. His actions illustrate that he has little regard for this Court's directives or the rights of others – underscoring the risk of leaving him unchecked by judicial sanction.

## VII. Luthmann's Request For Sanctions Under Inherent Authority, Rule 11, and 28 U.S.C. § 1927.

As noted above, one critical aspect of reconsideration is addressing the misconduct at issue. Mr. Luthmann hereby gives notice that, in addition to seeking reconsideration, he has pursued sanctions against Mr. Chiappetta and Mr. Noshirvan for their roles in this abusive episode. The grounds for such sanctions include the Court's inherent powers, Federal Rule of Civil Procedure 11, and 28 U.S.C. § 1927.[3]

---

[3] Mr. Luthmann has said it before, and he will say it again. All he really wants is an earnest apology from Mr. Chiappetta and Mr. Noshirvan, to him and to the free press.

### A. Inherent Powers

The Court has the inherent authority to police litigant and attorney misconduct and to impose sanctions for bad faith, vexatious, or oppressive behavior. *Chambers v. NASCO* confirms this power, emphasizing that it extends to the full range of litigation abuses and is not displaced by other sanction mechanisms. Mr. Chiappetta's actions – from the frivolous subpoena, to its strategic withdrawal, to his ongoing flouting of Court rules – epitomize bad-faith litigation conduct.

The Court could, on reconsideration, impose sanctions under its inherent power (for example, requiring Mr. Chiappetta or his client to pay Mr. Luthmann's reasonable expenses and fees incurred in responding to the subpoena and bringing this motion, or issuing further reprimands or conditions on Mr. Chiappetta's participation in the case).

### B. Rule 11

Although Rule 11 primarily governs pleadings, written motions, and other papers filed with the Court, its principles are relevant. The subpoena in question was issued under Mr. Chiappetta's authority as an officer of the court, and his later court filings opposing Mr. Luthmann's emergency motion (Doc. 228) contained factual contentions (e.g. about service being "near impossible") that lack evidentiary support.

If the Court deems Rule 11 applicable, the *improper purpose* evident here (harassment and intimidation of a non-party) would warrant sanctions. Notably, the Supreme Court in *Cooter & Gell* upheld Rule 11 sanctions even after a case's dismissal, explicitly rejecting the idea that a voluntary cessation (there, a Rule 41 dismissal) strips the court of authority to sanction.

Thus, any argument that the withdrawn subpoena is beyond reach fails – Rule 11 sanctions can still be meted out for the abusive filing.

17

C. <u>28 U.S.C. § 1927</u>

This statute provides that any attorney "who so multiplies the proceedings in any case unreasonably and vexatiously" may be required to pay the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct. Mr. Chiappetta's conduct falls squarely within §1927's ambit. He multiplied proceedings by forcing Mr. Luthmann to file an emergency motion and now this reconsideration motion, all on account of a subpoena that had no legitimate basis. His actions were unreasonable and vexatious by any measure – indeed, they were found to be in bad faith.

The Eleventh Circuit requires a showing of objectively bad faith (e.g., knowing or reckless conduct) to impose §1927 sanctions, see *Schwartz v. Millon Air, Inc.*, 341 F.3d 1220, 1225 (11th Cir. 2003), and here Mr. Chiappetta's knowing misuse of process and knowing violation of his duties suffice. The Court is empowered on reconsideration to grant relief under §1927, perhaps by awarding fees to Mr. Luthmann for having to litigate these matters.

Mr. Luthmann will, if necessary, file a separate motion detailing the sanctionable conduct and the specific relief requested (in compliance with due process and any "safe harbor" provisions that might apply to Rule 11, etc.). However, he brings this to the Court's attention now because it interrelates with the reconsideration issues.

The Court can, in its reconsidered ruling, explicitly find that Mr. Chiappetta acted in bad faith in connection with the subpoena to Mr. Luthmann, thereby laying the groundwork for sanctions. Indeed, such findings are largely already made in Judge Steele's August 12 Order (e.g., that Mr. Chiappetta "also acted in bad faith and is subject to sanctions under the Court's inherent powers" due to his conduct in depositions and related litigation abuse).

Mr. Luthmann merely asks that the Court extend that judicial notice of bad faith to the instant context.

Addressing sanctions in this context will serve the interests of justice. It will compensate Mr. Luthmann in part for the harm and burden he has endured (especially if Mr. Noshirvan and Mr. Chiappetta apologize to Mr. Luthmann and the free press as a mitigating factor). It will deter Mr. Chiappetta and Mr. Noshirvan from similar misconduct in the future (indeed, Plaintiff Noshirvan himself should be discouraged from directing his counsel to harass journalists). And it will send a message to others that the Middle District of Florida is not a place where one can exploit legal procedures to persecute the press or any non-party without serious repercussions.

## **CONCLUSION**

For the foregoing reasons, Mr. Luthmann respectfully requests that the Court grant this Rule 60(b) motion and reconsider its Opinion and Order of August 18, 2025 (Doc. 459). Upon reconsideration, Mr. Luthmann asks that the Court vacate the portion of the Order overruling his Objection (Doc. 252) and instead sustain his Objection, thereby rejecting the Magistrate Judge's mootness ruling as to the emergency motion.

