# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
### FORT MYERS DIVISION

------------------------------------------------------

**RICHARD LUTHMANN,**

                    Plaintiff,

    v.

**DANESH NOSHIRVAN aka DANESH JON NOSHRIVAN aka THAT DANESH GUY aka SCOTUS DOXXER DANESH NOSHIRVAN aka CANCEL CULTURE KILLER DANESH NOSHIRVAN aka #CHEESEDANESH, aka ERICA SABONIS,**

                    Defendant.

------------------------------------------------------

Case No. _____

**COMPLAINT**

**JURY TRIAL DEMANDED**

## COMPLAINT
### For Damages for Libel, Libel *Per Se*, *Prima Facie* Tort, Relief Under the Florida Anti-SLAPP Statute, and Injunctive and Declaratory Relief

Plaintiff Richard Luthmann, by and through undersigned counsel, alleges as follows:

## INTRODUCTION

1. There is no accusation more heinous under American law than that of pedophilia. The charge alone, whether true or false, carries with it an irreversible stain of moral depravity, public revulsion, and professional exile. Unlike other crimes, the mere allegation of child sexual abuse elicits immediate societal condemnation before any inquiry into the facts.

2. Nowhere is the reputational and legal impact of such an accusation more profound than in the State of Florida. In 2023, the Florida Legislature passed a law authorizing the death penalty for those convicted of sexually abusing children under the age of twelve. The measure reflects Florida's categorical stance that criminal child sex offenders are not

merely to be punished—they are to be extinguished. While focused on justice, this policy makes false accusations uniquely devastating for the innocent.

3. In a jurisdiction that now equates child sexual abuse with a capital offense, the deliberate and malicious act of labeling someone a pedophile is not mere defamation—it is a reputational execution. It marks the accused as deserving of death in the eyes of the law and community. The harm is not hypothetical. In Florida, it is terminal.

4. Plaintiff Richard Luthmann is a Victim of Defendant Danesh Noshirvan. The **Victims of Danesh** will no longer remain silent.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000, exclusive of interest and costs, and there is complete diversity of citizenship between the parties.

6. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred in this District and Plaintiff suffered injury within this District.

7. Plaintiff Richard Luthmann is a resident of Collier County, Florida, and regularly works and conducts professional activities in Lee County, Florida.

8. Defendant Danesh Noshirvan is a resident of Mansfield, Tioga County, Pennsylvania.

9. At all relevant times, Noshirvan operated an online publication and social media presence under the name "ThatDaneshGuy," which intentionally targeted and harmed individuals located in Florida, including Plaintiff. Defendant received formal notice according to Fla. Stat. § 770.01 on April 17, 2025.

10. Nicholas "Nick" Chiappetta is a licensed attorney in the State of Florida who serves as counsel for Defendant and also received formal notice according to Fla. Stat. § 770.01 on April 17, 2025. Chiappetta confirmed receipt of the notice pursuant to Fla. Stat. § 770.01. Chiappetta is a fact witness.

## PARTIES

### Plaintiff Richard Luthmann

11. Plaintiff Richard Luthmann is a Florida-based journalist, commentator, and investigative writer who publishes through multiple independent media platforms, including Substack and FLGulfNews.com.

12. Plaintiff is not a public figure within the meaning of New York Times v. Sullivan, 376 U.S. 254 (1964), nor its progeny.

### Defendant Danesh Noshirvan

13. Defendant Danesh Noshirvan has many known aliases. He is an online content creator and activist who operates a monetized media brand known as "ThatDaneshGuy" across multiple digital platforms, including TikTok, Instagram, YouTube, and Substack.

14. Defendant engages in pattern-and-practice defamation under the guise of "accountability journalism" but in fact relies on malicious and reckless accusations, AI-driven fabrications, and targeted digital harassment for profit.

15. Defendant has millions of followers across all platforms.

16. According to expert medical documents prepared in connection with Noshirvan v. Couture et al., the Defendant is seriously mentally damaged. See No. 2:2023cv01218 (M.D. Fla.). See the attached **EXHIBIT "A"** (redacted to comply with court rules).

