UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

Case No.: 1:25-cv-00058-RH-MJF

ELEPHANT SHOE, LLC, an Ohio Limited Liability Company
d/b/a WHAT THE HALE$,
and

JEREMY B. HALES,

      Plaintiffs,

v.

LYNETTE MICHELLE LACY ALEXIS PRESTON,
JOHN COOK, BRUCE P. MATZKIN, LISA LEE,
MARLA HUGHES, DAVID C. HELM,
ROBERT J. KESZEY, DAVID MICHAEL TESCHENDORF,
RAYMOND G. BONEBRAKE, JR.
and RICHARD LUTHMANN,

      Defendants.

_____/

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT LUTHMANN'S MOTION TO VACATE CLERK'S DEFAULT AND TO DISMISS SECOND AMENDED COMPLAINT

Plaintiffs ELEPHANT SHOE, LLC, d/b/a WHAT THE HALE$, and JEREMY B. HALES, by and through the undersigned counsel, pursuant to Rule 55(c) of the Federal Rules of Civil Procedure, hereby file this Response in Opposition to Defendant Richard Luthmann's Motion to Vacate Clerk's Default and to Dismiss Second Amended Complaint (Doc. 156), and in support thereof state as follows:

## INTRODUCTION

Defendant Richard Luthmann (hereinafter, "Luthmann") has filed a motion to vacate the Clerk's Default entered against him on January 22, 2026, and to dismiss the Second Amended Complaint. Luthmann's motion should be denied because: (1) Luthmann's own exhibits contradict his claim that he was misidentified; (2) Plaintiffs made numerous documented attempts to serve Luthmann at both of his claimed Florida addresses; (3) substitute service was properly effectuated pursuant to Florida law; and as a result, (4) Luthmann has failed to demonstrate good cause to set aside the default. Additionally, Luthmann's alternative arguments regarding arbitration and failure to state a claim are meritless.

The Motion to vacate the Clerk's Default entered against Luthmann should be denied.

## FACTUAL BACKGROUND

On April 28, 2025, Plaintiffs filed their First Amended Complaint naming Richard Luthmann as a defendant. On June 11, 2025, Plaintiffs filed their Second Amended Complaint. Plaintiffs made *numerous* documented attempts to serve Luthmann at his *two claimed Florida addresses*: 338 Sugar Pine Lane, Naples, FL 34108 and 4199 Los Altos Court, Naples, FL 34109. (See **Exhibits #1 through #4** attached thereto)

As evidenced by these process server affidavits, multiple service attempts were made at both addresses between May and August 2025. The process server documented that on November 3, 2025, he attempted to call Luthmann, who responded with hostility, stating: "You are a dumb fuck to think that anyone in their right mind would agree to meet and accept court papers from you" and "I am going to make your life fucking miserable." Minutes later, Luthmann called the process server from a Mexico number, threatening: "I am going to report you and your business as a sex predator. I know who your family is and where you live." See **Exhibit #1**.

After these failed attempts at personal service, Plaintiffs properly effectuated substitute service through the Florida Secretary of State pursuant to Florida Statutes §48.161 and §48.181.

On January 22, 2026, the Clerk entered default against Luthmann.

## ARGUMENT

## I.    Luthmann's Own Exhibits Contradict His Claim That He Was Misidentified

Luthmann's primary argument is that he was "misidentified" because the complaint names "Richard Luthmann" rather than "Richard A. Luthmann, Jr." This argument is directly contradicted by Luthmann's own exhibits. In his Declaration of Domicile filed in Collier County, Florida (Doc. 156-1, pp. 26-27), Luthmann signed his name - under oath - as "Richard Luthmann" - not "Richard A. Luthmann, Jr."

Similarly, in his complaint filed in the Middle District of Florida (Doc. 156-1, pp. 28-33), he identified himself as "Richard Luthmann." Luthmann cannot claim he was misidentified when he himself uses "Richard Luthmann" as his name in official court filings and legal documents. His attempt to evade service by claiming a name discrepancy is disingenuous and should be rejected.

## II.    Plaintiffs Made Numerous Documented Attempts to Serve Luthmann at His Florida Addresses

Contrary to Luthmann's assertion that no attempts were made to serve him at his actual residences, the record demonstrates multiple service attempts at both of his claimed Florida addresses. The process server affidavits document at least eight separate attempts to serve Luthmann at 338 Sugar Pine Lane and 4199 Los Altos Court in Naples, Florida, between May and August 2025. See **Exhibits #1 through #4** attached thereto)

Additionally, the USPS Priority Mail envelope addressed to Luthmann at the very address he used in his "Declaration of Domicile" - 338 Sugar Pine Lane, Naples, FL 34108 (Doc. 156-1 p. 26) - was marked "RETURN TO SENDER UNABLE TO FORWARD," further evidencing attempts to serve Luthmann at his claimed address. **See Exhibit #5**, attached hereto.

Service of process may be accomplished by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." USCS Fed Rules Civ Proc R

4 (e)(1). Plaintiffs complied with this requirement by attempting personal service multiple times and then resorting to substitute service as permitted under Florida law.

### III.    Substitute Service Was Properly Effectuated Pursuant to Florida Law

After diligent but unsuccessful attempts to personally serve Luthmann, Plaintiffs properly effectuated substitute service through the Florida Secretary of State pursuant to Florida Statutes §48.161 and §48.181. These statutes permit substitute service when a defendant is concealing his whereabouts or engaging in business in Florida.

Luthmann acknowledges  Fla. Stat. § 48.161 and 48.181, which allow for substitute service via the Secretary of State, apply in certain circumstances—specifically, for nonresidents or for residents who are concealing their whereabouts. (Doc. 156, at ¶ 12). Therefore, it is immaterial whether Luthmann is a resident or a nonresident. Rather, the issue is that Luthmann has been concealing his whereabouts, actively evading service of process.

