UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

ELEPHANT SHOE, LLC, et al.,
     Plaintiffs,

vs.                          Case No.:  1:25cv58/RH/ZCB

JOHN COOK, et al.,
     Defendants.

                             /

## **REPORT AND RECOMMENDATION**

Plaintiffs commenced this case against ten Defendants, eight of whom are proceeding *pro se*.  The operative complaint is a sprawling 74-page second amended complaint (with pages and pages of YouTube links) that borders on a shotgun pleading.  (Doc. 76).  Plaintiffs allege violations of the Lanham Act, along with various state law claims.  Currently before the Court are motions to dismiss filed by eight Defendants.[1]  (Docs. 52,

---

[1] Defendant Preston filed a motion to dismiss, but she subsequently declared bankruptcy.  (Doc. 92).  The bankruptcy filing resulted in this case being stayed as to Defendant Preston.  (Doc. 94).  Thus, Defendant Preston's motion to dismiss is not currently before the Court.  Also not before the Court today is the motion to dismiss recently filed by Defendant Luthmann.  The Clerk of Court had  entered a default against Defendant Luthmann.  (Doc. 155).  Defendant Luthmann has now appeared and moved to set aside the default and sought dismissal.  (Doc. 156).  Plaintiffs have just recently responded (Doc. 158), and the Court

53, 55, 61, 106, 107, 110, 127).  Plaintiffs have responded in opposition to the motions to dismiss.  (Docs. 62, 77, 80, 85, 108, 109, 111, 145).  For the reasons below, the motions to dismiss should be granted.

## I.    Background[2]

Plaintiff Jeremy Hales owns and operates a business (Plaintiff Elephant Shoe, LLC) that generates revenue by posting content on social media websites like YouTube, Facebook, and TikTok.  Plaintiff Hales has over 730,000 subscribers for his "What the Hale$" channel on YouTube and over 327,000 followers for his "What the Hale$" page on Facebook. Additionally, Plaintiff Hales sells stuff he finds in storage units on an auction website called Whatnot.

Defendants are various individuals scattered throughout the United States who Plaintiff Hales claims have joined together to form an "Anti What the Hales Media Ecosystem."  This "Ecosystem" allegedly exists to harm Plaintiff Hales's business.  Two of the Defendants (Preston and Cook) live near Plaintiff Hales's vacation home in Florida.  In this

---

will address Defendant Luthmann's motion at later date after having had time to study the issues raised by the motion and the response.

[2] The information below comes from the factual allegations in Plaintiff's second amended complaint.  At this stage, those allegations are accepted as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

lawsuit,[3] Plaintiff Hales alleges that Defendant Preston is liable for malicious prosecution and civil conspiracy (Counts 1 and 8) and that Defendant Cook is liable for civil conspiracy (Count 9).

One of the other Defendants (Matzkin) is an attorney from Massachusetts who previously represented Defendants Preston and Cook in one of the other federal lawsuits filed by Plaintiff Hales. Plaintiff Hales alleges that Defendant Matzkin is liable for tortious interference with business relationships and civil conspiracy (Counts 5 and 7). Defendants Helm, Hughes, Teschendorf, Lee, Keszey, Raymond, and Luthmann are all people (most with their own YouTube channels) who Plaintiff Hales says have engaged in a civil conspiracy to harm his business (Counts 6, 10, 11, 12, 13, 14, 15). Defendant Lee is also alleged to have violated Florida's Deceptive and Unfair Trade Practices Act (FDUTPA) (Count 2), the Lanham Act (Count 3), and to have tortiously interfered with business relationships (Count 4). In addition to civil

---

[3] Plaintiff Hales has another lawsuit pending in this Court against Defendants Preston and Cook. (1:24cv45). Additionally, Plaintiff Hales filed a different lawsuit in this Court against a state court prosecutor for allegedly not enforcing a civil protection order against Defendants Preston and Cook. (1:25cv920). Chief Judge Winsor recently dismissed that case for failure to state a claim. (Doc. 15, 1:25cv920).

conspiracy, Defendant Luthmann is alleged to have violated Florida's Sexual Cyberharassment Law (Count 16). To help keep that all straight, here is a chart:

| Defendant | Legal Claims | Counts |
|---|---|---|
| Preston | Malicious Prosecution, Civil Conspiracy | 1, 8 |
| Cook | Civil Conspiracy | 9 |
| Lee | FDUTPA, Lanham Act, Tortious Interference, Civil Conspiracy | 2, 3, 4, 6 |
| Matzkin | Tortious Interference, Civil Conspiracy | 5, 7 |
| Hughes | Civil Conspiracy | 10 |
| Helm | Civil Conspiracy | 11 |
| Keszey | Civil Conspiracy | 12 |
| Teschendorf | Civil Conspiracy | 13 |
| Raymond | Civil Conspiracy | 14 |
| Luthmann | Civil Conspiracy, Florida Sexual Cyberharassment Law | 15, 16 |

In terms of relief, Plaintiffs seek monetary damages against all Defendants. Plaintiffs also seek injunctive relief against Defendants Lee and Luthmann.

## II.    Procedural History

The original complaint in this case named some of the current Defendants, but not all. (Doc. 1).  The claims in the original complaint were defamation, civil conspiracy, tortious interference, and aiding and abetting.  Defendant Helm filed a motion for a more definite statement, which led to the Court ordering Hales to file an amended complaint.[4] (Docs. 16, 17).  Plaintiffs then filed the first amended complaint. (Doc. 35).  Plaintiffs later filed a second amended complaint, which named the current Defendants and asserted claims involving civil conspiracy, tortious interference, FDUTPA, and Florida's Sexual Cyberharassment Law.  (Docs. 74, 76).  It is the second amended complaint that Defendants now seek to dismiss.

## III.   Discussion

In the pending motions to dismiss, Defendants argue that dismissal is warranted under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim on which relief can be granted.  To survive a

---

[4] In granting the motion, the Court instructed Hales's counsel that he should "familiarize himself with the Eleventh Circuit's precedent on 'shotgun pleadings'" before filing the amended complaint.  (Doc. 17 at 1 n.1).

motion to dismiss for failure to state a claim, a plaintiff's complaint must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. A court ruling on a motion to dismiss must accept the complaint's factual allegations as true, but legal conclusions "are not entitled to the presumption of truth." *Id*. at 678-79.

## A. Defendant Lee's Motion to Dismiss

The Court will first take up Defendant Lee's motion to dismiss (Doc. 106). As mentioned above, the second amended complaint alleges that Defendant Lee violated the Lanham Act, the FDUTPA, tortiously interfered with business relationships, and participated in a civil conspiracy. Defendant Lee claims that Plaintiffs have failed to state a claim for each of these causes of action.

