**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**GAINESVILLE DIVISION**

| | |
|---|---|
| **ELEPHANT SHOE, LLC, an Ohio Limited Liability Company d/b/a WHAT THE HALE$, and JEREMY B. HALES,** )<br>)<br>)<br>) | |
| Plaintiff, ) | |
| ) | |
| . v. ) | Case No. 1:25-cv-00058-RH-MJF |
| ) | |
| **LYNETTE MICHELLE LACY ALEXIS PRESTON, JOHN COOK, BRUCE P. MATZKIN, LISA LEE, MARLA HUGHES, DAVID C. HELM, ROBERT J. KESZEY, DAVID MICHAEL TESCHENDORF, RAYMOND G. BONEBRAKE, JR., and RICHARD LUTHMANN,** )<br>)<br>)<br>)<br>)<br>)<br>) | |
| ) | |
| Defendants. )<br>) | |

**DEFENDANT RICHARD A. LUTHMANN, JR.'S NOTICE OF**
**JOINDER IN AND SUPPORT OF CO-DEFENDANT LISA**
**LEE'S MOTION FOR JUDICIAL NOTICE (ECF NO. 168)**

Defendant Richard A. Luthmann, Jr. ("Defendant" or "Luthmann"), a non-lawyer unskilled in the science of law and without the requisite capacity to be deemed learned in the law, appearing *pro se* and specially for the limited purpose of contesting personal jurisdiction, hereby makes this submission in support of the application of Defendant Lisa Lee to the extent the relief requested is in line with Luthmann's requests for relief already lodged on the docket. Defendant Luthmann further states as follows:

**INTRODUCTION AND BACKGROUND**

Defendant Richard A. Luthmann, Jr., appearing pro se and specially, hereby gives notice of his full support for co-Defendant Lisa Lee's Motion for Judicial Notice (ECF No. 168). Mr. Luthmann had independently intended to file a similar motion seeking the same relief, as

1

evidenced by his Local Rule 7.1 conferral email to Plaintiffs' counsel on February 16, 2026 (see

the attached **Exhibit A**) and February 21, 2026 (see the attached **Exhibit B**). Rather than burden

the Court with duplicative filings and risk fueling what Defendants have identified as an ongoing

"POLAMOP" campaign,[1] Mr. Luthmann has elected not to file a separate motion. He instead joins

in Lisa Lee's motion and incorporates herein the arguments he raised during conferral and

subsequent correspondence. Those arguments, summarized below, dovetail with and supplement

Ms. Lee's, underscoring why judicial notice is not only appropriate but necessary in this case.

## ARGUMENT

The February 15, 2026, "What The Hales" YouTube Livestream and Transcript Are Proper

Subjects of Judicial Notice. Mr. Luthmann joins in requesting that the Court take judicial notice of

a publicly available YouTube livestream video dated February 15, 2026, featuring Plaintiff Jeremy

Hales (and his company, Elephant Shoe LLC d/b/a "What The Hales"). This video – titled "Federal

Court Update – IT'S JUST the BEGINNING" – was broadcast to hundreds of thousands of Mr.

Hales's followers and remains accessible online (ECF No. 168-1, Exhibit A). The complete video

has been preserved, and a certified transcript has been filed as Exhibit A to Ms. Lee's motion.

---

[1] "POLAMOP" refers to several acronyms. One is Plaintiff-Originated Litigation and Media Orchestration Protocol, coined by the undersigned. Another is Protraction of Litigation and Multiplication of Proceedings, coined by attorney-defendant Bruce Matzkin. POLAMOP refers to Plaintiff Jeremy Hales's apparent strategy of flooding the docket with filings primarily to generate content for his YouTube channel and social media audience. In practice, Mr. Hales and his network of collaborators rapidly publicize each court filing, creating a "media ecosystem" around this litigation. Mr. Luthmann notes that he copied the Court on his February 16, 2026, and February 21, 2026, conferral emails solely to preserve transparency under these unusual circumstances, not to circumvent proper channels. Given that Mr. Hales can instantaneously broadcast salacious allegations via YouTube before Mr. Luthmann (who must file by mail due to pro se e-filing restrictions) even has an opportunity to respond, ensuring the Court's awareness of communications was a good-faith measure to prevent one-sided narrative advantage – not an improper ex parte contact. *Cf. Donaldson v. Clark*, 819 F.2d 1551, 1557–58 (11th Cir. 1987) (en banc) (courts must ensure procedural rules are not wielded to unfairly disadvantage pro se litigants); *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989).

In that livestream, Mr. Hales made several statements directly relevant to this case, including the striking declaration that "Fed 2 is just the beginning… [the defendants] will have me in their lives forever." Such statements, openly made by the Plaintiff on a public platform, are not subject to reasonable dispute as to their existence. The fact that Mr. Hales uttered these words on the date in question can be accurately and readily confirmed by sources "whose accuracy cannot reasonably be questioned" – namely, the archived video itself and the official transcript of the broadcast. See Fed. R. Evid. 201(b)(2).

Courts routinely take judicial notice of information posted on publicly accessible websites (including videos and transcripts) when the fact of what was said, and when, is not reasonably subject to dispute, even if the truth of the content might be. For example, the Eleventh Circuit has approved judicial notice of public records and materials available online in appropriate circumstances. *See, e.g., Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278–79 (11th Cir. 1999) (approving judicial notice of publicly accessible SEC filings in considering a motion to dismiss); *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994) (judicial notice appropriate where a fact "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned").

Other courts have likewise recognized that the content of online publications can be noticed for the mere fact of their publication. *See, e.g., Klayman v. Judicial Watch, Inc.*, 255 F. Supp. 3d 161, 166–67 (D.D.C. 2017) (collecting cases, including Eleventh Circuit authority, taking notice of information on websites for the fact that certain statements were made publicly). And most pertinent here, the Eleventh Circuit itself has taken judicial notice of public court records and dockets available online, emphasizing that Rule 201 applies to facts that are ascertainable from reliable sources. *See, e.g., Paez v. Sec'y, Fla. Dep't of Corr.*, 947 F.3d 649, 651–52 (11th Cir. 2020)

3

(taking notice of dates and contents of state court docket entries). In short, the YouTube video and transcript at issue fall well within the category of facts and materials that are eligible for judicial notice under Rule 201(b)(2).

### A. Rule 201(c)(2) Mandates Judicial Notice When Properly Requested and Supplied with the Necessary Information.

Under Federal Rule of Evidence 201(c)(2), once the proponent of judicial notice provides the court with the necessary information to verify the fact, and if the fact is not subject to reasonable dispute, the Court "must take judicial notice" of it. Fed. R. Evid. 201(c)(2). Here, through Ms. Lee's motion, the Court has been supplied with the exact source material – the video's URL and a verbatim transcript – needed to verify the statements in question. There is no reasonable question as to the authenticity of this material: it is a recording of Plaintiff's own statements, preserved in unaltered form.

