**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION
Case No.: 1:25-cv-00058-RH-MJF**

JEREMY B. HALES,

Plaintiffs,

v.

LYNETTE MICHELLE LACY ALEXIS PRESTON
and RICHARD A. LUTHMANN, JR.

Defendants.
_______________________________________________/

# THIRD AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiff JEREMY B. HALES ("Plaintiff" or "Mr. Hales"), by and through undersigned counsel, brings this complaint against Defendants LYNETTE MICHELLE LACEY ALEXIS PRESTON (hereinafter, "Preston"), RICHARD A. LUTHMANN, JR. (hereinafter, "Luthmann") (collectively, "Defendants"), and state:

## PARTIES

1. Plaintiff Jeremy B. Hales (hereinafter, "Mr. HALES") is a resident of Peninsula, Summit County, Ohio.

2. Defendant Lynette Michelle Lacy Alexis Preston is a resident of Otter Creek, Levy County, Florida.

3. Defendant Richard A. Luthmann, Jr. is a resident of Naples, Collier County, Florida.

## JURISDICTION AND VENUE

4. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332 as there is complete diversity of citizenship between both Plaintiffs and all Defendants in this matter and the amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.

5. This Court has personal jurisdiction over Defendant Preston because she is a resident of Florida.

6. This Court has personal jurisdiction over Defendant Luthmann because he is a resident of Florida.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 as a substantial part of the events giving rise to the claims occurred in the Northern District of Florida, and Defendant Preston resides in Levy County, Florida, which is within this judicial district.

## STATEMENT OF FACTS

### A. Background on Plaintiff's Business

8. Plaintiff Jeremy B. Hales is a social media influencer who uses several online business platforms to generate revenue, including YouTube, Facebook, TikTok, and Instagram.

9. Plaintiff operates a YouTube channel called "What The Hale$" with over seven hundred thirty thousand subscribers.

10. Plaintiff also operates a Facebook business page called "What The Hale$" with over three hundred twenty-seven thousand followers.

11. Plaintiff generates revenue through advertising, sponsorships, monthly subscription fees from fans, and online auctions.

12. Plaintiff has expended and continues to expend substantial time, money, and resources into acquiring subscribers, providing ongoing programs, and maintaining relationships and goodwill with them.

**B. Preston's Initial Relationship with Plaintiff**

13. Defendant Preston was a viewer of Plaintiff's social media platforms beginning prior to 2020 when she resided in Northport, Florida.

14. In December 2020, Preston learned through watching "What The Hale$" that Plaintiff had purchased land for part-time operations of his social media platforms in Otter Creek, Florida.

15. In 2020, Preston resided in North Port, Sarasota County, Florida.

16. On or about July 17, 2021, Preston drove from North Port, Florida to a vacant lot across the street from Plaintiff's property in Levy County, Florida.

17. On that visit, Preston took a photograph with another person by the entrance to Plaintiff's property and falsely posted on social media that she had bought the vacant lot across the road and that Plaintiff was now her "new neighbor," when in fact she had not yet purchased the property.

18. During that same July 2021 visit, Preston told Plaintiff she was a "super fan" and asked Plaintiff if he could help remove a tree from the vacant lot across the road.

19. Plaintiff, believing Preston's representations that she owned the vacant lot, personally used his tractor to move the tree from the vacant lot.

20. On or about October 8, 2021, Preston purchased the vacant lot across the street from Plaintiff's property in Levy County, Florida.

21. Between December 2021 and February 2023, Preston presented herself as a fan of Plaintiff and would on occasion ask Plaintiff for free merchandise, stating that she needed money to pay her bills.

22. On or about February 12, 2023, Plaintiff gave Preston two Leap Pads in response to her requests.

23. On or about February 15, 2023, Preston asked Plaintiff if she could attend for free a paid "meet and greet" live event that Plaintiff was having in Levy County, Florida, with many of Plaintiff's fans and supporters visiting from around the world.

24. Plaintiff agreed to allow Preston to attend the event for free.

25. On or about February 20, 2023, Preston asked Plaintiff if she could bring her own donation box for the fans to the paid "meet and greet" live event.

26. Plaintiff denied this request.

## C. Preston's Defamatory Campaign Against Plaintiff

27. Being denied access to solicit donations from Plaintiff's fanbase, Preston maliciously began doing injury to Plaintiff's reputation.

28. Preston began publishing false statements about Plaintiff on her various social media platforms beginning between May and September 2023.

29. After Plaintiff left Florida to return to Ohio in May 2023, Preston wrote many double-sided road signs and placed them around the roads surrounding Plaintiff's property in Levy County, Florida.

30. These signs falsely stated: "Jeremy Hales Raped my Daughter," "Jeremy Hales Has to Go," "What the Hales? Jeremy Hales OHIO Rapist," "NO OHIO Rapists in Levy County - Stop Jeremy Hales," "Jeremy Hales Needs to Go," "No Child rapists in Levy Co! Stop Jeremy Hales," and "No Rapists in Levy Co!"

