UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

JEREMY B. HALES,
Plaintiff,

vs. Case No.: 1:25cv58/RH/ZCB

RICHARD LUTHMANN, JR., et al.,
Defendants.
_________________________________/

# REPORT AND RECOMMENDATION

Currently before the Court is Defendant Luthmann's motion to dismiss. (Doc. 198). Plaintiff has responded in opposition. (Doc. 202). For the reasons below, the motion to dismiss should be granted.

## I. Background[1]

Plaintiff Jeremy Hales operates an online business that generates revenue by posting content on social media websites like YouTube, Facebook, and TikTok. Plaintiff has over 730,000 subscribers for his "What the Hale$" channel on YouTube and over 327,000 followers for his "What the Hale$" page on Facebook.

[1] The information below comes from the factual allegations in Plaintiff's third amended complaint. (Doc. 189). At this stage, those allegations are accepted as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Defendant Richard Luthmann also maintains an online presence by, among other things, posting content on a blog. In early 2025, Defendant Luthmann allegedly sent emails about Plaintiff to the Anti-Defamation League and to people who post content on YouTube. Around the same time, Defendant Luthmann also posted a video to a blog allegedly depicting Plaintiff "as Adolf Hitler by adding a Hitler mustache to Plaintiff's photograph and engaging in oral sex with a journalist." (Doc. 189 at 7).

In the third amended complaint, Plaintiff claims Defendant Luthmann's conduct violated Florida's sexual cyberharassment statute (count two). Plaintiff seeks money damages and injunctive relief against Luthmann.

## II. Discussion

Defendant Luthmann argues that dismissal is warranted for several reasons.[2] First, he argues that the Court lacks subject matter jurisdiction. Second, he argues that service of process has been

[2] Defendant Luthmann also raises arguments regarding joinder and severance. Because the Court concludes dismissal is warranted, it is unnecessary to address the joinder and severance arguments. If this matter is not ultimately dismissed, then Defendant Luthmann will be permitted to raise the joinder and severance issues by separate motion.

insufficient. Third, he argues that Plaintiff has failed to state a claim upon which relief can be granted. Because the order of operations requires jurisdiction to be addressed before merits, the Court will first address the subject matter jurisdiction argument. *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430-31 (2007) (stating the general rule that a court "may not rule on the merits of a case without first determining that it has jurisdiction").

**A.**

According to Defendant Luthmann, the claim brought against him in the third amended complaint should be dismissed for lack of subject matter jurisdiction. Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, dismissal is warranted if the court lacks subject matter jurisdiction. Federal subject matter jurisdiction typically exists either because the case presents a federal question (28 U.S.C. § 1331) or the requirements of diversity jurisdiction have been met (28 U.S.C. § 1332).

Plaintiff's third amended complaint invokes the Court's diversity jurisdiction. (Doc. 189 at 2). Diversity jurisdiction exists when the parties are citizens of different states and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a). It is undisputed that Defendant Luthmann and Plaintiff are diverse (Plaintiff is a citizen of Ohio, and

Defendant Luthmann is a citizen of Florida). But Defendant Luthmann contends that the amount in controversy does not exceed $75,000.

When a plaintiff has filed an action in federal court based on diversity jurisdiction, "the sum claimed by the plaintiff controls" for amount in controversy purposes "if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 276 (1977) (cleaned up).

Here, the third amended complaint alleges that Plaintiff Hales suffered $370,000 in damages from the alleged sexual cyberharassment by Defendant Luthmann. (Doc. 189 at 14). According to the third amended complaint, these damages stemmed from reputational harm, harassment, and loss of business opportunities. (*Id.* at 13-15). Taking as true the allegations about Plaintiff's online subscriber base and his associated online business ventures that were allegedly damaged by Defendant Luthmann's conduct, the Court finds that Plaintiff has alleged in good faith damages that satisfy the amount in controversy requirement. And it does not appear to a legal certainty that the claim is really for less than the jurisdictional amount. Accordingly, the Court has subject matter jurisdiction over this case based on diversity of

citizenship under 28 U.S.C. § 1332. *See Pete v. Cooper*, 812 F. Supp. 3d 1251, 1256-58, 1269-70 (S.D. Fla. 2025) (stating that a complaint alleging damages exceeding $75,000 from defendant's "campaign of smear and harassment through social media . . . using video, audio, and written posts to cause reputational harm and emotional distress" including a "deepfake pornographic video" of plaintiff was sufficient for diversity jurisdiction).