Specifically, Mr. Luthmann urges the Court to:

(1) hold that the "capable of repetition yet evading review" exception applies (or that the voluntary cessation doctrine prevents mootness), and thus address the merits of his emergency motion;

(2) recognize that Mr. Luthmann is a journalist entitled to the qualified First Amendment reporter's privilege, which was violated by the subpoena;

(3) issue a protective order or declaratory relief confirming that no party may subpoena Mr. Luthmann (or any journalist) in this case for protected newsgathering materials without prior court approval, given the history of abuse;

(4) impose appropriate sanctions on Mr. Chiappetta and Mr. Noshirvan for their bad-faith issuance of the subpoena and related misconduct (the specifics of such sanctions to be determined by the Court, but including at least a public reprimand of Mr. Chiappetta's conduct in this matter – adding to the one he has already earned – and an award of fees/costs to Mr. Luthmann); and

(5) grant any further relief deemed just and proper, such as consideration of disqualifying Mr. Chiappetta as counsel or any other remedy within the Court's power to ensure the integrity of these proceedings going forward.

Mr. Luthmann submits that granting this motion will restore fairness and deter misconduct, whereas denying it would leave serious wrongs unaddressed. He trusts the Court's discretion to fashion the appropriate relief. No party will be prejudiced by the Court revisiting these issues – indeed, all that will happen is that a non-party journalist will have his day in court on claims that were prematurely cast aside, and a message will be sent that abusive litigation tactics have consequences. This motion is within the 20-page limit as per Local Rules.

Dated: August 26, 2025                    Respectfully submitted,

**Richard Luthmann**
**Movant, Pro Se**
**4199 Los Altos Court**
**Naples, FL 34109**
**(239) 631-5957**
**richard.luthmann@protonmail.com**

## RULE 3.01(g) CERTIFICATION

Pursuant to Local Rule 3.01(g), Plaintiff certifies that on numerous dates up to and including August 22, 2025, he made a good faith effort to confer with counsel for Plaintiff and Defendants prior to filing this Request. Counsel for Defendants Garramone, Couture, OMG Realty, and related parties acted professionally and stated in emails that they had no position on this application. While Counsel for Plaintiff decided to engage Movant in an extensive back-and-forth, no actual response to the request for a position was received. The conferral requirement with Mr. Noshirvan and his counsel, Mr. Chiappetta, has demonstrably become an exercise in futility in this and related litigation in this district. It is assumed that Mr. Noshirvan and his counsel, Mr. Chiappetta, oppose this motion and the potential imposition of additional sanctions, over and above what the Court has already imposed in its August 12, 2025 Opinion and Order.

Richard Luthmann
Movant, Pro Se

## CERTIFICATE OF SERVICE

I hereby certify that on August 26, 2025, I served a true and correct copy of the enclosed upon all parties by way of the caption and the PACER docket sheet by electronic mail to the following known and suspected email addresses:

- nick@chiappettalegal.com
- jjfannin@duanemorris.com
- HWGurland@duanemorris.com
- pt@PTESQ.COM
- aalfano@rolfeshenry.com
- ptesq1@yahoo.com

I certify under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: August 26, 2025

Richard Luthmann
~~Plaintiff,~~ Pro Se
MOVANT

## Re: RE: Noshirvan v. Couture, 2:23-cv-01218-JES-KCD, Local Rule 3.01(g) Notice – Pro Se Motion to Reconsider August 18, 2025 Order (Doc. 459)

From   Richard A Luthmann <richard.luthmann@protonmail.com>

To     Nick Chiappetta<nick@chiappettalegal.com>

CC     kbr@rkkattorneys.com, kgv@rkkattorneys.com, Aaron Alfano<aalfano@rolfeshenry.com>,
       hwgurland@duanemorris.com<HWGurland@duanemorris.com>,
       Jackson-Fannin, Julian A.<jjfannin@duanemorris.com>, pt@ptesq.com<pt@PTESQ.COM>,
       Joey@YourDaddyJoey.news<joey@yourdaddyjoey.news>, TiktokAccountability<tiktokwokuza@gmail.com>,
       tiktokyakuza<yakuzatiktok@proton.me>, Rick LaRivière<RickLaRiviere@proton.me>,
       Dick LaFontaine<RALafontaine@protonmail.com>, Modern Thomas Nast<mthomasnast@protonmail.com>,
       jt@liquidlunchtv.com, Cara Castronuova<caracastronuova@yahoo.com>, Michael Volpe<mvolpe998@gmail.com>,
       Frank Parlato<frankparlato@gmail.com>, Frankie Pressman<frankiepressman@protonmail.com>,
       mbd@rkkattorneys.com, Greg Maresca<greg_m@newsitem.com>, cinf-ir@cinfin.com, media_inquiries@cinfin.com,
       steve_spray@cinfin.com, demaslaw@bellsouth.net, delatorrefinancialservices@gmail.com

Date   Friday, August 22nd, 2025 at 10:29 AM

Mr. Nickless Chiappetta,

I intend to. I gave you every opportunity, multiple options under Local Rule 3.01(g) and FRCP Rule 37, given the Court's finding of your BAD FAITH and my right to protect myself and the integrity of the proceedings. You cannot be trusted!