17. Defendant is married to Hannah Butcher Noshirvan of Mansfield, Pennsylvania.

18. According to expert medical documents prepared in connection with <u>Noshirvan v. Couture et al.</u>, Hannah Butcher Noshirvan is also seriously mentally damaged. See No. 2:2023cv01218 (M.D. Fla.). See the attached **EXHIBIT "B"** (redacted to comply with court rules).

19. Defendant is a public figure within the meaning of <u>New York Times v. Sullivan</u>, 376 U.S. 254 (1964), and its progeny.

## STATEMENT OF FACTS

20. On April 17, 2025, Defendant published an article titled *"BREAKING! Lawyer of Child Stalker says black people are indistinguishable from MONSTERS! Shares illegal revenge porn in court!"* on his Substack account. See the attached **EXHIBIT "C."**

21. The article falsely stated:

> *"This misogynist was told by my wife that she didn't want to share personal information with him because he will share it with pedophiles Joey Camp and Richard Luthmann to harass her with."*

22. This statement is false. Plaintiff is not a pedophile, has never been investigated or accused of such conduct, and has never been convicted of the crime of pedophilia, of deviant sex acts, of crimes against children, or any sex crimes.

23. Plaintiff is not a CHOMO. He is a journalist and consultant.

24. Defendant published the statement with actual malice, full knowledge of its falsity, and the intent to cause reputational ruin.

25. Defendant published the statements knowing full well that Hannah Butcher Noshirvan was seriously mentally damaged.

26. Defendant published the statements knowing full well that Defendant was seriously mentally damaged.

27. Defendant has a history of launching malicious online campaigns against targets by using Artificial Intelligence, fabricated screenshots, and dishonesty to simulate criminality and scandal.

28. In the same April 17 article, Defendant targeted Duane Morris LLP partner Julian Jackson Fannin, falsely accusing him of racism and abuse, then doxxed him on social media and incited harassment by tagging his employer and family members.

29. Upon information and belief, Julian Jackson Fannin, his family members, and his law firm, Duane Morris LLP, have received death threats and threats of violence as a direct result of Defendant's "accountability" campaign.

30. Upon information and belief, the Federal Bureau of Investigation is aware of Defendant's activities relating to Julian Jackson Fannin, his family members, and his law firm, Duane Morris LLP.

31. Upon information and belief, the Office of Miami-Dade County State Attorney Katherine Fernandez Rundle is aware of Defendant's activities relating to Julian Jackson Fannin, his family members, and his law firm, Duane Morris LLP.

32. Defendant has engaged in similar conduct, harassing and maliciously and heinously targeting hundreds of "Victims of Danesh."

33. In his 2024 Year-End Report on the Federal Judiciary, Chief Justice John Roberts identified "illegitimate activity" threatening judicial independence, including violence, intimidation, and disinformation. He highlighted the dangers of doxxing—publicly

releasing judges' personal information—which has led to harassment and unsolicited visits to judges' homes.

34. The Chief Justice also emphasized that disinformation, particularly when amplified by social media and hostile foreign actors, undermines public confidence in the judiciary.

35. Defendant has perpetrated malicious and heinous conduct against sitting U.S. Supreme Court Justices, disseminating their home addresses and encouraging mobs to protest and intimidate them at their private residences after the issuance of the _Dobbs_ decision.

36. Upon information and belief, Plaintiff believes that Defendant is an agent of a foreign government, receives remuneration from foreign source funds, and receives remuneration from persons and entities that receive remuneration from foreign sources, including but not limited to Scott Dworkin and the Democratic Coalition against Donald Trump.

37. Upon information and belief, the Defendant, Scott Dworkin, and the Democratic Coalition against Donald Trump are funded by and are _de facto_ agents of George Soros and the Chinese Communist Party.