Under Florida law, a person has the legal obligation to accept service when service is attempted reasonably. *Cf. Haney v. Olin Corp.*, 245 So. 2d 671, 673 (Fla. 4th DCA 1971) ("The rule means that a person within the jurisdiction has an obligation to accept service of process when service is attempted reasonably.").

A court will not require a plaintiff to expend limitless resources in order to effect service upon a defendant who has actual notice of a suit and who intentionally evades service. Lancaster v. Bottle Club, LLC, 2017 U.S. Dist. LEXIS 109230, No. 8:17-CV-634-T-33JSS, 2017 WL 4922855, at *2 (M.D. Fla. Oct. 31, 2017). The record clearly demonstrates that Luthmann was actively evading service. His hostile and threatening response to the process server's call on November 3, 2025, is compelling evidence of his intent to avoid service. (Doc. 115). Moreover, he has made public videos "taunting" Defendants with his evasiveness:

- **#HeyGERM - Not Served in the Snow**



https://www.youtube.com/watch?v=RBR2rfQnbU8 ("Nov 29, 2025 #HeyGERM word on the street is Luthmann vanished "somewhere in the snow." Good luck

sending your Florida process server into a blizzard, big guy. Even the OUTLAW BIKERS running his security laughed: "GERM? Nah, we don't do cartoons." #HalesFearsLuthmann GERM claims he's "closing in" on Luthmann. Meanwhile, the only tracks in the snow are from biker boots and wolves. Your process server turned back after hearing one Harley start. Pocket Rocket cried. #JeremyHales #WhatTheHales

- **#HeyGERM - Jeremy Hales Fails at Serving Rich Luthmann - AGAIN!**



https://www.youtube.com/watch?v=nNm4a9uIKlw ("Sep 11, 2025

#HeyGERM — Luthmann sat in front of a federal judge in Fort Myers. You couldn't find him? Really? #JeremyHalesFails #JeremyHales #WhatTheHales #PaintchipsWinner #GermLOSER #HeyGERM — Bailiffs, clerks, and judges saw Luthmann. You? Nowhere. What will Judge Bolitho say? #InvisibleMan #ProcessServerProblems.").

• **#HeyGERM - Alligator Lover, Grouper Hater**



https://www.youtube.com/shorts/lkkcsdt8W74 (Oct 3, 2025 "if your process server was smart enough to come get me in Naples, he maybe he could have found me at the grouper and chips place down here. So I'm going to go in there. I'm going to get

lunch in the grouper and chip place cuz it's one of the best. But you're not going to

come here because you sir are an alligator fucker and you are a closeted homosexual.

You're an elder abuser and you're a paid agitator. You continue to be these things

and the court of law will know all about it very soon. Have a good day").

- **What the Hales Fails! Very, Very Stupid!**



https://www.youtube.com/watch?v=5Jx-REImjhg    (Aug   8,   2025   #JeremyHales

#WhatTheHales Sitting at Columbia Restaurant in Sarasota, savoring paella

 while "Jeremy Fails" is 1000 miles away in Ohio still too stupid to serve me. This alligator lover missed his shot in federal court—again. 🐊 #JeremyHales #WhatTheHales #Luthmann Paella in hand, view of Sarasota Bay 🌊… and somewhere in Ohio, "Jeremy Fails" wonders why process service isn't like fishing for gators—throw bait, wait. Sorry, pal. Still very, very stupid. 🐊").

- **#HeyGERM - Hales Fears Luthmann**



https://www.youtube.com/watch?v=BqGS6qAFUfI (Nov 23, 2025 "You guys are avoiding serving me because Hales fears Luthman. So if I don't hear from you, happy Thanksgiving and by then you'll be what they call so out of luck. Have a good one.").

- **#HeyGERM - Jeremy Hales is a LOSER - Rich Luthmann Get Bagels**



https://www.youtube.com/watch?v=RhCXqeWMEBk (Oct 3, 2025 "Hey Germ, I just got my breakfast at the Brooklyn Dough in Naples, Florida. I got some great

bagels. I got a bagel with bacon, egg, and cheese. And I got another one for later with pastrami. It's going to be so good. Pastrami and eggs. And I just wanted to let you know that today it is a proven fact that you, sir, are a paid agitator, a (sic) elder abuser, a (sic) alligator fucker And now we can formally say new things about you because of litigation privilege. We can say that you are a closeted homosexual. That is the new one we're going to go with for the time being. So alligator fucker elder abuser, a closeted homosexual. Those are good terms for you. Have a nice day.").

- **#HeyGERM - Happy Thanksgiving**



https://www.youtube.com/watch?v=_bjZDGF0oEM (Nov 26, 2025 "Hey Germ, I'm up in Sarasota at Yoders picking up pies for Thanksgiving. I'm going to have a bunch of really good pies. Apple pie and key lime pie and pumpkin pie. But I know one

thing you're not going to have. You're not going to have the puntang pie. We know all about this. Now, you've had a bad run of things the past few days. I think the courts are starting to get wise to you, particularly uh the Dan Owen case. that's going to be a real problem for you. You did get lucky, though. Uh, the court said, "You have 40 more days to come by and hand me the papers in the case. I'm here now. Come hand me the papers. You know where I live").

Under these circumstances, substitute service was entirely appropriate and effective.

## IV. Luthmann Willfully Defaulted By Displaying Either An Intentional Or Reckless Disregard For The Judicial Proceedings

Under USCS Fed Rules Civ Proc R 55 (c), a court may set aside an entry of default for "good cause." The Eleventh Circuit considers three factors in determining whether good cause exists: (1) whether the default was culpable or willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether the defaulting party presents a meritorious defense.