### 1. The FDUTPA

In Count 2 of the second amended complaint, Plaintiffs claim that Defendant Lee violated the FDUTPA, Fla. Stat. § 501.201, *et seq*. (Doc. 76 at 48). Plaintiffs seek damages and injunctive relief, as well as

attorneys' fees under the FDUTPA. (*Id.* at 50). Defendant Lee argues that dismissal is warranted for failure to state a claim. The Court agrees with Defendant Lee.[5]

The Court will first discuss Plaintiffs' claim for damages under the FDUTPA. To assert a FDUTPA damages claim, a plaintiff must allege "(1) a deceptive or unfair act in the conduct of trade or commerce; (2) causation; and (3) actual damages." *Ounjian v. Globoforce*, 89 F.4th 852, 860 (11th Cir. 2023). Although a plaintiff need not be a consumer to assert a FDUTPA claim, there must be "an injury or detriment to consumers." *Id.* A plaintiff may only recover "actual damages" under the FDUTPA—the statute does not allow "nominal damages, speculative losses, or compensation for subjective feelings of disappointment." *Popeyes Louisiana Kitchen, Inc. v. Florida Pop, LLC*, 723 F. Supp. 3d 1196, 1207 (S.D. Fla. 2024). The phrase "actual damages" in the

---

[5] The parties disagree over whether claims brought under the FDUTPA are subject to the heightened pleading requirements found in Rule 9(b) of the Federal Rules of Civil Procedure. There is a dispute among the district courts in Florida on this issue. *See Tennis v. Bel-Mac Roofing, Inc.*, No. 3:17cv14, 2018 WL 11504986, at *3 (N.D. Fla. Mar. 28, 2018) (discussing the split). It is unnecessary to weigh in on that dispute today because the FDUTPA claim does not survive under the normal pleading standard found in Rule 8.

FDUTPA context is a "term of art." *Farmer v. Humana, Inc.*, 582 F. Supp. 3d 1176, 1191 (M.D. Fla. 2022). The "sole permissible measure" of actual damages is "the difference in market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties." *Id.* The phrase "actual damages" for FDUTPA purposes does not include consequential damages or lost profits. *Casa Dimitri Corp. v. Invicta Watch Co. of Am., Inc.*, 270 F. Supp. 3d 1340, 1352 (S.D. Fla. 2017). Dismissal of an FDUTPA claim is warranted if the complaint fails to plausibly allege actual damages. *Marrache v. Bacardi U.S.A., Inc.*, 17 F.4th 1084, 1101 (11th Cir. 2021) (affirming dismissal of FDUTPA because the plaintiff "has not pled a plausible claim for actual damages under the FDUPTA").

Looking to Plaintiffs' second amended complaint, it fails to plausibly allege actual damages caused by Defendant Lee's violation of the FDUTPA. Indeed, Plaintiffs' claims are "ill-suited to the requirements of the FDUTPA" because "this case does not involve a product or service, much less the delivery of that product or service in a manner that was not contemplated under a contract." *Popeyes Louisiana*

8

*Kitchen, Inc.*, 723 F. Supp. 3d at 1207.  Thus, the allegations in the second amended complaint provide no basis for determining that "actual damages"—as that phrase has been interpreted for FDUTPA purposes— were caused by Defendant Lee's alleged conduct.  The second amended complaint simply states in conclusory fashion that Defendant Lee's "deceptive and unfair trade practices" caused Plaintiffs to "suffer[] actual damages."  (Doc. 76 at 49).  But such conclusory allegations are insufficient to state a plausible FDUTPA damages claim. *Marrache*, 17 F.4th at 1101.

Plaintiffs claim that they are entitled to $959,000 in damages for the alleged FDUTPA violation (Doc. 76 at 50), but the second amended complaint fails to explain how that amount constituted "the difference in market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties." *Farmer*, 582 F. Supp. 3d at 1191.  Accordingly, the FDUTPA damages claim against Defendant Lee in Count 2 should be dismissed.

Similarly, Plaintiffs request for injunctive relief under the FDUTPA should be dismissed.  In the FDUTPA context, "injunctive relief

is not a standalone cause of action." *CMR Construction & Roofing, LLC v. UCMS, LLC*, No. 21-11183, 2022 WL 3012298, at *5 (11th Cir. July 29, 2022). Rather, it "is a remedy for a violation of FDUTPA." *Id.* "To state a claim for injunctive relief under FDUTPA, a plaintiff must allege (1) a deceptive or unfair act or practice in trade and (2) that plaintiff is a person aggrieved by the deceptive act or practice." *Id.* at *3 (cleaned up). Looking to the first requirement, "an act is not deceptive and a practice is not unfair unless a consumer was actually aggrieved by the act or practice." *Hill Dermaceuticals, Inc. v. Anthem, Inc.*, 228 F. Supp. 3d 1292, 1302 (M.D. Fla. 2017). Although a non-consumer may assert a FDUTPA claim "the plaintiff must allege that the relevant act or practice was harmful to a consumer." *CMR Construction & Roofing, LLC*, 2022 WL 3012298, at *3.

Here, Plaintiffs have failed to plausibly allege that a consumer was actually aggrieved by a deceptive or unfair practice committed by Defendant Lee. The allegations in the second amended complaint are about conduct by Defendant Lee that was allegedly injurious to Plaintiffs—not to consumers. *See Ounjian v. Globoforce, Inc.*, No. 3:22cv4575, 2022 WL 3223997, at *5 (N.D. Fla. July 18, 2022) (dismissing

FDUTPA claim because the allegations were about conduct "allegedly committed against [the non-consumer plaintiff], not the unfair practices committed against <u>consumers</u>" (emphasis in original)).    Although Plaintiffs have stated the conclusion that a consumer was aggrieved, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).    At the end of the day, the FDUTPA is a consumer protection statute that was designed to protect consumers from unfair and deceptive trade practices.    *Taft v. Dade Cnty. Bar Assoc., Inc.*, No. 1:15-cv-22072, 2015 WL 5771811, at *3 (S.D. Fla. Oct. 2, 2015).    It is clear to the Court that the allegations in the second amended complaint are not aimed at vindicating consumers who were harmed by Defendant Lee's conduct.    Because Plaintiffs have not plausibly alleged an FDUTPA claim, the claim for injunctive relief against Defendant Lee should be dismissed.

### 2. Lanham Act

In Count 3 of the second amended complaint, Plaintiffs claim that Defendant Lee violated sections 32 and 43(a) of the Lanham Act (15 U.S.C. §§ 1125(a), 1125(a)(1)(A).    (Doc. 76 at 51).    "The Lanham Act was

intended to make actionable the deceptive and misleading use of marks, and to protect persons engaged in commerce against unfair competition." *Dastar v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 28 (2003) (cleaned up). The Lanham Act contains numerous causes of action. *Alexander v. Fla. State Univ.*, 4:25cv5, 2025 WL 3177578, at *2 (N.D. Fla. Oct. 27, 2025). Because of that, "a plaintiff who asserts a claim pursuant to § 1125 must specify the type of claim he seeks to assert." *Id.* In the second amended complaint, Plaintiffs specify that Defendant Lee "violated section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A)" and "violated Section 32 of the Lanham Act, 15 U.S.C. § 1125(a)[.]" (Doc. 76 at 51).