Notably, courts have held that even records from other court proceedings can be judicially noticed to "establish the fact of such litigation and related filings," though not for the truth of those filings' contents. *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994). By the same reasoning, this Court can and should take notice that Plaintiff Hales publicly made certain statements on February 15, 2026, as reflected in the YouTube video and transcript – without treating those statements as proof of any truth asserted therein. Taking notice in this manner will simply acknowledge an incontrovertible reality: Plaintiff said these things, on the record, to his audience. A court may properly take notice of that kind of fact (the occurrence of Plaintiff's statements) just as it would take notice of the contents of filings or other public records.

Importantly, Mr. Luthmann and Ms. Lee do not ask the Court to assume that anything Mr. Hales said in the video is true. The purpose of the requested judicial notice is not to prove the truth of Plaintiff's utterances, but to establish the fact that Plaintiff uttered them in a public forum on a

given date. Courts commonly limit judicial notice in exactly this fashion – e.g., taking notice that a party made certain allegations or statements at a certain time, without accepting those statements as true. *See, Cash Inn of Dade, Inc. v. Metro. Dade Cty.*, 938 F.2d 1239, 1243 (11th Cir. 1991) (court may notice public records in its file for existence of content therein); Jones, 29 F.3d at 1553 (court may notice documents filed in other courts to recognize the fact of those filings, not the truth of matters asserted in them).

Here, recognizing the fact of Mr. Hales's statements serves a critical evidentiary purpose (as discussed below) while avoiding any hearsay or truth-of-matter concerns. In accordance with Rule 201(c)(2), because the prerequisites of notoriety and accuracy are satisfied and the evidentiary source is provided, the Court must take judicial notice of the February 15, 2026, livestream and its contents as requested.

**B. Plaintiff's On-Record Statements Are Highly Relevant to Show Improper Purpose and Vexatious Conduct.**

Mr. Hales's own words, once judicially noticed, have significant legal relevance. In the video, after learning of recent adverse developments in this case, Mr. Hales brazenly announced to his viewers that this federal lawsuit (which he refers to as "Fed 2") "is just the beginning" and that the Defendants "will have me in their lives forever." By any fair interpretation, this is a direct threat of perpetual litigation. Plaintiff essentially broadcast that he will continue suing the Defendants (and perhaps others) indefinitely, regardless of the merits, as a form of ongoing personal campaign.

This is precisely the type of improper motive and bad faith litigation conduct that courts are empowered to address and sanction. It provides context for why Defendants have repeatedly raised concerns about harassment and abuse of process in this case. Indeed, at the time of Mr. Hales's statement, the assigned Magistrate Judge (Judge Bolitho) had recently issued a Report and

Recommendation advising dismissal of large portions of this lawsuit with prejudice due to fundamental defects. Yet Mr. Hales's response was not to reconsider his claims, but to publicly vow to keep suing so that his targets "will have me in their lives forever." Such an announcement strongly supports the inference that Plaintiff is pursuing this litigation (and threatening future litigation) for purposes of intimidation, retaliation, or self-aggrandizement, rather than to resolve any genuine legal dispute.

Federal courts have both the inherent authority and, indeed, the obligation to protect the judicial system – and other litigants – from abusive, bad-faith litigation. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991) (recognizing the court's inherent power to sanction conduct undertaken in bad faith); *Martin-Trigona v. Shaw*, 986 F.2d 1384, 1386–87 (11th Cir. 1993) (per curiam) (affirming that courts have "both the inherent power and the constitutional obligation to protect their jurisdiction from conduct which impairs their ability to carry out Article III functions") (*quoting Procup v. Strickland*, 792 F.2d 1069, 1073–74 (11th Cir. 1986) (en banc)). Where a party openly declares an intention to continue burdening the courts with meritless or repetitive lawsuits, even after being warned or facing dismissal, the case for sanctions or injunctive relief becomes compelling. *Cf. Cofield v. Ala. Pub. Serv. Comm'n*, 936 F.2d 512, 517–18 (11th Cir. 1991) (upholding a pre-filing injunction against a vexatious litigant who persisted in frivolous filings).

Mr. Hales's recorded promise that this lawsuit is "just the beginning" of his campaign, and that his opponents will never be rid of litigation, is a stark admission of a vexatious intent. It aligns precisely with Defendants' contention that Plaintiff is misusing legal process as a weapon and a publicity tool (i.e., POLAMOP) rather than seeking a legitimate remedy.

6

By taking judicial notice of the February 15, 2026, video and transcript, the Court will formally recognize this critical piece of evidence of Plaintiff's mindset. Doing so will aid the Court in evaluating any future motions concerning sanctions, fee-shifting, or vexatious litigant restrictions. It will also ensure that any adjudication of the pending motions (or the case as a whole) is informed by the reality of Plaintiff's litigation conduct and intent.

For instance, should Mr. Luthmann (or others) move for sanctions or for an injunction to curb further abusive filings, Mr. Hales's own words will be before the Court to demonstrate the necessity for such relief. The Eleventh Circuit has made clear that district courts may and should employ creative sanctions and injunctive measures to deter relentless, meritless litigation, especially where a litigant has displayed contempt for the court's rulings or the jurisdiction's limits. See *Procup*, 792 F.2d at 1074 (affirming that courts have substantial discretion to craft injunctions against abusive litigants as long as access to courts for legitimate purposes is preserved); *Copeland v. Green*, 949 F.2d 390, 391 (11th Cir. 1991) (per curiam) (upholding an injunction requiring leave of court for future filings by an abusive pro se litigant).

In sum, Plaintiff's on-record statements are probative of bad faith and improper purpose – considerations that underlie not only potential sanctions but also the Court's broader management of this case. Judicial notice of those statements will put the Court in the proper position to address the situation with eyes open.

## CONCLUSION

For the foregoing reasons, Defendant Richard A. Luthmann, Jr. fully supports and joins in Lisa Lee's Motion for Judicial Notice (ECF No. 168). He respectfully requests that the Court grant the motion in its entirety, thereby taking judicial notice of the February 15, 2026 YouTube livestream video (and transcript) featuring Plaintiff Hales, for the limited and appropriate purpose

of establishing the fact that Plaintiff made the statements therein on that date. Such relief will avoid duplicative filings, serve the interests of justice, and help curtail further abuse of the judicial process. Mr. Luthmann further requests any additional relief the Court deems just and proper in connection with this joinder.