31. On or about May 23, 2023, Plaintiff's attorney sent a cease-and-desist letter to Preston demanding that she immediately cease and desist her unlawful defamation of Plaintiff, immediately remove and delete all postings relating to Plaintiff, and provide written assurance within ten days that she would cease and desist from further libel.

32. Despite receiving the cease-and-desist letter, Preston continued her defamatory campaign against Plaintiff.

**D. Preston's Statements Showing Improper Motive**

33. On June 19, 2023, Preston wrote to Shara Wolf, a freelance photojournalist, encouraging Wolf to cover her story.

34. Preston stated to Wolf: "I want to be able to sue him Shara and I want to be able to win."

35. On July 2, 2023, Preston told Wolf: "I need to Sue this son of a bitch."

36. Preston further told Wolf: "I want to sue him and I hope to God he settles out of court and gives me enough to finish my house, pay off my stuff, and get my ex-husband living somewhere else."

### E. The Stalking Case Filed by Preston

37. In September 2023, Preston commenced legal proceedings against Plaintiff by filing a Petition for Injunction for Protection Against Stalking in the Circuit Court of the Eighth Judicial Circuit In And For Levy County, Florida, Case Number 38-2023-DR-000416-DRA.

38. During the stalking case proceedings, Preston invoked her Fifth Amendment right against self-incrimination when questioned about the case.

39. In September 2024, Preston filed a notice of voluntary dismissal of the stalking case immediately before a hearing on Plaintiff's motions to dismiss the case with prejudice.

40. The stalking case was dismissed in favor of Plaintiff.

### F. Luthmann's Defamatory and Harassing Conduct

41. On or about January 28, 2025, Defendant Luthmann sent an email to the Anti-Defamation League regarding Plaintiff.

42. In that email, Luthmann made false statements accusing Plaintiff of anti-Semitism and comparing Plaintiff to advocates of eugenics and mass murder.

43. On or about January 26, 2025, Luthmann sent an email to a YouTube channel called "That Umbrella Guy" that creates online programming about Plaintiff.

44. In that email, Luthmann made additional false and defamatory statements about Plaintiff.

45. In 2025, Luthmann posted a video online depicting Plaintiff as Adolf Hitler by adding a Hitler mustache to Plaintiff's photograph and engaging in oral sex with a journalist.

46. The video was published at the following Internet address: https://luthmann.Substack.com/p/megan-fox-youtuber-jeremy-hales-fake.

47. The images in the video also conveyed Plaintiff's personal identification information through Plaintiff's photograph and by specifically naming Plaintiff in the URL and content.

48. Plaintiff never consented to the publication of these images.

49. There was no legitimate purpose for posting these images.

50. Luthmann intended to cause substantial emotional distress to Plaintiff by posting these images.

51. As a result of Luthmann's publication of these images, Plaintiff suffered harassment, fear, extreme embarrassment, lost professional opportunities and prestige, strain on his personal relationships, and prolonged expense and inconvenience.

**COUNT 1 – MALICIOUS PROSECUTION**
**(against Defendant Preston)**

52. Mr. HALES realleges and reincorporates the allegations contained in paragraphs 1 through 40 as if more fully set forth herein.

53. Defendant Preston commenced an original civil judicial proceeding against Plaintiff.

54. In September 2023, Preston filed a Petition for Injunction for Protection Against Stalking against Plaintiff in the Circuit Court of the Eighth Judicial Circuit In And For Levy County, Florida, Case Number 38-2023-DR-000416-DRA.

55. The stalking proceeding was legally caused by Defendant Preston.

56. Preston filed the petition and prosecuted the case against Plaintiff.

57. The stalking proceeding terminated in a bona fide manner in favor of Plaintiff.

58. In September 2024, Preston voluntarily dismissed the stalking case immediately before a hearing on Plaintiff's motions to dismiss the case with prejudice.

59. The case was dismissed in favor of Plaintiff in a manner not inconsistent with Plaintiff's innocence.

60. There was no probable cause for the stalking proceeding.

61. Preston had previously posted false defamatory signs about Plaintiff accusing him of rape and child molestation.

62. Preston had made false statements about Plaintiff on social media.

63. After Plaintiff's attorney sent Preston a cease-and-desist letter on May 23, 2023, demanding that she stop her defamatory conduct, Preston filed the stalking case.

64. The evidence shows Preston was the aggressor in the dispute, not the victim of stalking.

65. During the stalking case, on at least 50 occasions, Preston invoked her Fifth Amendment right against self-incrimination when questioned, suggesting she had no legitimate basis for her claims.

66. Defendant Preston acted with malice in commencing the stalking proceeding.

67. Preston told journalist Shara Wolf: "I want to be able to sue him Shara and I want to be able to win."

68. Preston further stated: "I need to Sue this son of a bitch."

69. Preston also stated: "I want to sue him and I hope to God he settles out of court and gives me enough to finish my house, pay off my stuff, and get my ex-husband living somewhere else."

70. These statements demonstrate that Preston's motive in filing the stalking case was financial gain and retaliation for being denied access to Plaintiff's fanbase for fundraising purposes, not a legitimate legal purpose.

71. Preston filed the stalking case shortly after receiving a cease-and-desist letter for her own defamatory conduct against Plaintiff, further demonstrating her retaliatory motive.