**B.**

Next, the Court will address Defendant Luthmann's argument that dismissal is warranted under Rule 12(b)(5) for insufficient service. The Court rejects Defendant Luthmann's argument for two reasons. First, Defendant Luthmann has been evading service and has had actual notice of this lawsuit for quite some time. (*See, e.g.*, Doc. 158 at 5-14; Doc. 115). Second, Plaintiff has satisfied the requirements for substituted service.

It appears to the Court that Defendant Luthmann has treated service like a game of cat and mouse. He has actively worked to evade service, all the while being fully aware of the lawsuit and filing lots of documents in the lawsuit. As such, the Court finds that Plaintiff's service attempts on Defendant Luthmann are "sufficient to confer jurisdiction." *See Lancaster v. Bottle Club, LLC*, No. 8:17-cv-634, 2017 WL 4922855, at

*2 (M.D. Fla. Oct. 31, 2017) (finding service sufficient where plaintiffs made multiple attempts to serve defendants who had notice of the lawsuit but were foiled by defendant's refusal to answer the door or accept any service documents); *see also Banco Latino, S.A.C.A. v. Gomez Lopez*, 53 F. Supp. 2d 1273, 1281 (S.D. Fla. 1999) ("Notice of a complaint coupled with good faith attempted service is sufficient to confer jurisdiction where a party is evading service of process."). Indeed, at this point "it seems futile to require Plaintiff[] to expend countless additional resources in order to effect service upon" Defendant Luthmann. *Chamberlain v. Integraclick, Inc.*, No. 4:10cv477-SPM, 2011 WL 1456878, at *4 (N.D. Fla. Apr. 15, 2011) (finding the defendant was served where there was actual notice, multiple attempts to serve, and acts to evade service).

The Court also, and alternatively, finds that Defendant Luthmann has been served under Florida's substituted service procedure. Although the general rule under Florida law is that a defendant must be personally served, "the general rule has exceptions, such as substituted service on the Secretary of State" under Fla. Stat. § 48.161. *Rebalko v. Atallah*, 413 So. 3d 170, 172 (Fla. 4th DCA 2025). Under § 48.161, a plaintiff may complete substituted service by serving the Florida Secretary of State

when an individual conceals his whereabouts. To complete substituted service under § 48.161, a plaintiff must (1) serve the Secretary of State with a copy of the summons and complaint; (2) pay the requisite fee to the Secretary of State; (3) provide notice of service upon the Secretary of State to the defendant by registered or certified mail;[3] and (4) file an affidavit of compliance that shows substituted service was proper and that due diligence was exercised in attempting to complete personal service before using substituted service. *Fundamental Nutrition LLC v. Emerge Nutraceuticals Inc.*, No. 5:23cv64, 2023 WL 6975984, at *3 (M.D. Fla. Oct. 23, 2023).

Here, the Court finds that the requirements of substituted service have been satisfied. More specifically, the Court finds that Defendant Luthmann has concealed his whereabouts and worked to actively evade service. As detailed by Plaintiff, repeated attempts to locate and serve Defendant Luthmann have been unsuccessful. (Docs. 150, 150-1, 150-2). Defendant Luthmann is very much aware of the lawsuit, he is aware of the attempts to serve him, and he has taken steps to avoid being served.

[3] "Courts may dispense with the filing of a postal receipt if a substituted service statute is invoked on the ground that the defendant is evading service." *Wise v. Warner*, 932 So. 2d 591, 593 (Fla. 5th DCA 2006).

Second, the Court finds that Plaintiff has served the Florida Secretary of State and otherwise complied with the procedural requirements for substituted service. (*See* Docs. 150, 150-1).

The Court further finds that Plaintiff exercised due diligence in attempting to locate and serve Defendant Luthmann, as evidenced by the process server affidavits and related documents provided by Plaintiff. (Doc. 150-2). In reaching that conclusion, the Court notes that the "test is not whether it was in fact possible to effect personal service in a given case, but whether the plaintiff reasonably employed knowledge at [his] command, made diligent inquiry, and exerted an honest and conscientious effort appropriate to the circumstances, to acquire information necessary to enable [him] to effect personal service on the defendant." *Verizon Trademark Servs., LLC v. Producers, Inc.*, No. 8:10-cv-665, 2011 WL 3296812, at *3 (M.D. Fla. Aug. 2, 2011). Accordingly, the Court concludes that Defendant Luthmann has been served by substituted service under Fla. Stat. § 48.161.