I asked you to meet in person at the courthouse lobby, in public, at the Fort Myers Division of the Middle District of Florida. I asked you for a recorded phone call. I asked for an email in writing. **You selected no option**.

Emails in writing were good enough for Mr. Gurland, Mr. Alfano, and Mr. Trainor. But, then again, they are professionals.

You've gone back and forth with a member of the media **via email**, engaging in name-calling. But not once did you state your position on the motion. You always had the OPPORTUNITY to meet and confer. Just not the desire BECAUSE YOU AND YOUR CLIENT WILL BE SUBJECT TO FURTHER LITIGATION SANCTIONS.

Everybody knows, Nick. Everybody knows.

Judge Steele's Courtroom was packed on May 19-20. Couture, Garramone, et al. had five (5) big-time lawyers at the table. Duane Morris LLP is BIG LAW. Your client was sanctioned. Your client will have to pay the legal bill.

Now, I'm no mathematician, but I'm calling that the bill is about $100,000.00. And you know that. You even mentioned this in an earlier email thread you copied me on, attempting to rob settlement funds from **The Cincinnati Insurance Company** (copied): "Before your client spends another million in legal fees..." Delusional Danesh knows that BIG

LAW isn't cheap. What does he honestly believe a full month of preparation and work for a two-day hearing plus time, expenses, and costs equals?

That's what's going on here.

Your client faces sanctions on September 10, 2025, in front of Judge Mizell, for going on a California vacation and having a meet-and-confer with the Super Mario Brothers when he should have been in Fort Myers federal court. He didn't even send an email or make a phone call to let the court know.

https://flgulfnews.com/danesh-noshirvan-skips-court/



**Thatdaneshguy** ✔ is at **Universal Studios Hollywood**.  ● ● ●
33m · 🌐

Longest line I've ever waited in, but it was totally worth it. They took the Fast and Furious part out of the studio tour :/ No new videos today. I have a lot of work and fun to catch up on. Much love!
@unistudios



He'll be walking up the steps into the courthouse that Wednesday morning, September 10, 2025, in Fort Myers, Florida, open and notorious to receive the service of process from anyone who may want to tag him in the State of Florida.

Your client faces a FELONY GRAND JURY in Denton, Texas, over the death of **Aaron De La Torre**.

**LUTHMANN RULE 60(b) MOTION 0002**





According to sources, the De La Torre estate claim is also coming.

Your client is also being sued by someone else he's harmed in Lake County, FL.

https://drive.google.com/file/d/17cTEzIY7uhl2ZzPry3MOrRczsHKFWOpb/view?usp=sharing

Danesh baselessly called **Stephen Carega** a "RACIST." Sound familiar? Will that one also end up in the MDFL - Orlando Division?

Now, your client faces additional sanctions for the sharp practice you and he engaged in last December in the MDFL Federal Court.

Your client is broke, and I guess you've sunk $100K into this case's costs on a contingency.

So, the quick math: Duane Morris sanctions + Judge Mizell Sanctions + more 1218 Case Sanctions + Denton TX Criminal Defense Attorney + Denton TX Bail Bond = BROKE CLIENT = DEAD CIVIL CASE.

**Danesh is BROKE, or will be very soon.**
**LUTHMANN RULE 60(b) MOTION 0003**

Case 2:25-cv-01008-JES-NFCB   Document 48-15   Filed 08/06/25   Page 26 of 42 PageID
8/26/25, 5:08 AM                     (7) Sent | richard.luthmann@protonmail.co...   roton Mail
31927

Everybody knows, Nick. Everybody knows.

<u>I will also send these emails to **the Florida Bar** as further evidence that you just can't behave. Ethical violations are not how you salvage a flailing case.</u>

https://flgulfnews.com/same-kind-of-predator/

My unsolicited two cents: Cut Danesh loose. Cut your losses. Save your career.

If you want to help your wayward client, consider calling down to Texas to work out a bond and surrender.

Again, all I want is an apology and a little money for my time. It's America, and I'm entitled to it.

And if you'll certify to me that Danesh is indeed broke, then I'll settle for just the apology! I can see Danesh pissing away all the real estate money that his daddy left him.

Thank you for your attention to this matter!



Regards,

Richard Luthmann
Writer, Journalist, and Commentator
Tips or Story Ideas:
(239) 631-5957
richard.luthmann@protonmail.com
**LINKTREE**
**Muck Rack Profile**
**Substack: This is For Real.**
**Editor-In-Chief: FLGulf.news**
**Editor-In-Chief: NYNewsPress.com**
**Editor-In-Chief: TheFamilyCourtCircus.com**
**Contributor: Frank Report**

**LUTHMANN RULE 60(b) MOTION 0004**

**Contributor:** [Sun Bay Paper](#)

**Follow Me on** [Facebook](#) [X](#) [Instagram](#) [LinkedIn](#) [TRUTH](#) [Rumble](#)

Sent with [Proton Mail](#) secure email.