38. Upon information and belief, the Defendant's entire "accountability" program is a foreign active measure, cooked up in Beijing, to subvert the fabric of American society and attack traditional American institutions and values, including the federal courts.

39. Defendant's defamation campaigns extend beyond the digital realm. His actions contributed to the suicide of Aaron De La Torre, a Texas high school football coach in Denton County, Texas, falsely labeled by Defendant and subjected to sustained harassment by Noshirvan's followers.

40. There are well over Six Hundred (600) Victims of Danesh, in addition to the Plaintiff, Duane Morris LLP partner Julian Jackson Fannin, his family, and the law firm, the late

Aaron De La Torre and his family, and the Denton County Texas community, and six venerated Justices of the United States Supreme Court and their loved ones. The **Victims of Danesh** include, but are not limited to:

a) **Dr. Edith Del Mar Behr (PA)**: A healthcare professional harassed over unfounded allegations related to medical controversies, facing threats that disrupted her career and patient relationships.

b) **Keshia Brinkerhoff (WY)**: A teacher falsely accused of promoting divisive ideologies, enduring threats jeopardizing her safety and professional standing.

c) **Dr. Ryne Paulson (WY)**: A pediatric dentist falsely maligned, leading to threats and damage to his professional reputation.

d) **Jennifer and Thomas Kehs (PA)**: Residents were harassed by online mobs after baseless allegations were amplified by Noshirvan, resulting in personal and emotional distress.

e) **Jennifer Couture (FL)**: A private citizen subjected to <u>selective dishonest video editing and doxxing</u> that led to threats against her family and harm to her husband's business, Garramone Plastic Surgery.

f) **Shelly Schwarz (CA)**: A small business owner whose company faced damaging reviews and a loss of customers due to unfounded accusations promoted by Noshirvan.

g) **Sheriff Carmine Marceno (FL)**: Noshirvan targeted the Lee County Sheriff in social media posts, questioning his integrity and accusing him of

misconduct without evidence. He undermined public trust in law enforcement to fraudulently influence Jennifer Couture's arrest.

h) **State Prosecutor Amira Fox (FL)**: A Florida prosecutor falsely accused of engaging in unethical behavior, drawing harassment from Noshirvan's followers, and creating potential safety risks for her and her office, done to fraudulently influence the prosecutorial decision whether to charge Jennifer Couture.

i) **Healthcare Workers Nationwide**: Nurses, doctors, and pharmacists, such as **Scott Wertz (PA)** and **Crystal Lauver (PA)**, faced coordinated harassment campaigns related to medical misinformation.

j) **Small Business Owners**: Businesses like **Paparoni's Grill (SC)** and **Countryside BBQ (SC)** were forced to contend with boycotts, threats, and closures after being falsely associated with controversies.

k) **Law Enforcement Personnel**: False allegations of misconduct targeted officers like **Nick Moore (GA)** and departments like the **Arlington Police Department (TX)**, leading to reputational harm and public distrust.

l) **Families of Deceased Individuals**: Grieving families, including those of **Robert LeMay (WA)** and **Matthew Lee Rupert (IL)**, faced relentless online abuse in the wake of losing their loved ones.

m) **Education Professionals**: Administrators like **Ryan Lewis (CA)** and **Heather Williams (CA)** were targeted with false claims of promoting controversial ideologies, damaging their reputations and careers.

n) **Politicians and Public Figures**: Noshirvan attacked political figures such as **State Senator Anthony Bouchard (WY)** in campaigns to discredit their public service.

41. These aren't isolated incidents. Defendant has weaponized social media to systematically destroy lives.

42. What makes it worse is that his lawyer, Nick Chiappetta, defends these actions and aids and abets them through concerted actions and legal maneuvers aimed at silencing critics.