Moreover, "if a party willfully defaults by displaying either an intentional or reckless disregard for the judicial proceedings, the court need make no other findings in denying relief." *Compania Interamericana Exp.-Import, S.A. v. Compania Dominicana de Aviacion*, 88 F.3d 948, 952 (11th Cir. 1996).

Rule 55(c), Federal Rules of Civil Procedure, provides in relevant part that "for good cause shown the court may set aside an entry of default." "Good cause' is a mutable standard, varying from situation to situation. It is also a liberal one--but not so elastic as to be devoid of substance." *Coon v. Grenier*, 867 F.2d 73, 76 (1st Cir.1989). We recognize that "good cause" is not susceptible to a precise formula, but some general guidelines are commonly applied. *Id.* Courts have considered whether the default was culpable or willful, whether setting it aside would prejudice the adversary, and whether the defaulting party presents a meritorious defense. *Rafidain Bank,* 15 F.3d at 243; *see also Robinson v. United States,* 734 F.2d 735, 739 (11th Cir.1984). We note, however, that these factors are not "talismanic," and that courts have examined other factors including whether the public interest was implicated, whether there was significant financial loss to the defaulting party, and whether the defaulting party acted promptly to correct the default. *E.g., Dierschke v. O'Cheskey,* 975 F.2d 181, 184 (5th Cir.1992). "Whatever factors are employed, the imperative is that they be regarded simply as a means of identifying circumstances which warrant the finding of "good cause' to set aside a default." *Id.* **However, if a party willfully defaults by displaying either an intentional or reckless disregard for the judicial proceedings, the court need make no other findings in denying relief**. *Shepard Claims Service, Inc. v. William Darrah & Associates,* 796 F.2d 190, 194-95 (6th Cir.1986).

*Id.* (Emphasis added).

The record demonstrates that Luthmann actively evaded service, made threats to the process server, taunted Plaintiffs online, and engaged in dilatory tactics. His claim that he was unaware of the lawsuit is not credible given his documented interactions with the process server and his detailed online public admissions of his knowledge of the case. Furthermore, Luthmann's arguments regarding misidentification are contradicted by his own exhibits, and his claims regarding

improper service are refuted by the extensive record of service attempts and proper substitute service.

### Luthmann Displays Either An Intentional Or Reckless Disregard For The Judicial Proceedings

As will be shown *infra* - across multiple documents - Luthmann demonstrates intentional or reckless disregard for judicial proceedings by:

• Mocking and refusing to comply with standard service of process.

• Insulting and threatening opposing counsel and parties.

• Proposing and attempting to enforce a "trial by combat" as a means of dispute resolution, despite acknowledging its illegality.

• Threatening extrajudicial actions, including complaints to law enforcement and regulatory bodies, as alternatives to standard legal remedies.

• Using inflammatory and derogatory language in legal correspondence.

• Setting arbitrary and extralegal conditions for participation in the judicial process.

• Treating the court's authority and process with open contempt and derision.

### Doc. 156-1

In Luthmann's own exhibit filed with this Court (Doc. 156-1), the following instances prove intentional or reckless disregard for judicial proceedings by Luthmann:

**Use of Derisive and Confrontational Language Toward Opposing Parties and the Court**

Luthmann repeatedly uses intentionally provocative, mocking, or insulting language in formal communications and court filings, referring to opposing counsel and parties with derogatory nicknames such as "nincompoops," (Doc. 156-1, p. 36) "Germ," "Pocket Rocket," (*Id*. at pp. 85, 89) and "A.S.S" (*Id*. at p. 36) He also uses language such as "You are both very, very stupid and very, very weak - in the body and in the mind." (*Id*. at pp. 70, 90)

**Openly Admitting to Using the Litigation Process for Non-Judicial Purposes**

Luthmann accuses the plaintiffs of using the litigation as a "drama factory" for YouTube content (*Id*. at p. 46), but also admits to participating in and publicizing the litigation for entertainment and personal branding, including referencing his own podcast and media activities. He describes the litigation as a "sideshow" (*Id*. at pp. 48, 58).

**Threats and Attempts to Leverage Judicial Proceedings for Personal or Extrajudicial Gain**

Luthmann threatens to file Rule 11 and bar complaints if the opposing party files what he deems a "knowingly fraudulent proof of service," and conditions his willingness to cure service defects on the firing of opposing counsel, which is not a proper use of judicial process. He repeatedly threatens to file complaints with regulatory bodies, and escalate matters to law enforcement, the Governor of the State

of Florida, and even the President of the United States, often in a tone that suggests these are tools for intimidation rather than legitimate remedies. *He also includes Magistrate Bolitho in most of his correspondence*.

### Proposing and Attempting to Enforce "Trial by Combat" as a Dispute Resolution Mechanism

Luthmann asserts that he and the plaintiff have a binding agreement to resolve their dispute by "trial by combat" (*Id*. at pp. 12, 85, 87-89, 93-99) and devotes extensive correspondence and legal argument to the logistics, legality, and terms of such a duel, including weapons, venue, and life insurance.

He threatens to seek judicial sanction for a duel, and frames this as a serious alternative to litigation, despite acknowledging that such conduct is illegal and not recognized by any U.S. jurisdiction.

### Disparagement and Accusations Against Officers of the Court

Luthmann accuses opposing counsel of bad faith (*Id*. at p. 70), drug abuse (*Id*. at p. 70), and unethical conduct (*Id*. at p. 61), attempting to impugn opposing counsel's credibility in the current proceedings. He refers to the process server as a "miscreant" (*Id*. at p. 70) and questions the veracity of their affidavits, often in a mocking or hostile tone.