Section 43(a), 15 U.S.C. § 1125(a)(1)(A), "forbids unfair trade practices involving infringement of trade dress, service marks, or trademarks, even in the absence of federal trademark registration." *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1193 (11th Cir. 2001). To prevail on a claim under § 1125(a)(1)(A), a plaintiff must show "(1) that it had prior rights to the mark at issue and (2) that the defendant had adopted a mark or name that was the same, or confusingly similar to its mark, such that consumers were likely to confuse the two."

*Id.* Satisfying the first element requires "proof of a valid trademark[,]" but "a plaintiff need not have a registered mark." *Tana v. Dantanna's*, 611 F.3d 767, 773 (11th Cir. 2010). Instead, the Eleventh Circuit has said that "the use of another's unregistered, *i.e.*, common law, trademark can constitute a violation of § 43(a) where the alleged unregistered trademarks used by the plaintiff are so associated with its goods that the use of the same or similar marks by another company constitutes a false representation that its goods came from the same source." *Id.*

Looking to the allegations in the second amended complaint, Plaintiffs have failed to plausibly allege either element of a claim under § 1125(a)(1)(A). Plaintiffs have not plausibly alleged they had "prior rights" to any trademark—registered or common law. Indeed, the second amended complaint's factual allegations say nothing about Plaintiffs having a trademark. Thus, Plaintiffs have not plausibly alleged facts sufficient to establish the first element of a claim under § 1125(a)(1)(A).

They also have not plausibly alleged facts sufficient to establish the second element of a claim under § 1125(a)(1)(A). More specifically, the allegations in the second amended complaint fail to plausibly allege that Defendant Lee "adopted a mark or name that was the same, or

13

confusingly similar to [Plaintiffs'] mark, such that consumers were likely to confuse the two." *Planetary*, 261 F.3d at 1193. The second element of a claim under § 1125(a)(1)(A) is all about showing a likelihood of consumer confusion between the plaintiff's mark and the mark used by the defendant. Here, there are no factual allegations from which the Court could reasonably infer that Defendant Lee has a mark—registered or otherwise. Even if there were such factual allegations, there is nothing in the second amended complaint that could lead the Court to draw the reasonable inference that Defendant Lee "employed marks that were similar enough to [Plaintiffs'] to create a likelihood of confusion." *Knights Armament Co. v. Optical Sys. Tech., Inc.*, 568 F. Supp. 2d 1369, 1375 (M.D. Fla. 2008). Accordingly, Plaintiffs have failed to state a plausible claim that Defendant Lee "violated section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A)" as alleged in the second amended complaint. (Doc. 76 at 51).

The same is true with respect to Plaintiffs' claim that Defendant Lee "willfully violated Section 32 of the Lanham Act, 15 U.S.C. § 1125(a)." (Doc. 76 at 51). First, the Court would note that Section 32 of the Lanham Act is not codified at 15 U.S.C. § 1125(a) as stated in the second amended

complaint. Instead, Section 32 of the Lanham Act is actually codified at 15 U.S.C. § 1114. *See Savannah College of Art & Design, Inc. v. Sportswear, Inc.*, 872 F.3d 1256, 1261 (11th Cir. 2017) (recognizing that "§ 32(a) of the [Lanham] Act" was "codified at 15 U.S.C. § 1114(1)(a)"). So, the Court assumes that Plaintiffs meant to cite 15 U.S.C. § 1114 instead of 15 U.S.C. § 1125(a) when referring to the alleged violation of Section 32 of the Lanham Act.[6]

To succeed on a claim under 15 U.S.C. § 1114, "a plaintiff must demonstrate (1) that its mark has priority and (2) that the defendant's mark is likely to cause consumer confusion." *Frehling Enterprises, Inc. v. Int'l Select Group, Inc.*, 192 F.3d 1330, 1335 (11th Cir. 1999). Unlike a claim under 15 U.S.C. § 1125(a), a claim under 15 U.S.C. § 1114 requires the plaintiff to have a federally registered trademark. *See Weinacker v. Wahl Clipper Corp.*, No. 23-12782, 2024 WL 2796533, at *2 (11th Cir.

---

[6] This arguably makes Plaintiffs' second amended complaint a shotgun pleading because Plaintiffs are asserting two separate legal claims in the same count count—i.e., a claim under 15 U.S.C. § 1125(a)(1)(A) and a claim under 15 U.S.C. § 1114. *See Barmapov v. Amuial*, 986 F.3d 1321, 1325 (11th Cir. 2021) (stating that a complaint is a shotgun pleading if "does not separate each cause of action or claim for relief into a different count" (cleaned up)). Nonetheless, the Court would prefer to resolve this dispute on the merits instead of shotgun pleading grounds.

May 31, 2024) (explaining that "§ 1114 only applies to registered trademarks"); *see also Savannah College*, 872 F.3d at 1261 (recognizing that a claim under § 1114 "lies only for federally-registered marks").

Turning to the allegations in the second amended complaint, Plaintiffs have not alleged that they had a registered trademark with the U.S. Patent and Trademark Office. That is fatal to their claim that Defendant Lee violated Section 32 of the Lanham Act, 15 U.S.C. § 1114. *See Weinacker*, 2024 WL 2796533, at *2 (affirming dismissal of claim under § 1114 because the plaintiff "did not allege that he held an active registered trademark with the United States Patent and Trademark Office"). Even if Plaintiffs had alleged that they had a federally registered trademark, the claim would still be subject to dismissal because the second amended complaint fails to plausibly allege a likelihood of confusion. A claim under § 1114 requires the use of a trademark in commerce that is "likely to cause confusion." *Elevate Fed. Credit Union v. Elevations Credit Union*, 67 F.4th 1058, 1070 (11th Cir. 2023). Liability for a violation "turns on whether the junior user's mark is likely to cause confusion with the senior user's mark." *Id.* (cleaned up). The second amended complaint fails to plausibly allege that Defendant

Lee used a mark that caused a likelihood of confusion with a registered mark belonging to Plaintiffs. Thus, Plaintiffs have failed to state a claim against Defendant Lee under 15 U.S.C. § 1114.

There is one more thing to discuss, at least briefly, regarding Count 3. In the second amended complaint, the title of Count 3 references "false advertising." (Doc. 76 at 51). But neither of the statutory provisions (i.e., 15 U.S.C. §§ 1114 and 1125(a)(1)(A)) that Plaintiffs specifically say that Defendant Lee violated in the body of Count 3 deal with false advertising. Plaintiffs are represented by counsel, so this Court need not liberally construe the complaint as it does for *pro se* litigants. *In re Keitel*, 852 F. App'x 463, 464 n.1 (11th Cir. 2021). Moreover, it is not this Court's role to rewrite a deficient complaint or to guess about what claims a plaintiff (especially a represented one) intended to bring. Thus, the Court need not address whether Plaintiffs have plausibly alleged a false advertising claim because the second amended complaint does not actually assert such a claim. Instead, it asserts that Defendant Lee "violated" 15 U.S.C. §§ 1114 and 1125(a)(1)(A)—neither of which address false advertising.