Dated: Naples, Florida
      March 9, 2026

Respectfully submitted,

Richard A. Luthmann, Jr.
Pro Se Defendant (Special Appearance)
4199 Los Altos Court
Naples, Florida 34109
Tel: (239) 631-5957
Email: richard.luthmann@protonmail.com

8

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 9, 2026, I mailed the foregoing Motion to Strike with Declaration and Exhibits to:

Clerk of Court
United States Courthouse
401 SE First Ave.
Gainesville, FL 32601

Upon receipt, the Clerk of Court, using the CM/ECF system and other means, will send notification of such filing to all counsel of record and non-represented parties.

Richard A. Luthmann, Jr.

## Local Rule 7.1(B) Certification

Defendant, acting pro se, attempted in good faith to resolve the issues raised herein by notifying Plaintiffs' counsel on February 16, 2026, and again on February 21, 2026. Plaintiffs declined to remedy the issues, necessitating this submission.

Richard A. Luthmann, Jr.

## Certificate of Word Count – Local Rule 7.1(F)

I certify that this Opposition, including all headings, footnotes, and quotations, contains **2,192 words,** excluding the case style, signature blocks, and certificates, in compliance with N.D. Fla. Local Rule 7.1(F). (Word count computed by the word-processing software.)

Richard A. Luthmann, Jr.

# Local Rule 7.01(f) Notice – Intent to File Supplemental Special Motion (Limited Jurisdictional Appearance) - Hales v. Preston et al. - "FED 2" - (Case No. 1:25-cv-00058)

**EXHIBIT A**

From   Richard A Luthmann <richard.luthmann@protonmail.com>

To    Randall Shochet<rshochet@shochetlaw.com>, Shochet Law Group<attorneys@counsel.insure>, Emma Degamo<edegamo@shochetlaw.com>, doreen@shochetlaw.com, flnd_bolitho@flnd.uscourts.gov, flnd_hinkle@flnd.uscourts.gov, service-cgage@bankerlopez.com, Cameron Atkinson<catkinson@atkinsonlawfirm.com>

CC    Shizzywhiznut<shizzywhiznut@gmail.com>, Jason Hipsher<justjayhip@gmail.com>, Bruce Matzkin<brucematzkin1@gmail.com>, Michael Volpe<mvolpe998@gmail.com>, Jeremy Hales<jeremybhales@gmail.com>, Megan Fox<MeganFox.Writer@protonmail.com>, ANOTHER_UMBRELLA<granularheaven@gmail.com>, Ray Bonecrusher<rbonecrusher@gmail.com>, Two Lee's In A Pod<twoleespod@gmail.com>, Supa Dave<miltownsbest1@gmail.com>, John Cook<jmcook987@gmail.com>, Marla Hughes<MarlaHughes@live.com>, Shara Michelle<Freedompublicpress2019@gmail.com>, robbie@keszeybrothers.com, Joey@YourDaddyJoey.news<joey@yourdaddyjoey.news>, Joseph A. Camp<joey@joeycamp2020.com>, Tom Lemons<tom@rnews.news>

Date   Monday, February 16th, 2026 at 1:31 PM

Dear Attorney Shochet and Counsel,

Pursuant to N.D. Fla. Local Rule 7.01(f), please take notice that I, pro se Defendant Richard A. Luthmann, Jr., intend to file a supplemental special appearance and motion in the above-referenced case. This motion will raise the following additional matters:

## Motion for Judicial Notice of February 15, 2026 YouTube Livestream (FRE 201)

I intend to ask the Court to take judicial notice, under Federal Rule of Evidence 201, of a public YouTube livestream video dated February 15, 2026, featuring Plaintiff **Jeremy Hales** and Elephant Shoe LLC. The video is available at the following link:

**https://www.youtube.com/live/m7YOqM4JVT8?si=Zfq07scg9fsu1FXT**

The video was sent to Plaintiffs' hundreds of thousands of followers and additionally is preserved here in case Plaintiffs attempt spoliation of the evidentiary record:

https://drive.google.com/file/d/10WDHEnh18Ul8ug8muHMT0thFsNu3vU0r/view?usp=sharing

A transcript is also attached for your reference.

In that livestream, Mr. Hales made several statements directly relevant to this case and to my pending and anticipated motions. Notably, he stated, **"Fed 2 is just the beginning... they will have me in their lives**

**forever."** Such comments appear to threaten continued and repetitive litigation for the purpose of harassing other litigants and me, particularly in light of Judge Bolitho's recent Report and Recommendation to dismiss the multitude of defendants and vast swathes of the Fed 2 case WITH PREJUDICE:

https://drive.google.com/file/d/1BQYQF-LTkBpeD2TM4kB9oIQDNnU014QO/view?usp=sharing

This video constitutes publicly available online content whose authenticity and contents can readily be verified from a source "whose accuracy cannot reasonably be questioned" within the meaning of Federal Rule of Evidence 201(b)(2). Courts routinely take judicial notice of information posted on publicly accessible websites where the fact of publication, and the content of the publication, are not subject to reasonable dispute. See *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278–79 (11th Cir. 1999) (approving judicial notice of publicly available SEC filings accessible online); *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994) (judicial notice appropriate where fact is capable of accurate and ready determination). District courts within this Circuit have likewise taken judicial notice of publicly available internet postings and website content for the limited purpose of recognizing what was said and when it was said. See *Klayman v. Judicial Watch, Inc.*, 255 F. Supp. 3d 161, 166–67 (D.D.C. 2017) (collecting cases, including Eleventh Circuit authority, recognizing judicial notice of online publications); see also *Paez v. Sec'y, Fla. Dep't of Corr.*, 947 F.3d 649, 651–52 (11th Cir. 2020) (taking judicial notice of online state court dockets and publicly available records).

Under Rule 201(c)(2), the Court "must" take judicial notice if supplied with the necessary information and if the fact is not subject to reasonable dispute. Fed. R. Evid. 201(c)(2). Here, the February 15, 2026, livestream is a fixed, recorded broadcast available at a stable YouTube URL, and its contents—including Mr. Hales's statement that "Fed 2 is just the beginning" and that Defendants "will have me in their lives forever"—are objectively verifiable from the recording itself. I will ask the Court to take judicial notice not for the truth of any disputed factual claims within the video, but for the indisputable fact that these statements were made publicly by Plaintiff. Such evidence is directly relevant to improper purpose and bad faith, particularly when sanctions and vexatious litigant considerations are at issue. See *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991) (recognizing courts' inherent authority to sanction conduct undertaken in bad faith); *Procup v. Strickland*, 792 F.2d 1069, 1073–74 (11th Cir. 1986) (en banc) (affirming courts' authority to curb abusive litigation practices). The recorded admission that federal lawsuits are being used as an ongoing personal campaign—rather than as a good-faith mechanism for redressing legitimate legal injury—bears directly on the issues of harassment, improper motive, and the necessity of protective judicial intervention.