72. Plaintiff suffered damages as a result of the malicious prosecution.

73. Plaintiff incurred substantial attorney's fees and costs in defending against the stalking case.

74. Plaintiff suffered lost business opportunities as a result of the stalking case.

75. Plaintiff's reputation was damaged by the filing and prosecution of the stalking case.

76. Plaintiff suffered emotional distress as a result of being subjected to the malicious prosecution.

77. Plaintiff's total damages from the malicious prosecution amount to $390,000.00 (Three Hundred Ninety Thousand Dollars).

**COUNT 2 – VIOLATION OF FLORIDA'S SEXUAL CYBERHARASSMENT LAW, FLA. STAT. § 784.049**
**(against Defendant Luthmann)**

78. Mr. HALES realleges and reincorporates the allegations contained in paragraphs 1 through 12, and paragraphs 41 through 51, as if more fully set forth herein.

79. Defendant Luthmann published a sexually explicit image of Plaintiff.

80. In 2025, Luthmann posted a video online depicting Plaintiff as engaging in oral sex with a journalist.

81. The images also contained and conveyed the personal identification information of Plaintiff.

82. The images conveyed Plaintiff's personal identification information through Plaintiff's photograph.

83. Plaintiff was specifically identified by name in the URL and content where the images were published.

84. Plaintiff's physical attributes were readily identifiable in the posted images.

85. The image/video was published to an Internet website.

86. The video was published at the following Internet address: https://luthmann. Substack.com/p/megan-fox-youtuber-jeremy-hales-fake.

87. Plaintiff did not consent to the publication of the image.

88. Plaintiff never consented to Luthmann publishing any images of Plaintiff.

89. Plaintiff did not authorize, approve, or give permission for the publication of the images.

90. There was no legitimate purpose for publishing the image.

91. The images were posted to harass and defame Plaintiff.

92. The publication served no legitimate journalistic, educational, or other lawful purpose.

93. Luthmann had no relationship with Plaintiff that would justify publication,

94. The publication was not newsworthy.

95. Defendant Luthmann intended to cause substantial emotional distress to Plaintiff.

96. Defendant Luthmann's intent to cause substantial emotional distress is evidenced by the context of the publication.

97. Prior to publishing the images, Defendant Luthmann had sent emails making false accusations that Plaintiff was anti-Semitic and comparing Plaintiff to advocates of eugenics and mass murder.

98. The publication was designed to humiliate and distress Plaintiff.

99. Defendant Luthmann knew the publication would cause distress.

100. There is a Facebook page called "What The Hales" - which appears to be an official Facebook page of What The Hale$ - where fans of HALES

comment in this group in support of HALES. To their surprise, these supporters find out that this is nothing more than a "hate group" designed to damage the reputation of HALES.

101. Defendant Luthmann personally posted to this hate group.

102. Some examples of the postings in this group are at https://www.facebook.com/groups/340750118547073/media

103. Defendant Luthmann's conduct or harm occurred within Florida.

104. Plaintiff maintains property in Levy County, Florida.

105. Plaintiff conducts business operations in Florida.

106. Plaintiff suffered harm to his reputation and emotional well-being in Florida.

107. Plaintiff suffered damages as a result of Luthmann's sexual cyberharassment.

108. Plaintiff was subjected to harassment as a result of the publication.

109. Plaintiff experienced fear as a result of the publication.

110. Plaintiff endured extreme embarrassment as a result of the publication.

111. Plaintiff lost professional opportunities and prestige as a result of the publication.

112. Plaintiff felt strain on his personal relationships as a result of the publication.

113. Plaintiff encountered prolonged expense and inconvenience as a result of the publication.

114. Plaintiff's total damages from the sexual cyberharassment amount to three hundred seventy thousand dollars.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor as follows:

A. Against Defendant Preston, compensatory damages in the amount of three hundred ninety thousand dollars for malicious prosecution.

B. Against Defendant Preston, prejudgment interest on all damages awarded.

C. Against Defendant Preston, costs of suit.

D. Against Defendant Luthmann, a preliminary and permanent injunction pursuant to Fla. Stat. § 784.049 prohibiting Luthmann from posting or otherwise disseminating the images at issue and ordering Luthmann to destroy all copies of any sexually explicit images depicting Plaintiff in Luthmann's possession.

E. Against Defendant Luthmann, statutory damages pursuant to Fla. Stat. § 784.049 in the amount of three hundred seventy thousand dollars or five thousand dollars, whichever is greater.

F. Against Defendant Luthmann, reasonable attorney's fees and costs pursuant to Fla. Stat. § 784.049.

G. Against both Defendants, interest on all compensatory and statutory damages.

H. Such other relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

SHOCHET LAW GROUP
Attorneys for Jeremy B. Hales
409 N. Main Street
Trenton, FL 32693
By: /s/ Randall Shochet
Randall Shochet, Esq.
FBN.: 959421
attorneys@counsel.insure

**SERVICE LIST**

Lynette Michelle Lacy Alexis Preston, pro se
Richard A. Luthmann, Jr., pro se