Defendant Luthmann attempts to avoid this conclusion by arguing that substituted service is only available for nonresidents, and he is a resident of Florida. The Court disagrees with Defendant Luthmann's argument. The statute provides that substituted service may be used

when "an individual or a business entity is a nonresident *or* conceals his, her, or its whereabouts . . . ." Fla. Stat. § 48.161(2) (emphasis added). The word "'or' is generally construed in the disjunctive when used in a statute or rule." *Sparkman v. McClure*, 498 So. 2d 892, 895 (Fla. 1986). "The use of a disjunctive in a statute indicates alternatives and requires that those alternatives be treated separately." *Ellinwood v. Bd. of Architecture & Interior Design*, 835 So. 2d 1269, 1270 (Fla. 1st DCA 2003). Applying that principle here, Fla. Stat. § 48.161(2) provides two alternatives for when substituted service may be used—(1) the individual or business entity is a nonresident; or (2) the individual or business entity is concealing its whereabouts. So regardless of Defendant Luthmann's status as a Florida resident, he is subject to substituted service because he has concealed his whereabouts and evaded service. *See Smith v. Leaman*, 826 So. 2d 1077, 1078 (Fla. 2d DCA 2002) (stating that § 48.161 "allows for substituted service of process on a Florida resident who is concealing his whereabouts"). The Court, therefore, rejects Defendant Luthmann's argument that dismissal is warranted for lack of service.

**C.**

The Court will now turn to Defendant Luthmann's argument that dismissal is warranted under Rule 12(b)(6) for failure to state a claim.

To overcome a motion to dismiss for failure to state a claim, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). At the motion to dismiss stage, the complaint's factual allegations are accepted as true, but its legal conclusions are not. *Id.*

In count two, the third amended complaint alleges that Defendant Luthmann violated Florida's sexual cyberharassment statute, Fla. Stat. § 784.049. Plaintiff claims Defendant Luthmann did this by publishing on a blog a video that allegedly depicted Plaintiff engaged in a sex act.[4] In his motion to dismiss, Defendant Luthmann argues that Plaintiff's allegations are insufficient to state a claim under Fla. Stat. § 784.049. As explained below, Defendant Luthmann is correct.

---

[4] The third amended complaint includes a link to the video, and the video is discussed throughout the third amended complaint. (Doc. 189 at 7, 11). Because Plaintiff "refers to [the video] in the complaint," the video is "central to the [cyberharassment] claim," and the video's "contents are undisputed[,]" the Court will consider the video in connection with the motion to dismiss. *Baker v. City of Madison, Alabama*, 67 F.4th 1268, 1276 (11th Cir. 2023); *see also Quinette v. Reed*, 805 F. App'x 696, 700 (11th Cir. 2020) (considering, at the motion to dismiss stage, video footage that was referenced in the complaint).

Section 784.049 "criminalizes sexual cyberharassment." *Conradis v. Buonocore*, No. 6:18-cv-1486, 2021 WL 4243720, at *5 (M.D. Fla. Sept. 17, 2021) (cleaned up). The statute was designed to address so-called "revenge porn," which occurs when a "person depicted in a sexually explicit image taken with the person's consent" has the image published online without the person's consent. *See* Fla. Stat. § 784.049(1)(a)-(b) (discussing the legislature's findings relating to the sexual cyberharassment statute); *see also Crapps v. State of Fla.*, 180 So. 3d 1125, 1127 (Fla. 1st DCA 2015) (explaining that the sexual cyberharassment statute was enacted to provide a tool for addressing "acts of so-called 'revenge porn'"). In addition to criminal penalties, the statute provides an "aggrieved person" with the right to bring a civil action "against a person" who has violated the statute. Fla. Stat. § 784.049(5) (Oct. 1, 2022).[5]

---

[5] The statute was amended, effective October 1, 2025. But Defendant Luthmann's video was published in January of 2025, so the Court looks to the version of Fla. Stat. § 784.049 that was effective at that time, which was the October 1, 2022, version. *See S-Fer Int'l, Inc. v. Stonesheets, LLC*, No. 14-24662-CIV, 2016 WL 8808748, at *4 (S.D. Fla. Jan. 19, 2016) ("Florida law provides that the applicable version of a statute is that which was in effect when a cause of action accrues."). To the extent that any of the statutes that Fla. Stat. § 784.049 points to for definitional purposes were subsequently amended, the Court applies those statutes as they existed in January of 2025. And for what it is worth, none of the

To state a violation of § 784.049, a plaintiff must plausibly allege that:

1. Defendant published a sexually explicit image of Plaintiff on an internet website;
2. The image contained or conveyed Plaintiff's personal identification information;
3. Defendant acted willfully and maliciously, for no legitimate purpose, and with the intent of causing substantial emotional distress to Plaintiff;
4. Plaintiff did not consent to the publication.