On Friday, August 22nd, 2025 at 8:49 AM, Nick Chiappetta <nick@chiappettalegal.com> wrote:

> Mr. Luthmann,
>
> Please attach all of these emails to your motion when you tell the court **you refused to meet and confer**.
>
> Sincerely,
>
> Nick Chiappetta | Founder
> P. 561-768-4500
> F. 561-768-4600
> nick@chiappettalegal.com
> 2101 Vista Pkwy, Suite 258
> West Palm Beach, Florida 33411
>
> 8401 Lake Worth Rd.,
> Lake Worth, Florida 33467
> *By Appointment Only*
>
> Product Defect | Injury | Defamation | Insurance
>     www.chiappettalegal.com
>
> NOTICE: This e-mail message and any attachment to this e-mail message contains confidential information that may be legally privileged. If you are not the intended recipient, you must not review, re-transmit, convert to hard copy, copy, use or disseminate this e-mail or any attachments to it. If you have received this e-mail in error, please notify us immediately by return e-mail or by telephone at 561-768-4500 and delete this message. Please note that if this e-mail message contains a forwarded message or is a reply to a prior message, some or all of the contents of this message or any attachments may not have been produced by the sender.
>
> ---
>
> **From:** Richard Luthmann <richard.luthmann@protonmail.com>
> **Sent:** Friday, August 22, 2025 8:44 AM
> **To:** Nick Chiappetta <nick@chiappettalegal.com>

**LUTHMANN RULE 60(b) MOTION 0005**

8/26/25, 5:08 AM
Case 2:25-cv-01080-JES-KCD   Document 48-15   Filed 08/26/25   Page 28 of 42 PageID
(7) Sent | richard.wynnann@protonmail.com   ton Mail

Cc: Aaron Alfano <aalfano@rolfeshenry.com>; hwgurland@duanemorris.com <HWGurland@duanemorris.com>; Jackson-Fannin, Julian A. <jjfannin@duanemorris.com>; pt@ptesq.com <pt@PTESQ.COM>; Joey@YourDaddyJoey.news <joey@yourdaddyjoey.news>; TiktokAccountability <tiktokwokuza@gmail.com>; tiktokyakuza <yakuzatiktok@proton.me>; Rick LaRivière <RickLaRiviere@proton.me>; Dick LaFontaine <RALafontaine@protonmail.com>; Modern Thomas Nast <mthomasnast@protonmail.com>; jt@liquidlunchtv.com <jt@liquidlunchtv.com>; Cara Castronuova <caracastronuova@yahoo.com>; Michael Volpe <mvolpe998@gmail.com>; Frank Parlato <frankparlato@gmail.com>; Frankie Pressman <frankiepressman@protonmail.com>; Greg Maresca <greg_m@newsitem.com>
Subject: Re: RE: Noshirvan v. Couture, 2:23-cv-01218-JES-KCD, Local Rule 3.01(g) Notice – Pro Se Motion to Reconsider August 18, 2025 Order (Doc. 459)

Mr. Nickless,

First, I will not have a telephonic conversation with you because of A) my recent dealings with you and B) the LAW OF THE CASE that says YOU are a BAD FAITH OPERATOR.

Email is an appropriate and sufficient method of conferring, particularly in circumstances where the opposing attorney has been sanctioned for misconduct in the same case and in a "related case" involving the same client. The plain language of Local Rule 3.01(g) does not prescribe a specific mode of communication, focusing instead on the good-faith effort to resolve disputes. Requiring real-time verbal interaction in the face of documented attorney misconduct risks escalating tensions, while email provides a substantive, documented exchange that promotes resolution without confrontation. This approach aligns with the rule's purpose, federal precedents emphasizing flexibility in conferral methods, and principles of professional responsibility.

Second, I've copied others in the press here, too, some of whom work in the White House Press Room. I'll get James O'Keefe, Chaya Raichik, Eugene Volokh, and Roger Stone on future emails, if that will make you happy. Confirm my journalistic association with other journalists. Brilliant!

You really are a moron, a professional disgrace, and a menace. *Miller v. Transamerican Press, Inc.*, 621 F.2d 721, 726 (5th Cir. 1980), as modified, 628 F.2d 932 (5th Cir. 1980).

Administration insiders are aware of your and your client's disdain for a free press. They also know all about the SCOTUS Doxxing, the CCP and Soros connections (FARA), the death of Aaron De La Torre, and the dishonest, AI-driven harassment of thousands.

Judge Steele's Opinion and Order is a game-changer because it established YOUR BAD FAITH in addition to your client-coconspirator's.

This is a battle for the soul of the right to a free press. This is a hill I am willing to die on. Are you?

President Trump restored free speech in America. I'll be damned if piss ants like you and foreign agents like Danesh Noshirvan try to take it away again. **Tell Scott Dworkin to expect a subpoena**.



Thank you for your attention to this matter!