43. On April 17, 2025, Plaintiff served Defendant and his attorney, Nick Chiappetta of Lake Worth, Florida, with written notice according to Fla. Stat. § 770.01. See the attached **EXHIBIT "D."**

44. Attorney Nick Chiappetta is a fact witness in this matter.

45. Attorney Nick Chiappetta confirmed the receipt of the written notice according to Fla. Stat. § 770.01. See the attached **EXHIBIT "E."**

46. In confirming the receipt of the written notice according to Fla. Stat. § 770.01, Attorney Chiappetta conceded he had full knowledge of the Defendant's activities, threatened Plaintiff, and attempted to deal on Defendant's behalf.

47. It is notable that Plaintiff admonished Attorney Chiappetta:

*You continue to be a professional disgrace. Any attorney with a conscience would have withdrawn after their client maliciously and baselessly called a respected Black Civil Rights attorney a "Racist."*

48. Attorney Chiappetta was not done there. He continued to threaten Plaintiff as Defendant, as others watched digitally. See the attached **EXHIBIT "F."**

49. Defendant concedes that he uses dishonest methods to create and deploy his content.

50. Defendant concedes that he uses "sock puppets" in the creation of his content.

51. Defendant concedes that he uses "sock puppets" and Artificial Intelligence in the deployment of his "accountability" campaigns.

52. Defendant's *modus operandi* in the deployment of his "accountability" campaigns constitutes dishonesty and harassment as a matter of law.

53. Defendant has not retracted or corrected the defamatory statement.

54. Plaintiff submitted a Statement to the local Police Department in Cape Coral, Florida, taken by Officer Hendershot, where Plaintiff was physically present at the time of the Defendant's activity complained of on April 17, 2024. See the Report, redacted to comply with Marsy's Law, attached hereto as **EXHIBIT "G"**.

55. The Report, which speaks for itself, complains that Defendant has violated the Florida Criminal Statutes §§ 836.01[1] and 836.11.[2]

56. Plaintiff has suffered criminal injury and has requested the full protections of Marsy's Law as a crime victim, rights guaranteed by the Florida Constitution.[3] Plaintiff received a

---

[1] **F.S. 836.01   Punishment for libel.**—Any person convicted of the publication of a libel shall be guilty of a misdemeanor of the first degree, punishable as provided in s. 775.082 or s. 775.083.

[2] **F.S. 836.11   Publications which tend to expose persons to hatred, contempt, or ridicule prohibited.**—

(1)   It shall be unlawful to print, publish, distribute or cause to be printed, published or distributed by any means, or in any manner whatsoever, any publication, handbill, dodger, circular, booklet, pamphlet, leaflet, card, sticker, periodical, literature, paper or other printed material which tends to expose any individual or any religious group to hatred, contempt, ridicule or obloquy unless the following is clearly printed or written thereon:

(a)   The true name and post office address of the person, firm, partnership, corporation or organization causing the same to be printed, published or distributed; and,

(b)   If such name is that of a firm, corporation or organization, the name and post office address of the individual acting in its behalf in causing such printing, publication or distribution.

(2)   Any person, firm or corporation violating any of the sections of this statute shall be guilty of a misdemeanor of the first degree, punishable as provided in s. 775.082 or s. 775.083.

[3] On January 8, 2019, with the enactment of Revision 1 of Article 1, Section 16, of the Florida Constitution, Section 960.001, Florida Statutes, provides legal rights established for crime victims as follows:

- You have the right to due process and to be treated with fairness and respect for your dignity.
- You have the right to be free from intimidation, harassment, and abuse.

Victim's Rights document in connection with the filing of the Statement. See the

Victims' Rights document attached as **EXHIBIT "H."**

57. Plaintiff's shaky handwriting in the Report is testament to the severe and substantial

emotional distress and anguish Plaintiff suffered as a result of Defendant's conduct.

58. Upon information and belief, the Offices of State Attorney Amira Fox and Lee County

Sheriff Carine Marceno are aware of Defendant's activities relating to Plaintiff and

Marsy's Law.