### Expressing Open Contempt for the Court's Authority and Process

Luthmann repeatedly states that he does not intend to avail himself of the court's jurisdiction (*Id*. at p. 75), refuses to recognize the authority of the Northern

District of Florida, and asserts that the court has no jurisdiction over him due to an alleged ADR agreement. (*Id*. at p. 87). He openly states (1) that he will ignore further attempts at service as they are "void *ab initio*" and an "affront to the FAA." (*Id*. at p. 87) and (2) that the court's orders are "null and void" due to his interpretation of the law and the alleged ADR agreement. (*Id*. at p. 87).

### Use of Judicial Filings and Communications for Publicity and Personal Branding

Throughout his Exhibit, Luthmann includes promotional material for his media ventures, podcasts, and social media in his legal correspondence and filings, blurring the line between legal advocacy and self-promotion. *Id*.

### Disregard for Procedural Rules and Judicial Orders

Luthmann repeatedly asserts that he will not comply with service unless it is done exactly as he demands, and refuses to accept service at addresses where he is not physically present, or where someone inside refuses to answer the door, even after being notified of attempts. See **Exhibits 6-10.**

### Exhibit 6
Email By Luthmann 8-18-2025 "Re: *** Time Sensitive *** United States District Court For The Northern District Of Florida Gainesville Division Case No.: 1:25-Cv- 00058-Rh-MJF

In this email:

(1)    Luthmann refuses to consent to service, stating, "I do not accept or consent to service via email. I have no authorized agents authorized to accept service on my behalf. I demand strict compliance with  USCS Fed Rules Civ Proc R 4, as

per Eleventh Circuit precedent, which requires a constitutionally compliant jurisdictionally achieving act" (**Exhibit 6**, at p. 5);

(2)    Luthmann repeatedly insults opposing counsel, calling him "Pocket Rocket" (**Exhibit 6**, at pp. 1-3).

(3)    Luthmann calls Mr. Hales a "CLOWN" (**Exhibit 6**, at p. 3) and refers to the legal service of process as a "disaster" caused by the attorney (**Exhibit 6**, at p. 2);

(4)    Luthmann sets arbitrary conditions for waiving service, such as demanding the termination of opposing counsel, and threatens to "proceed with all available legal avenues" if his demands are not met. (**Exhibit 6**, at p. 5);

(5)    Luthmann states, "Your purported notice is rejected in toto for all purposes: legal, media, entertainment, and other," showing a blanket refusal to engage with the court's process (**Exhibit 6**, at p. 5);

(6)    Luthmann accuses the opposing party of harassment and claims, "You and your client have harassed others with my name in State of Florida. You both have harassed senior citizen Floridians, and you want Judge Zachary Bolitho to co-sign your unethical, bottom feeder tactics" (**Exhibit 6**, at p. 5); and

(7)    Luthmann asserts, "Your client's 90 days have run. Non-material amendment did not save him. Your client rejected my good faith offer to cure. I'm

sum, you and your client can both go eat a 🍆 (garden vegetable)" (**Exhibit 6**, at p. 6).[1]

<u>**Exhibit 7**</u>
<u>Email by Luthmann 9-24-2025 "FW: HALES FEARS LUTHMANN: Legal
Demand for $500,000 or expect a Counterclaim and you and YouTube to be sued
under the Florida Deplatforming Law"</u>

In this email:

(1)    Luthmann threatens to file lawsuits and regulatory complaints, and demands payment under threat of further legal and extralegal action, including "self-help consonant with natural law" (**Exhibit 7**, at p. 2);

(2)    Luthmann refers to the opposing party as "Paid Agitators" and "co-conspirators," accuses them of "crimes against God and man," and states "***Charlie Kirk's blood is on your hands*** for your hateful and violent rhetoric, including your anti-semitism (sic) and your mobilization of the cancel culture mob" – all showing Luthmann using inflammatory language rather than legal argument (**Exhibit 7**, at p. 1);

(3)    Luthmann demands that YouTube and Alphabet, Inc. deplatform the opposing party or face litigation, and sets a 10-day deadline for compliance,

---

[1] The eggplant emoji (🍆) is most commonly used as a suggestive symbol for male genitalia.

threatening immediate suit if his demands are not met  (**Exhibit 7**, at pp. 1-2, 6-7);[2]

and

(4)     Luthmann asserts, "If you refuse or fail to fully satisfy these demands

within 10 days, I will take that as your final decision and immediately proceed to

file a lawsuit...without further notice," showing a willingness to use the threat of

litigation as leverage rather than as a good-faith effort to resolve a dispute (**Exhibit**

**7,** at pp. 7-8).

### **Exhibit 8**
Email by Luthmann 9-26-2025 "FBI Complaint - Paid Internet Agitator Jeremy
Hales, Federal Fraud Filings, and Elder Abuse - 1:25-cv-00058-RH-ZCB (N.D.
Fla.)"

In this email:

(1)     Luthmann accuses opposing counsel of filing a "knowingly false

affidavit in federal court" and of "fraud on the court" and claims that the attorney

"violated his duty of candor to the tribunal and engaged in dishonest, deceitful

conduct" (**Exhibit 8** at pp. 1-2);

(2)     Luthmann escalates the matter by submitting complaints to the FBI and

the Florida Bar, rather than addressing the alleged procedural issues through

standard judicial channels (**Exhibit 8**, at p. 1); and

---

[2] Luthmann also stated: "*YouTube Legal and Judge Bolitho are copied hereto*.
YouTube and Alphabet, Inc., are hereby also on formal notice. YouTube and Hales
are "business partners," and YouTube has provided Hales with a designated
"relationship manager." (**Exhibit 7**, at p. 2).

(3)    The tone and content of Luthmann suggest a willingness to bypass or undermine the court's authority by seeking external intervention.