Nonetheless, to the extent Plaintiffs intended to bring a claim of false advertising under a provision of the Lanham Act that they have not

cited, such a claim would be subject to dismissal. To succeed on a false advertising claim under 15 U.S.C. § 1125(a)(1)(B), "a plaintiff must establish that (1) the advertisements of the opposing party were false or misleading; (2) the advertisements deceived, or had the capacity to deceive, consumers; (3) the deception had a material effect on purchasing decisions; (4) the misrepresented product or service affects interstate commerce; and (5) the movant has been—or is likely to be—injured as a result of the false advertising." *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1260 (11th Cir. 2004).

Here, Plaintiffs have not plausibly alleged that Defendant Lee used false and misleading advertisements that deceived or had the capacity to deceive consumers. Unlike advertisements, the statements allegedly made by Defendant Lee on YouTube and/or other social media outlets "do not propose a commercial transaction." *Tobinick, MD v. Novella*, 848 F.3d 935, 950 (11th Cir. 2017) (rejecting claim that blog posts that were critical of the plaintiff's medical practice constituted false advertising in violation of the Lanham Act); *see also Gmurzynska v. Hutton*, 355 F.3d 206, 210 (2d Cir. 2004) (stating that for Lanham Act false advertising claim an advertisement must be commercial speech, and "[c]ommercial

speech is speech which does no more than propose a commercial transaction"). Instead, what Defendant Lee is alleged to have done would be better described as "communicat[ing] information, express[ing] opinion, and recit[ing] grievances" regarding Plaintiffs. *Tobinick*, 848 F.3d at 950; *see also Farah v. Esquire Magazine*, 736 F.3d 528, 541 (D.C. Cir. 2013) ("The mere fact that the parties may compete in the marketplace of ideas is not sufficient to invoke the Lanham Act."); *Podiatrist Assoc. v. La Cruz Azul De Puerto Rico, Inc.*, 332 F.3d 6, 18-20 (1st Cir. 2003) (affirming dismissal of Lanham Act false advertising claim that was based on the defendant's allegedly false and disparaging comments regarding podiatrists and the quality of care they provide). The fact that Defendant Lee may have solicited donations or offered premium subscriptions on her YouTube page does not give rise to a cause of action for false advertising under the Lanham Act. *See Tobinick*, 848 F.3d at 952 (rejecting argument that the placement of articles "next to revenue-generating advertising" and "the ability of a reader to pay for a website subscription" would be sufficient for articles to be deemed

commercial advertising for Lanham Act purposes).  Accordingly, Count 3 of the second amended complaint should be dismissed.[7]

### 3. Tortious Interference

In Count 4, Plaintiffs allege Defendant Lee tortiously interfered with business relationships.  "Under Florida law, the elements of tortious interference with a business relationship are: (1) the existence of a business relationship that affords the plaintiff existing or prospective legal rights; (2) the defendant's knowledge of the business relationship; (3) the defendant's intentional and unjustified interference with the relationship; and (4) damage to the plaintiff."  *Int'l Sales & Serv., Inc. v. Austral Insulated Prods., Inc.*, 262 F.3d 1152, 1154 (11th Cir. 2001).

---

[7] Any doubt about whether Plaintiff has stated a plausible claim under the Lanham Act can be resolved by considering the purposes of the Lanham Act.  The Act was designed to (1) make "actionable the deceptive and misleading use of marks" in interstate commerce; (2) "to protect registered marks used in such commerce from interference by State, or territorial legislation"; (3) "to protect persons engaged in such commerce from unfair competition"; (4) to prevent fraud and deception in such commerce by the use of reproductions, copies, counterfeits, or colorable imitations of registered marks"; and (5) "to provide rights and remedies stipulated by treaties and conventions respecting trademarks, trade names, and unfair competition entered into between the United States and foreign nations."  15 U.S.C. § 1127 (describing the purposes of the Lanham Act).  The allegations against Defendant Lee in this case in no way seek to vindicate the listed purposes of the Lanham Act.

Here, the second amended complaint alleges that Plaintiffs had a business relationship with YouTube and Whatnot, as well as "other companies" and unspecified "customers." (Doc. 76 at 52-53). There is no cause of action for "tortious interference with a business relationship to the community at large." *Coach Servs., Inc. v. 777 Lucky Access., Inc.*, 752 F. Supp. 2d 1271, 1273 (S.D. Fla. 2010).

Additionally, a tortious interference claim requires the plaintiff to show a "business relationship with identifiable customers." *Id*. Plaintiffs' second amended complaint does not identify any customers— it simply generically refers to "customers." That is insufficient to state a claim—the same is true with regard to the Plaintiffs' allegations involving their business relationships with "other" unidentified companies. *See id*. (dismissing tortious interference claim because allegation that the defendant interfered with sales to "various customers" was "too vague and abstract to satisfy the first element of a tortious interference claim"); *see also Kamau v. Slate*, No. 4:21cv279, 2023 WL 3142306, at *2 (N.D. Fla. Jan. 17, 2023) ("When pleading the existence of a business relationship, plaintiffs must specifically identify in their

21

complaint the customers or clients that are the subject of a defendant's alleged interference.").

As for the allegations regarding YouTube and Whatnot, Plaintiffs have alleged existing and specific business relationships. So, the first element of a tortious interference has been plausibly alleged. And the Court will assume that Plaintiffs' general statement about Defendant Lee's knowledge of those business relationships is sufficient to satisfy the second element. *See generally Sun Life Assurance Co. of Canada v. Imperial Premium Finance, LLC*, 904 F.3d 1197, 1215-16 (11th Cir. 2018) (finding that the defendant's knowledge of business relationship need not be pleaded with specificity).

That leads to the third element, which is where Plaintiffs have a problem because they have not plausibly alleged that Defendant Lee intentionally and unjustifiably interfered with Plaintiffs' business relationships with YouTube and/or Whatnot. Although there are allegations that Defendant Lee posted content about Plaintiffs on her own YouTube channel, Plaintiffs have not plausibly alleged that Defendant Lee contacted YouTube or Whatnot representatives or otherwise did anything to interfere with the business relationship that

Plaintiffs had with YouTube and Whatnot.  *See Duty Free Americas, Inc. v. Estee Lauder Cos., Inc.*, 797 F.3d 1248, 1281 (11th Cir. 2015) (affirming dismissal where there was no allegation that the defendant "conveyed" the information in question to the entity with which the plaintiff had a business relationship).  Nor is there any allegation that because of Defendant Lee's conduct YouTube or Whatnot terminated or otherwise altered their business relationship with Plaintiffs.  Thus, Plaintiffs have failed to plausibly allege the third element of a tortious interference with business relationships claim.