## Motion for Sanctions and to Declare Jeremy Hales a Vexatious Litigant (Court's Inherent Authority)

Additionally, I plan to request that the Court impose sanctions on Plaintiff Jeremy Hales (and/or his company, Elephant Shoe LLC) pursuant to the Court's inherent power to curb abuses of the judicial process. The pattern of this case — including seeking a default without proper service, and Mr. Hales's own admission in the YouTube broadcast that he intends to keep filing lawsuits ("they will have me in their lives forever") — evidences bad faith and an improper motive. The Eleventh Circuit recognizes that federal courts have both "the inherent power and the constitutional obligation to protect their jurisdiction from conduct which impairs their ability to carry out Article III functions." *Martin-Trigona v. Shaw*, 986 F.2d 1384, 1386–87 (11th Cir. 1993) (quoting *Procup v.*

*Strickland*, 792 F.2d 1069, 1073 (11th Cir. 1986) (en banc)). In other words, the Court has broad discretion to craft appropriate sanctions and injunctions to stop litigants from abusing the system. Continuing to litigate a case despite known jurisdictional defects or after repeated warnings is a form of vexatious conduct that can warrant sanctions. For example, the Eleventh Circuit upheld sanctions in a case where a plaintiff's claims "had been repeatedly dismissed for failure to exhaust, yet he continued to file those claims" anyway. Here, Mr. Hales's on-record proclamation that he will continue suing indefinitely — even after jurisdiction has been contested and despite the existence of an ADR agreement — strongly suggests a vexatious intent. I will therefore ask the Court to sanction Mr. Hales, which may include monetary penalties or other appropriate relief. Furthermore, I will request that the Court designate Jeremy Hales as a vexatious litigant and issue a narrowly tailored injunction to prevent him from filing meritless or harassing lawsuits in the future without prior court permission. The Eleventh Circuit has approved such measures in egregious cases to protect both the courts and other litigants from relentless, baseless litigation (see, e.g., *Cofield v. Ala. Pub. Serv. Comm'n*, 936 F.2d 512, 517–18 (11th Cir. 1991), upholding a pre-filing injunction). I believe an order of this nature is warranted if Mr. Hales persists in using litigation as a weapon of harassment.

**PLEASE TAKE NOTICE**: Copying the Court and Clerk on the February 9, 2026, and now the instant Local Rule 7.1(B) communication was and is not an improper ex parte attempt to influence the Court, but a narrowly tailored record-preservation measure necessitated by demonstrated procedural asymmetry and the very "Jeremy Hales Media Ecosystem" concerns previously raised by Defendant—which are now manifesting in real time. As a pro se litigant barred from CM/ECF filing under N.D. Fla. CM/ECF Administrative Procedures § I(A), § II(B), Defendant must file by paper, while Plaintiffs' counsel can instantaneously docket filings containing salacious allegations that immediately circulate across YouTube and affiliated media channels before any rebuttal can be lodged. Defendant previously warned that litigation filings were being used as content-generation devices within a coordinated online ecosystem, and recent filings—followed by near-immediate amplification and commentary —confirm that those warnings were not speculative but prescient. Due process requires not merely eventual access to a response, but a meaningful opportunity to be heard at a meaningful time. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976); *Fuentes v. Shevin*, 407 U.S. 67, 80–81 (1972). Where structural filing disparities allow one side to create reputational harm and narrative dominance before the other can even mail a response, transparency becomes a constitutional safeguard rather than a procedural indulgence. Federal courts retain inherent authority to supervise their dockets and prevent abuse of process. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43–46 (1991); *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764–65 (1980). The Eleventh Circuit likewise recognizes that district courts must ensure that procedural rules are not weaponized to create unfair advantage, especially where pro se litigants face structural disadvantages. *Donaldson v. Clark*, 819 F.2d 1551, 1557–58 (11th Cir. 1987) (en banc); *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989). In that context, copying the Court on a Rule-mandated conferral notice—limited to procedural compliance and anticipated motion practice—serves to preserve the integrity of the record, deter ambush, and ensure judicial awareness of communications directly tied to pending procedural disputes. Given the established pattern of litigation filings being repurposed for immediate media amplification, Defendant's actions continue to be good-faith protective measures grounded in due process principles and the Court's supervisory authority, not an improper *ex parte* communication.

Please let me know if you would like to discuss any of these issues or if you have authority that might persuade me not to file some of these motions. If there is any possibility of resolving or narrowing these disputes without court intervention, I am willing to confer in good faith. Otherwise, I intend to file the above-described motion after fulfilling my notice obligations under the Local Rule.

I would tell you to get control of your client, but that continues to be an exercise in futility. You continue to act like an agent/co-conspirator as that term is understood under Rule 801(d)(2)(E) of the Federal Rules of Evidence, a concerted action party to the Plaintiffs' crimes and/or frauds.

Thank you for your attention to this matter!

Regards,


Richard A. Luthmann, Jr. (Pro Se Defendant, Special Appearance)

Writer, Journalist, and Commentator

Tips or Story Ideas:

(239) 631-5957

richard.luthmann@protonmail.com

**LINKTREE**

**Muck Rack Profile**

**Substack: This is For Real.**

**Editor-In-Chief: FLGulf.news**

**Editor-In-Chief: NYNewsPress.com**

**Editor-In-Chief: TheFamilyCourtCircus.com**

**Contributor: Frank Report**

**Contributor: Sun Bay Paper**

**Follow Me on Facebook X Instagram LinkedIn TRUTH Rumble Newsbreak**


Sent with Proton Mail secure email.


**138.44 KB**    1 file attached

Transcript of WTH livestream Feb. 15 2026.pdf  138.44 KB

## Re: Preservation of Record; Ecosystem Conduct; Good Faith Conferral - Re: Local Rule 7.01(f) Notice – Intent to File Supplemental Special Motion (Limited Jurisdictional Appearance) - Hales v. Preston et al. - "FED 2" - (Case No. 1:25-cv-00058)

**EXHIBIT B**

From    Richard A Luthmann <richard.luthmann@protonmail.com>

To    Shizzywhiznut <shizzywhiznut@gmail.com>

CC    Randall Shochet <rshochet@shochetlaw.com>, Shochet Law Group <attorneys@counsel.insure>,
Emma Degamo <edegamo@shochetlaw.com>, doreen@shochetlaw.com, flnd_bolitho@flnd.uscourts.gov,
flnd_hinkle@flnd.uscourts.gov, service-cgage@bankerlopez.com,
Cameron Atkinson <catkinson@atkinsonlawfirm.com>, Bruce Matzkin <brucematzkin1@gmail.com>,
Michael Volpe <mvolpe998@gmail.com>, Jeremy Hales <jeremybhales@gmail.com>,
Megan Fox <MeganFox.Writer@protonmail.com>, ANOTHER_UMBRELLA <granularheaven@gmail.com>,
Ray Bonecrusher <rbonecrusher@gmail.com>, Two Lee's In A Pod <twoleespod@gmail.com>,
Supa Dave <miltownsbest1@gmail.com>, John Cook <jmcook987@gmail.com>,
Shara Michelle <Freedompublicpress2019@gmail.com>, robbie@keszeybrothers.com,
Joey@YourDaddyJoey.news <joey@yourdaddyjoey.news>, Joseph A. Camp <joey@joeycamp2020.com>,
Tom Lemons <tom@rnews.news>

Date    Saturday, February 21st, 2026 at 9:30 PM

Mr. "ShizzyWhizNut" et al.:

This email thread will be included in my forthcoming supplemental application to the Court, to which I have received no response to my meet-and-confer request pursuant to N.D. Fla. Local Rule 7.1(f).