*In re Standard Jury Instructions in Criminal Cases-Report 2017-09*, 238 So. 3d 192, 196 (Fla. 2018). Looking to the third amended complaint, it plausibly alleges that Defendant Luthmann posted an image of Plaintiff on an internet website, that the image conveyed Plaintiff's name (which qualifies as personal identification information under the statute, *see* Fla. Stat. 784.049(2)(b)), that Defendant Luthmann acted with the requisite mental state, and that Plaintiff did not consent to the publication. The question is whether Plaintiff has plausibly alleged that the image

---

changes made to § 748.049 in 2025 would have changed the result in this case.

Defendant Luthmann posted was "sexually explicit." To answer that question, it is necessary to venture through a dense forest of defined terms.

The venture starts with the phrase "sexually explicit image," which the statute defines as any photograph or video that depicts "nudity" or depicts "any person engaging in sexual conduct." *In re Standard Jury Instructions*, 238 So. 3d at 196; Fla. Stat. § 784.049(2)(a), (d) (Oct. 1, 2022). Let's take those terms one at a time—starting with what "nudity" means in this context. According to the statute (i.e., § 748.049(d)) "nudity" has the same meaning here as it does in Fla. Stat. § 847.001. And that statute defines "nudity" as:

> the showing of the human male or female genitals, pubic area, or buttocks with less than a fully opaque covering; or the showing of the female breast with less than a fully opaque covering of any portion thereof below the top of the nipple; or the depiction of covered male genitals in a discernibly turgid state.

Fla. Stat. § 847.001(11) (Oct. 1, 2022).

Having established what "nudity" is for purposes of § 748.049(d), it is necessary to decide if the third amended complaint plausibly alleges that the video posted by Defendant Luthmann depicts "nudity" by Plaintiff. It does not. Instead, the video shows Plaintiff's face

superimposed on somebody else's body. The video only shows the body from the shoulders up, and the body is clothed. Thus, the third amended complaint does not plausibly allege that the video is "sexually explicit" based on a depiction of "nudity" by Plaintiff.

An image can also be "sexually explicit" if it depicts a person engaged in "sexual conduct." According to the statute, "sexual conduct" means the same thing in § 748.049(d) as it does in § 847.001(19). Here is the definition from § 847.001(19):

> actual or simulated sexual intercourse, deviate sexual intercourse, sexual bestiality, masturbation, or sadomasochistic abuse; actual or simulated lewd exhibition of the genitals; actual physical contact with a person's clothed or unclothed genitals, pubic area, buttocks, or, if such person is a female, breast with the intent to arouse or gratify the sexual desire of either party; or any act or conduct which constitutes sexual battery or simulates that sexual battery is being or will be committed.

Fla. Stat. § 847.001(19) (Oct. 1, 2022). As you just read, "sexual conduct" includes "actual or simulated . . . deviate sexual intercourse."[6] But what does that mean? To find out, we turn to Fla. Stat. § 847.001(5), which

---

[6] Plaintiff has simply stated that the video depicts "sexual conduct" (Doc. 202 at 15), but he has not identified what particular portion of the definition of "sexual conduct" he believes is implicated. The only portion that the Court believes could arguably be implicated by the video is "deviate sexual intercourse." Thus, that is where the Court will focus its discussion.

says that "deviate sexual intercourse" is "sexual conduct between persons not married to each other consisting of contact between the penis and the anus, the mouth and the penis, or the mouth and the vulva." Fla. Stat. § 847.001(5) (Oct. 1, 2022). The statute not only covers the "actual" depiction of these things, but also the "simulated" depiction of them. And in this context, "simulated" means "the explicit depiction of conduct described in subsection (19) which creates the appearance of such conduct and which exhibits any uncovered portion of the breasts, genitals or buttocks." Fla. Stat. § 847.001(22) (Oct. 1, 2022).

Applying all that here, the third amended complaint does not plausibly allege that the video posted by Defendant Luthmann depicted a person engaged in "sexual conduct." The video shows an image of Plaintiff Hales's face—with an added fake Hitler mustache—superimposed on another person's body. The video also shows an image of a woman with her mouth open. The image of the woman then rotates before moving to the bottom of the screen such that only a portion of the woman's hair is visible. The woman's head then appears to go up and down, as the image of Plaintiff Hales bears an expression of excitement or shock. Although the video is intended to mockingly suggest that Plaintiff Hales is receiving oral sex from the woman, the video does not

show "contact between the penis and the anus, the mouth and the penis, or the mouth and the vulva." Fla. Stat. § 847.001(5) (Oct. 1, 2022). Indeed, the video shows neither male nor female genitalia. The video, therefore, does not depict "actual" "deviate sexual intercourse."