Regards,

Richard Luthmann
Writer, Journalist, and Commentator
Tips or Story Ideas:
(239) 631-5957
richard.luthmann@protonmail.com
**LINKTREE**
**Muck Rack Profile**
**Substack: This is For Real.**

Case 2:25-cv-00805-JES-NFCB Document 48-15 Filed 08/26/25 Page 30 of 42 PageID
8/26/25, 5:08 AM                              (7) Sent | ricoluthmann@protonmail.com    ton Mail
31.931

**Editor-In-Chief: FLGulf.news**
**Editor-In-Chief: NYNewsPress.com**
**Editor-In-Chief: TheFamilyCourtCircus.com**
**Contributor: Frank Report**
**Contributor: Sun Bay Paper**
**Follow Me on Facebook X Instagram LinkedIn TRUTH Rumble**

Sent with Proton Mail secure email.

On Friday, August 22nd, 2025 at 8:19 AM, Nick Chiappetta <nick@chiappettalegal.com> wrote:

Mr. Luthmann,

I asked you to act like a "plaintiff", which you are in the 337 Case. That is not name calling. It is a request for you to abide by the Local Rules, which you are required to do as a plaintiff. Your email below clearly exceeds the bounds for which even a "pro se" party must act.

Again, I am available by telephone today to confer as stated in my email below.

And thank you for cc'ing Joseph A. Camp at "yourdaddyjoey.news", Frank Parlato, "tiktokwokuza" and "Yakusatiktok." Your correspodence to these individuals will be accepted as an admission of coordinated association.

No more harassing emails. Period.

Sincerely,

Nick Chiappetta | Founder
P. 561-768-4500
F. 561-768-4600
nick@chiappettalegal.com
2101 Vista Pkwy, Suite 258
West Palm Beach, Florida 33411

8401 Lake Worth Rd.,
Lake Worth, Florida 33467
*By Appointment Only*

Case 2:23-cv-01218-JES-KCB Document 481-15 Filed 08/26/25 Page 31 of 42 PageID
8/26/25, 5:08 AM                               (7) Sent | richard.luthmann@protonmail.com - Proton Mail
81932

Product Defect | Injury | Defamation | Insurance

https://url.avanan.click/v2/r01/___www.chiappettalegal.com___.YXAzOmNoaWFwcGV0dGFsZWdhbDphpOm86Y~

NOTICE: This e-mail message and any attachment to this e-mail message contains confidential information that may be legally privileged. If you are not the intended recipient, you must not review, re-transmit, convert to hard copy, copy, use or disseminate this e-mail or any attachments to it. If you have received this e-mail in error, please notify us immediately by return e-mail or by telephone at **561-768-4500** and delete this message. Please note that if this e-mail message contains a forwarded message or is a reply to a prior message, some or all of the contents of this message or any attachments may not have been produced by the sender.

---

**From:** Richard Luthmann <richard.luthmann@protonmail.com>
**Sent:** Thursday, August 21, 2025 6:17 PM
**To:** Nick Chiappetta <nick@chiappettalegal.com>
**Cc:** Aaron Alfano <aalfano@rolfeshenry.com>; hwgurland@duanemorris.com <HWGurland@duanemorris.com>; Jackson-Fannin, Julian A. <jjfannin@duanemorris.com>; pt@ptesq.com <pt@PTESQ.COM>; Joey@YourDaddyJoey.news <joey@yourdaddyjoey.news>; TiktokAccountability <tiktokwokuza@gmail.com>; tiktokyakuza <yakuzatiktok@proton.me>; Rick LaRivière <RickLaRiviere@proton.me>; Dick LaFontaine <RALafontaine@protonmail.com>; Modern Thomas Nast <mthomasnast@protonmail.com>; jt@liquidlunchtv <jt@liquidlunchtv.com>; Cara Castronuova <caracastronuova@yahoo.com>; Michael Volpe <mvolpe998@gmail.com>; Frank Parlato <frankparlato@gmail.com>; Frankie Pressman <frankiepressman@protonmail.com>
**Subject:** Re: RE: Noshirvan v. Couture, 2:23-cv-01218-JES-KCD, Local Rule 3.01(g) Notice – Pro Se Motion to Reconsider August 18, 2025 Order (Doc. 459)

Mr. Nick,

I can name-call all day, too.

Since you don't wish to engage with me as Movant in legal communications pursuant to MDFL Local Rule 3.01(g) where an indisputable record can be made (because the law of the case is that you have acted in BAD FAITH), I'll alert the Court accordingly.

I was ready, willing, and able to meet with you publicly in the lobby of this division's courthouse or to converse with you in writing.

All of the other lawyers (Mr. Gurland, Mr. Alfano, Mr. Trainor) responded promptly, professionally, and in writing. What makes you so special?

Now for the name-calling portion of the email,

Mr. Nick, you opened the door, telling me to "act like" something or other (not quite sure what), when you, as an attorney, have failed to live up to your professional and behavioral standards as per Judge Steele's August 12,

2025, Order in the 1218 Case.

https://ecf.flmd.uscourts.gov/cgi-bin/show_public_doc?2023-01218-454-2-cv#

This portion is also open to THE PRESS because, as you recognize, I am a MEDIA PLAINTIFF.

I didn't copy the Florida Bar Greivance Committee, though I could have in furtherance of protection of the public FOR GOOD CAUSE. Don't say I'm not a sport. I'm not bound by Florida Rule of Professional Conduct 4-8.3.