---

- You have the right within the judicial process, to be reasonably protected from the accused and any person acting on behalf of the accused.
- You have the right to have your safety and welfare and that of your family considered when bail and conditions of pretrial release are set.
- You have the right to prevent the disclosure of information or records that could be used to locate or harass the victim or the victim's family, or which could disclose confidential or privileged information of the victim.
- You have the right to request reasonable, accurate, and timely notice of all public proceedings involving the criminal conduct, including, but not limited to, trial, plea, sentencing, or adjudication.
- You have the right to request the opportunity to be present at all public proceedings involving the criminal conduct, including, but not limited to, trial, plea, sentencing, or adjudication, even if you will be a witness at the proceeding, notwithstanding any rule to the contrary.
- You have the right to request the opportunity to be heard in any public proceeding involving pretrial or other release from any form of legal constraint, plea, sentencing, adjudication, or parole, and any proceeding during which a right of the victim is implicated.
- You have the right to request to confer with the prosecuting attorney concerning any plea agreements, participation in pretrial diversion programs, release, restitution, sentencing, or any other disposition of the case.
- You have the right to provide information regarding the impact of the offender's conduct on you and your family to the individual responsible for conducting any presentence investigation or compiling any presentence investigation report, and to have any such information considered in any sentencing recommendations submitted to the court.
- You have the right to request a copy of any presentence report, and any other report or record relevant to the exercise your victim's rights, except for confidential or exemptions by law.
- You have the right to request to be informed of the conviction, sentence, adjudication, place and time of incarceration, or other disposition of the convicted offender, any scheduled release date of the offender, and the release of or the escape of the offender from custody.
- You have the right to the prompt return of your property when no longer needed as evidence in the case.
- You have the right to full and timely restitution in every case and from each convicted offender for all losses suffered, both directly and indirectly, by you as a result of the criminal conduct.
- You have the right to proceedings free from unreasonable delay, and to a prompt and final conclusion of the case and any related post-judgment proceedings.

59. The next day, a copy of the redacted report disclosed to Noshirvan and his attorney Nick Chiappetta was published and discussed on numerous social media accounts, disparaging the victim-Plaintiff. See the attached **EXHIBIT "I."**

60. Upon information and belief, the Twitter Accounts @RealBullyVille, @CredibleIntel, and @RonBryn are connected to the Defendant, Attorney Chiappetta, and their associates, James McGibney of BullyVille.com, and Steven Jay Hatlestad of Hollywood, Florida.

61. Plaintiff has suffered reputational harm, economic injury, emotional distress, and credible threats to his personal safety and ability to practice his profession.

## CAUSES OF ACTION

## COUNT I: LIBEL

62. Plaintiff re-alleges all previous paragraphs as if set forth fully herein and further states as follows.

63. Defendant knowingly published a written false statement of fact on April 17, 2025, in which he directly and unequivocally labeled Plaintiff a "pedophile."

64. The defamatory statement was neither satire nor opinion. It constituted a specific, factual accusation of a felony sex crime.

65. Defendant failed to verify the claim before publication, despite the obvious gravity of the accusation, and had no evidence or credible source to support it.

66. Defendant had no reasonable belief that the statement was true, nor did he act as a reasonable publisher would under the circumstances.

67. Defendant's statement was published to a large audience through Substack, social media, and derivative content aggregators, ensuring widespread public dissemination.

12

68. The defamatory publication was designed to and did, in fact, expose Plaintiff to hatred, contempt, ridicule, distrust, and disgrace.

69. As a direct and proximate result of Defendant's false publication, Plaintiff has suffered reputational harm, lost professional opportunities, emotional distress, and tangible economic damage.

70. Plaintiff was subjected to online threats, harassment, and reputational blacklisting by third parties who relied on and repeated Defendant's defamatory statements.

71. Plaintiff was subjected to online threats, harassment, and reputational blacklisting caused by the Defendant and his followers, directly and through the use of Artificial Intelligence.

72. The publication was part of a pattern of targeted harassment by Defendant in which he creates false narratives about his subjects for the express purpose of monetized outrage and social destruction.