**Exhibit 9**

Email By Luthmann 10-20-2025 "Re: Legal Framework and Proposed Declaratory Judgment – Trial by Combat Agreement"

In this email:

(1)    Luthmann proposes resolving legal disputes through "trial by combat," a method not recognized by any U.S. jurisdiction (**Exhibit 9**, at pp. 1-3, 6-13) and prepares a declaratory judgment action to seek court sanction for such a duel (**Exhibit 9** at pp. 1,3, 8-9, 11);

(2)    Luthmann acknowledges that "no jurisdiction—state or federal—within the United States...permits a duel by prior agreement," and that "consent to bodily harm or death is not a defense to homicide or assault," yet continues to pursue this course (**Exhibit 9**, at p. 6);

(3)    Luthmann threatens to enforce the "agreement" by way of a duel unless the opposing party publicly withdraws the offer in a humiliating manner (**Exhibit 9**, at pp. 3-4), ending with "Do this not, and you will face me, mano a mano, and ultimately your final demise into the Pits of Hell" (**Exhibit 9**, at p. 5);

(4)    Luthmann refers to the legal process as a "legal nullity" due to the alleged agreement for trial by combat (**Exhibit 9**, at p. 1); suggesting that all pending litigation is superseded by this extrajudicial agreement (**Exhibit 9**, at p. 10);

(5)    Luthmann repeatedly insults the opposing parties, calling them "very, very stupid and very, very weak - in the body and in the mind" (**Exhibit 9**, at p. 3); and threatens, "if both parties insist that only death settles the matter of honor, that raises the ethical and legal severity" (**Exhibit 9**, at p. 10); and

(6)    Luthmann openly discusses the criminal consequences of proceeding with a duel, including potential murder charges, but continues to advocate for the event, showing reckless disregard for the law and judicial process (**Exhibit 9**, at pp. 6, 8, 12).

## Exhibit 10
### Email By Luthmann 11-24-2025 "FW/ Notice Of Service Pursuant To Fla. Stat. § 48.161 In Case No. 1/25-Cv-58 (N.D. Fla.)"

In this email:

(1)    Luthmann openly mocks the service of process, again calling the attorney a "legal NINCOMPOOP" (**Exhibit 10**, at p. 1) and suggesting that the attorney's actions are so egregious they could only be explained by "drug abuse" or "BAD FAITH" (**Exhibit 10**, at pp. 1-2);

(2)    Luthmann threatens to file complaints with law enforcement, regulatory bodies, and even the President of the United States if the opposing counsel files what he calls "knowingly fraudulent proof of service in bad faith" (**Exhibit 10**, at p. 2);

(3)    Luthmann asserts that there has been "no constitutionally compliant jurisdiction-achieving event to trigger notice TO ME," and claims that service through the Secretary of State is "ineffective" because he is not evading service and is available  (**Exhibit 10**, at p. 1);

(4)    Luthmann questions the validity of the summons, asking, "Which RICHARD LUTHMANN?" suggesting a willful refusal to acknowledge the court's process (**Exhibit 10**, at p. 1);

(5)    Luthmann states, "What you are sending me is wholly ineffective anyway," and "YOU have failed to serve me with papers because of your own SLOTH and NEGLIGENCE, and because of your client's FEAR," indicating a dismissive attitude toward the service process (**Exhibit 10**, at p. 1); and

(6) Luthmann further states, "the service is ineffective through the Secretary of State because I'm right here. I'm not avoiding service"  (**Exhibit 10**, at p. 1).

As shown above, Luthmann's acts undermine the integrity of judicial proceedings and demonstrate a willful or reckless disregard for the rule of law. Luthmann's actions collectively reflect a pattern of intentional or reckless disregard for the seriousness, decorum, and orderly process of judicial proceedings.

### Luthmann Request For Relief From Default Should Be Denied Because Luthmann Willfully Defaulted By Displaying Either An Intentional Or Reckless Disregard For The Judicial Proceedings

All of this means that Luthmann request for relief from default should be denied. Plaintiffs have more than adequately shown that Luthmann willfully defaulted by displaying either an intentional or reckless disregard for the judicial proceedings. As a result, "*the court need make no other findings in denying relief.*" *Compania Interamericana Exp.-Import, S.A. v. Compania Dominicana de Aviacion*, 88 F.3d 948, 951-52 (11th Cir. 1996).

**Luthmann has also failed to present a plausible explanation for the default**. *Cf. N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, No. 1:06-CV-1678-CCH, 2012 U.S. Dist. LEXIS 198127, at *20 (N.D. Ga. Feb. 3, 2012) ("In considering whether a party has established sufficient good cause to set aside a default under Rule 55(c), the factors generally considered by courts are whether the defaulting party has presented a plausible explanation for the default or whether the default was willful, whether setting aside the default would cause undue prejudice to the opposing party, and whether the defaulting party has presented a meritorious defense. *See Compania*, 88 F.3d at 951; *see also Turner Broadcasting System, Inc. v. Sanyo Elec., Inc.*, 33 B.R. 996, 1001 (N.D.Ga. 1983) (Vining, J.) (the "initial task" is to determine whether the defaulting party has presented a plausible explanation for the default"). Nothing in Luthmann's Motion comes even remotely close to a plausible explanation for his default.

### Luthmann's Delay - Caused By His Default - Has Obviously Hampered Plaintiffs' Ability To Obtain Discovery

Because Luthmann is part of a conspiracy against the Plaintiffs, through his delay he has now secured ample opportunity to destroy and/or conceal evidence which may also be more difficult to prove given this lengthy delay. Even a modest degree of prejudice to the non-defaulting party weighs against setting aside a default, particularly when combined with other factors such as the absence of a good reason for the default.

> To determine if the non-defaulting party was prejudiced, courts examine whether the delay:
> . made it impossible for the non-defaulting party to present some of its evidence;
> . made it more difficult for the non-defaulting party to proceed with trial;
> . hampered the non-defaulting party's ability to complete discovery; and
> . was used by the defaulting party to collude or commit a fraud.