Plaintiffs have also failed to plausibly allege the last element—damages.  Damages are "an essential element of a tortious interference claim."  *Worldwide Primates, Inc. v. McGreal*, 26 F.3d 1089, 1092 (11th Cir. 1994).  Thus, dismissal is warranted if a plaintiff fails to plausibly allege damages suffered "as a result of the breach of the business relationship."  *Balesia Tech., Inc. v. Cuellar*, 22-CV-62085, 2023 WL 6304488, at *3 (S.D. Fla. Sept. 28, 2023).  This means that the plaintiff must "connect the loss" of a business relationship "to the alleged tortious conduct" of the defendant.  *Bayley Prods., Inc. v. Cole*, 720 So.2d 550, 551 (Fla. 4th DCA 1998).

Here, Plaintiffs seek $1,835,000 in damages for Defendant Lee's tortious interference. (Doc. 76 at 52). But the allegations in the second amended complaint fail to plausibly connect Defendant Lee's supposed tortious interference to the breach or loss of any business relationship with YouTube or Whatnot. Nor does the second amended complaint allege the value of any such business relationship that was lost or breached as a result of Defendant Lee's conduct. Thus, Plaintiffs have failed to plausibly allege the fourth element of a tortious interference claim. Because Plaintiffs have failed to plausibly allege several elements of a tortious interference with business relationships claim, Count 4 should be dismissed.

### 4. Civil Conspiracy

In Count 6, Plaintiffs claim Defendant Lee engaged in a civil conspiracy. "Under Florida law, the elements of a civil conspiracy are: (a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy." *Rashada v. Hathcock*, 780 F. Supp. 3d 1212, 1230 (N.D. Fla. 2025) (cleaned up). The "gravamen of a civil

conspiracy claim" in Florida is "the underlying tort carried out by virtue of the conspiracy, not the conspiratorial agreement itself." *Id*. at 1231. This means that "if there is no actionable underlying tort, a civil conspiracy claim will fail." *Id*.; *see also Honig v. Kornfeld*, 339 F. Supp. 3d 1323, 1345 (S.D. Fla. 2018) ("An actionable conspiracy requires an actionable underlying tort or wrong.").

According to the second amended complaint, Defendant Lee is alleged to have conspired with others to violate the FDUTPA, the Lanham Act, and to tortiously interfere with business relationships. As explained above, those claims are subject to dismissal for failure to state a plausible claim. And because the underlying claims fail, the civil conspiracy claim necessarily fails. *See Alhassid v. Bank of Am, N.A.*, 60 F. Supp. 3d 1302, 1317 (S.D. Fla. 2014) (stating that because the underlying claims "do not survive this Motion to Dismiss, they cannot substantiate Plaintiffs' civil conspiracy claim"); *see also Rebman v. Follett Higher Educ. Group, Inc.*, 575 F. Supp. 2d 1272, 1280 (M.D. Fla. 2008) (explaining that "because the underlying breach of contract and FDUTPA

claims fail, so must the civil conspiracy claim"). Accordingly, the civil conspiracy claim against Defendant Lee in Count 6 should be dismissed.[8]

## B.    Defendant Matzkin's Motion to Dismiss

Having resolved Defendant Lee's motion to dismiss, the Court will now turn to Defendant Matzkin's motion to dismiss (Doc. 55). The second

---

[8] Even if the second amended complaint had stated a plausible underlying claim, the civil conspiracy claim would still be subject to dismissal for failure to state a claim. A civil conspiracy claim "must contain clear, positive and specific allegations; general allegations of conspiracy are not sufficient." *Parisi v. Kingston*, 314 So.3d 656, 661 (Fla. 3d DCA 2021). It is insufficient for a complaint to "vaguely tie[] . . . events together by alleging, in conclusory fashion, that the circumstances unfolded pursuant to an agreement" between the defendants. *Id.* at 662; *see also Harper v. Fla. Bar*, No. 4:13-cv-459, 2013 WL 5970698, at *4 (N.D. Fla. Nov. 8, 2013) ("Plaintiff may not broadly allege that all Defendants conspired together without specific statements of fact which support the claim. Conclusory, vague, and general allegations of conspiracy justify dismissal."). Here, instead of "clear, positive[,] and specific allegations[,]" *Parisi*, 314 So. 3d at 661, the second amended complaint, contains "[c]onclusory allegations of an agreement, without any factual basis to make the allegations plausible[.]" *N.R. by Ragan v. Sch. Bd. of Okaloosa Cnty.*, 418 F. Supp. 3d 957, 999 (N.D. Fla. Sept. 30, 2019). The second amended complaint alleges a sprawling conspiracy involving people from across the United States, all of whom share one thing in common—they have said negative things about Plaintiff Hales on social media. But there are insufficient facts alleged to plausibly show an agreement between all the members of the supposed conspiracy to engage in an unlawful act or a lawful act by unlawful means. Thus, dismissal is warranted. *See Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("A complaint may justifiably be dismissed because of the conclusory, vague and general nature of the allegations of conspiracy.").

amended complaint alleges Defendant Matzkin tortiously interfered with Plaintiffs' business relationships (Count 5) and also participated in a civil conspiracy (Count 7).

### 1. Tortious Interference

The law regarding what is necessary to state a claim for tortious interference is set forth above and will not be repeated here. The second amended complaint alleges that Defendant Matzkin tortiously interfered with Plaintiffs' "contracts and advantageous business relationships with its customers and other companies including, without limitation, Whatnot, Inc. and YouTube." (Doc. 76 at 54). Defendant Matzkin argues that Plaintiffs' allegations are insufficient to state a plausible tortious interference claim. The Court agrees with Defendant Matzkin.

First, as explained above with regard to Defendant Lee, a tortious interference claim requires the plaintiff to show a "business relationship with identifiable customers." *Coach Servs., Inc.*, 752 F. Supp. 2d at 1273. Here, Plaintiffs' second amended complaint does not identify any customers—it simply generically refers to "customers." That is insufficient to state a claim—the same is true with regard to the Plaintiffs' allegations involving its business relationships with "other"

27

unidentified companies.  *See id.* (dismissing tortious interference claim because allegation that the defendant interfered with sales to "various customers" was "too vague and abstract to satisfy the first element of a tortious in interference claim"); *see also Kamau*, 2023 WL 3142306, at *2 ("When pleading the existence of a business relationship, plaintiffs must specifically identify in their complaint the customers or clients that are the subject of a defendant's alleged interference.").  Thus, Plaintiffs have failed to plausibly allege that Defendant Matzkin tortiously interfered with Plaintiffs' business relationships with its unspecified customers and unidentified companies.

Regarding the allegations involving Whatnot and YouTube, Plaintiff has alleged existing and specific business relationships.  So, the first element of a tortious interference has been plausibly alleged.  And Plaintiffs have plausibly alleged that Defendant Matzkin had knowledge of those business relationships.