I have no personal interest in further communicating with you. Your response—like others in this thread from the Plaintiffs' so-termed "Jeremy Hales Media Ecosystem"—contains vulgar personal attacks unrelated to the merits of the pending case. More importantly, it further illustrates a recurring pattern: litigation-related communications are immediately met with coordinated, public-facing commentary and amplification by individuals operating within the same online network that has repeatedly discussed this case as "content." These persons include, but are not limited to, "ShizzyWhizNuts," "Just Jay Hip," "Ketchup," "Mr. Leather Face," and "ThatUmbrellaGuy" aka "TUG."

https://www.youtube.com/watch?v=69HkQiNIqr0

https://www.youtube.com/live/e5Q1zWSeH2I?si=YzO0w4l3m9iKPZnS

https://www.youtube.com/watch?v=Bub2Tl4snnI

Together, these channels have a subscriber reach of over 400,000 users. The media plan appears to be a coordinated pattern, an intentionally devised common scheme or plan.

That pattern is relevant to the Court's consideration of improper litigation purpose. Federal courts possess inherent authority to address proceedings pursued in bad faith or for harassment rather than adjudication. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43–46 (1991). The Eleventh Circuit has affirmed that courts must protect their jurisdiction from conduct that impairs Article III functions. *Procup v. Strickland*, 792 F.2d 1069, 1073–74 (11th Cir. 1986) (en banc).

To the extent statements by Mr. Hales and Elephant Show LLC are publicly echoed, amplified, or operationalized by affiliated individuals in a coordinated manner, such statements may constitute admissions of a party-opponent when made by co-participants acting in furtherance of a common plan. See Fed. R. Evid. 801(d)(2)(E). Whether such coordination exists is ultimately a matter for evidentiary development, not email rhetoric. Thus, your inclusion may be necessary for purposes of record preservation, notice, or procedural and/or administrative precondition compliance.

I will not engage in further personal commentary. Future communications should relate solely to matters properly before the Court.

Nothing herein waives any rights, defenses, or claims.
Thank you for your attention to this matter!


Regards,

Richard Luthmann
Writer, Journalist, and Commentator
Tips or Story Ideas:
(239) 631-5957
richard.luthmann@protonmail.com
**LINKTREE**
**Muck Rack Profile**
**Substack: This is For Real.**
**Editor-In-Chief: FLGulf.news**
**Editor-In-Chief: NYNewsPress.com**
**Editor-In-Chief: TheFamilyCourtCircus.com**
**Contributor: Frank Report**
**Contributor: Sun Bay Paper**
**Follow Me on Facebook X Instagram LinkedIn TRUTH Rumble Newsbreak**


Sent with Proton Mail secure email.


On Thursday, February 19th, 2026 at 11:22 AM, Richard Luthmann <richard.luthmann@protonmail.com> wrote:

Mr. "Shizzywhiznut":

Your February 19, 2026, email mischaracterizes prior correspondence.

The reference to your wife's practice was not a threat, nor was it an attempt to interfere with her business. It was a rhetorical response to repeated personal insults directed at me. There has been no communication with her, no contact with her firm, and no action taken toward her business.

Your attempt to reframe a rhetorical comment as criminal intimidation under O.C.G.A. § 16-10-97 is legally unsupportable. That statute concerns the use of violence, intimidation, or force directed at a court officer in connection with the discharge of official duties. A stray rhetorical remark in an email exchange does not constitute intimidation within the meaning of that provision.

Georgia courts construe criminal intimidation statutes narrowly and require proof of an actual threat of unlawful action. See *State v. Burke*, 287 Ga. 377, 378–79, 695 S.E.2d 649, 651 (2010) (criminal statutes must be strictly construed); see also *Major v. State*, 301 Ga. 147, 149–50, 800 S.E.2d 348, 351 (2017) (true threat requires serious expression of intent to commit unlawful violence).

Nothing in my correspondence expressed any intent to commit unlawful conduct.

By contrast, your email expressly suggests invoking criminal processes based on a private email exchange and leveraging your spouse's professional status as an "officer of the court." That is precisely the kind of litigation-adjacent intimidation tactic federal courts disfavor when evaluating improper purpose. Federal courts possess inherent authority to address conduct undertaken in bad faith. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43–46 (1991). The Eleventh Circuit recognizes that courts must protect proceedings from abusive tactics and harassment. *Procup v. Strickland*, 792 F.2d 1069, 1073–74 (11th Cir. 1986) (en banc).

If you believe any crime has occurred, you are free to contact the appropriate authorities. I will respond through lawful channels.

Otherwise, I suggest we return to issues relevant to the pending federal matter and cease personal commentary involving spouses or unrelated third parties.

Nothing herein waives any rights, defenses, or claims.

Thank you for your attention to this matter!

Regards,

Richard Luthmann
Writer, Journalist, and Commentator
Tips or Story Ideas:
(239) 631-5957
richard.luthmann@protonmail.com
**LINKTREE**

**Muck Rack Profile**
**Substack: This is For Real.**
**Editor-In-Chief: FLGulf.news**
**Editor-In-Chief: NYNewsPress.com**
**Editor-In-Chief: TheFamilyCourtCircus.com**
**Contributor: Frank Report**
**Contributor: Sun Bay Paper**
**Follow Me on Facebook X Instagram LinkedIn TRUTH Rumble Newsbreak**

Sent with Proton Mail secure email.

On Thursday, February 19th, 2026 at 9:43 AM, Shizzywhiznut shizzywhiznut@gmail.com wrote:

Paint Chips (a/k/a the disbarred defendant playing stupid in federal court):

Your latest manifesto was cute, all those Eleventh Circuit block
quotes, the dramatic joinder threat list, the performative "good-faith
meet-and-confer" whimper. You really rolled out the greatest-hits reel
like it was going to scare someone. But let's talk about the part that
actually matters. The part where you decided to slither in a personal
threat against my wife's practice. "Give your wife my regards… How's
her practice doing?" That was pretty dumb. That wasn't "litigation
strategy." That was a naked, veiled intimidation attempt directed at
my wife, an attorney who is, by explicit definition under Georgia law,
an officer of the court. So while her business is thriving, I do have
you and all of your little buddies threats to do harm to her business
on record.