The video also does not depict "simulated" "deviate sexual intercourse." As mentioned above, the statutory definition of "simulated" requires two things: "[1] the explicit depiction of [sexual conduct] . . . which creates the appearance of such conduct *and* [2] which exhibits any uncovered portion of the breasts, genitals, or buttocks." Fla. Stat. § 847.001(22) (Oct. 1, 2022) (emphasis added). The Court assumes *arguendo* that the video creates "the appearance" of "contact between . . . the mouth and the penis" as necessary to meet the first statutory requirement for conduct to qualify as "simulated." But the second statutory requirement[7] is clearly not satisfied because the video does not

[7] The statute uses the word "and," which is a conjunctive that "combines items." Hon. Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 116 (2012). When a statute lists requirements "connected by the conjunctive 'and,'" it is necessary to meet all the requirements. *United States v. Palomar-Santiago*, 593 U.S. 321, 326 (2021); *see also Galleon Bay Corp. v. Bd. of Cnty. Comm'rs of Monroe Cnty.*, 105 So. 3d 555, 567 (Fla. 3d DCA 2012) ("Of course, 'and' is a conjunction to mean that both elements must be met." (cleaned up)). Although there are rare cases where "and" is not used in the conjunctive sense, this case is not one of them. Reading the "and" in this statute as

"exhibit[] any uncovered portion of the breasts, genitals, or buttocks." *Id.* The video, therefore, does not depict any "simulated" "sexual conduct" as those terms are defined by Fla. Stat. §§ 847.001(19), (22).[8]

When all the above is put together, it leads to the conclusion that Plaintiff has not plausibly alleged that the video published by Defendant Luthmann contained a "sexually explicit image" of Plaintiff. As a result, Plaintiff has not stated a plausible claim under Florida's sexual cyberharassment statute, Fla. Stat. § 784.049. Although the video Defendant Luthmann published is vulgar, offensive, and juvenile, it does not constitute sexual cyberharassment under Florida law. Thus, dismissal is warranted for failure to state a claim.[9]

---

anything other than a conjunctive would make little sense given the statutory text and context.

[8] This result is consistent with the idea that statutes prohibiting the depiction of "simulated" sexual conduct are typically intended to address situations where "[t]he portrayal" would "cause a reasonable viewer to believe that the actors actually engaged in" the depicted conduct. *United States v. Williams*, 553 U.S. 285, 297 (2008) (discussing simulated sexual conduct in the context of child pornography laws). Here, the video—containing superimposed faces and clearly satirical elements—would not lead any reasonable viewer to believe that Plaintiff and the woman were actually engaging in sexual conduct in the video.

[9] The dismissal should be with prejudice because Plaintiff has had multiple chances to amend his complaint. *See Eiber Radiology, Inc. v. Toshiba Am. Med. Sys., Inc.*, 673 F. App'x 925, 930 (11th Cir. 2016) ("We have never required district courts to grant counseled plaintiffs more than one opportunity to amend a deficient complaint, nor have we

## III. Conclusion

For the reasons above, it is respectfully **RECOMMENDED** that:

1. Defendant Luthmann's motion to dismiss (Doc. 198) be **GRANTED** and count two of the third amended complaint (Doc. 189) be **DISMISSED with prejudice** for failure to state a claim.

2. This matter be recommitted to the undersigned for further proceedings involving Defendant Preston.

At Pensacola, Florida, this 2nd day of September 2026.

/s/ Zachary C. Bolitho
Zachary C. Bolitho
United States Magistrate Judge

## Notice to the Parties

Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the Report and Recommendation. Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control. An objecting party must serve a copy of the objections on all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained

---

concluded that dismissal with prejudice is inappropriate where a counseled plaintiff has failed to cure a deficient pleading after having been offered ample opportunity to do so."). To the extent that Defendant Luthmann (a *pro se* litigant) believes that he is entitled to attorney's fees under Florida's Anti-SLAPP statute (*see* Doc. 198 at 12-13), he is wrong. *See Lee v. Animal Aid, Inc.*, 388 So. 3d 25, 31 (Fla. 4th DCA 2024) (stating that the appellant "as a pro se litigant on her Anti-SLAPP motion, was not entitled to attorney's fees").

in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.