Everybody knows why you're "special."



Nickless, you're a soon-to-be-suspended and disqualified attorney, in my opinion, and FOR GOOD CAUSE. Start considering other career options.

But I don't think you'll make it in the media. Michael Cohen is a much bigger HACK than you'll ever be, and there are only so many viewers with disposable income who will listen to a spineless fool whine endlessly in between hawking child sex changes. (Talk to your client)

Sorry, Nick, you're just not that interesting.

So the bigger question is what will it be? Home Depot or Lowe's?



I think you look better in ORANGE. Much like your client-coconspirator.



Or maybe you'll just find a secluded hideaway somewhere and eat 🍆 🥒 (garden vegetables) like a mail-order concubine.

Case 2:25-cv-01005-JES-KCB Document 48-15 Filed 08/26/25 Page 34 of 42 PageID
31935
8/26/25, 5:08 AM                    (7) Sent | richard.luthmann@protonmail.com ... ton Mail



Thank you for your attention to this matter!



Regards,

Richard Luthmann
Writer, Journalist, and Commentator
Tips or Story Ideas:
(239) 631-5957
richard.luthmann@protonmail.com
**LINKTREE**
**Muck Rack Profile**
**Substack: This is For Real.**
**Editor-In-Chief: FLGulf.news**
**Editor-In-Chief: NYNewsPress.com**
**Editor-In-Chief: TheFamilyCourtCircus.com**

**Contributor: Frank Report**
**Contributor: Sun Bay Paper**
Follow Me on **Facebook X Instagram LinkedIn TRUTH Rumble**

Sent with Proton Mail secure email.

On Thursday, August 21st, 2025 at 5:09 PM, Nick Chiappetta <nick@chiappettalegal.com> wrote:

> Mr. Luthmann,
>
> Please do not misrepresent the facts. I told you I was available by phone the other day. I am also available by phone tomorrow between 11am - 1pm. You are a plaintiff in the 337 Case. Time to start acting like one.
>
> Sincerely,
>
> Nick Chiappetta | Founder
> P. 561-768-4500
> F. 561-768-4600
> nick@chiappettalegal.com
> 2101 Vista Pkwy, Suite 258
> West Palm Beach, Florida 33411
>
> 8401 Lake Worth Rd.,
> Lake Worth, Florida 33467
> *By Appointment Only*
>
> 
>
> Product Defect | Injury | Defamation | Insurance
>
> https://url.avanan.click/v2/r01/___www.chiappettalegal.com___.YXAzOmNoaWFwcGV0dGFsZWdhbDphOm8
>
> NOTICE: This e-mail message and any attachment to this e-mail message contains confidential information that may be legally privileged. If you are not the intended recipient, you must not review, re-transmit, convert to hard copy, copy, use or disseminate this e-mail or any attachments to it. If you have received this e-mail in error, please notify us immediately by return e-mail or by telephone at 561-768-4500 and delete this message. Please note that if this e-mail message contains a forwarded message or is a reply to a prior message, some or all of the contents of this message or any attachments may not have been produced by the sender.

Case 2:23-cv-01218-JES-KCD   Document 481-15   Filed 08/29/25   Page 36 of 42 PageID
8/26/25, 5:08 AM
(7) Sent | richard.luthmann@protonmail.com ···ton Mail

---

**From:** Richard Luthmann <richard.luthmann@protonmail.com>

**Sent:** Thursday, August 21, 2025 4:10 PM

**To:** Aaron Alfano <aalfano@rolfeshenry.com>

**Cc:** hwgurland@duanemorris.com <HWGurland@duanemorris.com>; Nick Chiappetta <nick@chiappettalegal.com>; Jackson-Fannin, Julian A. <jjfannin@duanemorris.com>; pt@ptesq.com <pt@PTESQ.COM>

**Subject:** Re: RE: Noshirvan v. Couture, 2:23-cv-01218-JES-KCD, Local Rule 3.01(g) Notice – Pro Se Motion to Reconsider August 18, 2025 Order (Doc. 459)


Señor Nick,

I hadn't heard from you on the meet and confer. I'm available tomorrow in the lobby of the Fort Myers federal courthouse for an in person conference in compliance with Local Rule 3.01(g). The other counsel have responded, and I intend to file in due course.

Contrary to your opinions and representations Mr. Nick, I do think about you. I read a recent article, and I thought of you immediately:

https://url.avanan.click/v2/r01/___https://substack.com/_@doctorfaustroll/p-171591723___.YXAzOmNoaWFwcGV0dGFsZWdhbDphpOm86NmJmMDJiNmVhZjQ1Nzg2Y2RkMmIxYTc

Thank you for your attention to this matter!

Regards,

Richard Luthmann
Writer, Journalist, and Commentator
Tips or Story Ideas:
(239) 631-5957
richard.luthmann@protonmail.com
LINKTREE
Muck Rack Profile
Substack: This is For Real.