## COUNT II: LIBEL *PER SE*

73. Plaintiff re-alleges all previous paragraphs as if set forth fully herein and further states as follows.

74. Defendant's written statement explicitly accuses Plaintiff of pedophilia. It constitutes a specific, factual accusation of a felony sex crime, an accusation that constitutes libel *per se* under Florida law and common law standards.

75. An allegation of pedophilia imputes conduct so inherently vile, immoral, and criminal that damages are presumed as a matter of law.

76. No extrinsic evidence is necessary to demonstrate the statement's defamatory nature; the accusation is actionable on its face.

77. Defendant published the statement with actual malice—either knowing that the allegation was false or acting in reckless disregard of the truth.

78. The statement is not protected speech under the First Amendment because it is a provably false factual assertion and was made with malicious intent.

79. Defendant's statement caused Plaintiff to be viewed as a criminal child sex offender, permanently damaging his reputation, credibility as a journalist and consultant, and ability to participate in professional, civic, and public life.

80. Plaintiff was falsely linked to heinous criminal child sex offender conduct without any lawful basis or journalistic process. Defendant engaged in a reckless smear to maliciously harm Plaintiff and with the added bonus of driving clicks, controversy, and online virality.

81. In addition to presumed damages, Plaintiff also suffered actual damages, including anxiety, fear for personal safety, and irreparable damage to professional relationships and future career opportunities.

### COUNT III: *PRIMA FACIE* TORT

82. Plaintiff re-alleges all previous paragraphs as if set forth fully herein and further states as follows.

83. Defendant intentionally committed an otherwise unlawful and malicious act—publicly and falsely labeling Plaintiff as a pedophile—with full knowledge that such an accusation would inflict severe reputational and emotional harm.

84. Defendant intentionally committed an otherwise unlawful and malicious act—using dishonest and harassing means to disseminate his content publicly and falsely labeling

14

Plaintiff as a pedophile-with full knowledge that such techniques would inflict severe reputational and emotional harm.

85. The act was not incidental or negligent; it was intentional, targeted, and executed with full awareness of its likely impact on Plaintiff's life and livelihood.

86. Defendant's sole motive in making the defamatory accusation was to serve his own private interests, including:

    a. silencing a critic using unlawful methods and means;

    b. harming a critic using unlawful methods and means;

    c. specifically and generally deterring public engagement by any future critics using unlawful methods and means;

    d. generating public outrage;

    e. monetizing traffic and subscriptions;

    f. enhancing his internet notoriety;

    g. retaliating against individuals and groups he perceived as his political or ideological enemies; and

    h. retaliating against individuals and groups he perceived as the political or ideological enemies of the foreign interests he represents.

87. The publication was not made in good faith, was not based on any journalistic investigation, and served no legitimate public interest.

88. Defendant's broader conduct demonstrates a clear pattern: he routinely fabricates claims against his targets, weaponizes AI-generated content, and launches coordinated digital harassment campaigns intended to destroy reputations.

89. Plaintiff was among many victims of this digital vigilantism. Others, including Julian Jackson Fannin and Aaron De La Torre, also suffered severe consequences after being falsely labeled and attacked by Defendant online.

90. The emotional distress and reputational loss suffered by Plaintiff were direct, foreseeable, and intended outcomes of Defendant's malicious conduct.

91. Defendant's actions meet the standard for prima facie tort because they involved intentional infliction of harm without legal justification or excuse.

## COUNT IV: VIOLATION OF FLORIDA'S ANTI-SLAPP LAW

### (Section 768.295, Florida Statutes)

92. Plaintiff re-alleges all previous paragraphs as if set forth fully herein and further states as follows.

93. Florida's Anti-SLAPP statute, codified at Fla. Stat. § 768.295, prohibits any person from retaliating against or interfering with another person's exercise of the constitutional right of free speech in connection with a public issue, or the right to petition the government for redress of grievances.

94. Plaintiff is a journalist and public commentator whose work regularly addresses matters of public concern, including political corruption, judicial misconduct, and systemic abuse of legal institutions. His reporting is constitutionally protected activity under the First Amendment and Article I, Section 4 of the Florida Constitution.