*Burton v. TJX Cos.*, No. 3:07-CV-760, 2008 U.S. Dist. LEXIS 35839, at *10-11 (E.D. Va. May 1, 2008).

## V.    Luthmann's Alternative Dispute Resolution Argument Is Meritless

Luthmann's claim that the parties agreed to alternative dispute resolution is unsupported by any credible evidence. The alleged "agreement" appears to be based on a YouTube video and unilateral communications from Luthmann, not a mutual agreement between the parties. Moreover, Luthmann's characterization of this purported agreement as a "trial by combat" demonstrates the frivolous nature of this argument.

## VI.  Luthmann's Motion to Dismiss for Failure to State a Claim Should Be Denied

Luthmann's argument that the Second Amended Complaint fails to state a claim is premature and procedurally improper. After a default, a defendant cannot contest the plaintiff's factual allegations. *Hornady v. Outokumpu Stainless USA, LLC*, 118 F.4th 1367, 1382-83 (11th Cir. 2024).

## ARGUMENT

## The Second Amended Complaint Satisfies The Iqbal/Twombly Pleading Standards

Luthmann generally denies all acts against him. Luthmann states he did not defame Plaintiffs, did not make false statements of fact, did not engage in tortious interference, did not use speech as a deceptive trade practice, and did not conspire with others to do so. He asserts he never violated Florida's sexual cyberharassment statute and that Plaintiffs do not have a private cause of action for such claims. As will be shown, these arguments are without merit.

When considering a motion to dismiss, this Court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff, not to Luthmann. *Edwards v. Green Tree Servicing, LLC*, No. 5:15cv148-MW/GRJ, 2015 U.S. Dist. LEXIS 151377, at *2 (N.D. Fla. Oct. 22, 2015). Moreover, Luthmann, being in default, cannot contest the plaintiff's factual allegations. *Hornady v. Outokumpu Stainless USA, LLC*, 118 F.4th 1367, 1382-83

(11th Cir. 2024). This means Luthmann's general denials are of no assistance to him. A complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief" and provide the defendant with fair notice of what the claim is and the grounds upon which it rests. A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.[3]

**The Complaint Contains Specific Factual Allegations Against Luthmann**

Contrary to Luthmann's assertions, the Second Amended Complaint contains specific factual allegations against him individually that satisfy the Iqbal/Twombly standard. The complaint does not merely lump Luthmann together with other defendants but identifies his specific conduct.

Paragraph 162 of the Second Amended Complaint alleges that on January 28, 2025, Luthmann wrote an email to the Anti-Defamation League (ADL) making specific false statements about Mr. Hales, including accusations of antisemitism and wickedness.

---

[3] Under the Iqbal/Twombly standard, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Middleton v. Hollywood Rep. Ltd. Liab. Co.*, 137 F.4th 1287, 1294 (11th Cir. 2025). The complaint need not contain detailed factual allegations, but must provide more than labels and conclusions or a formulaic recitation of the elements of a cause of action. *Boyd v. Warden, Holman Corr. Facility*, 856 F.3d 853, 864 (11th Cir. 2017).

Paragraph 163 alleges that on January 26, 2025, Luthmann wrote an email to the YouTube channel "That Umbrella Guy" containing additional false statements about Mr. Hales, including that Hales gets paid for coverage in a combination of quid pro quo, traffic, sex, and/or candy and falsely labeling Hales an antisemite.

Most significantly, paragraph 164 alleges that Luthmann posted a revenge porn video of Mr. Hales as Adolf Hitler, adding a "Hitler mustache" to Mr. Hales' photo. This allegation also forms the basis of Count 16 for sexual cyberharassment.

These allegations are specific, detailed, and particularized to Luthmann's individual conduct. They identify the who (Luthmann), what (false statements and sexually explicit altered images), when (specific dates in January 2025), where (in emails and online posts), and how (by sending emails and posting content online). This level of specificity satisfies the Iqbal/Twombly standard by providing factual content that allows the court to draw the reasonable inference that Luthmann is liable for the misconduct alleged.

## The Complaint Is Not a "Shotgun Pleading"

Luthmann's characterization of the Second Amended Complaint as a "shotgun pleading" is incorrect. A shotgun pleading is one that incorporates every antecedent allegation by reference into each subsequent claim for relief or affirmative defense. *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1279 (11th Cir. 2006). The Eleventh Circuit has identified several types of shotgun pleadings, including those

that fail to connect specific facts or claims to particular defendants. The Second Amended Complaint avoids these pitfalls by:

- Organizing allegations into numbered paragraphs as required by Rule 10(b) of the Federal Rules of Civil Procedure;

- Specifically identifying Luthmann's individual conduct in paragraphs 162-164 ;

- Clearly stating the legal basis for each count against Luthmann (Count 15 for Civil Conspiracy and Count 16 for Sexual Cyberharassment); and

- Connecting the factual allegations to the legal claims by incorporating only relevant paragraphs into each count.

The complaint satisfies Rule 10(b) by stating its claims in numbered paragraphs, each limited as far as practicable to a single set of circumstances. It does not indiscriminately incorporate all preceding allegations into each count, which would be the hallmark of a shotgun pleading. *See Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273 (11th Cir. 2006).

## Count 15 Properly States A Claim For Civil Conspiracy

To state a cause of action for civil conspiracy under Florida law, a plaintiff must plead (1) an agreement between two or more parties; (2) to do an unlawful act or a lawful act by unlawful means; (3) the execution of some overt act in pursuance of the conspiracy; and (4) damage to the plaintiff as a result of said acts. *Otto*

*Candies, LLC v. Citigroup, Inc*., 147 F.4th 1158 (11th Cir. 2025)(citing *Raimi v. Furlong*, 702 So. 2d 1273 (Fla. 3rd DCA 1997). "[I]n pleading conspiracy, the plaintiff must further identify an actionable underlying tort or wrong." *EMI Sun Vill., Inc. v. Catledge*, 779 Fed. Appx. 627 (11th Cir. 2019). "The conspiracy is merely the vehicle by which the underlying tort was committed, and the allegations of conspiracy permit the plaintiff to hold each conspirator jointly liable for the actions of the coconspirators." *Tejera v. Lincoln Lending Servs., LLC*, 271 So. 3d 97, 103 (Fla. 3rd DCA 2019).