That leads to the third element, which is again where Plaintiffs have a problem because the second amended complaint fails to plausibly allege that Defendant Matzkin intentionally and unjustifiably interfered with Plaintiffs' business relationships with YouTube and/or Whatnot.

28

Although there are allegations that Defendant Matzkin posted content about Plaintiff Hales on YouTube, Plaintiffs have not plausibly alleged that Defendant Matzkin contacted YouTube representatives or otherwise did anything to interfere with the business relationship that Plaintiffs allegedly had with YouTube. *See Duty Free Americas, Inc.*, 797 F.3d at 1281-82 (affirming dismissal where there was no allegation that the defendant "conveyed" the information in question to the entity with which the plaintiff had a business relationship).

As for Whatnot, Plaintiffs have alleged that Defendant Matzkin had contact with a Whatnot representative during an email exchange regarding discovery in one of the other cases Plaintiff Hales has filed. But Plaintiffs have failed to plausibly allege that this contact with a Whatnot representative actually interfered with Plaintiffs' business relationship with Whatnot. More specifically, there are no allegations that Whatnot terminated its contract with Plaintiffs, denied Plaintiffs access to the Whatnot platform, or otherwise altered Plaintiffs' business relationship with Whatnot as a result of Defendant Matzkin's conduct. *See Tietig v. Southeast Reg. Const. Corp.*, 557 So. 2d 98, 99 (Fla. 3d DCA 1990) (explaining that the "lack of a causal relationship between the

alleged 'interference' and the failure of the agreement . . . precludes recovery as a matter of law"). Thus, Plaintiffs have failed to plausibly allege the third element of a tortious interference with business relationships claim regarding Whatnot.

Plaintiffs have also failed to plausibly allege the last element—damages. Damages are "an essential element of a tortious interference claim." *Worldwide Primates, Inc.*, 26 F.3d at 1092. Thus, dismissal is warranted if a plaintiff fails to plausibly allege damages suffered "as a result of the breach of the business relationship." *Balesia Tech., Inc.*, 2023 WL 6304488, at *3. This means that the plaintiff must "connect the loss" of a business relationship "to the alleged tortious conduct" of the defendant. *Bayley Prods., Inc.*, 720 So. 2d at 551.

Here, Plaintiffs seek $1,229,000 in damages for Defendant Matzkin's tortious interference. (Doc. 76 at 53). But the allegations in the second amended complaint fail to plausibly connect Defendant Matzkin's supposed tortious interference to the breach of any contract or the loss of any business relationship. Nor does the second amended complaint allege the value of any such breached contract or lost business relationship that resulted from Defendant Matzkin's conduct. Thus,

Plaintiffs have failed to plausibly allege the fourth element of a tortious interference claim. Because Plaintiffs have failed to plausibly allege several elements of a tortious interference with business relationships claim, Count 5 should be dismissed.

### 2. Civil Conspiracy

In Count 7, Plaintiffs claim Defendant Matzkin is liable for civil conspiracy. That claim fails for the same reasons discussed above regarding Plaintiffs' civil conspiracy claim against Defendant Lee. Accordingly, Count 7 should be dismissed.

### C.    Defendant Cook's Motion to Dismiss

In Count 9, Plaintiffs claim Defendant Cook is liable for civil conspiracy. Defendant Cook has moved to dismiss for failure to state a claim. (Doc. 61). The civil conspiracy claim against Defendant Cook fails for the same reasons discussed above regarding Plaintiffs' civil conspiracy claim against Defendant Lee. Accordingly, Count 9 should be dismissed.

### D.    Defendant Hughes's Motion to Dismiss

In Count 10, Plaintiffs claim Defendant Hughes is liable for civil conspiracy. Defendant Hughes has moved to dismiss for failure to state

a claim. (Doc. 53). The civil conspiracy claim against Defendant Hughes fails for the same reasons discussed above regarding Plaintiffs' civil conspiracy claim against Defendant Lee. Accordingly, Count 10 should be dismissed.

### E.    Defendant Bonebrake's Motion to Dismiss

In Count 14, Plaintiffs claim Defendant Bonebrake[9] is liable for civil conspiracy. Defendant Bonebrake has moved to dismiss for failure to state a claim. (Doc. 107). The civil conspiracy claim against Defendant Bonebrake fails for the same reasons discussed above regarding Plaintiffs' civil conspiracy claim against Defendant Lee. Accordingly, Count 14 should be dismissed.

### F.    Defendant Keszey's Motion to Dismiss

In Count 12, Plaintiffs claim Defendant Keszey is liable for civil conspiracy. Defendant Keszey has moved to dismiss for failure to state a claim. (Doc. 110). The civil conspiracy claim against Defendant Keszey fails for the same reasons discussed above regarding Plaintiffs' civil

---

[9] Defendant Bonebrake's name is Raymond G. Bonebrake, Jr. (Doc. 107). The second amended complaint refers to him as "Defendant Raymond." (Doc. 76 at 5, 42-43).

conspiracy claim against Defendant Lee. Accordingly, Count 12 should be dismissed.

### G.    Defendant Helm's Motion to Dismiss

In Count 11, Plaintiffs claim Defendant Helm is liable for civil conspiracy. Defendant Helm has moved to dismiss for failure to state a claim. (Doc. 52). The civil conspiracy claim against Defendant Helm fails for the same reasons discussed above regarding Plaintiffs' civil conspiracy claim against Defendant Lee. Accordingly, Count 11 should be dismissed.

Aside from seeking dismissal, Defendant Helm seeks to recover his attorneys' fees under Florida's anti-SLAPP statute, Fla. Stat. § 768.295(3)-(4). "Florida's anti-SLAPP statute prohibits a person from filing a cause of action 'against another person or entity [1] without merit and [2] primarily because such person or entity has exercised the constitutional right of free speech in connection with a public issue.'" *Parekh v. CBS Corp.*, 820 F. App'x 827, 836 (11th Cir. 2020) (quoting Fla. Stat. § 768.295(3)). It further provides that a court "'shall award the prevailing party reasonable attorney fees and costs incurred in

connection with a claim that an action was filed in violation of this section.'" *Id.* (quoting Fla. Stat. § 768.295(4)).

According to Defendant Helm, the anti-SLAPP statute entitles him to reasonable attorney fees because Plaintiffs' allegations are without merit and this lawsuit was commenced because Defendant Helm exercised his right to free speech by appearing on YouTube broadcasts to discuss Plaintiff Hales and another lawsuit Plaintiff Hales had filed.  In response to Defendant Helm's motion to dismiss, Plaintiffs have argued that their claim against Defendant Helm has merit and that Defendant Helm's speech was commercial speech that is not covered by the anti-SLAPP statute.  (Doc. 80 at 2-3).