You might want to Google O.C.G.A. § 16-10-97 before you hit send on
whatever escalation you're drafting next.

All the Best
Shizzywhiznut

On Wed, Feb 18, 2026 at 8:15 PM Shizzywhiznut shizzywhiznut@gmail.com wrote:

Paint Chips (or whatever alias you're hiding behind this week), Yeah,
I noticed that you dropped the Jr. because you have never used that,
might be because you couldn't handle being called little Dick?

Funny how you reached out to me first. You are sliding into my
mentions like your old bunk mate with a container of vaseline, with

those weak, personal jabs about my wife, her practice, and some garden dig that landed like a wet fart. I figured you were fishing for a response, maybe even craving the attention after years of being irrelevant. So I gave you one. Straightforward. No threats, just facts asking about your sad history.

Now you're clutching pearls, screaming "reputational pressure tactics" and waving around Eleventh Circuit cases like they're a magic shield? You initiated the personal shots, then cried foul when the spotlight swung back on you. Classic abuser playbook: poke, provoke, then play victim when it bites your ass.

The meet-and-confer crybaby routine? Save it for Shochet and the actual docket. I thought we were pen-palling it but again, like your old bunkmate I thought you were into it, I guess we're not. Your threats to join half of Twitter as parties are just more of you and your Substack teaser bait. No one's intimidated by a disbarred dude's fanny pack of garbage filings.

If you don't want to be pen pals anymore then handle your real litigation beef offline like a big boy. Emailing me about it, well, it's just sad.

All the Best

Shizzy-Whatever... always a nut.
PS If it make you more comfortable, you can just call me Papa Nut or Shizzy Daddy

On Wed, Feb 18, 2026 at 7:38 PM Richard Luthmann richard.luthmann@protonmail.com wrote:

Mr. "ShizzyWizzNuts" and Counsel:

Your February 18, 2026, correspondence further confirms what has already been placed before the Court: members of the Jeremy Hales / Elephant Shoe LLC media ecosystem are generating salacious content for amplification purposes, not pursuing legitimate litigation objectives.

Public insinuations regarding "issues around children," vague references to restraining orders, and threats of publication unless sworn affidavits are produced are not litigation conduct. They are reputational pressure tactics designed for audience engagement.

Federal courts possess inherent authority to curb precisely this type of abuse. Chambers v. NASCO, Inc., 501 U.S. 32, 43–46 (1991). The Eleventh Circuit has repeatedly affirmed that district courts

must protect their jurisdiction from conduct that impairs Article III functions. Procup v. Strickland, 792 F.2d 1069, 1073–74 (11th Cir. 1986) (en banc); Martin-Trigona v. Shaw, 986 F.2d 1384, 1386–87 (11th Cir. 1993).

Where litigation is used as a harassment vehicle rather than to vindicate cognizable legal rights, dismissal with prejudice and injunctive relief are appropriate remedies. Cofield v. Ala. Pub. Serv. Comm'n, 936 F.2d 512, 517–18 (11th Cir. 1991).

Your email demonstrates ongoing coordination between litigation filings and ecosystem amplification. Courts in this Circuit recognize that bad-faith litigation conduct warrants sanctions under inherent authority. Donaldson v. Clark, 819 F.2d 1551, 1557–58 (11th Cir. 1987) (en banc).

If this Court does not intervene by dismissing this matter with prejudice and halting this circus-like conduct — the generation of media fodder devoid of legitimate litigation purpose — Defendant will defend himself to the fullest extent the law allows. That will include:

Filing a full Answer and Counterclaim;

Asserting claims against additional participants in the coordinated ecosystem;

Joining, as appropriate, at least ten (10) additional parties, including but not limited to Martha Rizk, Megan Fox, "That Umbrella Guy," "ShizzyWizzNuts," Jay Hipsher, Shara Michelle Wolff, Mark "Mr. Coop" Cooper, John Grems, and others revealed through discovery.

As one very well-known federal judge once remarked to me: what is good for the goose is good for the gander. Federal practice applies evenly.

Finally, Mr. Shochet, will you respond to Defendant's good-faith meet-and-confer request pursuant to Local Rule 7.01? Silence will be noted.

Nothing in this correspondence should be construed as a waiver of any jurisdictional or procedural defenses.

Thank you for your attention to this matter!
Regards,

Richard Luthmann
Writer, Journalist, and Commentator
Tips or Story Ideas:
(239) 631-5957
richard.luthmann@protonmail.com
LINKTREE
Muck Rack Profile
Substack: This is For Real.

Editor-In-Chief: FLGulf.news
Editor-In-Chief: NYNewsPress.com
Editor-In-Chief: TheFamilyCourtCircus.com
Contributor: Frank Report
Contributor: Sun Bay Paper
Follow Me on Facebook X Instagram LinkedIn TRUTH Rumble Newsbreak

Sent with Proton Mail secure email.

On Wednesday, February 18th, 2026 at 7:10 PM, Shizzywhiznut shizzywhiznut@gmail.com wrote:

Thanks for the concern Paint Chips,

It's truly touching that a guy whose biggest recent achievement is
trading bar dues for bunk numbers still has time to play amateur
marriage counselor.

But let's be real, you're not clever. You're just flailing. Throwing
out lazy wife shots and vague "practice" digs because you've got
nothing else in the tank. It's the online equivalent of a toddler
smearing poop on the wall and calling it art.

BTW my wife's doing great, the garden's thriving (unlike whatever
barren intellectual wasteland you're cultivating), and her practice is
busier than all your fake facebook accounts and Substack alts
combined. But keep projecting your lonely cellblock nostalgia onto
other people's lives if it helps you sleep at night. Maybe one day
you'll upgrade from government-issued boyfriends that are working it
and working it and working it, harder and harder and harder and harder
and harder.

Speaking of which, from what circulates in the right circles, you've
also got a bit of a reputation that goes beyond disbarment and bunk
time. Something about issues being around children? Or is it your
orbit that includes folks slapped with restraining orders barring
contact with minors? My memory's fuzzy on the details. Are the
restraining orders against you personally? Your buddies on the
no-minor-contact list? People raising flags when you're alone with
kids? I'm positive I'll nail it down soon enough.