Editor-In-Chief: FLGulf.news
Editor-In-Chief: NYNewsPress.com
Editor-In-Chief: TheFamilyCourtCircus.com
Contributor: Frank Report
Contributor: Sun Bay Paper Follow Me on Facebook X Instagram LinkedIn TRUTH Rumble

Sent from Proton Mail Android

**LUTHMANN RULE 60(b) MOTION 0014**

-------- Original Message --------
On 8/20/25 9:28 AM, Richard Luthmann wrote:

Mr. Alfano,

Thank you for your professionalism.

Regards,

Richard Luthmann
Writer, Journalist, and Commentator
Tips or Story Ideas:
(239) 631-5957
richard.luthmann@protonmail.com
LINKTREE
Muck Rack Profile
Substack: This is For Real.

Editor-In-Chief: FLGulf.news
Editor-In-Chief: NYNewsPress.com
Editor-In-Chief: TheFamilyCourtCircus.com
Contributor: Frank Report
Contributor: Sun Bay Paper Follow Me on Facebook X Instagram LinkedIn TRUTH Rumble

Sent from Proton Mail Android

-------- Original Message --------
On 8/20/25 9:19 AM, Aaron Alfano wrote:

Mr. Luthmann, as you know, I represent Jennifer Couture, Dr. Ralph Garramone, and OMG Realty LLC in connection with Noshirvan's claims against them. Following up on Mr. Gurland's email below, my clients take no position with respect to your requested relief.

**AARON ALFANO**

Attorney

**Rolfes Henry Co., LPA**

5415 87th Street E

Bradenton, Florida 34211

T: 941.684.0100 – Ext. 415 | F: 941.684.0109

aalfano@rolfeshenry.com | rolfeshenry.com


Check out our YouTube Channel:
**Rolfes Henry Co., LPA**

---

**From:** Gurland, Harvey W. <HWGurland@duanemorris.com>
**Sent:** Tuesday, August 19, 2025 6:56 PM
**To:** Richard Luthmann <richard.luthmann@protonmail.com>; Nick Chiappetta <nick@chiappettalegal.com>; Jackson-Fannin, Julian A. <jjfannin@duanemorris.com>; Aaron Alfano <aalfano@rolfeshenry.com>; pt@ptesq.com
**Subject:** RE: Noshirvan v. Couture, 2:23-cv-01218-JES-KCD, Local Rule 3.01(g) Notice – Pro Se Motion to Reconsider August 18, 2025 Order (Doc. 459)

Good evening Mr. Luthmann.  I'm responding to your email on behalf of our clients: Defendant GPS, and Counter-Plaintiffs GPS, Dr. Garramone, and Jennifer Couture.  Our clients take no position regarding the relief you are planning to request from the Court as set forth in your email below.

Harvey W. Gurland, Jr., P.A.
Partner, Miami, Florida Office
Duane Morris LLP
201 S. Biscayne Boulevard, Suite 3400

Miami, FL 33131-4325

Case 2:23-cv-01208-JES-KCB   Document 481-15   Filed 08/09/29/29   Page 39 of 42 PageID
31940
8/26/25, 5:08 AM
(7) Sent | richard.luthmann@protonmail.com ... ton Mail

**P:** +1 305 960 2214

**F:** +1 305 397 1874

HWGurland@duanemorris.com

www.duanemorris.com

---

**From:** Richard Luthmann <richard.luthmann@protonmail.com>

**Sent:** Tuesday, August 19, 2025 7:22 AM

**To:** Nick Chiappetta <nick@chiappettalegal.com>; Gurland, Harvey W. <HWGurland@duanemorris.com>; Jackson-Fannin, Julian A. <jjfannin@duanemorris.com>; Aaron Alfano <aalfano@rolfeshenry.com>; pt@ptesq.com

**Subject:** Noshirvan v. Couture, 2:23-cv-01218-JES-KCD, Local Rule 3.01(g) Notice – Pro Se Motion to Reconsider August 18, 2025 Order (Doc. 459)

Dear Mr. Chiappetta, Mr. Gurland, Mr. Jackson-Fannin, Ms. Alfano, and Mr. Trainor:

Pursuant to Local Rule 3.01(g), I write as the pro se movant to confer regarding my intended Rule 60(b) Motion to Reconsider the District Court's August 18, 2025 Opinion and Order (Doc. 459, attached), which overruled my objection to the Magistrate Judge's denial of my emergency motion to quash a subpoena, for protective relief, and for sanctions.

I contend the ruling is *contrary to law* and *clearly erroneous*.

I also intend to continue seeking sanctions against Mr. Chiappetta and his client, Mr. Noshirvan, for bad-faith litigation conduct.