95. Defendant targeted Plaintiff with a knowingly false and malicious accusation of pedophilia—a felony offense punishable by death in Florida—not to contribute to public discourse, but to destroy Plaintiff's credibility, chill his investigative reporting, and silence his speech.

96. The defamatory publication was not connected to any legitimate public debate. It was a retaliatory act designed to punish Plaintiff for his constitutionally protected expression and to intimidate him from further participation in matters of public interest.

97. Defendant's conduct constitutes a "strategic lawsuit against public participation" within the meaning of Fla. Stat. § 768.295(2), insofar as it interferes with Plaintiff's ability to speak freely and engage in journalism without fear of reputational execution by false accusation.

98. Defendant's actions were willful, intentional, and malicious. Plaintiff is entitled to statutory remedies, including:

    a. Immediate dismissal of any retaliatory claims brought by Defendant;

    b. Recovery of actual damages;

    c. An award of fees and costs incurred in bringing this action; and

    d. Any additional relief necessary to prevent further interference with Plaintiff's protected rights.

99. Pursuant to Fla. Stat. § 768.295(4), Plaintiff respectfully requests that this Court grant all appropriate relief to remedy Defendant's SLAPP activity and to deter future abuse of the public discourse by defamatory weaponization.

## COUNT V: INJUNCTIVE RELIEF

100. Plaintiff re-alleges all previous paragraphs as if set forth fully herein and further states as follows.

101. Defendant's publication of the April 17, 2025, Substack article—falsely accusing Plaintiff of being a pedophile—constitutes an extreme and ongoing defamation

campaign, and presents a continuing threat of irreparable harm to Plaintiff's life, safety, professional standing, and reputation.

102.     Florida courts recognize that injunctive relief is appropriate where (1) the plaintiff has a clear legal right; (2) there is a substantial threat of irreparable injury; (3) the threatened injury outweighs any harm to the defendant; and (4) the injunction will serve the public interest.

103.     All four elements are met here. First, Plaintiff has a clear legal right to be free from defamatory falsehoods that falsely brand him a felon and sexual predator. Second, the injury is irreparable: Plaintiff has already been subjected to death threats, online harassment, reputational blacklisting, and emotional trauma.

104.     Third, the balance of equities tips sharply in Plaintiff's favor. Defendant has no legitimate interest in republishing or promoting provably false statements that accuse Plaintiff of one of the most reviled crimes in American society. The minimal burden on Defendant is outweighed by the existential threat to Plaintiff.

105.     Fourth, the requested injunction serves the public interest. The law does not protect false speech. It does not permit the reckless branding of a man as a pedophile when no factual basis exists. The integrity of public discourse depends on accountability for malicious fabrications.

106.     Moreover, in the State of Florida, where the legislature has declared that actual pedophiles may be subject to the death penalty, the danger of extrajudicial harm to Plaintiff from a false accusation is exponentially increased. No jurisdiction in the United States treats the crime more seriously, and no state magnifies the danger of a false label more than Florida.

107.     Defendant has refused to retract, correct, or remove the defamatory publication, despite formal notice under Fla. Stat. § 770.01 and multiple opportunities to mitigate harm. To the contrary, Defendant has continued to amplify the defamatory statement through additional posts and by allowing continued public access to the article on Substack and elsewhere.

108.     Plaintiff therefore seeks entry of a preliminary and permanent injunction prohibiting Defendant from:

    a.  Republishing or disseminating the April 17, 2025, article or any materially similar statement that accuses Plaintiff of being a pedophile;

    b.  Making or distributing any future statement that falsely accuses Plaintiff of criminal sexual conduct or child abuse;

    c.  Encouraging or inciting third parties to harass, threaten, dox, or defame Plaintiff in connection with the false accusation; and

    d.  Failing to remove defamatory statements under Defendant's control from all platforms within his custody or control.