Plaintiffs' Second Amended Complaint identifies three separate underlying causes of action, each of which makes it unlawful to engage in conduct that deceives and harms consumers and/or seeks to drive someone out of business or otherwise harms their business through the use of false and misleading commercial speech or interference with their business relationships. Those three underlying claims are Tortious Interference with Advantageous Business Relationships, violation of FDUPTA, Fla. Stat. § 501.201, Et Seq., and violation of The Lanham Act, 15 U.S.C. § 1125(A). All three are alleged against Defendant LEE. Count 15 for Civil Conspiracy is specifically against Luthmann, and the essential facts supporting the necessary allegations for that claim are mostly concentrated in Paragraphs 162 through 169 of the Complaint. When it comes to alleging a claim for conspiracy, Florida law is clear that each coconspirator need only know of the scheme and assist

in it in some way to be held responsible for all of the acts of his coconspirators. *In re Chira*, 353 B.R. 693 (Bankr. S.D. Fla. 2006), aff'd, 378 B.R. 698 (S.D. Fla. 2007), aff'd, 567 F.3d 1307 (11th Cir. 2009). (citing *Charles v. Fla. Foreclosure Placement Ctr., LLC*, 988 So. 2d 1157, 1160 (Fla. 3rd DCA 2008).

Count 15 properly alleges that Luthmann participated in a civil conspiracy with the other defendants. The Second Amended Complaint alleges that: (1) Luthmann agreed with other defendants to participate in a civil conspiracy to commit violations of Florida's Deceptive and Unfair Trade Practices Act, False Advertising under the Lanham Act, and Tortious Interference with Advantageous Business Relationships; (2) Luthmann and the other defendants acted in concert and coordinated in furtherance of the common scheme; (3) Luthmann knew of the scheme and assisted in it by engaging in unconscionable, unfair, and deceptive acts, making false or misleading representations, and interfering with Plaintiffs' business relationships; and (4) As a result of the conspiracy, Plaintiffs suffered damages. The complaint further alleges specific overt acts by Luthmann in furtherance of the conspiracy, including sending emails containing false statements about Plaintiffs to the ADL and that umbrella guy YouTube channel, and posting altered sexually explicit images of Mr. Hales online.

These allegations satisfy the pleading requirements for civil conspiracy by showing that Luthmann agreed with others to harm Plaintiffs through unlawful

means, committed overt acts in furtherance of that agreement, and caused damage to Plaintiffs as a result.

As the 11th Circuit Court of Appeals recently reiterated, an agreement to engage in a civil conspiracy "need not be expressed in words and may be implied and understood to exist from the conduct itself." *Otto Candies, LLC v. Citigroup Inc.*, 2025 U.S. App. LEXIS 11156 (11th Cir. 2025). In *Otto Candies*, the complaint alleged, *inter alia*, a conspiracy by defendants to violate RICO. Noting that "'a bare assertion of conspiracy will not suffice' to prove a RICO conspiracy, this Court stated that plaintiffs 'need not offer direct evidence of a RICO agreement, and *the existence of conspiracy may be inferred from the conduct of the participants*.'" *Id.* at 73 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) [emphasis added]. The plaintiffs in *Otto Candies* pleaded six factors to allege that Citigroup agreed to conspire with OSA to engage in a pattern of racketeering activity: (1) Citigroup and OSA's "business relationship"; (2) their mutual financial gain from the racketeering activity; (3) their joint fraudulent misrepresentations and omissions; (4) their dependency on each other's fraudulent conduct to prolong the scheme; (5) Citigroup's then-CEO's "admission" that certain employees were "criminally involved" in the scheme; and (6) Mexican regulators' conclusion that Citigroup employees or agents "knowingly engaged in a fraudulent scheme with OSA." Reversing the district court's order of dismissal, this Court stated that plaintiffs

pleaded ample circumstantial evidence to support their allegations that Citigroup plausibly agreed to the conspiracy. *Id*. at 75. Although "ample" circumstantial evidence is not required here, Plaintiffs have alleged sufficient facts to demonstrate that Luthmann and other defendants knew of a scheme to destroy or "take down" Plaintiffs' business and ability to earn income on YouTube, while they deceived consumers into donating money in order to assist PRESTON, but the money is instead being pocketed by another codefendant in this case (LEE) and does not reach PRESTON. The Complaint also alleges sufficient facts demonstrating that Luthmann assisted in the scheme in some way.

### *Adequately Alleged Underlying Torts*

In Count 15 of the Second Amended Complaint, the Plaintiffs reference in detail three underlying actionable unlawful acts or lawful acts by unlawful means – (1) Violations Of Florida's Deceptive And Unfair Trade Practices Act, Fla. Stat. § 501.201, Et Seq. (2) False Advertising Under The Lanham Act, 15 U.S.C. § 1125(A), and (3) The Tort Of Tortious Interference With Advantageous Business Relationships. The Second Amended Complaint demonstrates that Luthmann engaged in a conspiracy with all Defendants to commit these unlawful acts.