Defendant Helm has met the anti-SLAPP statute's first requirement because, as explained above, Plaintiffs' claim against him lacks merit.  Turning to the anti-SLAPP statute's second requirement, the claim must have been brought "primarily because [Defendant Helm] has exercised the constitutional right of free speech in connection with a public issue." *Parekh*, 820 F. App'x at 836.  The anti-SLAPP statute defines "free speech in connection with public issues" as:

> [A]ny written or oral statement that is protected under applicable law and [1] is made before a governmental entity

> in connection with an issue under consideration or review by
> a governmental entity,  or [2] is made in or in connection
> with a play, movie, television program, radio broadcast,
> audiovisual work, book, magazine article, musical work,
> news report or other similar work.

Fla. Stat. § 768.295(2)(a).  "Free speech made in connection with public issues, in pertinent part, merely requires a showing that the public speech is contained in or was made in connection with one of the listed media formats or other similar modes for widely disseminating protected First Amendment speech."  *Mishiyev v. Davis*, 402 So. 3d 443, 448-49 (Fla. 2d DCA 2025) (cleaned up).  Here, the allegations in the second amended complaint involve oral and written statements made by Defendant Helm that were protected under applicable law.  The oral statements were made as part Defendant Helm's operation of a YouTube channel called "Making Law Simple."  (Doc. 76 at 30).  And the written statements were made in connection with a YouTube broadcast that was being conducted by Defendant Lee on her YouTube channel.  These YouTube broadcasts are audiovisual works or "similar works."  And in the current world, YouTube is undoubtedly an "other similar mode[] for widely disseminating protected First Amendment speech."  *Mishiyev*, 402

So. 3d at 449.  Thus, the requirements of Florida's anti-SLAPP statute have been met.

In an attempt to avoid this conclusion, Plaintiffs argue in cursory fashion that the anti-SLAPP law does not apply because the lawsuit was aimed at Defendant Helm's "unlawful conduct, which includes but is not limited to actionable commercial speech." (Doc. 80 at 3). Plaintiffs' argument that the allegations against Defendant Helm are based on conduct and not speech is incorrect. The gravamen of Plaintiffs' allegations against Defendant Helm are things he said and wrote—in other words, his speech.  And that speech was not unprotected "commercial speech."[10]  The "core notion" of commercial speech is "speech which does no more than propose a commercial transaction." *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 66 (1983) (cleaned up); *see also Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626, 637 (1985) ("Our commercial speech doctrine rests heavily on the common-sense distinction between speech proposing a commercial transaction and other

---

[10] Even if it was "commercial speech," that would not mean it was "unprotected" speech. *See Fla. Bar v. Went For It, Inc.*, 515 U.S. 618, 623 (1995) (recognizing that "commercial speech" is "accorded a measure of First Amendment protection," but that protection is more limited than the protection afforded to non-commercial speech).

varieties of speech." (cleaned up)).  Here, Defendant Helm's speech did not propose a commercial transaction.  Rather, Defendant Helm's speech consisted of commentary and criticism regarding Plaintiff Hales.  As such, it was a "written or oral statement that is protected under applicable law," Fla. Stat. § 768.295(2)(a), and within the definition of "free speech in connection with a public issue," for purposes of Florida's anti-SLAPP statute.

Because Plaintiffs' claim against Defendant Helm is without merit and was filed primarily because he exercised the constitutional right of free speech in connection with a public issue, Plaintiffs should be required to reimburse Defendant Helm for his reasonable attorney fees and costs in defending against this lawsuit under Florida's anti-SLAPP statute.

## H.    Defendant Teschendorf's Motion to Dismiss

In Count 13, Plaintiffs claim Defendant Teschendorf is liable for civil conspiracy.  Defendant Teschendorf has moved to dismiss.  (Doc. 127).  Defendant Teschendorf, a non-Florida resident, asserts that dismissal is warranted under Rule 12(b)(2) for lack of personal jurisdiction.  He has also sought dismissal for failure to state a claim

under Rule 12(b)(6). The Court will first address the jurisdictional argument and then move to the failure to state a claim argument. *See Rep. of Panama v. BCCI Holdings, S.A.*, 119 F.3d 935, 940 (11th Cir. 1997) ("As a general rule, courts should address issues relating to personal jurisdiction before reaching the merits of a plaintiff's claims.").

### 1. Personal Jurisdiction

"A federal district court in Florida may exercise personal jurisdiction over a nonresident defendant to the same extent that a Florida court may, so long as the exercise is consistent with federal due process requirements." *Licciardello v. Lovelady*, 544 F.3d 1280, 1283 (11th Cir. 2008). Under Florida's longarm statute, jurisdiction exists "over the nonresident defendant who commits a tort outside of the state that causes injury inside the state." *Id.*

Plaintiffs allege that Defendant Teschendorf operated a YouTube channel and made comments on that YouTube channel that caused harm to Plaintiffs in Florida. (Doc. 76 at 41-42). Those YouTube comments involved statements allegedly made by Defendant Teschendorf regarding Plaintiff Hales's conduct during litigation in a separate Florida lawsuit involving Hales and neighbors from Florida (i.e., Defendants Preston and

Cook).  (*Id*. at 42).  That is sufficient for personal jurisdiction under Florida's longarm statute.  *See Licciardello*, 544 F.3d at 1283-84 (finding Florida's longarm statute reached the out-of-state creator of a website because the website was accessed in Florida and allegedly caused harm in Florida); *see also Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1353-54 (11th Cir. 2013) (finding that Florida's longarm statute reached out-of-state website conduct because the website allegedly "cause[d] injury" in Florida).

Having found that the Florida's longarm statute confers jurisdiction over Defendant Teschendorf, it is necessary to address whether the Due Process Clause of the U.S. Constitution permits the exercise of jurisdiction.  Under the Due Process Clause, jurisdiction may not be exercised over a nonresident defendant "unless his contact with the state is such that he has fair warning that he may be subject to suit there."  *Licciardello*, 544 F.3d at 1284 (cleaned up).  The "constitutional litmus test for personal jurisdiction is whether the defendant purposefully established minimum contacts in the forum State."  *Id*. at 1285 (cleaned up).  In intentional tort cases (like the current one), the

Eleventh Circuit has applied the "*Calder*[11] effects test" to determine whether there have been sufficient minimum contacts. *Id.* Under this test, "a nonresident defendant's single tortious act can establish purposeful availment, without regard to whether the defendant had any other contacts with the forum state." *Louis Vuitton Malletier*, 736 F.3d at 1356. The effects test is met when the tortious behavior is "(1) intentional; (2) aimed at the forum state; and (3) caused harm that the defendant should have anticipated would be suffered in the forum state." *Licciardello*, 544 F.3d at 1286.