Since this is apparently a matter of significant public interest (your
words, not mine), I look forward to your prompt, substantive,
on-the-record clarification. Feel free to respond in detail, sworn

affidavits welcome. This correspondence, along with whatever evasive
non-answer you cough up (or don't), will be preserved and made public
accordingly. If we go to press before hearing back, we'll just note
the silence in the follow-up piece. Transparency's a bitch when your
history's this ugly.

All The Best,

Shizzywhiznut

On Wed, Feb 18, 2026 at 5:24 PM Richard Luthmann
richard.luthmann@protonmail.com wrote:

Thanks Mr. "Shizzy"

Give your wife my regards.

Better yet, buy her one of these 🔌. I heard there aren't any in your garden.

How's her practice doing?

Thank you for your attention to this matter!

Regards,

Richard Luthmann
Writer, Journalist, and Commentator
Tips or Story Ideas:
(239) 631-5957
richard.luthmann@protonmail.com
LINKTREE
Muck Rack Profile
Substack: This is For Real.
Editor-In-Chief: FLGulf.news
Editor-In-Chief: NYNewsPress.com
Editor-In-Chief: TheFamilyCourtCircus.com
Contributor: Frank Report
Contributor: Sun Bay Paper
Follow Me on Facebook X Instagram LinkedIn TRUTH Rumble Newsbreak

Sent from Proton Mail for Android.

-------- Original Message --------
On Wednesday, 02/18/26 at 17:05 Shizzywhiznut shizzywhiznut@gmail.com wrote:

Wow, You outdid yourself Paint Chips,

For someone who lost his bar license and replaced it with a federal
inmate number, you remain astonishingly confident in your legal
analysis. Reading your legal "reasoning" is like watching someone try
to perform open-heart surgery with a spork while high on paint fumes.

Your understanding of the law isn't bold. It's delusional. And
frankly, it reads less like legal reasoning and more like nostalgia ,
you know the kind that comes from someone who's already experienced
prison once and seems strangely eager for a reunion tour. Some people
miss home-cooked meals. You apparently miss government-issued ones and
those unforgettable institutional "date nights."

Maybe put the revenge porn side hustle on pause and try something that
doesn't scream "I peaked in county jail." Like picking up trash on the
highway. Or therapy. Or literally anything that doesn't end with you
crying into government-issued pillows at 3 a.m while Bubba pushes you
harder and harder and harder and even harder into realising how much
you messed up.

I used to think I was riding the short bus, licking windows, and
mainlining Crayola sunset orange. Then I read your posts and realized
I'm basically Einstein compared to the drooling train wreck you've
become.

Maybe we should become pen pals, I will write smart, intelligent
things, and you will send memes showing your level of intelligence.
Sounds fun!

On Mon, Feb 16, 2026 at 1:31 PM Richard Luthmann
richard.luthmann@protonmail.com wrote:

Dear Attorney Shochet and Counsel,

Pursuant to N.D. Fla. Local Rule 7.01(f), please take notice that I, pro se Defendant Richard A.
Luthmann, Jr., intend to file a supplemental special appearance and motion in the above-referenced
case. This motion will raise the following additional matters:

Motion for Judicial Notice of February 15, 2026 YouTube Livestream (FRE 201)

I intend to ask the Court to take judicial notice, under Federal Rule of Evidence 201, of a public
YouTube livestream video dated February 15, 2026, featuring Plaintiff Jeremy Hales and Elephant
Shoe LLC. The video is available at the following link:

https://www.youtube.com/live/m7YOqM4JVT8?si=Zfq07scg9fsu1FXT

The video was sent to Plaintiffs' hundreds of thousands of followers and additionally is preserved here in case Plaintiffs attempt spoliation of the evidentiary record:

https://drive.google.com/file/d/10WDHEnh18Ul8ug8muHMT0thFsNu3vU0r/view?usp=sharing
A transcript is also attached for your reference.

In that livestream, Mr. Hales made several statements directly relevant to this case and to my pending and anticipated motions. Notably, he stated, "Fed 2 is just the beginning... they will have me in their lives forever." Such comments appear to threaten continued and repetitive litigation for the purpose of harassing other litigants and me, particularly in light of Judge Bolitho's recent Report and Recommendation to dismiss the multitude of defendants and vast swathes of the Fed 2 case WITH PREJUDICE:

https://drive.google.com/file/d/1BQYQF-LTkBpeD2TM4kB9oIQDNnU014QO/view?usp=sharing

This video constitutes publicly available online content whose authenticity and contents can readily be verified from a source "whose accuracy cannot reasonably be questioned" within the meaning of Federal Rule of Evidence 201(b)(2). Courts routinely take judicial notice of information posted on publicly accessible websites where the fact of publication, and the content of the publication, are not subject to reasonable dispute. See Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1278–79 (11th Cir. 1999) (approving judicial notice of publicly available SEC filings accessible online); United States v. Jones, 29 F.3d 1549, 1553 (11th Cir. 1994) (judicial notice appropriate where fact is capable of accurate and ready determination). District courts within this Circuit have likewise taken judicial notice of publicly available internet postings and website content for the limited purpose of recognizing what was said and when it was said. See Klayman v. Judicial Watch, Inc., 255 F. Supp. 3d 161, 166–67 (D.D.C. 2017) (collecting cases, including Eleventh Circuit authority, recognizing judicial notice of online publications); see also Paez v. Sec'y, Fla. Dep't of Corr., 947 F.3d 649, 651–52 (11th Cir. 2020) (taking judicial notice of online state court dockets and publicly available records).

Under Rule 201(c)(2), the Court "must" take judicial notice if supplied with the necessary information and if the fact is not subject to reasonable dispute. Fed. R. Evid. 201(c)(2). Here, the February 15, 2026, livestream is a fixed, recorded broadcast available at a stable YouTube URL, and its contents—including Mr. Hales's statement that "Fed 2 is just the beginning" and that Defendants "will have me in their lives forever"—are objectively verifiable from the recording itself. I will ask the Court to take judicial notice not for the truth of any disputed factual claims within the video, but for the indisputable fact that these statements were made publicly by Plaintiff. Such evidence is directly relevant to improper purpose and bad faith, particularly when sanctions and vexatious litigant considerations are at issue. See Chambers v. NASCO, Inc., 501 U.S. 32, 45–46 (1991) (recognizing courts' inherent authority to sanction conduct undertaken in bad faith); Procup v. Strickland, 792 F.2d 1069, 1073–74 (11th Cir. 1986) (en banc) (affirming courts' authority to curb

abusive litigation practices). The recorded admission that federal lawsuits are being used as an ongoing personal campaign—rather than as a good-faith mechanism for redressing legitimate legal injury—bears directly on the issues of harassment, improper motive, and the necessity of protective judicial intervention.