**Legal Grounds for Reconsideration**

1. **Improper Reliance on Sanctioned Counsel's Assertions**
   The Court credited Mr. Chiappetta's statements that service on me was "near impossible." This reliance was unwarranted because the Court had already found Mr. Chiappetta acted in bad faith in this very case. A litigant's voluntary cessation of misconduct does not moot a controversy absent a showing that recurrence is "absolutely clear." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 189 (2000); *United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203 (1968). The Court inverted this standard by requiring me to prove recurrence, contrary to the law of the case. *Jackson v. State of Ala. State Tenure Comm'n*, 405 F.3d 1276,

1283 (11th Cir. 2005) (stating that the doctrine "bars relitigation of issues decided either explicitly or by necessary implication" in an earlier stage of the same case); *United States v. Stinson*, 97 F.3d 466, 469 (11th Cir. 1996) (holding that the law-of-the-case doctrine applies to issues decided expressly or by necessary implication in earlier proceedings); *This That & The Other Gift & Tobacco, Inc. v. Cobb Cnty.*, 439 F.3d 1275, 1283 (11th Cir. 2006) (reaffirming that the doctrine bars relitigation of issues previously resolved in the same case).

2. **Failure to Address First Amendment Reporter's Privilege**

   My motion asserted the journalist's privilege recognized in the Eleventh Circuit. See *Price v. Time, Inc.*, 416 F.3d 1327, 1335–36 (11th Cir. 2005); *United States v. Caporale*, 806 F.2d 1487, 1504 (11th Cir. 1986). The subpoena sought information related to my investigative reporting, and no showing was made that the information was essential, unavailable elsewhere, or highly relevant. The Court's refusal to address this constitutional claim ignored *Branzburg v. Hayes*, 408 U.S. 665, 709 (1972) (Powell, J., concurring) ("no harassment of newsmen will be tolerated").

3. **Mootness Exception Misapplied**

   The "capable of repetition, yet evading review" exception applies when (1) recurrence is reasonably expected, and (2) the action is too short to litigate fully before ceasing. *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975). A subpoena withdrawn within one day is paradigmatic "evading review." The Court improperly demanded near certainty of recurrence, rather than a reasonable expectation. See *Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 170–71 (2016).

4. **Collateral Sanctions Survive Mootness**

   Even if the subpoena dispute became moot, my sanctions request did not. The Supreme Court holds that sanctions issues survive dismissal because they serve deterrent and punitive functions. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395–96 (1990). The Court erred by declining to address sanctions in light of undisputed evidence of bad faith.

5. **Manifest Injustice**

   The Court's ruling chills press freedom and rewards abuse of process by allowing a "serve-and-withdraw" subpoena tactic. This produces manifest injustice, warranting relief under Rule 60(b)(6).

**Sanctions Request**

I intend to seek sanctions against Mr. Chiappetta and Mr. Noshirvan under:

- Inherent powers for bad-faith issuance and withdrawal of the subpoena. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991).
- Rule 11 principles as articulated in *Cooter & Gell*, 496 U.S. at 396.
- 28 U.S.C. § 1927 for unreasonably and vexatiously multiplying proceedings.

**Request to Confer**

Please advise by close of business on August 20, 2025, whether you oppose the relief sought. If I do not hear from you, I will certify opposition in my filing.

**LUTHMANN RULE 60(b) MOTION 0018**

Case 2:25-cv-01805-JES-NJCB   Document 48-15   Filed 08/06/25   Page 41 of 42 PageID
8/26/25, 5:08 AM                          (7) Sent | richard.luthmann@protonmail.com    ton Mail
                                                    31,942

I would request Mr. Chiappetta's answers in writing, for obvious reasons. See the attached.

Thank you for your attention to this matter!

Regards,

Richard Luthmann

Writer, Journalist, and Commentator

Tips or Story Ideas:

(239) 631-5957

richard.luthmann@protonmail.com

**LINKTREE**

**Muck Rack Profile**

**Substack:** **This is For Real.**

**Editor-In-Chief:** **FLGulf.news**
**Editor-In-Chief:** **NYNewsPress.com**

**Editor-In-Chief:** **TheFamilyCourtCircus.com**

**Contributor:** **Frank Report**

**Contributor:** **Sun Bay Paper**

**Follow Me on** **Facebook** **X** **Instagram** **LinkedIn** **TRUTH** **Rumble**

Sent with Proton Mail secure email.

For more information about Duane Morris, please visit https://www.DuaneMorris.com

Confidentiality Notice: This electronic mail transmission is privileged and confidential and is intended only for the review of the party to whom it is

**LUTHMANN RULE 60(b) MOTION 0019**

addressed. If you have received this transmission in error, please immediately return it to the sender. Unintended transmission shall not constitute

waiver of the attorney-client or any other privilege.

**6.43 MB**   1 file attached   13 embedded images

image001.png 14.32 KB        image.png 19.18 KB        president-trump-new-portrait-may-2025.jpg 79.31 KB

School Bus-fotor-20250821174038.jpg 1.53 MB        merch-corp-sj.jpg 561.62 KB

DANESH PRISON-fotor-20250821175934.jpg 384.34 KB        hqdefault-fotor-2025082118517.jpg 110.10 KB

AA1FXVGU.jpeg 64.06 KB        8126669b-1988-4554-b3ac-de57201bb2f2_1280x720.jpg 86.77 KB

Aaron De La Torre.jpg 258.01 KB        Jason Richbourg.jpg 137.24 KB        AA1FXVGU.jpeg 64.06 KB

2025.08.12 OPINION & ORDER denying Trainor's [202] Motion for Sanctions; granting in part and denying in part.pdf
510.36 KB

image.png 2.67 MB