109.     Plaintiff further seeks an order compelling Defendant to remove the April 17, 2025, article from any site, platform, or domain he controls or directs, and to issue a public retraction disclaiming the false statements.

110.     In the absence of injunctive relief, Plaintiff will continue to suffer immediate, ongoing, and irreparable harm that no monetary damages alone can redress.

## **COUNT VI: DECLARATORY RELIEF**

111.     Plaintiff re-alleges all previous paragraphs as if set forth fully herein and further states as follows.

112.     Pursuant to 28 U.S.C. § 2201, this Court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." The Declaratory Judgment Act is designed to afford parties relief from uncertainty and insecurity with respect to legal rights, status, and relations.

113.     An actual and justiciable controversy exists between Plaintiff and Defendant as to the falsity, legality, and status of Defendant's published statements, including the April 17, 2025, Substack article that falsely and maliciously accused Plaintiff of being a pedophile.

114.     Defendant's statement is not constitutionally protected speech. It is not opinion, rhetorical hyperbole, satire, parody, or political expression. It is a knowingly false and specific factual allegation imputing the commission of a capital sex offense.

115.     As a direct result of the publication, Plaintiff was subjected to public vilification, professional blacklisting, threats of physical violence, and reputational injury of the most severe kind. His personal safety, ability to practice his profession, and standing in the community have been materially impaired.

116.     Defendant continues to publish, promote, and amplify defamatory content concerning Plaintiff, creating a continuing cloud of uncertainty, coercion, and reputational danger. Defendant's refusal to retract or disavow his false accusation reinforces the immediacy and permanence of the threat.

117.     Plaintiff seeks a declaratory judgment from this Court that: a. Defendant's statements accusing Plaintiff of being a pedophile are false; b. Defendant's statements are defamatory per se under Florida law; c. Defendant's statements are not entitled to protection under the First Amendment; d. Plaintiff is not, and has never been, a pedophile

or child sex offender; and e. Plaintiff has the right to be free from false and malicious statements that brand him as such.

118.    Entry of a declaratory judgment will serve a useful legal purpose by resolving the controversy between the parties, providing clarity to third parties regarding the defamatory nature of Defendant's publication, and deterring further republication or reliance upon the false accusation.

## AD QUOD DAMNUM STATEMENT

In addition to all available statutory, equitable, injunctive, declaratory, administrative, and other relief, Plaintiff seeks compensatory and punitive damages in an appropriate measure and states as follows to the JUDGE and JURY:

A.    What is an appropriate measure of damages per the law of damages and the facts of this case? Plaintiff submits that the penalty for the crimes Defendant accuses him of is DEATH under Florida law.

B.    Accordingly, Plaintiff asserts the present value of his life is no less than $5 million as a compensatory measure.

C.    Additionally, Plaintiff seeks TREBLE punitive damages because of the heinous, malicious, continued, and outlandish manner in which Defendant operates. TREBLE punitive damages would serve the important purpose of punishing the Defendant, but will serve the even greater societal purpose of DETERRENCE. Nothing to date has deterred Defendant from his course of action. TREBLE punitive damages will serve to specifically deter the Defendant in the future, AND generally deter others who would consider his

course of conduct. The next Victim of Danesh could be you, a family member, a loved one, a friend, or a community member.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

**PRAYER FOR RELIEF**

    **WHEREFORE**, Plaintiff respectfully requests judgment in his favor and against Defendant as follows:

a. **Compensatory damages** in an amount to be determined at trial, not less than **$5,000,000**;

b. **Punitive damages** sufficient to deter future misconduct, not less than **$15,000,000**;

c. **Preliminary and permanent injunctive relief** as set forth above;

d. **Declaratory relief** declaring the publication false and defamatory;

e. **Fees and costs**;

f. **Any other relief** the Court deems just and proper.

Dated: Naples, Florida
      April 23, 2025                       Respectfully submitted,

                                     Richard A. Luthmann
                                     Plaintiff, *Pro Se*
                                     338 Sugar Pine Lane
                                     Naples, FL 34108
                                     (239) 631-5957