Regarding Violations Of Florida's Deceptive And Unfair Trade Practices Act, Fla. Stat. § 501.201, to begin, the alleged scheme is unlawful: Fla. Stat. § 501.204(1) states: "Unfair methods of competition, unconscionable acts or practices, and unfair

or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.". . Violations of Florida's Deceptive And Unfair Trade Practices Act can result in civil penalties, including fines and attorney's fees. In some cases, penalties can reach $10,000 per violation. Fla. Stat. § 501.2075. Regarding 15 U.S.C. § 1125(a) - Section 43(a) of the Lanham Act – it provides a cause of action for false advertising and unfair competition. Regarding the Tort Of Tortious Interference With Advantageous Business Relationships – it is an actionable underlying tort.

Secondly, the plaintiffs suffered injuries - damages totaling over $5 million in losses. The agreement between Luthmann and Defendants is evident and can be inferred from circumstantial evidence in the Second Amended Complaint.

The above factual allegations demonstrate that Luthmann was an active participant in the conspiracy. His participation in the "hate group" designed to damage the reputation of HALES and Mr. HALES, along with his connections to other defendants through social media platforms, provide sufficient circumstantial evidence of his agreement to participate in the conspiracy.

When viewed in the light most favorable to the Plaintiffs, as required under the Rule 12(b)(6) standard, these allegations are more than sufficient to state a claim for civil conspiracy against Luthmann. The Second Amended Complaint clearly alleges that Luthmann knew of the scheme to damage HALES and Mr. HALES and

assisted in it by participating in the "hate group" and connecting with other defendants through social media platforms.

### Count 16 Properly States A Claim Under Florida's Sexual Cyberharassment Law

*Florida Statute § 784.049 Creates a Private Right of Action*

**Contrary to Luthmann's assertion, Florida Statute § 784.049 explicitly creates a private right of action for sexual cyberharassment**. Section 784.049(5) states:

> (5) An aggrieved person may initiate a civil action against a person who violates this section to obtain all appropriate relief in order to prevent or remedy a violation of this section, including:
> a. Injunctive relief.
> b. Monetary damages to include $5,000 or actual damages incurred as a result of a violation of this section, whichever is greater.
> c. Reasonable attorney fees and costs.

This language unambiguously establishes a private right of action by expressly authorizing an "aggrieved person" to "initiate a civil action" and specifying the available remedies. The statute's plain language demonstrates the Florida Legislature's intent to create a civil remedy for victims of sexual cyberharassment. Under Florida law, a private right of action may be implied from a statutory provision that would serve no useful purpose in the absence of a private right of action. *Universal Prop. & Cas. Ins. Co. v. Loftus*, 276 So. 3d 849, 851 (Fla. 4th DCA 2019). Here, the statutory language in § 784.049(5) explicitly creates such a right, making it unnecessary to rely on implication.

*The Complaint Properly Invokes the Private Right of Action*

Count 16 of the Second Amended Complaint properly invokes the private right of action created by Florida Statute § 784.049. The complaint alleges that:

1. Luthmann published sexually explicit images of Mr. Hales online;

2. The images conveyed Mr. Hales' personal identification;

3. Mr. Hales never consented to the publication;

4. There was no legitimate reason for posting the images;

5. Luthmann intended to cause substantial emotional distress to Mr. Hales ; and

6. As a result, Mr. Hales suffered damages.

These allegations track the elements of sexual cyberharassment as defined in § 784.049(2)(c) and establish Plaintiffs' entitlement to the remedies specified in § 784.049(5).

*The Complaint Properly Seeks Available Remedies*

The Second Amended Complaint properly seeks the remedies available under Florida Statute § 784.049(5), including:

1. Injunctive relief prohibiting Luthmann from further cyberharassment and ordering destruction of the images;

2. Monetary damages, including statutory damages of $5,000 or actual damages, whichever is greater; and

3. Attorney's fees and costs.

These remedies are explicitly authorized by § 784.049(5) and properly requested in the complaint.

## CONCLUSION

For the foregoing reasons, Defendant Luthmann's Motion to Dismiss Counts 15 and 16 should be denied. The Second Amended Complaint contains specific factual allegations against Luthmann that satisfy the Iqbal/Twombly pleading standards, properly states a claim for civil conspiracy, and correctly invokes the private right of action created by Florida Statute § 784.049. Should the Court grant the motion on any ground, however, it should do so without prejudice and afford Plaintiffs an opportunity to amend to address any perceived defect.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court:

1. Deny Luthmann's Motion to Vacate Clerk's Default and to Dismiss Second Amended Complaint;

2. Grant such other and further relief as this Court deems just and proper.

Respectfully submitted,

SHOCHET LAW GROUP
SHOCHET APPELLATE LLC
Attorneys for Plaintiffs
409 N. Main Street
Trenton, FL 32693

By: */s/ Randall Shochet*
Randall ("Randy") Shochet, Esq.
FBN.: 959421
attorneys@counsel.insure

## <u>CERTIFICATE OF COMPLIANCE</u>

I HEREBY CERTIFY that this document complies with the applicable word count limit requirement of Local Rule 7.1(f). The word count is less than 8000 words. It has been calculated by the word-processing system and excludes the content authorized to be excluded under the Rule.

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on February 8, 2026, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served on this day on all counsel of record, via email to the Service List below.

By: */s/ Randall Shochet*

## <u>SERVICE LIST</u>

Cameron L. Atkinson, Esq.
Atkinson Law, LLC
Attorney For MATZKIN
1000 Lafayette Blvd., Fl. 11
Bridgeport, CT 06604
catkinson@atkinsonlawfirm.com

Christopher Joseph Gage, Esq.
Banker Lopez Gassler PA
Attorney for HELM
501 E KENNEDY BLVD, STE 1700
TAMPA, FL 33602
service-cgage@bankerlopez.com

Lynette Michelle Lacy Alexis Preston, pro se

John Cook, pro se

Marla Hughes, pro se

Lisa Lee, pro se

Robert J. Keszey, pro se

Raymond G. Bonebrake, Jr., pro se

David Michael Teschendorf, pro se

Richard Luthmann, Jr., pro se