Here, the Court finds that Plaintiffs have satisfied the *Calder* effects test. Plaintiffs have alleged that Defendant Teschendorf's conduct was intentional. And they have alleged that Defendant Teschendorf's conduct was aimed at Florida. His YouTube channel was accessible in Florida, and he allegedly used his YouTube channel to make comments about Plaintiff Hales's actions in another Florida lawsuit and Plaintiff Hales's conduct in an ongoing saga involving a neighboring property owner in Florida. Under the circumstances at issue here, Defendant Teschendorf should have anticipated that any harm caused to Plaintiffs

---

[11] *Calder v. Jones*, 465 U.S. 783 (1984).

would be suffered in Florida. Accordingly, Defendant Teschendorf had sufficient minimum contacts with the forum state to satisfy due process.

Finally, the Court must consider whether the exercise of personal jurisdiction over Defendant Teschendorf would comport with fair play and substantial justice. *Licciardello*, 544 F.3d at 1288. "Relevant factors include the burden on the defendant, the forum's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief and the judicial system's interest in resolving the dispute." *Id*. Defendant Teschendorf has not "offered any evidence of his finances or any other limitations on him to show that he would be burdened by having to litigate the case in Florida." *Louis Vuitton Malletier*, 736 F.3d at 1358. Moreover, the allegations in this case are highly Florida-centric, which provides Florida with a strong interest in hearing the case. Finally, Plaintiffs have an interest in having this case resolved in Florida. The Court, therefore, finds that exercising personal jurisdiction over Defendant Teschendorf would comport with fair play and substantial justice.

## 2. Failure to State a Claim

The Court will now turn to Defendant Teschendorf's argument that the civil conspiracy claim against him in Count 13 should be dismissed for failure to state a claim. With regard to that issue, the Court finds that the civil conspiracy claim against Defendant Teschendorf fails for the same reasons discussed above regarding Plaintiffs' civil conspiracy claim against Defendant Lee. Accordingly, Count 13 should be dismissed.[12]

## IV. Conclusion

For the reasons above, it is respectfully **RECOMMENDED** that:

1. Defendant Helm's Motion to Dismiss (Doc. 52) be **GRANTED** and the claims against Defendant Helm **DISMISSED with prejudice**[13] for failure to state a claim;

---

[12] Defendant Teschendorf also seeks reasonable attorney fees under Florida's anti-SLAPP statute. But Defendant Teschendorf is not entitled to such fees because he is proceeding *pro se*. *See Lee v. Animal Aid, Inc.*, 388 So. 3d 25, 31 (Fla. 4th DCA 2024) (stating that the defendant "as a pro se litigant" was "not entitled to attorney's fees" under the anti-SLAPP statute).

[13] There is no basis for providing Plaintiffs with another opportunity to amend. Plaintiffs were previously given an opportunity to amend after Defendant Helm filed a motion for more definite statement. (Docs. 16, 17). Plaintiffs are represented by counsel, and the Eleventh Circuit has "never required district courts to grant counseled plaintiffs more than

one opportunity to amend a deficient complaint . . . ." *Eiber Radiology, Inc. v. Toshiba Am. Med. Sys., Inc.*, 673 F. App'x 925, 929-30 (11th Cir. 2016); *see also Henley v. Turner Broadcasting Sys., Inc.*, 267 F. Supp. 3d 1341, 1364 (N.D. Ga. 2017) (concluding that "it is unnecessary to allow Plaintiffs, who are represented by counsel, the opportunity to file a further amended complaint"). Here, Plaintiffs "already ha[ve] been given an opportunity to correct [their] pleadings," therefore, the Court is "not required to given [them] another chance." *Cornelius v. Bank of Am., NA*, 585 F. App'x 996, 1000 (11th Cir. 2014) (affirming dismissal with prejudice where the plaintiff had already been given an opportunity to amend).

Moreover, Plaintiffs have not moved for leave to amend in the manner required by Rule 15(a)(2). Instead, Plaintiffs have simply stated in their opposition responses that if the motions to dismiss are granted the Court should "afford Plaintiffs an opportunity to amend to address any perceived defect." (*See, e.g.*, Doc. 80 at 12). That is insufficient. *See Eiber Radiology*, 673 F. App'x at 930 (affirming dismissal with prejudice where the plaintiff had previously amended and opining that the plaintiff's statement at the end of response to motion to dismiss was insufficient to formally seek leave to amend under Rule 15(a)(2)); *see also Blackburn v. Shire US, Inc.*, No. 2:16-CV-963, 2017 WL 5013578, at *2 (N.D. Ala. Nov. 2, 2017) (dismissing with prejudice and stating that "[r]ather than requesting leave to amend his complaint a second time *before* the court ruled on this motion to dismiss, Plaintiff sat idly by as he awaited the district court's determination of Defendant's second motion to dismiss") (emphasis in original); *Chase v. Haskell Co.*, No. 1:22-CV-03941, 2023 WL 3763807, at *3 (N.D. Ga. June 1, 2023) (dismissing without leave to amend and explaining that the plaintiff failed to properly seek leave to amend because "[i]nstead of filing a motion, Plaintiff merely mentioned in his response to Defendant's motion to dismiss that if he has failed to state a claim" then he should be given leave to amend).

2.    Defendant Hughes's Motion to Dismiss (Doc. 53) be **GRANTED** and the claims against Defendant Hughes **DISMISSED with prejudice** for failure to state a claim;

3.    Defendant Matzkin's Motion to Dismiss (Doc. 55) be **GRANTED** and the claims against Defendant Matzkin **DISMISSED with prejudice** for failure to state a claim;

4.    Defendant Cook's Motion to Dismiss (Doc. 61) be **GRANTED** and the claims against Defendant Cook **DISMISSED with prejudice** for failure to state a claim;

5.    Defendant Lee's Motion to Dismiss (Doc. 106) be **GRANTED** and the claims against Defendant Lee **DISMISSED with prejudice** for failure to state a claim;

6.    Defendant Bonebrake's Motion to Dismiss (Doc. 107) be **GRANTED** and the claims against Defendant Bonebrake **DISMISSED with prejudice** for failure to state a claim;

7.    Defendant Keszey's Motion to Dismiss (Doc. 110) be **GRANTED** and the claims against Defendant Keszey **DISMISSED with prejudice** for failure to state a claim;

8.    Defendant Teschendorf's Motion to Dismiss (Doc. 127) be **GRANTED** and the claims against Defendant Teschendorf **DISMISSED with prejudice** for failure to state a claim; and

9.    This matter be recommitted to the undersigned for further proceedings involving Defendants Preston and Luthmann[14], as well as the determination of the reasonable attorney fees due to Defendant Helm under Florida's anti-SLAPP statute.

At Pensacola, Florida, this 10th day of February 2026.

/s/ *Zachary C. Bolitho*

Zachary C. Bolitho
United States Magistrate Judge

### Notice to the Parties

Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the Report and Recommendation. Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control. An objecting party must serve a copy of the objections on all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.

---

[14] As stated previously, this case is stayed as to Defendant Preston because of her pending bankruptcy. With regard to Defendant Luthmann, the issues raised recently became ripe and remain under consideration by the undersigned.