Motion for Sanctions and to Declare Jeremy Hales a Vexatious Litigant (Court's Inherent Authority)

Additionally, I plan to request that the Court impose sanctions on Plaintiff Jeremy Hales (and/or his company, Elephant Shoe LLC) pursuant to the Court's inherent power to curb abuses of the judicial process. The pattern of this case — including seeking a default without proper service, and Mr. Hales's own admission in the YouTube broadcast that he intends to keep filing lawsuits ("they will have me in their lives forever") — evidences bad faith and an improper motive. The Eleventh Circuit recognizes that federal courts have both "the inherent power and the constitutional obligation to protect their jurisdiction from conduct which impairs their ability to carry out Article III functions." Martin-Trigona v. Shaw, 986 F.2d 1384, 1386–87 (11th Cir. 1993) (quoting Procup v. Strickland, 792 F.2d 1069, 1073 (11th Cir. 1986) (en banc)). In other words, the Court has broad discretion to craft appropriate sanctions and injunctions to stop litigants from abusing the system. Continuing to litigate a case despite known jurisdictional defects or after repeated warnings is a form of vexatious conduct that can warrant sanctions. For example, the Eleventh Circuit upheld sanctions in a case where a plaintiff's claims "had been repeatedly dismissed for failure to exhaust, yet he continued to file those claims" anyway. Here, Mr. Hales's on-record proclamation that he will continue suing indefinitely — even after jurisdiction has been contested and despite the existence of an ADR agreement — strongly suggests a vexatious intent. I will therefore ask the Court to sanction Mr. Hales, which may include monetary penalties or other appropriate relief. Furthermore, I will request that the Court designate Jeremy Hales as a vexatious litigant and issue a narrowly tailored injunction to prevent him from filing meritless or harassing lawsuits in the future without prior court permission. The Eleventh Circuit has approved such measures in egregious cases to protect both the courts and other litigants from relentless, baseless litigation (see, e.g., Cofield v. Ala. Pub. Serv. Comm'n, 936 F.2d 512, 517–18 (11th Cir. 1991), upholding a pre-filing injunction). I believe an order of this nature is warranted if Mr. Hales persists in using litigation as a weapon of harassment.

PLEASE TAKE NOTICE: Copying the Court and Clerk on the February 9, 2026, and now the instant Local Rule 7.1(B) communication was and is not an improper ex parte attempt to influence the Court, but a narrowly tailored record-preservation measure necessitated by demonstrated procedural asymmetry and the very "Jeremy Hales Media Ecosystem" concerns previously raised by Defendant—which are now manifesting in real time. As a pro se litigant barred from CM/ECF filing under N.D. Fla. CM/ECF Administrative Procedures § I(A), § II(B), Defendant must file by paper, while Plaintiffs' counsel can instantaneously docket filings containing salacious allegations that immediately circulate across YouTube and affiliated media channels before any rebuttal can be lodged. Defendant previously warned that litigation filings were being used as content-generation devices within a coordinated online ecosystem, and recent filings—followed by near-immediate amplification and commentary—confirm that those warnings were not speculative but prescient.

Due process requires not merely eventual access to a response, but a meaningful opportunity to be heard at a meaningful time. Mathews v. Eldridge, 424 U.S. 319, 333 (1976); Fuentes v. Shevin, 407 U.S. 67, 80–81 (1972). Where structural filing disparities allow one side to create reputational harm and narrative dominance before the other can even mail a response, transparency becomes a constitutional safeguard rather than a procedural indulgence. Federal courts retain inherent authority to supervise their dockets and prevent abuse of process. Chambers v. NASCO, Inc., 501 U.S. 32, 43–46 (1991); Roadway Express, Inc. v. Piper, 447 U.S. 752, 764–65 (1980). The Eleventh Circuit likewise recognizes that district courts must ensure that procedural rules are not weaponized to create unfair advantage, especially where pro se litigants face structural disadvantages. Donaldson v. Clark, 819 F.2d 1551, 1557–58 (11th Cir. 1987) (en banc); Moon v. Newsome, 863 F.2d 835, 837 (11th Cir. 1989). In that context, copying the Court on a Rule-mandated conferral notice—limited to procedural compliance and anticipated motion practice—serves to preserve the integrity of the record, deter ambush, and ensure judicial awareness of communications directly tied to pending procedural disputes. Given the established pattern of litigation filings being repurposed for immediate media amplification, Defendant's actions continue to be good-faith protective measures grounded in due process principles and the Court's supervisory authority, not an improper ex parte communication.

Please let me know if you would like to discuss any of these issues or if you have authority that might persuade me not to file some of these motions. If there is any possibility of resolving or narrowing these disputes without court intervention, I am willing to confer in good faith. Otherwise, I intend to file the above-described motion after fulfilling my notice obligations under the Local Rule.

I would tell you to get control of your client, but that continues to be an exercise in futility. You continue to act like an agent/co-conspirator as that term is understood under Rule 801(d)(2)(E) of the Federal Rules of Evidence, a concerted action party to the Plaintiffs' crimes and/or frauds.

Thank you for your attention to this matter!

Regards,

Richard A. Luthmann, Jr. (Pro Se Defendant, Special Appearance)
Writer, Journalist, and Commentator
Tips or Story Ideas:
(239) 631-5957
richard.luthmann@protonmail.com
LINKTREE
Muck Rack Profile
Substack: This is For Real.
Editor-In-Chief: FLGulf.news
Editor-In-Chief: NYNewsPress.com

Editor-In-Chief: TheFamilyCourtCircus.com

Contributor: Frank Report

Contributor: Sun Bay Paper

Follow Me on Facebook X Instagram LinkedIn TRUTH Rumble Newsbreak

Sent with Proton Mail secure email.

# Photo Document Mailer

**THE UPS STORE**

**Do not fold or bend**

From:

To:

SHIP TO:
CLERK OF COURTS
UNITED STATES COURTHOUSE
401 SE 1ST AVE

GAINESVILLE   FL 32601-5806

RICHARD LUTHMANN
2280 LOS ABEDOS CT
4190
NAPLES FL 34109

1 LBS
SHP WT: 1 LBS
DATE: 09 MAR 2026
1 OF 1

FL 326 0-04

UPS GROUND
TRACKING #:  1Z 6G7 7W4 03 3613 5441

BILLING: P/P

REF #1: UC





P:BROWN:IN    |54A.

GMEZ-1960

1Z0377VA033613 5441



The UPS Store RFID Label

Tracking #

1Z0377VA033613 5441



**THE UPS STORE**
theupsstore.com

**UPS 330**

Made in Mexico



Made from 100% recycled paperboard.
Minimum 95% post-consumer content.
Supply Side USA, Inc. - Cleveland, OH 44135

**Mailer Size:**
11 ½ x 14 ¼
**Mailer will hold:**
11 x 14 Photo Enlargements
8 ½ x 14 Documents